1  MICHAEL J. IOANNOU (SBN 95208)
   KEVIN W. ISAACSON (SBN 281067)
2  ROPERS MAJESKI PC
   333 W. Santa Clara St., Suite 910
3  San Jose, CA  95113
   Telephone:    408.287.6262
4  Facsimile:    408.918.4501
   Email:        michael.ioannou@ropers.com
5                kevin.isaacson@ropers.com

6  Attorneys for Defendants and Counterclaimants
   ANALOG DEVICES, INC. and
7  MAXIM INTEGRATED PRODUCTS, INC.

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11

12  NUMBER 14 B.V.,                     Case No. 5:24-cv-02435-NC

13           Plaintiff,                 **DEFENDANTS AND
                                        COUNTERCLAIMANTS ANALOG
14       v.                             DEVICES, INC. AND MAXIM
                                        INTEGRATED PRODUCTS, INC.'S
15  ANALOG DEVICES, INC.; and MAXIM     ANSWER TO PLAINTIFF'S
    INTEGRATED PRODUCTS, INC.           COMPLAINT WITH AFFIRMATIVE
16                                      DEFENSES AND COUNTERCLAIMS;
         Defendants.                    DEMAND FOR JURY TRIAL**
17

18  _____

19  ANALOG DEVICES, INC.; and MAXIM
    INTEGRATED PRODUCTS, INC.,
20
             Counterclaimants,
21
         v.
22
    NUMBER 14 B.V., RUDY ESCHAUZIER,
23  and NICO VAN RIJN,

24           Counter-Defendants.

25          Defendants ANALOG DEVICES, INC. and MAXIM INTEGRATED PRODUCTS, INC.

26  ("Defendants") respond and assert their defenses to the Complaint filed by Plaintiff NUMBER 14

27  B.V. ("Plaintiff") as follows:

28

ROPERS
MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

## GENERAL ALLEGATIONS

1.      In response to paragraph 1 of the Complaint, Defendants admit that Rudy Eschauzier and Nico van Rijn ("the Inventors") were two electrical engineers and inventors residing in the Netherlands.  Defendants further admit that the Inventors previously worked with Defendant Maxim, a Delaware corporation, and worked in the design, development, and/or manufacturing of linear and mixed-signal integrated circuits.

2.      In response to paragraph 2 of the Complaint, Defendants admit that Maxim and the Inventors entered into an employment agreement and license agreement.  However, the terms of the License Agreement speak for themselves, and any attempts in this paragraph 2 to paraphrase or characterize them are expressly denied, along with all other allegations of paragraph 2.

3.      In response to paragraph 3 of the Complaint, Defendants admit that Maxim and the Inventors executed a License Agreement in July 2007.  The terms of the License Agreement speak for themselves in this paragraph 3, and any attempts to paraphrase or characterize them are expressly denied, along with all other allegations of paragraph 3.

4.      In response to paragraph 4 of the Complaint, Defendants admit that Inventors were issued multiple Patents and Maxim exercised its right of first refusal to license a number of these patents.  Defendants lack sufficient information to form a belief as to the truth of the remaining allegations, and on that basis, Defendants deny all remaining allegations in paragraph 4.

5.      In response to paragraph 5 of the Complaint, Defendants admit that Maxim made Royalty payments to Number 14 in 2011 (for the calendar year 2010). Except as specifically admitted, Defendants deny the remaining allegations in paragraph 5.

6.      In response to paragraph 6 of the Complaint, Defendants admit that in July 2020 Analog Devices, Inc. ("ADI") announced its plan to acquire Maxim and the acquisition was completed in August 2021.  Defendants further admit that the September 7, 2021 Form 10-K/A filing with the Securities and Exchange Commission confirmed that Maxim became a wholly owned subsidiary of ADI.  Except as specifically admitted, Defendants deny the remaining allegations in paragraph 6.

7.      In response to paragraph 7 of the Complaint, Defendants admit that Maxim

1   continued to make Royalty payments to Number 14.  Except as specifically admitted, Defendants

2   deny all remaining allegations in paragraph 7.

3       8.      In response to paragraph 8 of the Complaint, Defendants deny each and every

4   allegation contained therein.

5       9.      In response to paragraph 9 of the Complaint, Defendants admit that its employee

6   wrote the quoted phrases in a January 12, 2024 email response.  However, any attempts in this

7   paragraph 9 to paraphrase or characterize the email are expressly denied, along with all other

8   allegations of paragraph 9.

9       10.     In response to paragraph 10 of the Complaint, Defendants deny each and every

10  allegation contained therein.

11                          **PARTIES, JURISDICTION, AND VENUE**

12      11.     In response to paragraph 11 of the Complaint, Defendants lack sufficient

13  information to form a belief as to the truth of the allegations therein and on that basis denies the

14  allegations.

15      12.     In response to paragraph 12 of the Complaint, Defendants admit that ADI is a

16  Massachusetts corporation with its principal place of business at One Analog Way, Wilmington,

17  MA 01887.  Defendants further admit that ADI also has an established place of business located

18  at 160 Rio Robles, San Jose, CA 95134.

19      13.     In response to paragraph 13 of the Complaint, Defendants admit that Maxim is a

20  Delaware Corporation with its principal place of business located at 160 Rio Robles, San Jose,

21  CA 95134.

22      14.     Paragraph 14 constitutes statements or conclusions of law to which no admission

23  or denial is required.  To the extent a response is required, Defendants admit that this court has

24  jurisdiction over this action.

25      15.     Paragraph 15 constitutes statements or conclusions of law to which no admission

26  or denial is required.  To the extent a response is required, Defendants admit that venue is proper

27  in this judicial district.

28      16.     Paragraph 16 constitutes statements or conclusions of law to which no admission

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  or denial is required. To the extent a response is required, Defendants admit that this court has

2  personal jurisdiction over the action.

3  **INTRADISTRICT ASSIGNMENT**

4      17.    Paragraph 17 constitutes statements or conclusions of law to which no admission

5  or denial is required. To the extent a response is required, Defendants admit that the assignment

6  of this action to the San Jose Division is proper under the Civil Local Rules.

7  **COMMON FACTUAL ALLEGATIONS**

8      18.    In response to Paragraph 18 of the Complaint, Defendants repeat and incorporate

9  the responses contained in paragraphs 1 through 18 above.

10     19.    Paragraph 19 contains statements or conclusions of law to which no admission or

11 denial is required. To the extent a response is required, Defendants lack sufficient information to

12 form a belief as to the truth of the allegations and on that basis denies the allegations in

13 Paragraph 19.

14     20.    In response to Paragraph 20, Defendants lack sufficient information to form a

15 belief as to the truth of the allegations and on that basis denies the allegations.

16     21.    The terms of the License Agreement speak for themselves, and any attempts in this

17 Paragraph 21 to paraphrase or characterize them are expressly denied, along with all other

18 allegations of Paragraph 21.

19     22.    The terms of the License Agreement speak for themselves, and any attempts in this

20 Paragraph 22 to paraphrase or characterize them are expressly denied, along with all other

21 allegations of Paragraph 22.

22     23.    The terms of the License Agreement speak for themselves, and any attempts in this

23 Paragraph 23 to paraphrase or characterize them are expressly denied, along with all other

24 allegations of Paragraph 23.

25     24.    In response to paragraph 24 of the Complaint, Defendants deny each and every

26 allegation contained therein.

27     25.    In response to paragraph 25 of the Complaint, Defendants deny each and every

28 allegation contained therein.

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    26.    In response to paragraph 26 of the Complaint, Defendants deny each and every

2    allegation contained therein.

3    27.    In response to paragraph 27 of the Complaint, Defendants deny each and every

4    allegation contained therein.

5    28.    In response to paragraph 28 of the Complaint, Defendants admit that "in at least

6    the years 2010 to 2020" ████████████████████████████████████████████

7    ████████████████████████████████████████████    Except as

8    expressly admitted, Defendants deny all remaining allegations in paragraph 28.

9    29.    In response to paragraph 29 of the Complaint, Defendants admit that "for the years

10   2021 and 2022" after ADI acquired Maxim, ████████████████████████████

11   ████████████████████████████████████████████████

12   ████████    Except as expressly admitted, Defendants deny all remaining allegations in

13   paragraph 29.

14   30.    In response to paragraph 30 of the Complaint, Defendants deny each and every

15   allegation contained therein.

16   31.    In response to paragraph 31 of the Complaint, Defendants deny each and every

17   allegation contained therein.

18   32.    In response to paragraph 32 of the Complaint, Defendant ADI admits that it

19   communicated the quoted language to Plaintiff.  However, the January 12, 2024 email speaks for

20   itself, and any attempts in this Paragraph 32 to paraphrase or characterize it are expressly denied.

21   33.    In response to paragraph 33 of the Complaint, Defendant ADI admits that it

22   communicated the quoted language to Plaintiff.  However, the January 19, 2024 email speaks for

23   itself, and any attempts in this Paragraph 33 to paraphrase or characterize it are expressly denied.

24   34.    In response to paragraph 34 of the Complaint, Defendant ADI admits that it

25   communicated the quoted language to Plaintiff.  However, the January 22, 2024 email speaks for

26   itself, and any attempts in this Paragraph 34 to paraphrase or characterize it are expressly denied.

27   35.    In response to Paragraph 35 of the Complaint, Defendants deny each and every

28   allegation contained therein.

ROPERS
MAJESKI
A Professional Corporation
San Jose

Answer to Complaint With Counterclaims;
Demand for Jury Trial
Case No. 5:24-CV-02435

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**[Breach of Contract against Maxim]**

36.     In response to paragraph 36 of the Complaint, Defendants repeat and incorporate the responses contained in paragraphs 1 through 35 above.

37.     In response to paragraph 37 of the Complaint, Defendants admit the Inventors and Maxim entered into a written agreement, the License Agreement, which is attached as Exhibit 1. Except as expressly admitted, Defendants lack sufficient information to form a belief as to the truth of the remaining allegations and on that basis denies those allegations.

38.     In response to paragraph 38 of the Complaint, Defendants deny each and every allegation contained therein.

39.     In response to paragraph 39 of the complaint, Defendants deny each and every allegation contained therein.

40.     In response to paragraph 40 of the Complaint, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis deny those allegations.

**SECOND CAUSE OF ACTION**
**[Breach of the Covenant of Good Faith and Fair Dealing against Maxim]**

41.     In response to paragraph 41 of the Complaint, Defendants repeat and incorporate the responses contained in paragraphs 1 through 40 above.

42.     In response to paragraph 42 of the Complaint, Defendants admit the Inventors and Maxim entered into a written agreement, the License Agreement, which is attached as Exhibit 1. Except as expressly admitted, Defendants lack sufficient information to form a belief as to the truth of the remaining allegations and on that basis denies those allegations.

43.     In response to paragraph 43 of the Complaint, Defendants deny each and every allegation contained therein.

44.     In response to paragraph 44 of the Complaint, deny each and every allegation contained therein.

ROPERS
M A J E S K I

A Professional Corporation
San Jose

ROPERS
MAJESKI
A Professional Corporation
San Jose

1   45.     In response to paragraph 45 of the Complaint, paragraph 45 contains statements or

2   conclusions of law to which no admission or denial is required.  To the extent a response is

3   required, Defendants deny each and every allegation contained therein.

4   46.     In response to paragraph 46 of the Complaint, Defendants deny each and every

5   allegation contained therein.

6   47.     In response to paragraph 47 of the Complaint, Defendants admit its ███████

7   ████████████████████████████████  Except as specifically admitted,

8   Defendants deny the remaining allegations in paragraph 47.

9   48.     In response to paragraph 48 of the Complaint, Defendants lack sufficient

10  information to form a belief as to the truth of the allegations, and on that basis denies the

11  allegations.

12                          **THIRD CAUSE OF ACTION**
13         **[Intentional Interference with Contractual Relations against ADI]**

14  49.     In response to paragraph 49 of the Complaint, Defendants repeat and incorporate

15  the responses contained in paragraphs 1 through 48 above.

16  50.     In response to paragraph 50 of the Complaint, Defendants admit the Inventors and

17  Maxim entered into a written agreement, the License Agreement, which is attached as Exhibit 1.

18  Except as expressly admitted, Defendants lack sufficient information to form a belief as to the

19  truth of the remaining allegations and on that basis denies those allegations.

20  51.     In response to paragraph 51 of the Complaint, Defendants lack sufficient

21  information to form a belief as to the truth of the remaining allegations and on that basis denies

22  those allegations.

23  52.     In response to paragraph 52 of the Complaint, the quoted communications and

24  documents speak for themselves, and any attempts in this paragraph 52 to paraphrase or

25  characterize them are expressly denied. Defendants also deny all remaining allegations.

26  53.     In response to paragraph 53 of the Complaint, Defendants deny each and every

27  allegation contained therein.

28  54.     In response to paragraph 54 of the Complaint, Defendants deny each and every

1    allegation contained therein.

2        55.     In response to paragraph 55 of the Complaint, Defendants deny each and every

3    allegation contained therein.

4        56.     In response to paragraph 56 of the Complaint, Defendants deny each and every

5    allegation contained therein.

6                        **FOURTH CAUSE OF ACTION**
        **[Intentional Interference with Prospective Economic Relations against ADI]**
7

8        57.     In response to paragraph 57 of the Complaint, Defendants repeat the responses

9    contained in paragraphs 1 through 56 above.

10        58. In response to paragraph 58 of the Complaint, Defendants admit that since 2010,

11   Maxim has paid Royalties to Number 14 as required in the License Agreement and as requested

12   by the Inventors.  Defendants lack sufficient information to form a belief as to the truth of the

13   remaining allegations, and on that basis denies those allegations.

14        59. In response to paragraph 59 of the Complaint, contains statements or conclusions

15   of law to which no admission or denial is required.  To the extent a response is required,

16   Defendants lack sufficient information to form a belief as to the truth of the allegations, and on

17   that basis denies the allegations.

18        60. In response to paragraph 60 of the Complaint,  Defendants deny each and every

19   allegation contained therein.

20        61. In response to paragraph 61 of the Complaint, Defendants deny each and every

21   allegation contained therein.

22                        **FIFTH CAUSE OF ACTION**
        **[Open Book Account – Cal. Code Civ. Proc., § 425.30 – against Maxim]**
23

24        62.     In response to paragraph 62 of the Complaint, Defendants repeat the responses

25   contained in paragraphs 1 through 61 above.

26        63.     In response to paragraph 63 of the Complaint, Defendants admit that since 2021,

27   Maxim has paid Royalties to Number 14 as required in the License Agreement and as requested

28   by the Inventors.  Except as specifically admitted, Defendants deny all remaining allegations in

---

ROPERS
MAJESKI

A Professional Corporation
San Jose

4889-3713-2231.6

-8-

Answer to Complaint With Counterclaims;
Demand for Jury Trial
Case No. 5:24-CV-02435

paragraph 63.

64.     In response to paragraph 64 of the Complaint, Defendants lack sufficient information to form a belief as to the truth of the allegations, and on that basis denies the allegations.

65.     In response to paragraph 65 of the Complaint, Defendants deny each and every allegation contained therein.

66.     In response to paragraph 66 of the Complaint, Defendants deny each and every allegation contained therein.

## SIXTH CAUSE OF ACTION
**[Money Due and Owing/Indebtedness – Cal. Code Civ. Proc., § 425.30 – against Maxim]**

67.     In response to paragraph 67 of the Complaint, Defendants repeat the responses contained in paragraphs 1 through 66 above.

68.     In response to paragraph 68 of the Complaint, Defendants deny each and every allegation contained therein.

69.     In response to paragraph 69 of the Complaint, Defendants deny each and every allegation contained therein.

## SEVENTH CAUSE OF ACTION
**[Accounting – against Maxim]**

70.     In response to paragraph 70 of the Complaint, Defendants repeat the responses contained in paragraphs 1 through 69 above.

71.     In response to paragraph 71 of the Complaint, Defendants admit that Maxim has paid Royalties to Number 14 as required in the License Agreement and requested by the Inventors.  Except as specifically admitted, Defendants deny all remaining allegations in paragraph 71.

72.     In response to paragraph 72 of the Complaint, Defendants deny each and every allegation contained therein.

## DEMAND FOR JURY TRIAL

Defendants admit that Plaintiff purports to demand a jury trial, while reserving all rights in

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  connection therewith.

2  ## RESPONSE TO PRAYER FOR RELIEF

3  Defendants deny that Plaintiff is entitled to any relief whatsoever, including any of the

4  relief requested in its Prayer for Relief.

5  ## AFFIRMATIVE DEFENSES

6  Without assuming the burden of proof on any matters that would otherwise rest with the

7  Plaintiff, expressly denying all wrongdoing, and subject to a reasonable opportunity for further

8  investigation and discovery, Defendants allege the following defenses:

9  ## FIRST AFFIRMATIVE DEFENSE

10  ### (Failure to State a Claim)

11  AS A FIRST, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

12  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

13  THEREIN, Defendants allege that Plaintiff's Complaint regarding its purported causes of action

14  for Breach of Contract against Maxim, Breach of the Covenant of Good Faith and Fair Dealing

15  against Maxim, Intentional Interference with Contractual Relations against ADI, and Intentional

16  Interference with Economic Relations against ADI, fail to state facts sufficient to state a plausible

17  claim for relief against Defendants.

18  ## SECOND AFFIRMATIVE DEFENSE

19  ### (Unilateral Mistake)

20  AS A SECOND, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

21  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

22  THEREIN, Defendants are informed and believe, and thereon allege, that at all relevant times, the

23  parties to the purported agreement were acting under a unilateral mistake of fact as to one or more

24  facts that were a material part of the contract, and would not have entered into that contract had

25  the true facts been known.

26  At the time Defendant Maxim and the Inventors executed the License Agreement, ████

27  ██████████████████████████████████████████████████

28  ██████████████████████████████████████████

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  ████████████████████████████████████████████████████████

2  ████████████████████████  Maxim and thus ADI continue to believe and interpret the

3  Agreement's Royalty payment calculation, ██████████████████████████

4  ██████████████████  At the time Defendant Maxim and the Inventors executed the

5  License Agreement, the Inventors were aware that Maxim defined the ████████████

6  ███████████████████████████████████████████

7  ██████████████  To the extent Plaintiff claims the License Agreement required █

8  ███████████████████████████, Plaintiff knew or should have known of Maxim's

9  mistaken interpretation of the provision and the mistake was not caused by Defendants' alleged

10  ███████████████████████████████████████

11  █████████████████████████  Defendants' mistake was not

12  caused by recklessness and instead, adhered to a plain reading of the License Agreement

13  provisions.  Had Maxim known about the mistake, it would not have entered into the License

14  Agreement.  The Inventors knowledge of Maxim's mistake requires the License Agreement to be

15  interpreted in accordance with Maxim's understanding that the License Agreement permitted █

16  ████████████████████

17  **THIRD AFFIRMATIVE DEFENSE**

18  **(Assumption of Risk )**

19  AS A THIRD, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

20  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

21  THEREIN, Defendants allege that Plaintiff's causes of action against Maxim, are barred by an

22  assumption of risk.  Inventors and Plaintiff expressly, voluntarily, and knowingly assumed all

23  risks about which are complained in the Complaint and Defendants are not responsible in law or

24  fact for Plaintiff's injury, if any.  The Inventors and Plaintiff assumed the risk of ████████

25  ███████████████████████████████████████████

26  ██████  including as happened after ADI acquired Maxim.  Defendants are not liable for any

27  alleged harm as the Inventors and Plaintiff assumed all risk of the alleged harm.

28

A Professional Corporation
San Jose

ROPERS
MAJESKI

1

**FOURTH AFFIRMATIVE DEFENSE**

2

**(Statute of Limitations)**

3        AS A FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

4   ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

5   THEREIN, Defendants allege that Plaintiff's claim accrued more than 14 years prior to the

6   commencement of this action.  The statute of limitations for Intentional Interference with

7   Contractual Relations and Intentional Interference with Prospective Economic Relations is two

8   years.  (Code Civ. Proc., § 339.)  Plaintiff's Third and Fourth causes of action for "Intentional

9   Interference with Contractual Relations" and "Intentional Interference with Prospective Economic

10  Relations" against ADI, are limited to events before 2022.  Next, under California Code of Civil

11  Procedure, § 337, the statute of limitations for a breach of a written contract is four years.  (Cal.

12  Civ. Proc. Code § 337.)  Based on Plaintiff's Fifth cause of action for "Open Book Account",

13  Plaintiff attempts to claim Royalty payments from 2011 to 2023 that have a "sum of at least $1

14  million."  Thus, this action is, barred by the applicable two and four-year statute of limitations,

15  under Cal. Civ. Proc. Code §§ 339 and 337.

16

**FIFTH AFFIRMATIVE DEFENSE**

17

**(Unjust Enrichment)**

18       AS A FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

19  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

20  THEREIN, Defendants are informed and believe that any recovery by Plaintiff would be unjust

21  and inequitable under the circumstances of the case, as Defendants have performed contract

22  terms.

23       Defendants are informed and believe, and thereon allege that Plaintiff knew that its

24  Amplifier Design and Patents did not meet the required product specifications in Annex 1, to be

25  eligible for Royalty payments.  Plaintiff appreciated and knew of the benefit conferred upon it

26  through Defendants continued Royalty payments and accepted and retained such benefits.  The

27  Plaintiff has been unjustly enriched by retaining said benefit without delivering products that

28  satisfied the attached product and specifications listed in Annex 1.  Plaintiff's acceptance and

ROPERS MAJESKI

A Professional Corporation
San Jose

1  retention of such benefits under the circumstances make it inequitable for it to retain the benefits

2  without compensation of its value.

3  **SIXTH AFFIRMATIVE DEFENSE**

4  **(Speculative Damages)**

5  AS A SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

6  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

7  THEREIN, Defendants are informed and believe that Plaintiff seeks to recover damages that are

8  completely speculative in nature.

9  **SEVENTH AFFIRMATIVE DEFENSE**

10  **(Unclean Hands)**

11  AS A SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE

12  COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION

13  CONTAINED THEREIN, Defendants allege that the causes of action in the Complaint are barred

14  because Plaintiff, breached its obligations under the License Agreement and engaged in

15  misrepresentations of relevant facts; omitted and failed to disclose that its Patents and the

16  applicable products based on Plaintiff's Patents did not meet required specifications; and

17  concealed and suppressed the true facts from Defendants, thus causing damage.

18  **EIGHTH AFFIRMATIVE DEFENSE**

19  **(Uncertain Terms)**

20  AS AN EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE

21  COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION

22  CONTAINED THEREIN, Defendants allege that Plaintiff's causes of action for breach of

23  contract fail because there was no meeting of the minds regarding the terms of the contract that

24  were too vague, indefinite, and/or uncertain to be enforced.  To the extent Plaintiff is attempting

25  to indicate that the Sample Royalty Calculation in Annex 2 of the License Agreement is the

26  definitive formula to calculate Royalty would incorrectly and purposefully interpret the terms and

27  conditions of the License Agreement against Defendants.

28

**ROPERS MAJESKI**
A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

**NINTH AFFIRMATIVE DEFENSE**

**(Failure of Condition Precedent)**

AS A NINTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, Defendants allege that Plaintiff's purported causes of action for Breach of Contract against Maxim, Breach of the Covenant of Good Faith and Fair Dealing against Maxim, Intentional Interference with Contractual Relations against ADI, and Intentional Interference with Economic Relations against ADI, are barred because of a failure of a condition precedent.

Therefore, not all products that utilize Plaintiff's Patents are eligible for Royalty payments because each Amplifier product

**TENTH AFFIRMATIVE DEFENSE**

(Financial Interest Privilege)

AS A TENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, Defendants allege that Plaintiff's Third and Fourth causes of action in the Complaint regarding "Intentional Interference with Contractual Relations against ADI" and "Intentional Interference with Prospective Economic Relations against ADI", are barred because ADI's conduct is protected by the Financial Interest Privilege.

California courts have followed the Restatement of Torts § 769 in allowing "[o]ne who has a financial interest in the business of another is privileged purposely to cause him not to perform a contract with a third person . . . if the actor (a) does not employ improper means, and

1   (b) acts to protect his interest from being prejudiced by the contract". (Restat 2d of Torts, §§ 769,

2   770; *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 319 ; *Culcal*

3   *Stylco, Inc. v. Vornado, Inc.* (1972) 26 Cal.App.3d 879, 882.)

4   Defendant, ADI, interfered with the existing contractual and economic relationship

5   between Maxim and Plaintiff because ADI was acting in the best interests of Maxim, as its parent

6   company following the acquisition. The interference was justified because ADI did not employ

7   wrongful means and was acting to protect its own financial interests from being prejudiced by the

8   relationship.

9   ### ELEVENTH AFFIRMATIVE DEFENSE

10  ### (Reservation of Rights to Assert Additional Affirmative Defenses)

11  AS AN ELEVENTH , SEPARATE AND AFFIRMATIVE DEFENSE TO THE

12  COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION

13  CONTAINED THEREIN, Defendants presently have insufficient knowledge or information on

14  which to form a belief as to whether it may have additional unstated affirmative defenses.

15  Therefore, Defendant reserves the right to assert additional defenses in the event that the

16  discovery indicates it would be appropriate.

17  ### COUNTERCLAIMS

18  ### INTRODUCTION

19  Defendants and Counterclaimants ANALOG DEVICES, INC. and MAXIM

20  INTEGRATED PRODUCTS, INC. (collectively "Counterclaimants") bring these Counterclaims

21  against Number 14, Rudy Eschauzier, and Nico Van Rijn (collectively "Counterclaim

22  Defendants") to recover Royalties to which Counterclaim Defendants were never entitled, to

23  recover damages from Counterclaim Defendants' breach of contract including their duty of good

24  faith and fair dealing, and to receive a declaration from this Court that Counterclaim Defendants

25  are not entitled to receive any further Royalties until they deliver the patents and technology

26  required by the parties' written License Agreement.

27  These claims arise from a relationship between Maxim on the one hand and

28  Mr. Eschauzier and Mr. Van Rijn (the "Inventors") on the other. In 2007, Maxim entered into a

ROPERS
MAJESKI

A Professional Corporation
San Jose

4889-3713-2231.6

Answer to Complaint With Counterclaims;
Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  License Agreement and separate employment agreements with the Inventors to develop amplifier

2  technology and products.  The License Agreement required the Inventors to develop technology

3  sufficient to create amplifier products that met explicitly-stated specifications as a condition to

4  receiving Royalty payments.  While employed by Maxim, the Inventors obtained patents related

5  to the amplifier technology developed.  The Inventors informed Maxim of the patents and

6  demanded Royalties from Maxim.  Relying on the Inventors' representations that they had fully

7  performed in delivering the required technology, Maxim commenced Royalty payments on all

8  products identified by Inventors, including some developed personally by the Inventors.

9  However, Maxim has discovered that the Inventors misrepresented or concealed in their

10  communications compliance with the License Agreement's specification requirements.  None of

11  the amplifier products identified by Inventors had the required specifications.  Even after

12  Inventors' employment with Maxim terminated, Inventors continued to demand Royalty

13  payments on additional products developed by Maxim.  These too did not meet the required

14  specifications to be royalty-bearing products.  Inventors' misrepresentations allowed Inventors to

15  receive millions of dollars of Royalty payments under the License Agreement to which Inventors

16  were never entitled to receive.

17       Essentially, Maxim entered into a License Agreement with Inventors so that Maxim could

18  receive technology rights sufficient to create amplifier products with desired specifications.

19  Maxim has not received the technology for which it struck a bargain for, but has paid millions of

20  dollars for the Inventor's incomplete technology which it now seeks to recover.

21       Thus, Counterclaimants hereby allege claims against Counterclaim Defendants as follows:

22                              **COUNTERCLAIM PARTIES**

23       1.     Counterclaimant Analog Devices Inc. ("ADI") is a Massachusetts corporation with

24  a principal place of business at One Analog Way, Wilmington, MA 01887.

25       2.     Counterclaimant Maxim Integrated Products ("Maxim") is a Delaware corporation

26  with a principal place of business at 160 Rio Robles, San Jose, CA 95134.

27       3.     On information and belief, Counterclaim Defendant, Number 14 B.V. ("Number

28  14") is a company organized and existing under the laws of the Netherlands, with its principal

1   place of business at Roland Hostlaan 10, 2662 Bergschenhoek, The Netherlands that is wholly

2   owned by Rudy Eschauzier and Nico Van Rijn.

3          4.      On information and belief, Counterclaim Defendant Rudy Eschauzier

4   ("Mr. Eschauzier") is citizen of The Netherlands and a former Maxim employee who served as

5   the Design Director and Director of Engineering of Maxim's Design Center in Delft, The

6   Netherlands.   Mr. Eschauzier's role at Maxim concluded as "Director, IC Design."

7          5.      On information and belief, Counterclaim Defendant Nico Van Rijn is citizen of

8   The Netherlands and a former Maxim employee who served as the "Principal Member of

9   Technical Staff" of Maxim's design center in Delft, The Netherlands.  Mr. Van Rijn's

10   employment at Maxim concluded as "Senior Principal MTS, IC Design."

## JURISDICTION AND VENUE

12          6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §

13   1332 in that there is complete diversity among the parties and the amount in controversy exceeds

14   $75,000, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15          7.      Venue in the United States District Court, for the Northern District of California is

16   proper under 28 U.S.C. § 1391(a) because the counterclaims arise within this District and the

17   Counterclaimants have a place of business within the District.

## FACTUAL ALLEGATIONS

19   **A.     The Relationship Between Maxim Integrated and the Inventors Led to
             Improper Royalty Payments to Inventors**

20

21          8.      ADI is a global semiconductor company, specializing in innovative analog, digital,

22   and software solutions.

23          9.      Maxim is also in the semiconductor industry. Maxim is a worldwide leader in the

24   design, development, and manufacture of linear and mixed-signal integration circuits.  On August

25   26, 2021, Maxim was acquired by ADI and became a wholly-owned subsidiary of ADI.

26          10.     On or around July 20, 2007, Maxim entered into a License Agreement with the

27   Inventors (the "License Agreement" or "Agreement").  A true and correct copy of the License

28   Agreement is attached hereto as Exhibit 1 and is incorporated in full herein.  Under the License

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  Agreement, the Inventors were to "use their experience and personal skills to develop certain

2  Know-How relating to Amplifier Design Technology."

3       11.    As part of the License Agreement, Maxim confirmed that a "certain portion of a

4  design center that Maxim is planning to establish in Delft, The Netherlands, would be dedicated

5  to designing stand-alone amplifiers and defined by local product definers in Delft.

6       12.    On or around September 3, 2007, the Inventors entered into employment with

7  Maxim.

8       13.    Mr. Eschauzier was employed as the "Design Director and Director of

9  Engineering" of Maxim's design center in Delft, The Netherlands.  Mr. Van Rijn was employed

10  as the "Principal Member of Technical Staff" also at Maxim's design center in Delft.

11       14.    Mr. Eschauzier's LinkedIn profile described that he "co-founded Maxim's

12  development center in The Netherlands."  Specifically, Mr. Eschauzier described that in "2007 he

13  started Maxim Integrated's Delft site for Sensor Interfacing and Signal Conditioning products."

14       15.    Mr. Van Rijn also described that in "2007 he started the Maxim Integrated design

15  center in Delft for high precision signal chain products where worked through 2015."

16       16.    Mr. Eschauzier and Mr. Van Rijn's job descriptions stated that they were

17  "responsible for the definition, design and development of integrated circuit products for

18  Maxim's MulitMedia Business Unit.  These products include high performance operational

19  amplifiers, instrumentation amplifiers, comparators, video products and audio products."

20       17.    Thus, the Inventors work included developing Amplifier Design Technology[1]

21  within the Netherlands-based development center Maxim established in connection with the

22  License Agreement and the employment of Inventors.  The Inventors controlled development of

23  the Amplifier Design Technology and also the development of amplifier products referred to as

24  "Stand-Alone Amplifiers".  The Inventors had actual and detailed knowledge of the abilities and

25  specifications of each of the Stand-Alone Amplifiers developed within Maxim's Netherlands-

26  based development center.

27  
---
[1] Amplifier Design Technology as defined in the License Agreement means "the technology on

28  amplifier design, which may be developed after the date of entering into this License
   Agreement."

Answer to Complaint With Counterclaims;
                                                    Demand for Jury Trial
                                                    Case No. 5:24-CV-02435

ROPERS
MAJESKI
A Professional Corporation
San Jose

**B.** **The License Agreement Between Maxim and the Inventors Required Inventors to Develop and Deliver Amplifiers that Met Specifications to Qualify for Royalties**

18. The License Agreement ███████████████████████████████████████

███████████████████████████ The License Agreement terms allowed Maxim to

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████

19. Under Section 2.7 of the License Agreement, Counterclaim Defendants would be

entitled to Royalty payments only if █████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ This was essential to █████████████████████████████

████████████████████████████████████████████████████

20. ██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████

21. ██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████

22. Additionally, Section 3.3 specified that the Stand-Alone Amplifiers designed by

the Inventors in Delft, The Netherlands, would be subject to Maxim's decision ████████

████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ████████████████████████████████████

4    23.    In short, all Royalty payments under the License Agreement are expressly

5 conditioned on the Counterclaim Defendants' Patents creating ████████████████████

6 ██████████████ by enabling products within product families that meet the explicit

7 specification requirements described in the License Agreement, specifically Annex 1.

8    24.    To date, Maxim has never received a license to Amplifier Design Patents or other

9 Amplifier Design Technology from Crossclaim Defendants that would allow it to create products

10 and technology that meet the requirements under Annex 1.  In order to create such products that

11 meet the requirements under Annex 1, further development of technology would be required.

12 Despite the fact that Counterclaim Defendants' Patents does not deliver the full technology

13 required the specifications in the License Agreement, Counterclaim Defendants have and

14 continue to request Royalty payments.

15    **C.    The Inventors Develop Amplifier Design Patents But Fail To Enable Products**
16    **that Meet the License Agreements' Required Specifications**

17    25.    As a result of the work Inventors performed as employees of Maxim, Inventors

18 obtained multiple patents related to the Amplifier Design Technology, the Amplifier Design

19 Patents.

20    26.    On information and belief, in or around February 2009, the Inventors transferred

21 their rights and obligations under the License Agreement to Number 14, an entity that the

22 Inventors wholly owned and controlled.  While Section 10.1 of the License Agreement permitted

23 the Inventors a limited ability to transfer rights under the License Agreement to a wholly-owned

24 entity, no separate license agreement between Maxim and Number 14 was ever created.

25    27.    In or around 2009, Counterclaim Defendants represented to Maxim that they had

26 completed the Amplifier Design Patents which would enable products within product families

27 that meet the explicit specification requirements described in the License Agreement, specifically

28 Annex 1 and ██████████████████████████████████████████████

ROPERS
MAJESKI
A Professional Corporation
San Jose

1   ████████████████████████████

2       28.      Relying on Counterclaim Defendants' representations, Maxim paid Counterclaim

3   Defendants ████████████████████████████

4       29.      Inventors developed or assisted with the development of numerous Stand-Alone

5   Amplifiers.  Beginning in or around 2010, Inventors made representations to Maxim that they had

6   developed Stand-Alone Amplifiers utilizing Amplifier Design Patents sufficient to receive

7   Royalties under the License Agreement.

8       30.      In 2010, relying on Counterclaim Defendants' representations, Maxim commenced

9   paying the Royalty payments described in the License Agreement and has continued paying

10  Royalty payments to the Counterclaim Defendants until the present.

11      31.      Despite the representations made by Inventors that they developed royalty-bearing

12  Stand-Alone Amplifiers, the Inventors did not and have not created the Amplifier Design

13  Technology and Amplifier Design Patents sufficient to create products that meet the specification

14  standards set for in the License Agreement upon which Royalties are conditioned.  As detailed

15  above, payment of Royalties is conditioned upon the Counterclaim Defendants' Patents creating

16  ████████████████████████████ by enabling Stand-Alone Amplifiers

17  that meet the explicit specification requirements described in the License Agreement, specifically

18  Annex 1. ████████████████████████████████████████

19  ████████████████   These specifications set the bar that Maxim and the Inventors agreed

20  would need to be met for Royalty payments to be made.

21      32.      In sum, while still employees of Maxim, Inventors misrepresented to Maxim that

22  they were entitled to receive Royalty payments under the License Agreement for Stand-Alone

23  Amplifiers while they were aware that the Stand-Alone Amplifiers did not meet the specification

24  standards set for in the License Agreement upon which Royalties are conditioned.

25      33.      In reliance on the representations by the Inventors as Maxim employees, Maxim

26  commenced paying Royalties on all Stand-Alone Amplifier products identified as royalty-bearing

27  by Inventors, which Royalty payments have continued through the present.

28      34.      On or around May 31, 2015, the Inventors terminated their relationship with

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    Maxim via Settlement Agreement documents.

2         35.    Even after the termination of their employment with Maxim, the Inventors, and

3    specifically Mr. Eschauzier, has remained in contact with Maxim and ADI employees.  Even as

4    Inventors have continued working with Maxim and ADI, Inventors never identified the ways in

5    which the Stand-Alone Amplifier products did not meet the specification requirements in the

6    License Agreement to qualify for Royalty payments.  Rather, Inventors continued to allow

7    Counterclaimants to believe the Stand-Alone Amplifier products met the specification

8    requirements in order to continue receiving Royalty payments to which they were not entitled.

9         36.    Moreover, on multiple occasions, Inventors have identified additional Stand-Alone

10   Amplifiers as royalty-bearing products, thereby representing that such products meet the

11   specifications required in the License Agreement.

12        37.    One such demand to expand the scope of royalty-bearing products occurred in

13   2018.  On March 16, 2018, Mr. Eschauzier, on behalf of Counterclaim Defendants, contacted

14   Maxim and stated ███████████████████████████████████████  Mr.

15   Eschauzier failed to disclose that ██████████████████████ met the express

16   specifications in Annex 1.  As stated in the License Agreement, failure to meet the express

17   specifications in Annex 1 confirmed that Counterclaim Defendants had not developed or

18   delivered Amplifier Design Patents sufficient to give █████████████████████

19   ████████████████████████████████████████████████████

20   ██████████████████████████

21        38.    Counterclaim Defendants repeated the demand to expand the scope of royalty-

22   bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf of

23   Counterclaim Defendants, contacted Maxim and stated ███████████████████████

24   █████████████████████  Maxim inquired how Counterclaim Defendants' team

25   arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that ████

26   ████████████████████ met the express specifications in Annex 1.  As stated in the License

27   Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

28   Defendants had not developed or delivered Amplifier Design Patents sufficient to give

ROPERS MAJESKI
A Professional Corporation
San Jose

1

2

3      39.    Inventors have repeatedly misrepresented to Maxim that they were entitled to

4  receive Royalty payments under the License Agreement for Stand-Alone Amplifiers while they

5  were aware that the Stand-Alone Amplifiers did not meet the specification standards set for in the

6  License Agreement upon which Royalties are conditioned.

7      40.    Because all identified Stand-Alone Amplifiers fail to meet the specification

8  requirements of the License Agreement, Counterclaim Defendants have never been entitled to any

9  Royalty payments under the License Agreement.  Counterclaim Defendants had actual knowledge

10 of this shortcoming at all times.  Still, Counterclaim Defendants demanded Royalty payments and

11 Maxim has paid Counterclaim Defendants over ▉▉▉▉▉ pursuant to the License Agreement.

12     41.    Counterclaim Defendants breached the License Agreement by identifying products

13 that supposedly met the specifications under the License Agreement to entitle them to Royalty

14 payments.  Through these representations, Counterclaim Defendants elicited improper Royalty

15 payments from Maxim and ADI.  Further, Counterclaim Defendants accepted the Royalty

16 payments despite knowing their Design Patents did not improve or provide Maxim and ADI's

17 products with the significant economic value and benefit listed in Annex 1.

18     42.    Counterclaim Defendants breached Section 2.7's provision regarding Royalty

19 payment eligibility, which contained the spirit of the Agreement.

20     43.    Counterclaim Defendants' Patents licensed to ADI and Maxim did not achieve

21 these specifications or provide products with a significant economic value or add demonstrable

22 benefit.

23     44.    Counterclaim Defendants explicitly agreed to the specifications and metrics in

24 Annex 1 that explained how technology covered by the Amplifier Design Patents would be

25 eligible for Royalty payments.

26     45.    As former Maxim employees, the Inventors were hired and later entrusted in the

27 License Agreement to develop Maxim and ADI with technology and Patents that would improve

28 its products.  Instead of delivering on their promise, the Inventors now seek continued payment

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   for licensed Patents that did not meet Royalty payment conditions.

2       46.      By willfully taking and refusing to alert ADI and Maxim of the fact that its Patents

3   did not satisfy the agreed upon specifications, Counterclaim Defendants are liable for breach of

4   the License Agreement and a responsible for the damages Counterclaimants' incurred.  Moreover,

5   Counterclaimants deny that Counterclaim Defendants were damaged in any sum, or at all,

6   through any act or omission by Counterclaimants.

7       **D.      Counterclaim Defendants Incorrectly Dispute Maxim's Calculation of
            Royalty Payments Under the Plain Language of the License Agreement.**

8

9       47.      While Royalties were never earned by Counterclaim Defendants as alleged above,

10  at all times Maxim has provided Counterclaim Defendants with Royalty payments as described in

11  the License Agreement since 2011.[2]

12      48.

13

14

15

16

17

18

19

20

21

22

23

24      49.

25

26

27

28  _____

[2] While discussing the payments that have been made to Counterclaim Defendants as though
Royalties under the License Agreement, Counterclaimants maintain their dispute that any
Royalties have ever been earned by Counterclaim Defendants under the License Agreement.

1 ████████████████████████████████████████████

2 █████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 █████████

5      50. ████████████████████████████████████

6 █████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 █████████████████

9      51.     If a corporation's stock is publicly traded, its financial statements must follow rules

10 established by the U.S. Securities and Exchange Commission (SEC).  The SEC requires that

11 publicly traded companies in the U.S. regularly ████████████████████████████████

12 ████████████████████████████████████████████████████

13 ██████████████████████████████████ Generally, a parent

14 company and its subsidiaries will use the same financial accounting framework for preparing both

15 separate and consolidated financial statements.

16      52.     At all times, Maxim has paid the Royalty described in in the License Agreement █

17 ██████████████████████████████████████ As part of its

18 payment of Royalties, ████████████████████████████████████████

19 ███████████████████████████████████████████████

20 ████████████████████████████████████

21      53.     In August 2021, ADI completed an acquisition of Maxim, with Maxim becoming

22 ADI's wholly-owned subsidiary.  As part of this corporate transition, Maxim conformed its

23 former accounting practices to ADI's accounting procedure.  Both before and after the

24 harmonizing of Maxim's accounting system to ADI's accounting system, Maxim has

25 continuously employed █████████████████████ At all times, Maxim has

26 calculated Royalties under the License Agreement using a ██████████████████████

27      54.     As a result of the adjustment of Maxim's accounting system, ████████████

28 █████████████ under the License Agreement adjusted accordingly.  As alleged in Number

ROPERS
MAJESKI
A Professional Corporation
San Jose

1   14's Complaint, Counterclaim Defendants have asserted in writing that Maxim's post-transition,

2   ███████████████████████████ under the License Agreement was a breach of the License

3   Agreement.

4        55.    Counterclaimants dispute both that Counterclaim Defendants are entitled to any

5   Royalty under the License Agreement and furthermore that if any Royalty is owed to

6   Counterclaim Defendants, Maxim's post-transition, ██████████████████████ under

7   the License Agreement is consistent with the plain language of the License Agreement and has

8   not breached the License Agreement in the past and will not breach the License Agreement with

9   future Royalty payments.

10        56.    Counterclaimants are entitled to a declaration from this Court resolving the dispute

11   confirming that (1) Counterclaim Defendants are not entitled to any Royalty under the License

12   Agreement or (2) if Counterclaim Defendants are entitled to a Royalty, that Maxim's post-

13   transition, ████████████████████ under the License Agreement is consistent with

14   the plain language of the License Agreement and has not breached the License Agreement in the

15   past and will not breach the License Agreement with future Royalty payments.

16   **FIRST COUNTERCLAIM**

17   **(Breach of Contract against Counterclaim Defendants)**

18        57.    Counterclaimants incorporate by this reference the allegations of paragraph 1 to

19   56, inclusive, as though fully set forth herein.

20        58.    On July 20, 2007, Maxim entered into the License Agreement with Inventors. On

21   information and belief, the Inventors transferred all rights in the License Agreement to Number

22   14 in February 2009.  On information and belief, the inventors assigned certain Amplifier Design

23   Patents to Number 14 and have caused Number 14 to seek Royalty payments pursuant to the

24   License Agreement from Maxim related to said Amplifier Design Patents.

25        59.    Maxim has performed all of their obligations under the License Agreement.

26        60.    Counterclaim Defendants breached the License Agreement by demanding and

27   accepting Royalty payments under the License Agreement since 2010 to the time of the dispute

28   despite knowing the Amplifier Design Patents did not enable the production of Stand-Alone

ROPERS
MAJESKI

A Professional Corporation
San Jose

Amplifiers that meet the specification requirements provided in Annex 1 of the License

Agreement upon which all Royalty payments are conditioned. (Exhibit 1).

61. As a consequence of the breach, Counterclaim Defendants retained Royalty

payments that they were not eligible for and have caused Maxim to suffer and continue to suffer

damages and losses. Maxim has sustained damages that include and are not limited to the loss of

its payments from 2010 to present day for products utilizing the Amplifier Design Patents that did

not meet agreed upon specifications. Maxim seeks damages from Counterclaim Defendants'

breaches occurring within the applicable statute of limitations period for a written contract, 4

years.

## SECOND COUNTERCLAIM

### (Breach of the Covenant of Good Faith and Fair Dealing)

62. Counterclaimants incorporate by this reference the allegations of paragraph 1 to

61, inclusive, as though fully set forth herein.

63. As stated above, Maxim entered into a valid contract through the License

Agreement with the Inventors. On information and belief, the Inventors transferred all rights in

the License Agreement to Number 14 in February 2009. While Section 10.1 of the License

Agreement permitted the Inventors a limited ability to transfer rights under the License

Agreement to a wholly-owned entity, no separate license agreement between Maxim and Number

14 was ever created.

64. In every contract or agreement, there is an implied promise of good faith and fair

dealing and that neither party will do anything which will injure the right of the other to receive

the benefits of the agreement. (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654,

658.)

65. Counterclaimants have performed their obligations under the License Agreement,

and have even attempted performance by making Royalty payments to Counterclaim Defendants

even when Counterclaim Defendants had not yet performed sufficient to justify receiving Royalty

payments.

66. Counterclaim Defendants have breached the duty of good faith and fair dealing in

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    the License Agreement by representing to Maxim and ADI that various Stand Alone Amplifiers

2    were royalty-bearing under the License Agreement while knowing that said Stand Alone

3    Amplifiers did not satisfy the specifications in Annex 1.

4         67.    Counterclaim Defendants, through Rudy Eschauzier, also made misrepresentations

5    to Maxim.  On information and belief, Number 14 and Mr. Van Rijn were aware of

6    Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these

7    misrepresentations.

8         68.    For example, Counterclaim Defendants inquired about their 2023 Royalty

9    payments in emails asking "Do you know what the status is for this year's royalty payment" thus

10   implying Counterclaim Defendants had met the requirements in the License Agreement to be

11   entitled to Royalties.

12        69.    Additionally, Counterclaim Defendants Misrepresented to Maxim the scope of

13   royalty-bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf

14   of Counterclaim Defendants, contacted Maxim and stated ███████████████████████

15   ██████████████████████  Maxim inquired how Counterclaim Defendants' team

16   arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that ██████

17   █████████████████  met the express specifications in Annex 1.  As stated in the License

18   Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

19   Defendants had not developed or delivered Amplifier Design Patents sufficient to give

20   ████████████████████████████████████████████████████████

21   ██████████████████████████████████

22        70.    Upon information and belief, Counterclaim Defendants willfully demanded and

23   kept Maxim's Royalty payments for over a decade when they were not entitled or eligible to

24   receive the Royalty.  This allowed Counterclaim Defendants to receive the benefits of the

25   agreement while harming Maxim by not conferring the promised benefit of their Patents to

26   Maxim.

27        71.    As a consequence, Maxim suffered decades of damage by placing their good faith

28   reliance in Counterclaim Defendants and were provided with silence regarding its non-eligible

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   Patented products.

2        72.      Maxim seeks damages from Counterclaim Defendants' breaches occurring within

3   the applicable statute of limitations period for a written contract, 4 years.

4                              **FOURTH COUNTERCLAIM**

5                            **(Intentional Misrepresentation)**

6        73.      Counterclaimants incorporate by this reference the allegations of paragraph 1 to

7   72, inclusive, as though fully set forth herein.

8        74.      On information and belief, Number 14 and Mr. Van Rijn were aware of

9   Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these

10  misrepresentations.  As co-owners of Number 14, Mr. Eschauzier and Mr. Van Rijn's actions are

11  imputed to Number 14.

12       75.      Counterclaim Defendants falsely represented to ADI and Maxim on multiple

13  occasions from 2010 to present.  Counterclaimants bring this cause of action specifically on those

14  representations within the applicable statute of limitations period including statements in 2023

15  and 2024.  Counterclaim Defendants falsely represented that they were entitled to Royalty

16  payments because their Patents and subsequent Amplifier products created from the Patents

17  satisfied the License Agreement terms and specifications in Annex 1.

18       76.      For example, Counterclaim Defendants inquired about their 2023 Royalty

19  payments in emails asking "Do you know what the status is for this year's royalty payment" thus

20  implying Counterclaim Defendants had met the requirements in the License Agreement to be

21  entitled to Royalties.

22       77.      Additionally, Counterclaim Defendants misrepresented to Maxim the scope of

23  royalty-bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf

24  of Counterclaim Defendants, contacted Maxim and stated ███████████████████

25  ████████████████████████ Maxim inquired how Counterclaim Defendants' team

26  arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that ████

27  ████████████████ met the express specifications in Annex 1.  As stated in the License

28  Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

1   Defendants had not developed or delivered Amplifier Design Patents sufficient to give

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████

4          78.    Counterclaim Defendants' misrepresentations are material facts and omissions that

5   the products that utilized their Patents satisfied the requirements in the License Agreement and

6   Annex 1's specifications.

7          79.    Counterclaim Defendants knew their representations to Maxim and ADI were false

8   or made recklessly and without regard for their truth.

9          80.    Counterclaim Defendants intended ADI and Maxim to rely on their

10  misrepresentations and omissions to continue providing them with Royalty payments.

11         81.    In fact, the Inventors' prior employment relationship and License Agreement with

12  ADI and Maxim specified that they would be working and engineering developments in

13  Amplifier Design technology.  Therefore, the Inventors' ability to receive Royalty payments was

14  premised on their Patents enabling products to meet requirements in the License Agreement.

15         82.    ADI and Maxim's reliance on Counterclaim Defendants was reasonable and

16  justified because the Inventors were former Maxim employees and there was a good faith belief

17  that after the transfer, the Inventors and Counterclaim Defendant would honor the terms of the

18  License Agreement.

19         83.    Counterclaim Defendants' representations to ADI and Maxim were false and they

20  were not entitled to Royalty Payments.  Counterclaim Defendants' knew that the products that

21  utilized their Patents did not meet the specifications in Annex 1 and continued to request and

22  accept Royalty payments.

23         84.    Counterclaim Defendants intended for ADI and Maxim to rely on the

24  misrepresentations.

25         85.    ADI and Maxim were harmed in an amount to be proven at trial, which is

26  reasonably expected to exceed millions of dollars.

27         86.    ADI and Maxim's reliance on Counterclaim Defendants' representations was a

28  substantial factor in their damages.

ROPERS
MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

**FIFTH COUNTERCLAIM**

**(Negligent Misrepresentation)**

87.     Counterclaimants incorporate by this reference the allegations of paragraph 1 to 86, inclusive, as though fully set forth herein.

88.     As set forth above, Maxim has a valid License Agreement with Counterclaim Defendant.

89.     Counterclaim Defendants falsely represented to ADI and Maxim on multiple occasions from 2010 to present.  Counterclaimants bring this cause of action specifically on those representations within the applicable statute of limitations period including statements in 2023 and 2024.  Counterclaim Defendants falsely represented that they were entitled to Royalty payments because their Patents and subsequent Amplifier products created from the Patents satisfied the License Agreement terms and specifications in Annex 1.

90.     For example, Counterclaim Defendants inquired about their 2023 Royalty payments in emails asking "Do you know what the status is for this year's royalty payment" thus implying Counterclaim Defendants had met the requirements in the License Agreement to be entitled to Royalties.

91.     Additionally, Counterclaim Defendants misrepresented to Maxim the scope of royalty-bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf of Counterclaim Defendants, contacted Maxim and stated ████████████████████ ████████████████████ Maxim inquired how Counterclaim Defendants' team arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that ████ ████████████████ met the express specifications in Annex 1.  As stated in the License Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim Defendants had not developed or delivered Amplifier Design Patents sufficient to give ████████████████████████████████████████████ ████████████████████████████

92.     On information and belief, Number 14 and Mr. Van Rijn were aware of Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these

misrepresentations.  As co-owners of Number 14, Mr. Eschauzier and Mr. Van Rijn's actions are imputed to Number 14.

93.    Counterclaim Defendants' representations were untrue because their silence and continued acceptance of Royalties implied the products identified by Counterclaim Defendants met the specifications and requirements in the License Agreement to justify Royalty payments.

94.    The representations that Counterclaim Defendants made were material to ADI and Maxim because they continued to issue Royalty payments.

95.    Regardless of what Counterclaim Defendants actually believed, they had no reasonable grounds to believe the representations they made were true.

96.    Maxim and ADI did not know that the representations were untrue.

97.    On information and belief, Counterclaim Defendants intended ADI and Maxim to act on their misrepresentations and omissions by requesting and accepting Royalties.

98.    Maxim and ADI's reliance on Counterclaim Defendants' representations were justifiable because they trusted Counterclaim Defendants' Patents and advice throughout the years, as former Maxim employees and parties to the License Agreement.

99.    Maxim and ADI relied on the misrepresentations by continuing to send Royalty payments to Counterclaim Defendants until December 2023.

100.    As a result, Counterclaim Defendants misrepresentations and omissions were a substantial factor in causing Maxim and ADI to suffer suffered damages.

## SIXTH COUNTERCLAIM

### (Fraud/Constructive Fraud by Omission)

101.    Counterclaimants incorporate by this reference the allegations of paragraph 1 to 100, inclusive, as though fully set forth herein.

102.    On information and belief, Number 14 and Mr. Van Rijn were aware of Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these misrepresentations.  As co-owners of Number 14, Mr. Eschauzier and Mr. Van Rijn's actions are imputed to Number 14.

103.    Counterclaim Defendants intentionally concealed or suppressed the fact

1   that the products they identified as royalty-bearing under the License Agreement did not meet it

2   required specifications with the intent to defraud ADI and Maxim.

3        104.     A duty to disclose material facts known to one party arises when there is

4   *some relationship* between the parties, such as a fiduciary or confidential relationship creates a

5   duty to disclose known, material facts.  (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th

6   793, 826 [emphasis added].)  This relationship may be created "as a result of some sort of

7   transaction between the parties" such as employer and prospective employee, or "parties entering

8   into any kind of contractual agreement."  (*Id.*)

9        105.     As parties to the License Agreement, the Inventors had a duty to disclose

10  the fact that their Patents and products did not meet the specifications in the License Agreement,

11  specifically, Annex 1.  The License Agreement between the Inventors and Maxim/ADI formed a

12  transactional relationship between the parties and subjects the parties to the duties of a

13  confidential relationship.

14       106.     The Inventors also had a duty to disclose material facts through their

15  employment period with Maxim.  The Inventors' positions with Maxim as a "Design Director and

16  Director of Engineering" and a "Principal Member of Technical Staff" begets a duty to disclose.

17  Additionally, on information and belief, their roles in co-founding and starting  Maxim's

18  development center in Delft created a confidential relationship that give the Inventors a duty to

19  disclose material facts to Maxim.

20       107.     For example, Counterclaim Defendants inquired about their 2023 Royalty

21  payments in emails asking "Do you know what the status is for this year's royalty payment" thus

22  implying Counterclaim Defendants had met the requirements in the License Agreement to be

23  entitled to Royalties.

24       108.     Counterclaim Defendants misrepresented to Maxim the scope of royalty-

25  bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf of

26  Counterclaim Defendants, contacted Maxim and stated ███████████████████████

27  ███████████████████ Maxim inquired how Counterclaim Defendants' team

28  arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that ████

ROPERS
MAJESKI

A Professional Corporation
San Jose

█████████████████████ met the express specifications in Annex 1.  As stated in the License

Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

Defendants had not developed or delivered Amplifier Design Patents sufficient to give

███████████████████████████████████████████████████████████

███████████████████████████████████

109.    It has now come to light that the Inventors were not entitled to Royalty

payments since 2010.

110.    ADI and Maxim were unaware of the concealed and suppressed fact

because of Counterclaim Defendant's failure to disclose.

111.    However, even if ADI and Maxim voluntarily made Royalty payments

from 2007 to 2023, the Counterclaim Defendants' continued communications with Maxim and

ADI showed that they made representations that they were entitled to Royalties recklessly and

without regard for the truth.  The Counterclaim Defendants should have truthfully represented to

Maxim and ADI that the Amplifier Design Patents were not creating or enabling products to meet

Annex 1's specifications.

112.    Rather, the Counterclaim Defendants' continued involvement with ADI

and Maxim intentionally concealed and suppressed the fact that their Patents and subsequent

products failed to meet the requirements in the License Agreement and specifications in Annex 1.

113.    Maxim and ADI relied on the Counterclaim Defendants'

misrepresentations.

114.    As a direct and proximate result, Maxim and ADI sustained damages

including but not limited to compensatory damages for making Royalty payments for inadequate

and unsatisfactory products, attorneys' fees and costs, diminished product value, punitive

damages, and additional permissible and compensable damages as sought herein, and in an

amount to be determined at trial.

### SEVENTH COUNTERCLAIM

### (Detrimental Reliance)

115.    Counterclaimants incorporate by this reference the allegations of paragraph

ROPERS
M A J E S K I

A Professional Corporation
San Jose

1    1 to 114, inclusive, as though fully set forth herein.

2          116.      The Royalty provisions in the License Agreement encapsulate a promise by

3    Maxim to pay Mr. Eschauzier and Mr. Van Rijn for the use of the Amplifier Design Patents that

4    allowed Maxim's products to meet certain specifications or increased value.

5          117.      Upon information and belief, Counterclaim Defendants misrepresented

6    their Amplifier Design Patents as being able to satisfy the expectations and specifications in

7    Annex 1.

8          118.      Upon information and belief, Counterclaim Defendants intended to induce

9    ADI and Maxim's reliance on their identification of royalty-bearing products so that ADI and

10    Maxim would continue to issue Royalties to Counterclaim Defendants.  By making

11    representations that they were entitled to Royalty payments,  Counterclaim Defendants created an

12    implied promise that the products identified as royalty-bearing met the specifications listed in

13    Annex 1. Counterclaim Defendants intentionally failed to disclose the fact that the products

14    identified as royalty-bearing did not meet the specifications listed in Annex 1.

15          119.      ADI and Maxim reasonably relied on Counterclaim Defendants'

16    misrepresentation, omissions, and silence on whether their Patents were able to enable Maxim

17    products to meet the License Agreement's specifications.

18          120.      Nevertheless, Counterclaim Defendants accepted ADI and Maxim's

19    Royalty payments without informing or notifying ADI and Maxim that the Patents did not meet

20    the Royalty eligibility requirements.

21          121.      ADI and Maxim would not have issued Royalties to Counterclaim

22    Defendants without their misrepresentations.  Thus, Counterclaim Defendants must disgorge their

23    accepted Royalty payments issued based on Counterclaimants' detrimental reliance.

24                                 **EIGHTH COUNTERCLAIM**

25                                    **(Declaratory Relief)**

26          122.      Counterclaimants incorporate by this reference the allegations of paragraph

27    1 to 121, inclusive, as though fully set forth herein.

28          123.      Counterclaimants seek a court declaration that they will not need to make

ROPERS MAJESKI

A Professional Corporation

San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    current and future Royalty payments to Counterclaim Defendants until Counterclaim Defendants

2    enable products to meet the specifications listed in the License Agreement and Annex 1.

3            124.     ████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7            125.     The terms of the License Agreement make clear that Royalty payment is

8    conditioned upon Counterclaim Defendants' enabling of products meeting the specifications in

9    the License Agreement, specifically Annex 1.  Without satisfying the requirements in Annex 1,

10   Counterclaim Defendants are not entitled to Royalties.

11           126.     Counterclaimants have an actual controversy with Counterclaim

12   Defendants regarding the payment of Royalties based on the terms of the License Agreement and

13   Counterclaim Defendants' misrepresentations regarding their entitlement to Royalties.

14                          **NINTH COUNTERCLAIM**

15                   **(Declaratory Relief – Annex 1 Specifications)**

16           127.     Counterclaimants incorporate by this reference the allegations of paragraph

17   1 to 126, inclusive, as though fully set forth herein.

18           128.     Counterclaimants seek a court declaration that satisfying and meeting the

19   specifications in Annex 1 is only one of the requirements to obtain Royalty payments.

20           129.     ████████████████████████████████████████

21   ███████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   █████████████████████████

27           130.     Counterclaimants have an actual controversy with Counterclaim

28   Defendants about the payment of Royalties based on License Agreement interpretation and

1  whether a Royalty payment is only owed when an alleged royalty-bearing product meets the

2  License Agreement specifications.

3  **TENTH COUNTERCLAIM**

4  **(Declaratory Relief – Royalty Calculation)**

5  131.      Counterclaimants incorporate by this reference the allegations of paragraph

6  1 to 130, inclusive, as though fully set forth herein.

7  132.      ████████████████████████████████████

8  █████████████████████████████████████████████████████████

9  █████████

10  133.      As a result of the adjustment of Maxim's accounting system after its

11  acquisition by ADI, ████████████████████████████ under the License Agreement also

12  changed. As alleged in Number 14's Complaint, Counterclaim Defendants have asserted in

13  writing that Maxim's post-transition, ████████████████████ under the License

14  Agreement was a breach of the License Agreement.

15  134.      An actual controversy exists as Counterclaimants dispute Counterclaim

16  Defendants' allegations because Maxim's post-transition, ███████████████████

17  under the License Agreement is consistent with the plain language of the License Agreement, is

18  not a breach of the License Agreement and will not breach the License Agreement with future

19  Royalty payments.

20  135.      Counterclaimants are entitled to a declaration from this Court resolving the

21  parties' dispute confirming that if any Royalty is owed under the License Agreement, Maxim's

22  post-transition, ████████████████████ under the License Agreement is consistent

23  with the plain language of the License Agreement and has not breached the License Agreement in

24  the past and will not breach the License Agreement with future Royalty payments.

25  **ELEVENTH COUNTERCLAIM**

26  **(Open Book Account - Cal. Code Civ. Proc., § 425.30)**

27  136.      Counterclaimants incorporate by this reference the allegations of paragraph

28  1 to 135, inclusive, as though fully set forth herein.

ROPERS
MAJESKI
A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

137.     Since the License Agreement began to run starting on July 20, 2007, the Inventors and later Number 14 became indebted on an open book account to Maxim and ADI for Royalty payments that were demanded, accepted, and retained despite their Amplifier Design Patents not enabling amplifier products that meet the specifications provided in Annex 1 or conferring a conceptual and economic value to the final product.

138.     Counterclaim Defendants have not disgorged these Royalties and they are due and owing to ADI and Maxim since the first payments in 2010.

139.     Within the past two years, Counterclaim Defendants' failure to satisfy the specifications provided in Section 1.1, 2.7, 3.1, 3.2, and Annex 1, has created an open book account, that is currently due, owing, and unpaid to Maxim in the sum of at least $1 million for money had and received.  No part of such sum has been delivered to Maxim.  It is now due and owing and Maxim is entitled to damages according to proof.

## TWELFTH COUNTERCLAIM

### (Money Had and Received)

140.     Counterclaimants incorporate by this reference the allegations of paragraph 1 to 139, inclusive, as though fully set forth herein.

141.     Maxim is required to issue Royalties to Mr. Eschauzier and Mr. Van Rijn only in compliance with the License Agreement for the use of Mr. Eschauzier and Mr. Van Rijn's Amplifier Design Patents that enable products satisfying the specifications in Annex 1 and add conceptual and economic value in the market.

142.     The Royalties sent to Counterclaim Defendants were part of the License Agreement provisions that allowed ADI and Maxim to benefit from licensing Counterclaim Defendants' Patents.

143.     However, as stated above, the Patents licensed and products identified did not meet the specification requirements in Annex 1.  In short, the Patents did not add conceptual and economic value in the market to Maxim's products and no Royalty has been earned.

144.     Nonetheless, Counterclaim Defendants continued to accept ADI and Maxim's Royalty payments without informing or notifying ADI and Maxim that the Patents did

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    not meet the required Royalty payment eligibility.

2        145.    Within the past two years, Counterclaim Defendants became, ever since

3    have been, and now are indebted to Maxim in the sum of at least $1 million for money had and

4    received.  No part of such sum has been delivered to Maxim.  It is now due and owing and

5    Maxim is entitled to damages according to proof.

6                    **THIRTEENTH COUNTERCLAIM**

7                    **(Unjust Enrichment against Defendants)**

8        146.    Counterclaimants incorporate by this reference the allegations of paragraph

9    1 to 145, inclusive, as though fully set forth herein.

10        147.    Counterclaim Defendants received Royalty payments that ADI and Maxim

11    sent based on the provisions in the License Agreement.

12        148.    Upon information and belief, Counterclaim Defendants benefited from the

13    Royalties and have failed to notify or inform ADI and Maxim that they received Royalties for

14    Maxim's use of Patents that did not enable products that met the specifications and requirements

15    in Annex 1.

16        149.    As a result, under the principles of equity and good conscience,

17    Counterclaim Defendants should not be permitted to retain the money and should be required to

18    return and disgorge the benefits and money it received.

19                    **PRAYER FOR RELIEF**

20        WHEREFORE, Counterclaimants pray for judgment against Counterclaim Defendants as

21    follows:

22        1.    For a declaration of the parties' rights and obligations under the License

23    Agreement, including that:

24            a)    Counterclaim Defendants have never been entitled to any Royalty under

25    the License Agreement, or in the alternative that

26            b)    Counterclaim Defendants are not entitled to any further Royalties under the

27    License Agreement until they deliver Amplifier Design Patents sufficient to create products that

28    meet the specifications of Annex 1 of the License Agreement, or in the alternative that

1       c) if Counterclaim Defendants are entitled to a Royalty, that Maxim's ███

2  ██████████████████████████████████ under the License Agreement is consistent with

3  the plain language of the License Agreement and has not breached the License Agreement in the

4  past and will not breach the License Agreement with future Royalty payments;

5       2.     For compensatory damages in an amount according to proof at trial;

6       3.     For consequential damages in an amount according to proof at trial;

7       4.     For restitution and disgorgement of profits in an amount according to proof at trial;

8       5.     For prejudgment interest at the legal rate on amounts owed by Counterclaim

9  Defendant to Counterclaimants;

10      6.     For cost of suit incurred herein, including reasonable attorney's fees pursuant to

11 contract; and

12      7.     For such other and further relief as the Court may deem just and proper.

13

14 Dated: June 14, 2024                    ROPERS MAJESKI PC

15

16                                  By:  /s/ Kevin W. Isaacson
17                                       MICHAEL J. IOANNOU
                                         KEVIN W. ISAACSON
                                         Attorneys for Defendants and
18                                       Counterclaimants ANALOG DEVICES,
                                         INC. and MAXIM INTEGRATED
19                                       PRODUCTS, INC.

20

21

22

23

24

25

26

27

28

ROPERS
M A J E S K I
A Professional Corporation
San Jose

1

## **DEMAND FOR JURY TRIAL**

2

3       Jury trial is hereby demanded by Defendants and Counterclaimants ANALOG DEVICES,

INC. and MAXIM INTEGRATED PRODUCTS, INC.

4

5   Dated: June 14, 2024                    ROPERS MAJESKI PC

6

7                                           By:  /s/ *Kevin W. Isaacson*
                                                MICHAEL J. IOANNOU
8                                               KEVIN W. ISAACSON
                                                Attorneys for Defendants and
9                                               Counterclaimants ANALOG DEVICES,
                                                INC. and MAXIM INTEGRATED
10                                              PRODUCTS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28