MICHAEL J. IOANNOU (SBN 95208)
KEVIN W. ISAACSON (SBN 281067)
ROPERS MAJESKI PC
333 W. Santa Clara St., Suite 910
San Jose, CA 95113
Telephone: 408.287.6262
Facsimile: 408.918.4501
Email: michael.ioannou@ropers.com
kevin.isaacson@ropers.com

Attorneys for Defendants
ANALOG DEVICES, INC. and
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NUMBER 14 B.V.,

Plaintiff,

v.

ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC.

Defendants.

ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC.,

Counterclaimants,

v.

NUMBER 14 B.V., RUDY ESCHAUZIER, and NICO VAN RIJN,

Counter-Defendants.

Case No.: 5:24-cv-02435 EJD

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' ADMINISTRATIVE MOTION TO FILE PORTIONS OF ANSWER AND COUNTERCLAIMS UNDER SEAL**

ROPERS MAJESKI
A Professional Corporation
San Jose

ANALOG DEVICES, INC. and MAXIM INTEGRATED PRODUCTS, INC. ("ADI/Maxim"), reply to NUMBER 14 B.V.'s "Opposition to [] Administrative Motion to File Portions of Answer and Counterclaims Under Seal", Dkt. No. 33 ("Opp'n to Seal").

**INTRODUCTION**

ADI/Maxim's Administrative Motion to Seal [etc.], Dkt. No. 23, should be granted. Number 14 mischaracterizes ADI/Maxim's Motion to Seal, opposing it with unfounded, conclusory allegations. ADI/Maxim established compelling reasons to seal, supported by facts and clear case law, as public disclosure of information from its confidential License Agreement (the "Agreement") with Rudy Eschauzier and Nico Van Rijn (collectively "Inventors") will cause ADI/Maxim competitive, financial, and business developmental harms. Specifically, the Agreement contains sensitive, non-public information regarding ADI/Maxim's business model, licensing scope, and unique royalty terms, which should be protected from ADI/Maxim's competitors and IP Licensors. Thus, this Court should grant the ADI/Maxim's Motion to Seal.

**ARGUMENT**

**I. ADI AND MAXIM HAVE ESTABLISHED THE FACTUAL BASES OF COMPELLING REASONS TO GRANT THE MOTION TO SEAL**

A motion to seal "must 'articulate compelling reasons supported by specific factual findings,' outweighing the public policy of access and disclosure, including the 'public interest in understanding the judicial process.'" *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted). A court then properly seals records by identifying a compelling reason supported by an articulated factual basis. *Id*. at 1179.

The Ninth Circuit *In re Elec. Arts, Inc*., affirmed the reasoning that the right to inspect and copy judicial records is not absolute, and sources of business information that might harm a litigant's competitive standing should not be disclosed. *Elec. Arts, Inc. v. United States Dist. Court (In re Elec. Arts, Inc.*), 298 F. App'x 568, 569 (9th Cir. 2008)(*citing to Nixon v. Warner Commc'ns*, 435 U.S. 589, 598, 98 S. Ct. 1306, 1312 (1978).) Specifically, "confidential business information in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' satisfies the 'compelling reasons' standard" and allows the terms of a license agreement in complaints to be sealed. *Bunsow De Mory LLP v. N. Forty*



ROPERS MAJESKI A Professional Corporation San Jose

ROPERS MAJESKI A Professional Corporation San Jose

*Consulting LLC,* No. 20-cv-04997-JSC, 2020 U.S. Dist. LEXIS 172818, at *3-6. (N.D. Cal. Sep. 21, 2020)(citations omitted); *In re Qualcomm Litig*., No. 3:17-cv-0108-GPC-MDD, 2017 U.S. Dist. LEXIS 185481, at *9 (S.D. Cal. Nov. 8, 2017) (explaining that "compelling reasons exist to seal . . . pleadings and briefing that concern licensing terms, royalties paid or owed under license agreements"); *see also In re Elec. Arts, Inc.*, 298 F. App'x at 569.

ADI/Maxim established facts confirming compelling reasons to seal portions of the Agreement, including royalty terms and definitions, conditions for royalties, and the scope of the license from the Inventors. (*See* [23] Administrative Motion to File Under Seal ("Motion")). Without citing to supporting or relevant authority[1], Number 14's Opposition demands further specificity from ADI/Maxim. (Opp'n to Seal pp. 1:24-2:3, 3:1-5.) Rather, ADI/Maxim provided factual support to seal portions of their Answer/Counterclaim and the Agreement and explained the specific harms it faces from disclosure to IP Licensors and competitors. (Motion 4:11-5:13; Declaration of Mihai Murgulescu ("Murgulescu Decl.") ¶¶ 9-19.) Therefore, upon the facts establishing ADI/Maxim's compelling reasons, the Court should grant their Motion to Seal.

**A. <u>ADI/Maxim Established Compelling Reasons Contrary to Number 14's Opposition</u>**

ADI/Maxim have established that disclosure of the Agreement's pricing and technical information create great risk of competitive harm. In *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19-cv-04312-BLF, 2020 U.S. Dist. LEXIS 46075, at *2 (N.D. Cal. Mar. 16, 2020), the parties moved to seal an amended complaint and related briefing. Tevra claimed Bayer utilized anticompetitive practices evidenced by price differences between Tevra's and Bayer's products. *Id.* at *7. Although allegations concerning pricing went to the heart of the matter and the public had interest in understanding Tevra's examples of Bayer's anticompetitive practices, the court

---

[1] First, Number 14 cites *Beckman Industries v. International Insurance*, 966 F.2d 470, 473-76 (9th Cir. 1992) out of context as the court decided whether "good cause" was shown to *<u>modify a protective order</u>*. Number 14 also cites *IntegrityMessageBoards.com v. Facebook, Inc*., 2020 U.S. Dist. LEXIS 208510, at *26 (N.D. Cal. Nov. 6, 2020) omitting that Facebook's claims were ruled speculative because they failed to even articulate how disclosure could cause competitive harm.

still sealed portions of the pleading as "the *public does not require access to all the minutia of Bayer's agreements with retailers or to product- or customer-specific price terms*. These kinds of details are unnecessary to the public's understanding of the suit; they also pose a greater risk of competitive harm." *Id.* at *6-8 (emphasis added). Ultimately, the court sealed the "minutia", including the "product- or customer-specific price terms" though price differences were at the heart of the matter as these terms "pose a greater risk of competitive harm." *Id.* at *7-8.

Number 14 misunderstands that ADI/Maxim moved to seal only information from its confidential Agreement, including royalty provisions and technical information never disclosed to the public. The Opposition's focus on ADI/Maxim's publicly-available data sheets ignores the fact that ADI/Maxim does not seek to seal data sheets or information that can be obtained from them as one cannot discern the specifications in the Agreement from publicly-available data sheets. (Murgulescu Decl. ¶¶ 10; *see* Opp'n to Seal, 2:21-3:1; Declaration of Rudy Eschauzier ("Eschauzier Decl."), ¶¶ 5-9.) ADI/Maxim are not seeking to seal public information, but confidential specifications as conditions for royalty payments which courts have regularly sealed.

The redacted portions of the Answer/Counterclaim contain details about the royalties, technical requirements and license scope, and the employment relationship between Maxim and the Inventors. (Motion, 4:11-19; Murgulescu Decl. ¶ 8.) ADI/Maxim has focused its request to seal on the potential irreparable harm suffered if financial and technical details were disclosed and has not provided merely speculative statements. (Motion, 4:16-5:13.) For example, if the details of the Agreement were publicly disclosed, ADI/Maxim could be competitively disadvantaged in future negotiations with IP Licensors or potential employees, who may demand similar royalties, without considering the intricacies of the negotiation and relationship between ADI/Maxim and the Inventors. (Motion, 4:13-5:5; Murgulescu Decl. ¶¶ 9, 13-18.) Additionally, competitors and IP Licensors could glean technical and pricing information to undercut ADI/Maxim's prices and profits. (Motion, 4:27-5:13; Murgulescu Decl. ¶¶ 16-17.) The difficulty to quantify such damages makes them irreparable, but Number 14's argument requiring higher specificity is unfounded. *See, e.g., Nicolosi Distrib., Inc. v. FinishMaster, Inc.,* 2018 U.S. Dist. LEXIS 139266, at *3 (N.D. Cal. Aug. 16, 2018) (finding sealing appropriate where

disclosure "to [a party's] competitors could harm [the party]" without quantifying the harm). ADI/Maxim have narrowly tailored its request to seal to protect sensitive business information, while allowing the public to understand the issues and heart of the case. (See Motion.)

Similarly, Number 14 admits the "license arises from a fairly unique situation in which the initial licensors and inventors of the patented technology. . .entered into the license as a predicate to becoming employees of Maxim." (Opp'n to Seal, 3:10-12.) Contrary to Number 14's argument, the unique nature of the Agreement only heightens the compelling need to seal its content as it would reveal unique information about ADI/Maxim's unique licensing structure, the disclosure of which would disclose new competitive information to ADI/Maxim's competitors and other IP Licensors. (Murgulescu Decl. ¶ 10.) The very real competitive harm ADI/Maxim could suffer from disclosure of this unique information confirms sealing is appropriate here.

**1. ADI/Maxim Do Not Need to Name Competitors or IP Licensors**

Likewise, Number 14 has not identified any authority showing that a request to seal requires naming one's competitors or licensors. (Opp'n to Seal, 3:24-4:7.) In addition, courts have not required a moving party to name specific third-parties who could harm them. *See, e.g., Nicolosi, supra,* 2018 U.S. Dist. LEXIS 139266, at *3. Instead, courts routinely grant motions to seal when disclosure of information to "competitors" *could* cause a party to be harmed in their competitive standing, disclosure would allow competitors insight into the parties' business strategy, or would reveal competitively sensitive information such as product rates or conditions for payment. *Id.* (Finding compelling reasons to seal three contracts containing "proprietary and confidential business information . . . such as product rates and purchase requirements" the disclosure of which "to [a party's] competitors could harm [the party]").

Here, this Court should seal portions of ADI/Maxim's Answer/Counterclaim because they contain sensitive financial information, technical specifications, and confidential business information exclusive to the Inventors . (Murgulescu Decl. ¶¶ 10-18.) Number 14 did not provide any authority to support why ADI/Maxim must name competitors. (*See* Opp'n to Seal, 3:24-4:7.) Thus, ADI/Maxim's Motion to Seal properly states the compelling need to seal portions of its Answer/Counterclaim and its motion to seal should be granted.

ROPERS MAJESKI
A Professional Corporation
San Jose

### B. The Age of a License Agreement Does Not Negate a Motion to Seal

As to the age of an agreement, the Northern District *In re Adobe Systems, Inc. Sec. Litigation*, upheld a protective order for confidential documents and subsequent motions to seal because the royalty rates set forth in the documents, although made one to two years ago, "***are still in effect today***, and their disclosure would seriously compromise Adobe's ability to negotiate individual royalty rate agreements with its various [customers.]" *In re Adobe Sys., Inc. Sec. Litig.*, 141 F.R.D. 155, 162 (N.D. Cal. 1992). Additionally, the court agreed that forward-looking documents can "remain sensitive" even when made years before. *Id.*

Similar to *In re Adobe Systems*, the Agreement that has bound the Inventors and Maxim since 2007 is still in effect today. (Answer and Counterclaim, 15:28-16:8; Murgulescu Decl. ¶¶ 3-4.) Number 14's argument that the terms from 18 years ago hold no relevance today and "does not tell competitors anything about what ADI or its subsidiary Maxim are doing today in technology licensing or would do going forward" undermine Number 14's own efforts to enforce the terms of the Agreement which it claims is still in effect and enforceable. (Opp'n to Seal, 3:24-4:5.) The Agreement is a forward-looking document containing sensitive information regarding ADI/Maxim and the Inventor's business relationship, even after the acquisition. (Motion, 4:13-5:5; Murgulescu Decl. ¶¶ 7-9, 13-15, 18.) Further, the terms remain unchanged. (Motion, 3:3-9; Murgulescu Decl. ¶¶ 3-7.) The Declaration of Consent and Covenants presented by Number 14 contains no assignment, transfer, or language superseding the terms of the Agreement.[2] (*See* Opp'n to Seal, Exhibit A.) Thus, this Court should grant the Motion to Seal based on the facts confirming compelling reasons to seal as the age of the unchanged, Agreement still in effect does not change the potential competitive harm from disclosure.

## CONCLUSION

For the foregoing reasons, ADI/Maxim's Motion to Seal portions of the Answer and Counterclaims and portions of the License Agreement attached as an exhibit, should be granted.

[2] Number 14 and Mr. Eschauzier claimed that Mr. Murgulescu erred as Mr. Eschauzier's Exhibit A evidenced Maxim's consent to the transfer of the Inventor's rights in the Agreement. This claim is patently erroneous as Exhibit A contains no assignment of the Agreement whatsoever.



ROPERS MAJESKI
A Professional Corporation
San Jose

Dated: June 28, 2024

ROPERS MAJESKI PC

By:/s/ *Kevin W. Isaacson*
MICHAEL J. IOANNOU
KEVIN W. ISAACSON
Attorneys for Defendants
ANALOG DEVICES, INC. and
MAXIM INTEGRATED PRODUCTS, INC.

ROPERS MAJESKI
A Professional Corporation
San Jose