**RACHEL THOMAS** (SBN 244527)
**ALE BURKE-VALLEJO** (SBN 353890)
GREENFIELD LLP
55 S. Market Street, Suite 1500
San Jose, California 95113
Telephone: (408) 995-5600
Email: rthomas@greenfieldlaw.com
        aburke-vallejo@greenfieldlaw.com

**JOHN W. HARBIN** (*Pro Hac Vice*)
**WARREN J. THOMAS** (*Pro Hac Vice*)
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
Telephone: (404) 645-7700
Email: jharbin@mcciplaw.com
        wthomas@mcciplaw.com

Attorneys for Plaintiff/Counter-Defendant NUMBER 14 B.V.
Specially Appearing for Counter-Defendants RUDY ESCHAUZIER and NICO VAN RIJN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NUMBER 14 B.V.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC.,<br><br>　　　　　　　Defendants. | Case No.: 5:24-cv-02435-EJD<br><br>**COUNTER-DEFENDANTS' NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS AND RELATED AFFIRMATIVE DEFENSES** |
| ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC.,<br><br>　　　　　　　Counterclaimants,<br><br>v.<br><br>NUMBER 14 B.V., RUDY ESCHAUZIER, and NICO VAN RIJN,<br>　　　　　　　Counter-Defendants. | Date:　　　　　October 3, 2024<br>Time:　　　　　9:00 AM<br>Courtroom:　　　4, 5th Floor<br>Judge:　　　　　Hon. Edward J. Davila<br>Complaint Filed: April 24, 2024<br>Trial Date:　　　Not yet set |

GREENFIELD

**TABLE OF CONTENTS**

I.   BACKGROUND ...................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 4

A.  The counterclaims against the Inventors should be dismissed because personal jurisdiction
over them is lacking and the forum selection clause in the license agreement should be
enforced.................................................................................................................... 4

1.  Legal standard for personal jurisdiction ....................................................... 4

2.  Personal jurisdiction does not exist over the Inventors ................................ 6

3.  Legal standards on enforcing the forum selection clause ............................. 8

4.  The counterclaims against the Inventors should be dismissed under the *forum non
conveniens* doctrine....................................................................................... 9

i.   The forum selection clause in the License Agreement is mandatory. ....................... 9

ii.  The mandatory forum selection clause is valid, reasonable, and binds
Counterclaimants. ..................................................................................... 11

iii. Counterclaimants cannot show extraordinary circumstances for this Court to not
enforce the valid and mandatory forum selection clause........................................ 12

B.  Counterclaims 1 and 2 should be dismissed for failure to state a claim. ............................ 14

C.  Counterclaims 2, 4-7, and 11-13 should be dismissed and related affirmative defenses
stricken for failure to state a claim because counterclaimants have not sufficiently pled a
misrepresentation or justifiable reliance thereon. .................................................. 15

1.  The elements of the counterclaims and the requirements of Rule 9 .............................. 16

2.  Counterclaims 2, 4-7 and 11-13 are insufficiently pled and should be dismissed.......... 17

i.   The Counterclaims do not adequately plead a misrepresentation or related facts.... 18

ii.  The terms of the Licensing Agreement show the alleged reliance was unjustified.. 22

iii. The Inventors were not under a duty to disclose. ................................................ 24

# TABLE OF AUTHORITIES

Page(s)

Cases

*625 3rd St. Assocs., L.P. v. Alliant Credit Union*,
   633 F.Supp.2d 1040 (N.D. Cal. 2009)............................................................................ 30

*Ahern v. Apple Inc.*,
   411 F.Supp.3d 541 (N.D. Cal. 2019)...................................................................... 25, 27

*Apple Inc. v. Allan & Assocs. Ltd.*,
   445 F. Supp. 3d 42 (N.D. Cal. 2020)........................................................................... 5

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
   480 U.S. 102 (1987) ...................................................................................................... 9

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013) ..................................................................................... 11, 13, 19, 22

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ...................................................................................... 24

*Beckwith v. Dahl*,
   205 Cal.App.4th 1039 (2012) ..................................................................................... 31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 27

*Cascade Promotion Corp. v. AMA Sys., LLC*,
   No. 4:07-cv-01513-CW, 2007 WL 1574544 (N.D. Cal. May 30, 2007) ..................... 17

*Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*,
   500 F. Supp. 3d 952 (N.D. Cal. 2020)........................................................................ 25

*Chapman v. Skype Inc.*,
   220 Cal.App.4th 217 (2013) ................................................................. 24, 25, 28, 30

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
   43 Cal. 4th 375 (2008) ................................................................................................ 33

*Cohen v. NVIDIA Corp. (In re NVIDIA Corp. Sec. Litig.)*,
   768 F.3d 1046 (9th Cir. 2014) .................................................................................... 23

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ...................................................................................... 7

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ......................................................................... 25, 27, 29

GREENFIELD

*Cream v. N. Leasing Sys., Inc.*,
　No. 3:15-cv-01208-MEJ, 2015 WL 4606463 (N.D. Cal. July 31, 2015) ...................................... 15

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014) ................................................................................................................... 6

*Docksider, Ltd. v. Sea Tech., Ltd.*,
　875 F.2d 762 (9th Cir. 1989) ............................................................................................... 15, 16

*Doe v. Geller*,
　533 F. Supp. 2d 996 (N.D. Cal. 2008) ...................................................................................... 10

*Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*,
　828 F.2d 1439 (9th Cir. 1987) ..................................................................................................... 8

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*,
　103 F.3d 888 (9th Cir. 1996) ....................................................................................................... 5

*Forte Technical Sales, LLC v. Freescale Semiconductor, Inc.*,
　No. 5:08-cv-02153-JF, 2008 WL 3929814 (N.D. Cal. Aug. 26, 2008) ............................ 15, 16, 17

*Genzon Inv. Grp., Co. v. Huang*,
　No. 21-CV-01635-PJH, 2021 WL 3053014 (N.D. Cal. July 20, 2021) .................................. 20, 21

*Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*,
　No. 16-CV-00920-LB, 2016 WL 4259126 (N.D. Cal. Aug. 12, 2016) ........................................ 19

*Gottreich v. San Francisco Inv. Corp.*,
　552 F.2d 866 (9th Cir. 1977) ..................................................................................................... 25

*Graham v. Bank of Am., N.A.*,
　226 Cal.App.4th 594 (2014) ............................................................................................... 24, 28

*Guido v. Koopman*,
　1 Cal.App.4th 837 (1991) .......................................................................................................... 25

*Guz v. Bechtel National, Inc.*,
　24 Cal.4th 317, (2000) .............................................................................................................. 23

*Hammerling v. Google, LLC*,
　No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........................................................... 25

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
　466 U.S. 408 (1984) ................................................................................................................... 5

*Hernandez v. Select Portfolio Servicing, Inc.*,
　No. 2:15-cv-01896, 2015 WL 12658459 (C.D. Cal. Oct. 29, 2015) ........................................... 27

*Hoffman v. 162 N. Wolfe LLC*,
　228 Cal.App.4th 1178 (2014) ............................................................................................. 24, 31

GREENFIELD

*In re Air Crash Over Mid-Atl. on June 1,*
 *2009*, 760 F. Supp. 2d 832 (N.D. Cal. 2010) ................................................................. 20

*In re Becker*,
 993 F.3d 731 (9th Cir. 2021) ....................................................................................... 12

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
 649 F.2d 1266 (9th Cir. 1981) ....................................................................................... 8

*J.G. v. Rustic Pathways, LLC*,
 No. 22-CV-05666-EJD, 2024 WL 1975472 (N.D. Cal. May 2, 2024) ......................... 12

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 26

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018) ....................................................................................... 23

*Laks v. Coast Fed. Sav. & Loan Assn.*,
 60 Cal.App.3d 885 (1976) ...................................................................................... 29, 30

*Lazar v. Superior Ct.*,
 909 P.2d 981 (Cal. 1996) ............................................................................................. 25

*Le Roy-Garcia v. Brave Arts Licensing*,
 No. 3:13-CV-01181-LB, 2013 WL 4013869 (N.D. Cal. Aug. 5, 2013) ....................... 13

*Lewis v. Liberty Mut. Ins. Co.*,
 953 F.3d 1160 (9th Cir. 2020) ............................................................................... 12, 22

*LiMandri v. Judkins*,
 52 Cal.App.4th 326 (1997) ..................................................................................... 32, 33

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972) ........................................................................................................ 12

*Marolda v. Symantec Corp.*,
 672 F.Supp.2d 992 (N.D. Cal. 2009) ........................................................................... 26

*Mirkin v. Wasserman*,
 5 Cal.4th 1082 (1993) .................................................................................................. 30

*Montalvo Assocs., LLC v. AMTAX Holdings 279, LLC*,
 No. 5:21-CV-00797-EJD, 2021 WL 3173269 (N.D. Cal. July 27, 2021) ..................... 11

*Multimin USA, Inc. v. Walco Internation, Inc.*,
 No. 1:06-cv-00226-AWI-SMS, 2006 WL 1046964 (E.D. Cal. Apr. 11, 2006) ............. 14

*Myers-Armstrong v. Actavis Totowa, LLC*,
 382 F. App'x 545 (9th Cir. 2010) ................................................................................. 30

GREENFIELD

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

*Neo4j, Inc. v. Purethink*, LLC,
    480 F.Supp. 3d 1071 (N.D. Cal. 2020) ................................................................ 28, 30

*Nguyen v. Bank of Am.*,
    563 F. App'x 558 (9th Cir. 2014) ................................................................................ 23

*Openshaw v. FedEx Ground Package Sys., Inc.*,
    576 F. App'x 685 (9th Cir. 2014) ............................................................................... 32

*Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*,
    757 F.2d 1058 (9th Cir. 1985) ...................................................................................... 8

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) .................................................................................... 10

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) .................................................................................. 6, 7

*Preferred Secured Agents, Inc.*,
    No. 3:15-CV-00624-LB, 2016 WL 10860010 (N.D. Cal. Nov. 3, 2016) ..................... 22

*Purac Inc. v. Trafpak Servs., Ltd.*,
    694 F. Supp. 476 (N.D. Ill. 1988) .............................................................................. 18

*Reichert v. General Ins. Co.*,
    68 Cal.2d 822 (1968) .................................................................................................. 23

*Resonance Rsch., Inc. v. Prodrive Techs., B.V.*,
    No. 1:20-cv-11532-PBS, 2020 WL 13579434 (D. Mass. Dec. 18, 2020) ................... 18

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
    732 F. Supp. 2d 952 (N.D. Cal. 2010) ................................................................. 29, 32

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................................ 5

*Seeger v. Odell*,
    18 Cal. 2d 409 (1941) ................................................................................................ 24

*Shwarzenegger v. Fred Martin Motor Co.*,
    274 F.3d 797 (9th Cir. 2004) ........................................................................................ 7

Sidebotham v. Robison,
    216 F.2d 816 ............................................................................................................... 30

*St. Ventures, LLC v. KBA Assets & Aquisitions, LLC*,
    No. 1:12-CV-01058-LJO, 2013 WL 1749901 (E.D. Cal. Apr. 23, 2013) ................... 16

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ............................................................................. 11, 15

GREENFIELD

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

*TMF Tr. Ltd. v. M/T Megacore Philomena*,
  No. 2:17-CV-09010-AGR, 2020 WL 3064447 (C.D. Cal. Mar. 24, 2020) ................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 25, 29

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) .................................................................................................... 20

*Vogt-Nem, Inc. v. M/V Tramper*,
  263 F. Supp. 2d 1226 (N.D. Cal. 2002) .......................................................................... 16, 17, 18

*Vutek, Inc. v. Leggett & Platt, Inc.*,
  No. 4:07-cv-01886-CDP, 2008 WL 2483148 (E.D. Mo. June 17, 2008) .................................... 21

*WestRock CP, LLC v. Ming's Res. Corp.*,
  No. 2:22-cv-00176-WBS-AC, 2022 WL 1190237 (E.D. Cal. Apr. 21, 2022) ............................ 14

*Wilson v. Century 21 Great W. Realty*,
  15 Cal.App.4th 298 (1993) ...................................................................................................... 27

*Woods v. Google, Inc.*,
  889 F.Supp.2d 1182 (N.D. Cal. 2012) .................................................................................. 24, 31

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*,
  No. 23-CV-03836-CRB, 2024 WL 1245993 (N.D. Cal. Mar. 25, 2024) .................................... 10

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) .................................................................................................................. 22

*Yount v. Acuff Rose-Opryland*,
  103 F.3d 830 (9th Cir. 1996) .................................................................................................... 23

Statutes

Cal. Civ. Proc. Code § 1716 ........................................................................................................ 21

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on October 3, 2024, at 9:00 AM, or as soon thereafter as

4

counsel may be heard, in the Courtroom of the Honorable Edward J. Davila, Courtroom 4, 5th

5

Floor of the United States District Court for the Northern District of California, located at 280

6

South 1st Street, San Jose, CA 95113, Counterclaim-Defendants Number 14 B.V., Rudy

7

Eschauzier and Nico van Rijn (collectively, "Counter-Defendants") will and hereby move the

8

Court for an order (1) dismissing all claims by Defendants/Counterclaimants Analog Devices, Inc.

9

and Maxim Integrated Products, Inc. against Mr. Eschauzier and Mr. van Rijn for lack of personal

10

jurisdiction and/or under the doctrine of *forum non conveniens*, and (2) dismissing the First,

11

Second, Fourth to Seventh, and Eleventh to Thirteenth Counterclaims[1] and striking the Fifth and

12

Seventh Affirmative Defenses as to all Counter-Defendants for failure to state a claim and

13

sufficiently pleaded defenses.

14

15

16

17

18

19

20

21

22

23

24

---

25

[1] The Counterclaims do not allege a "Third Counterclaim" but rather skip from the "Second

26

Counterclaim" to the "Fourth Counterclaim." Counter-Defendants reference the headings and

27

designations of the Counterclaims set forth therein for ease of review of the Court regardless of

28

accuracy.

GREENFIELD

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), 12(f), and the doctrine of *forum non conveniens*, Counter-Defendant Number 14 B.V. ("Number 14") and Counter-Defendants Rudy Eschauzier and Nico van Rijn (the "Inventors") (collectively, "Counter-Defendants") respectfully move this Court to dismiss the Counterclaims and strike the Fifth and Seventh Affirmative Defenses asserted in Defendants-Counterclaimants Analog Devices, Inc ("ADI"). and Maxim Integrated Products, Inc.'s ("Maxim") (collectively, "Counterclaimants") Answer to Plaintiff's Complaint with Affirmative Defenses and Counterclaims, ECF Nos. 22 (public, redacted version) and 23-4 (provisionally sealed version), for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to sufficiently plead a defense.

## I.    BACKGROUND

Maxim claims to be a "worldwide leader" in designing and making mixed-signal integration circuits. Counterclaim ¶ 9. In 2007, as part of establishing a new design center "dedicated to designing stand-alone amplifiers" in Delft, The Netherlands, Maxim hired and entered into a License Agreement (hereinafter referred to as the "License" or "License Agreement") with Rudy Eschauzier and Nico van Rijn (collectively, the "Inventors") as part of Maxim's new Netherlands-based development center. Counterclaim ¶¶ 10–12. The Inventors are citizens of The Netherlands and worked for Maxim in the Netherlands. Counterclaim ¶¶ 3–5, 13.

The Inventors granted Maxim a "███████████" to license any "Amplifier Design Patents" that might result from the Inventors' work. Answer ¶ 4; Counterclaim ¶ 18. To exercise its right, Maxim was required to pay a "███████" payment "upon confirmation that Amplifier Design Patents have conceptual and economic value in the market" (Counterclaim ¶ 18; License Agreement, ECF Nos. 22-1 (public, redacted version) and 23-4 (provisionally sealed version) §§ 2.5–2.6), and ongoing royalty payments to the Inventors if the Amplifier Design Patents were used in any "Stand-Alone Amplifiers" developed and sold by Maxim. *See* Counterclaim ¶ 31; License Agreement § 3.1.

The License Agreement is clear that the responsibility for the evaluation of the technical capabilities of products utilizing the Inventors' invention is on Maxim, the licensee. In addition to

GREENFIELD

the above sections, Section 3.2 of the License provides that "███████████████████
████████████████████" and that payment of the royalty "████████████
███████████████████████████████████████████████████████
███████████████████" Counterclaim ¶ 21; License Agreement § 3.2.

The License also stated how Maxim should evaluate those products. "Assessment of the value and benefits, value and benefits will be governed by the product and specifications listing as outlined in clause 2.7 above." Counterclaim ¶ 21; License Agreement § 3.2. Section 2.7 provides:

> The conceptual and economic value of the Amplifier Design Patents in the market … will be based on the product and specification listing attached as Annex1. The Parties agree that if the Amplifier Design Patents enable products that show improvements of '**similar**' magnitude as compared to the attached product and specifications listing, then this will establish that the Amplifier Design Patents have conceptual and economic value in the market                                                                        [….]

License Agreement § 2.7 (emphasis added); Counterclaim ¶ 19.

The License includes a forum-selection clause covering any dispute or claim "arising out of or in connection with this Agreement." License Agreement § 11.1. The License mandated the forum based on who initiates or asserts the claim. If the Inventors initiated a claim in the capacity of a plaintiff, "such claim" would be submitted to a state or federal court in Santa Clara Country, California. *Id.* But if *Maxim* asserts the claim in the capacity of a plaintiff, such claim shall be submitted to a court of law *in the Netherlands*, in which case the Agreement shall be governed by and construed in accordance with the laws of the Netherlands." *Id.* (emphasis added).

In 2009, while Inventors were still Maxim employees, they transferred their rights and obligations under the License Agreement to Number 14 B.V. Counterclaim ¶ 26. Maxim consented to that transfer. Maxim Declaration of Consent and Covenants, ECF No. 33-2; *see also* License Agreement § 10.1. Eventually, multiple patents were issued. In accordance with the License, Maxim elected to exercise its right of first refusal and paid the ████████ fee to Number 14. Counterclaim ¶ 28. And Maxim and then ADI continuously paid royalties under the License Agreement to the entity Number 14—not to either *individual* Inventor—from at least 2011 through January 2024. Answer ¶¶ 5–7, 58, 63 71.

During and after their employment by Maxim,[2] the Inventors raised with Maxim whether certain new Stand-Alone Amplifiers would be subject to the royalty, in accordance with the License. *See* Counterclaim ¶¶ 36–38; *see also, e.g., id.* ¶¶ 68–69, 76, 90, 107. Under Section 3.2 of the License Agreement, "████████████████████████" and ████████████████████████████████████████████████████████████████████████" based on the assessment described in Section 2.7. In each case, Maxim made the decision whether to pay. *See id.*

While Counterclaimants cite to snippets of content from a few of the Inventors' communications (made on behalf of Number 14) to support their claims of wrongdoing, these snippets do not indicate that Counter-Defendants made the decision about whether the technical thresholds were met, or even that they made affirmative representations about that. One snippet, which is undated and from an unidentified sender, simply asks an unidentified recipient: "Do you know what the status is for [2023]'s royalty payment." Counterclaim ¶¶ 68, 76, 90, 107. Counterclaimants concede this question at most "impl[ied]" that the Counter-Defendants were entitled to the payment, and they do not allege their response to the question. *Id.*

In a second snippet in July 2023, Mr. Eschauzier emailed, "████████████████████████████████████████████████████" *Id.* ¶¶ 69, 77, 91, 108.[3] Here, Counterclaimants allege Maxim actually responded with a question of its own: "Maxim *inquired how* Counterclaim Defendants' team arrived at the conclusion to add the parts." *Id.* (emphasis added). But Counterclaimants do not allege whether or not they elected to pay on the parts listed.

After ADI acquired Maxim, ADI changed the way it calculated the Royalty. *See* Answer ¶¶ 32–33; Counterclaim ¶¶ 53–54, 133. Number 14 brought this action because ADI's change is contrary to the language and structure of the License and the parties' long course of conduct.

In response, Maxim and ADI brought counterclaims against Number 14 *and* the individual Inventors based in part on alleged misrepresentations by the Inventors that they were entitled to

---

[2] Inventors left Maxim in 2015. Counterclaim ¶ 34.

[3] Elsewhere, Counterclaimants cite an earlier, similar email snippet regarding adding two products to the royalty list, but they indicate they are not relying on that email. Counterclaim ¶¶ 37, 75.

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

3

Royalties under the License. See *e.g.*, Counterclaim ¶ 32. In fact, Counterclaimants now assert that "[n]one of the amplifier products identified by Inventors had the required specifications" so that they "have never been entitled to any Royalty payments"—even though the products at issue are Maxim/ADI's *own products* on which they have paid Royalties for fourteen years). Counterclaim, p.16 ("Introduction" to counterclaims) and ¶ 40.

## II.   <u>ARGUMENT</u>

This motion seeks dismissal of the counterclaims on various bases. First, all claims against the individual Inventors should be dismissed for two independent reasons: (1) this Court does not have personal jurisdiction over Inventors, who are Dutch citizens, and (2) the License's forum-selection clause requires Counterclaimants to litigate their actions in the Netherlands. As such, Inventors should be dismissed.

Second, numerous counterclaims are insufficiently pleaded. Indeed, counterclaims 1 and 2 fail to sufficiently plead breach of contract and implied covenant of good faith and fair dealing. Moreover, additional counterclaims that are premised on alleged "misrepresentations" by Counter-Defendants should be dismissed (and the fifth and seventh affirmative defenses stricken) for failure to state a claim because (1) Counterclaimants fail to allege any actionable misrepresentation by Counter-Defendants; (2) they have not and cannot plead in good faith -justifiable reliance on the alleged misrepresentations/omissions; and (3) regarding the alleged omissions, they have not shown there was a duty of disclosure. The counterclaims based on misrepresentations should accordingly be dismissed under Rule 12(b)(6) and the fifth and seventh affirmative defenses stricken under Rule 12(f). Accordingly, for the reasons provided below, this Court should dismiss counterclaims 1, 2, 4-7, and 11-13 and strike the Fifth and Seventh Affirmative Defenses.

### A.   **The counterclaims against the Inventors should be dismissed because personal jurisdiction over them is lacking and the forum selection clause in the license agreement should be enforced.**

#### 1.   <u>Legal standard for personal jurisdiction</u>

On a motion to dismiss under Rule 12(b)(2), the claimant bears the burden of establishing personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). This Court may exercise personal jurisdiction over the Inventors *only* if jurisdiction is

proper under California's long-arm statute and if the exercise of that jurisdiction does not violate

federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.

1996). "Because California's long-arm statute authorizes the court to exercise personal jurisdiction

over a non-resident defendant on any basis not inconsistent with the California or federal

Constitution, the … inquir[ies] merge into a single due process test." *Apple Inc. v. Allan & Assocs.

Ltd.*, 445 F. Supp. 3d 42, 50 (N.D. Cal. 2020). Under the Due Process analysis, a defendant may be

subject to either general or specific personal jurisdiction. *Helicopteros Nacionales de Colombia,

S.A. v. Hall*, 466 U.S. 408, 414 (1984). There is no allegation of general jurisdiction over the

individual Inventors, who are domiciled in The Netherlands (nor is there a basis for one, see

*Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)),[4] so only specific jurisdiction is at issue.

　　To determine whether specific personal jurisdiction exists, courts employ a three-part test:

"(1) [t]he non-resident defendant must purposefully direct his activities or consummate some

transaction with the forum or resident thereof; or perform some act by which he purposefully avails

himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's

forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and

substantial justice[,] i.e., it must be reasonable." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir.

2015) (noting both "purposeful direction" and "purposeful availment" are relevant if the plaintiff

asserts both contract and tort claims). Only if the plaintiff proves the first two prongs does the

burden shift to the defendant to set forth a "compelling case" as to why the exercise of specific

jurisdiction would not be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,

1076–77 (9th Cir. 2011).

---

[4] "For an individual, the paradigm forum for the exercise of general [or "all-purpose"] jurisdiction

is the individual's domicile," but in any case, general jurisdiction requires "so continuous and

systematic as to render it essentially at home in the forum State." *Daimler*, 571 U.S. at 137, 139

(cleaned up). There is no dispute that the individual Inventors are domiciled in The Netherlands.

Answer ¶ 1; Counterclaim ¶¶ 4–5.

5

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

GREENFIELD

2.   <u>Personal jurisdiction does not exist over the Inventors</u>

On a motion to dismiss under Rule 12(b)(2), the plaintiff (or counterclaimant) bears the burden of establishing personal jurisdiction. *Shwarzenegger v. Fred Martin Motor Co.*, 274 F.3d 797, 800 (9th Cir. 2004). A "plaintiff cannot 'simply rest on the bare allegations of its complaint[.]'" *Id.* Counterclaimants have failed to show the first two prongs of the test for specific jurisdiction are met. Moreover, the third factor argues for dismissing the Inventors. Exercising jurisdiction over the Inventors would not comport with fair play and substantial justice. *Picot*, 780 F.3d at 1211. The Ninth Circuit evaluates seven factors to determine reasonableness:

> [1] the extent of the purposeful interjection into the forum state, [2] the burden on the defendant of defending in the forum, [3] the extent of conflict with the sovereignty of defendant's state, [4] the forum state's interest in adjudicating the dispute, [5] the most efficient judicial resolution of the controversy, [6] the importance of the forum to plaintiff's interest in convenient and effective relief, and [7] the existence of an alternative forum.

*Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985).

Regarding the first factor, the Ninth Circuit has established that "[e]ven if there is sufficient 'interjection' into the state to satisfy [the first prong of the specific jurisdiction three-part test], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [third prong]." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.").

Here, nearly all the *Paccar* factors weigh in favor of the Inventors. With respect to the first factor, "a contract alone is not sufficient to establish purposeful interjection into a forum state." *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir. 1987) ("The negotiations and contemplated future consequences of the contract … must be considered in analyzing [the defendant's] purposeful interjection of its activities into California."). The License Agreement was executed in the Netherlands, and the parties agreed to a forum-selection clause directing claims against the Inventors be made in The Netherlands and that "the laws of the Netherlands" be applied. License Agreement § 11.1(i), p. 9 (signature page identifying "Delft" as place of execution). The forum-selection clause shows the "contemplated future consequences" of

any dispute or claim in connection with the License Agreement would be Maxim filing an action in the Netherlands, not California.

Even if the License Agreement were to be construed by this Court as an interjection with the forum, such interjection is slight because the work performed by the Inventors under the License Agreement occurred "within the Netherlands-based development center Maxim established in connection with the License Agreement and the employment of Inventors." Counterclaim ¶ 17; *id.* ¶¶ 13–15 (asserting the Inventors held themselves out as co-founding design centers in Delft, The Netherlands, not in California).

Regarding the second factor, the Supreme Court has recognized that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114 (1987). Requiring the Dutch Inventors' presence in California would place a heavy burden on them to travel halfway around the world to defend themselves in this Court, even though they negotiated and contemplated the opposite when signing the License Agreement. The second factor weighs heavily in favor of the Inventors.

Regarding the third and fourth factors, California does not have a special interest in adjudicating this private dispute. Moreover, Maxim expressly agreed to assert its claims in The Netherlands, with Dutch law applied, as stated in the mandatory forum selection clause. License Agreement § 11.1(i); *cf.* Section II.A.4 below. Contract and tort laws differ in The Netherlands from those in California. The counterclaims should be brought there in light of the mandatory forum selection clause and the possibility that the counterclaims conflict with the sovereignty of The Netherlands. The third and fourth factors also weigh in favor of the Inventors.

In the Ninth Circuit, the fifth factor is "no longer weighed heavily given the modern advances in communication and transportation." *Doe v. Geller*, 533 F. Supp. 2d 996, 1010 (N.D. Cal. 2008) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323–24 (9th Cir. 1998)). At any rate, this factor is somewhat in the Inventors' favor or at worst neutral. It would be more efficient for matters concerning Dutch law to be resolved in the Netherlands (see License

1   Agreement § 11.1(i)). Otherwise, either forum (California or the Netherlands) would provide for an

2   efficient judicial resolution given "witnesses and evidence" are in both forums. *X Corp. v. Ctr. for*

3   *Countering Digital Hate Ltd.*, No. 23-CV-03836-CRB, 2024 WL 1245993, at *14 (N.D. Cal. Mar.

4   25, 2024).

5         Regarding the sixth factor, while Counterclaimants might argue that litigating against the

6   Inventors in California is in their interest, the Ninth Circuit gives "little weight to a plaintiff's

7   interest in the forum." *Id.* at *15. Moreover, Maxim voluntarily entered into this agreement

8   knowing it may litigate in The Netherlands, where it had an office, and ADI learned this and

9   accepted the terms of the contract upon acquisition of Maxim.[5] This factor weighs in favor of the

10   Inventors.

11         The final factor weighs in favor of Inventors because The Netherlands, better versed in

12   Dutch law, is an alternative forum that is readily available to the parties. The Netherlands, not

13   California, is the proper forum for the counterclaims.

14         Accordingly, specific jurisdiction over the Inventors also does not exist in California.

15            3.  <u>Legal standards on enforcing the forum selection clause</u>

16         Courts within the Ninth Circuit sitting in diversity apply federal law to determine the

17   enforceability of a forum selection clause. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081,

18   1086 (9th Cir. 2018). A forum selection clause is "prima facie valid" and enforceable, absent a

19   strong showing "that enforcement would be unreasonable and unjust." *Montalvo Assocs., LLC v.*

20   *AMTAX Holdings 279, LLC*, No. 5:21-CV-00797-EJD, 2021 WL 3173269, at *2 (N.D. Cal. July

21   27, 2021). Where, as here, the moving party seeks a foreign forum, courts apply the doctrine of

22   *forum non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49,

23   60 (2013).

24         A forum selection clause is "controlling" unless the plaintiff meets the heavy burden of

25   establishing:

26

27   _____

28   [5] Further, Counterclaimants must show that the mandatory and valid forum selection clause is

"unreasonable" and "unjust" for this Court to not enforce it—this is discussed in more detail below.

GREENFIELD

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

(1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court.

*Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1165 (9th Cir. 2020) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). Only in the "rarest cases" will a court find that a forum selection clause is invalid. *In re Becker*, 993 F.3d 731, 732 (9th Cir. 2021).

Absent the challenging party showing the forum selection clause is "unreasonable" or there is an "unusual circumstance in which public interest factors" prevail, dismissal is the most appropriate remedy under the doctrine of *forum non conveniens*. *J.G. v. Rustic Pathways, LLC*, No. 22-CV-05666-EJD, 2024 WL 1975472, at *7 (N.D. Cal. May 2, 2024) (finding the plaintiff failed to meet her burden of showing "extraordinary circumstances" and dismissing for *forum non conveniens*); *see also TMF Tr. Ltd. v. M/T Megacore Philomena*, No. 2:17-CV-09010-AGR, 2020 WL 3064447, at *4 (C.D. Cal. Mar. 24, 2020) (holding the doctrine of *forum non conveniens* disfavors keeping the counterclaims in the same court when all the public interest factors favor the counterclaimant litigating its claims in England).

"[U]nlike a § 1404(a) motion, a successful motion under *forum non conveniens* requires dismissal of the case," especially when "the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *Atlantic Marine*, 571 U.S. at 66 n.8 ("In such a case, dismissal would work no injustice on the plaintiff.").

### 4. The counterclaims against the Inventors should be dismissed under the *forum non conveniens* doctrine.

#### i. The forum selection clause in the License Agreement is mandatory.

Counterclaimants assert that venue is proper because the counterclaims "arise within this District and the Counterclaimants have a place of business within this District." Counterclaim ¶ 7. But "[w]hen there are multiple parties and/or multiple claims in an action, **the plaintiff must establish that venue is proper as to each defendant and as to each claim**." *Le Roy-Garcia v. Brave Arts Licensing*, No. 3:13-CV-01181-LB, 2013 WL 4013869, at *5 (N.D. Cal. Aug. 5, 2013) (citing *Multimin USA, Inc. v. Walco International, Inc.*, No. 1:06-cv-00226-AWI-SMS, 2006 WL

GREENFIELD

1046964, *2 (E.D. Cal. Apr. 11, 2006)) (emphasis added). Counterclaimants have failed to show that venue is proper as to the Inventors, respectively, nor can they because the mandatory forum selection clause is reasonable and just.[6]

> The License Agreement contains a valid forum selection clause:

> Any dispute, controversy, or claim arising out of or in connection with" the License Agreement "shall be governed by the following provisions: (i) If Maxim is the party that files, initiates or asserts a claim in the capacity of a plaintiff, then such claim shall be submitted to a court of law in the Netherlands …."

License Agreement § 11.1. And the tort counterclaims against the Inventors are clearly predicated on, and intertwined with, the Inventors' alleged breach of the License Agreement, so the tort claims are "in connection with" the License Agreement. *See, e.g.*, Counterclaim ¶¶ 75–78 (alleging that "Counter-Defendants' misrepresentations are material facts and omissions that the products that utilized their Patents satisfied the requirements in the License Agreement"); *see also Sun*, 901 F.3d at 1086 (noting the phrase "in connection with" is akin to "related to," which is construed to mean "any disputes that reference the agreement or have some 'logical or causal connection' to the agreement"). The forum selection clause therefore applies to all counterclaims asserted against the Inventors.

District courts "have generally limited the *Atlantic Marine* framework to situations where the forum selection clause is mandatory." *Cream v. N. Leasing Sys., Inc.*, No. 3:15-cv-01208-MEJ, 2015 WL 4606463, at *4, n.2 (N.D. Cal. July 31, 2015). Further, courts have consistently enforced mandatory forum selection clauses, like the one here. *See Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989) (finding the clause "Venue of any action brought hereunder **shall be deemed to be in Gloucester County, Virginia**" to be mandatory (emphasis added)); *Forte Technical Sales, LLC v. Freescale Semiconductor, Inc.*, No. 5:08-cv-02153-JF, 2008 WL 3929814,

---

[6] To the extent Counterclaimants argue their counterclaims are "compulsory," that will not "affect the enforceability" of the forum selection clause. *WestRock CP, LLC v. Ming's Res. Corp.*, No. 2:22-cv-00176-WBS-AC, 2022 WL 1190237, at *5 (E.D. Cal. Apr. 21, 2022) (noting district courts within the Ninth Circuit and nationwide have transferred compulsory counterclaims that were subject to a forum selection clause).

10

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

GREENFIELD

at *2 (N.D. Cal. Aug. 26, 2008) (the clause "[v]enue for any litigation **will be in Travis County, Texas**" is mandatory (emphasis added)); *Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1230 (N.D. Cal. 2002) (finding the clause providing that "[a]ny dispute … **will be submitted to the competent court in Rotterdam**" was mandatory (emphasis added)). Like the forum clauses in *Docksider, Forte Tech,* and *Vogt-Nem*, here, the clause in the License Agreement is mandatory as it expressly states that, if Maxim brings the claim, "such claim **shall be submitted** to a court of law in the Netherlands." License Agreement § 11.1(i) (emphasis added).[7]

> ii.   The mandatory forum selection clause is valid, reasonable, and binds Counterclaimants.

Mandatory forum selection clauses are "strictly enforced," unless they are "unreasonable" under the circumstances. *Forte Technical Sales, LLC*, 2008 WL 3929814, at *2 (noting this is a "heavy burden" to establish). Courts will find the forum selection clause unreasonable if:

> "(1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court;' or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought."

*Id.* Counterclaimants cannot meet their heavy burden because none of these factors are met.

Maxim knew that by signing the License, it was agreeing to litigate its claims in the Netherlands. Likewise, in acquiring Maxim, ADI agreed to do the same. Further, Maxim, a sophisticated entity, had the opportunity to read the forum selection clause, and is bound by it. *See Cascade Promotion Corp. v. AMA Sys., LLC*, No. 4:07-cv-01513-CW, 2007 WL 1574544, at *3 (N.D. Cal. May 30, 2007) (finding that the plaintiff was bound to a forum selection clause).

Maxim contemplated the possibility of legal proceedings between itself and the Inventors and "cannot now sidestep that contractual commitment" simply because Number 14 filed the initial

---

[7] The clause in the License Agreement is readily distinguishable from clauses found to be permissive. *See, e.g., St. Ventures, LLC v. KBA Assets & Aquisitions, LLC*, No. 1:12-CV-01058-LJO, 2013 WL 1749901, at *9 (E.D. Cal. Apr. 23, 2013) (finding the clause, "The contract is subject to the Laws of the Republic of Ireland and England" to be permissive).

11

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

GREENFIELD

1  complaint against Counterclaimants, as required under the forum-selection clause. *Vogt-Nem, Inc.*,

2  263 F. Supp. 2d at 1233 (granting motion to dismiss for improper venue because the forum

3  selection clause called for resolution of the dispute in Rotterdam, Netherlands). Further, the

4  selected forum is not so "gravely difficult and inconvenient" that Counterclaimants will be

5  "deprived of [their] day in court." *Id.* The Netherlands provides an adequate forum to resolve

6  breach of contract and tort claims. *See Resonance Rsch., Inc. v. Prodrive Techs., B.V.*, No. 1:20-cv-

7  11532-PBS, 2020 WL 13579434, at *3 (D. Mass. Dec. 18, 2020) (dismissing the claims under the

8  doctrine of *forum non conveniens* without prejudice to allow the plaintiff to refile in The

9  Netherlands); *Purac Inc. v. Trafpak Servs., Ltd.*, 694 F. Supp. 476, 477 (N.D. Ill. 1988) (finding

10  that Dutch courts provide remedies for negligence and breach of contract claims). Moreover,

11  Maxim clearly contemplated this possibility when signing the License Agreement—it cannot now

12  claim inconvenience from litigating in The Netherlands. *Vogt-Nem, Inc.*, 263 F. Supp. 2d at 1233

13  (finding the plaintiff failed to meet the "heavy burden" that enforcement would seriously

14  inconvenience the parties, given that the "[p]laintiff clearly contemplated the possibility of legal

15  proceedings between itself and VWG" in The Netherlands).

16  Thus, Counterclaimants cannot satisfy either the first or second factor or meet the third

17  factor to show enforcement of this forum selection clause would contravene California public

18  policy.

19          *iii.    Counterclaimants cannot show extraordinary circumstances for this*
                *Court to not enforce the valid and mandatory forum selection clause.*

20

21  In addition to the three factors discussed above, the Court may consider public interest

22  factors of the traditional *forum non conveniens* analysis, including, "(1) local interest in the lawsuit;

23  (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4)

24  congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum."

25  *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL

26  4259126, at *3 (N.D. Cal. Aug. 12, 2016). But the Supreme Court has instructed courts to "deem

27  the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*,

28  571 U.S. at 64.

GREENFIELD

First, the "local interest" factor weighs in favor of enforcing the mandatory forum selection clause. *See, e.g., Glob. Quality Foods*, 2016 WL 4259126, at *9 (local interest factor favors enforcing forum selection clause, despite claim that "substantial part of the alleged events" occurred in California, because "[w]hat is precisely in question, … is not the underlying complaint, but the indemnification dispute"). The counterclaims are based on or related to the License Agreement and fall squarely within the scope of the forum selection clause requiring the laws of The Netherlands to apply. Thus, if the state of California has "any local interest in this case … [it] is slight and does not exceed or even come close to the interest other [European] forums … have in the adjudication of this controversy." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) (affirming the dismissal on *forum non conveniens* grounds because the balance of factors favored dismissal). Factor one points toward adjudicating in The Netherlands.

The governing law factor also weighs in favor of dismissal because the License expressly requires that, when "Maxim is the party that files, initiates or asserts a claim in the capacity of a plaintiff," the law of The Netherlands governs. License Agreement § 11.1(i). Courts in The Netherlands are better equipped to apply their own law. *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 847 (N.D. Cal. 2010) (finding that dismissing to France avoids the prospect of U.S. courts applying French law); *Genzon Inv. Grp., Co. v. Huang*, No. 21-CV-01635-PJH, 2021 WL 3053014, at *3 (N.D. Cal. July 20, 2021) ("The court has little familiarity with Chinese contract law," weighing in favor of dismissal).

The remaining factors—burden on local courts and juries, court congestion, and the costs of resolving a dispute unrelated to a particular forum—also favor dismissal. Because Dutch law is applicable, this Court would have to commit greater resources for the counterclaims to be tried here. And "the potential confirmation of a foreign judgment award is a far less onerous burden than the litigation of an entire case using foreign law." *Genzon*, 2021 WL 3053014, at *3. California courts will generally enforce foreign judgments, as long as they are issued by "impartial tribunals" that have afforded the litigants due process, Cal. Civ. Proc. Code § 1716. As noted above, courts have recognized that The Netherlands provides an adequate forum to resolve breach of contract and tort claims. Further, there is no evidence that The Netherlands' courts have a congested docket,

unlike the Court here. See *Vutek, Inc. v. Leggett & Platt, Inc.*, No. 4:07-cv-01886-CDP, 2008 WL 2483148, at *2 (E.D. Mo. June 17, 2008) (noting the congestion of the dockets in the Northern District of California). And given that the Inventors are citizens of The Netherlands, the License was executed in The Netherlands, and the laws of The Netherlands are to govern, the Netherlands has a prevailing interest to oversee contracts entered into by its residents, under Dutch law, are honored. *See Qingdao Tang-Buy Int'l Imp. & Exp. Co. v. Preferred Secured Agents, Inc.*, No. 3:15-CV-00624-LB, 2016 WL 10860010, at *9 (N.D. Cal. Nov. 3, 2016).

Regarding the final factor, private factors are deemed waived and weigh in favor of the pre-selected forum. *Atlantic Marine*, 571 U.S. at 64. The private interests include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 62, n.6. Moreover, that was a factor within Maxim's contemplation when it signed the License Agreement. Additionally, as discussed above, The Netherlands has a substantial interest in the outcome of the counterclaims. *See Lewis*, 953 F.3d at 1170 (finding the law compelled the court to apply the forum selection clause since "Australia [was] not so remote … to justify a different outcome"). Ultimately, these public interest factors do not "overwhelmingly disfavor" enforcing the forum selection clause.

Accordingly, Counterclaimants cannot meet their heavy burden to set aside the mandatory forum selection clause. The clause is neither unreasonable nor unjust and no exceptional reasons exist for this Court to not enforce it. The counterclaims against the Inventors should be dismissed under the doctrine of *forum non conveniens*.

## B. Counterclaims 1 and 2 should be dismissed for failure to state a claim.

**Counterclaims 1 and 2** (for breach of contract and breach of the implied covenant of good faith and fair dealing) should be dismissed for failure to state a claim because the License Agreement attached to the counterclaims contradicts the allegations therein and establish Counter-defendants did not breach the License Agreement.

Under Rule 12(b)(6), an "incorporated document's contents" are treated as true. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1003 (9th Cir. 2018); see also *Cohen v. NVIDIA Corp.*

GREENFIELD

(*In re NVIDIA Corp. Sec. Litig.*), 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (Upon a document's incorporation, "the entire document is assumed to be true for purposes of a motion to dismiss [. . . .]"); see also *Nguyen v. Bank of Am.*, 563 F. App'x 558, 558 (9th Cir. 2014) (When "an exhibit to a complaint is inconsistent with the complaint's allegations, the exhibit controls.")

To allege a breach of contract claim, a party must show the following: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Reichert v. General Ins. Co.* 68 Cal.2d 822, 830 (1968). When a "contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone, if possible." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835-36 (9th Cir. 1996).

Here, Counterclaimants incorporated the License by reference in their counterclaims. See Counterclaim ¶ 10. The License expressly permits Number 14 to accept Royalties, which is a right – not an obligation. Nothing in the License obligates Number 14 to calculate the Royalty, whether *before* or *after* receipt. License Agreement, §§ 3.1, 3.2. Accordingly, Number 14 has not and cannot breach by accepting Royalties. Counterclaimants have failed to state a claim for breach of contract. Moreover, Counterclaimants alleged that Inventors "transferred all their rights in the License Agreement to Number 14 in February 2009." Counterclaim ¶ 58. Again, receipt of Royalties is a right, not an obligation and this directly contradicts their allegations of breach of contract against Inventors.

With respect to **Counterclaim 2**, the covenant of good faith and fair dealing "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel National, Inc.* 24 Cal.4th 317, 349, (2000) (original emphasis, internal citations omitted). This counterclaim fails for the same reasons as the breach of contract counterclaim: Counterclaimants failed to allege how *receiving* payments calculated by Maxim frustrated Maxim's right to receive the benefit of the License.

### C. Counterclaims 2, 4-7, and 11-13 should be dismissed and related affirmative defenses stricken for failure to state a claim because counterclaimants have not sufficiently pled a misrepresentation or justifiable reliance thereon.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint and "can be based on the 'lack of a cognizable legal theory' or 'the absence of

sufficient facts alleged under a cognizable legal theory.'" *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Counterclaimants assert that Counter-Defendants made false representations to or withheld information from Counterclaimants and that Counterclaimants relied on these false representations to their detriment. Counterclaims 1, 2, 4-7, and 11-13 should be dismissed because Counterclaimants have not pled sufficient facts to support these claims.

1.   The elements of the counterclaims and the requirements of Rule 9

A claim of intentional misrepresentation (Counterclaim 4) requires showing a knowing, intentional misrepresentation plus actual and justifiable reliance thereon. *Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 230–31 (2013). Negligent misrepresentation (Counterclaim 5)  "does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Id.* Counterclaim 6 recites elements of fraudulent concealment, which requires (1) a suppression of a material fact, (2) by a defendant with a duty to disclose the fact, (3) with an intent to defraud, and (4) the plaintiff was unaware of the fact and would not have acted as they did if they had known of the concealed or suppressed fact. *Graham v. Bank of Am., N.A.*, 226 Cal.App.4th 594, 606 (2014).

Like intentional misrepresentation, claims of negligent misrepresentation and fraudulent concealment require actual and justifiable reliance. *Chapman*, 220 Cal.App.4th at 230–31; *Hoffman v. 162 N. Wolfe LLC*, 228 Cal.App.4th 1178, 1185–86 (2014). Experience and sophistication are relevant factors in determining whether reliance is justifiable. *Id.* at 1194, 1196. "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable … he will be denied a recovery." *Seeger v. Odell*, 18 Cal. 2d 409, 415 (1941). While the "[r]easonableness of reliance is ordinarily a question of fact," the issue of "'whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.'" *Woods v. Google, Inc.*, 889 F.Supp.2d 1182, 1196 (N.D. Cal. 2012) (Davila, J.) (quoting *Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991)) (holding a sophisticated party could not have reasonably relied on statements that "contradict the clear language of the Agreement").

16

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Hammerling v. Google, LLC, No. 22-17024*, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024) (citing *Lazar v. Superior Ct.*, 909 P.2d 981, 984–85 (Cal. 1996).

Thus, Counterclaims 4 and 6 (Intentional Misrepresentation and Fraud/Constructive Fraud by Omission) must be alleged with particularity, including "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Ahern v. Apple Inc.*, 411 F.Supp.3d 541, 552 (N.D. Cal. 2019); *Gottreich v. San Francisco Inv. Corp.*, 552 F.2d 866, 867 (9th Cir. 1977); *Chapman*, 220 Cal.App. 4th at 231. In other words, the Counterclaims must explain the "who, what, when, where, and how." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

The heightened pleading requirements of Rule 9(b) also apply to Counterclaims 2, 5, 7, and 11-13. Where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," it is "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading … as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (internal citations omitted); *Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*, 500 F. Supp. 3d 952, 959 (N.D. Cal. 2020) (finding negligent misrepresentation claim sounded in fraud because the underlying conduct involved the same allegedly false representations as the claims for intentional misrepresentation and fraudulent deceit).

2. <u>Counterclaims 2, 4-7 and 11-13 are insufficiently pled and should be dismissed.</u>

Counterclaims 2, 4-7, and 11-13 are insufficiently pled for several reasons. First, the Counterclaims do not adequately plead a misrepresentation. Next, the facts alleged do not show justifiable reliance on the alleged representations.  Third, as for the alleged omissions/concealments, Counterclaimants have not shown a duty to disclose. Overall, the allegations do not meet the heightened requirements for pleading fraud-type claims in Fed. R. Civ. P. 9(b).

GREENFIELD

1

                   *i.*    *The Counterclaims do not adequately plead a misrepresentation or*
                               *related facts.*

      Counterclaims 2, 4-7, and 11-13 allege that the Inventors fraudulently misrepresented or omitted the same information—that the Stand-Alone Amplifiers allegedly do *not* meet the Annex 1 specifications. Counterclaim ¶¶ 31, 37–38, 40, 66, 77, 91, 103, 117, 137, 144, and 148. For example, Counterclaimants allege:

> Inventors misrepresented to Maxim that they were entitled to receive Royalty payments under the License Agreement for Stand-Alone Amplifiers while they were aware that the Stand-Alone Amplifiers did not meet the specification standards set for in the License Agreement upon which Royalties are conditioned. In reliance on the representations by the Inventors as Maxim employees, Maxim commenced paying Royalties on all Stand-Alone Amplifier products identified as royalty-bearing by Inventors, which Royalty payments have continued through the present.

Counterclaim ¶ 32–33; *see also id.* ¶ 35 ("Inventors never identified the ways in which the Stand-Alone Amplifier products did not meet the specification requirements in the License Agreement to qualify for Royalty payments. Inventors continued to allow Counterclaimants to believe the Stand-Alone Amplifier products met the specification requirements in order to continue receiving Royalty payments to which they were not entitled.").

      "[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission …." *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1002 (N.D. Cal. 2009); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (noting that where nondisclosure is a claim for misrepresentation in a cause of action for fraud, it must be pled with particularity under Rule 9(b)). However, the facts here are fatally thin. Counterclaims 2 and 4-6 rely on snippets from two questionable and rather brief emails. The first snippet, which is undated and from an unidentified sender, asks an unidentified recipient: "Do you know what the status is for this year's royalty payment." Counterclaim ¶¶ 68, 76, 90, 107.[8] The second snippet, in an email from Mr. Eschauzier to Maxim dated July 11, 2023, states: "▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

---

[8] Notably, Counterclaimants only allege this statement *implied* those products met the requirements to be entitled to royalties. *Id.*

18

██████████████████████" Counterclaim ¶¶ 77, 91, 108. That is it.[9] Neither of these quotes mentions the technical specifications of the Stand-Alone Amplifiers in question, which is what Counterclaimants allege was misrepresented. These quotes do not raise allegations above the speculative level, as would be required under the lesser demands of Rule 8(a), and they certainly do not meet the demands of Rule 9(b). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, under California law, "negligent misrepresentation requires a positive assertion of fact. An implied assertion or representation is not enough." *Hernandez v. Select Portfolio Servicing, Inc.*, No. 2:15-cv-01896, 2015 WL 12658459, at *10 (C.D. Cal. Oct. 29, 2015) (cleaned up) (quoting *Wilson v. Century 21 Great W. Realty*, 15 Cal.App.4th 298, 306 (1993)). Counterclaimants' allegation that these communications were "implying" something about technical capabilities (an unreasonable stretch) is insufficient. Counterclaim ¶¶ 68, 76, 90, 107. These two emails do not contain any positive assertions of fact. As a matter of law, they are insufficient to support the misrepresentation claims.

Moreover, Counterclaims 2, 4–7 and 11–13 rely on technical specifications that Counterclaimants have failed to identify. *See, e.g.,* Counterclaim ¶¶ 31, 89, and 105. To satisfy Rule 9(b), the Counterclaimants must "plead facts *explaining why* the statement was false when it was made." *Ahern*, 411 F.Supp.3d at 552. Here, Counterclaimants have not alleged any positive assertions of fact about the technical parameters and have not provided a single data point to explain *why* or *how* the Amplifiers did not meet specifications. Counterclaimants failed to allege "the specific content of the false representation"—the "what," if you will. *Ahern*, 411 F.Supp.3d at 552; *Cooper*, 137 F.3d at 627. Counterclaimants also failed to allege *how* these inquiries (which say nothing about the technical features of the Amplifiers) could be taken as a statement that the

---

[9] As noted above, elsewhere Counterclaimants cite a snippet of an earlier email about adding two products to the royalty list, but they state they are only relying on the later emails.  Counterclaim ¶¶ 37, 75. At any rate, the analysis would be the same because it is the same vague, non-assertive statement as in the other email about adding products that Counterclaimants cite.  It is not an affirmative statement of fact, much less a misrepresentation, and is certainly not something Counterclaimants could justifiably rely on.

Amplifiers met the standards of Annex 1 or if they did, how that was false. The reader is not provided with any context or support that might suggest that this was the actual expectation for royalty payments. And Counterclaimants have failed to even provide the "when" or the "who" for one of the two snippets they repeatedly refer to as a misrepresentation. Counterclaims ¶¶ 76, 90, 107.

Finally, the snippets fail to provide *any* facts to demonstrate that Counter-Defendants intended to induce *reliance* on the communications, nor do they provide facts to demonstrate that the Counter-Defendants knew or should have known that the Amplifiers did not meet the contractual standards. Since intent and scienter are elements of the various fraud-based claims, this is another example of how the Rule 9(b) requirements have not been met. *Chapman*, 220 Cal.App.4th at 230–31; *Graham*, 226 Cal.App.4th at 606.

For the same reasons, the Fifth and Seventh Affirmative Defenses, alleging unjust enrichment and unclean hands, respectively, should be stricken pursuant to Rule 12(f).[10] These defenses are based on the same hollow allegations that Counter-Defendants knew the technical specifications had not been met and made unspecified misrepresentations or omissions. ECF No. 23-4, pp. 12, 13.[11]

---

[10] "Courts in the Northern District require affirmative defenses to meet the *Twombly/Iqbal* standard in that they must provide fair notice; bare statements may not satisfy the affirmative defense pleading requirements of Fed. R. Civ. Proc. 8. *Neo4j, Inc. v. Purethink*, LLC, 480 F.Supp.3d 1071, 105 (N.D. Cal. 2020) (Davila, J.)."

[11] Also, Counterclaimants' allegations of misrepresentation are premised on a misreading of the contract. The Counterclaims assert that royalties were not due if Stand-Alone Amplifiers did not "meet the explicit specification requirements described in the License Agreement, specifically Annex 1." Counterclaim ¶¶ 23, 27, 31; *see also id.* ¶ 77. Similarly, in alleging negligent misrepresentation (Counterclaim 5), Counterclaimants assert that the Inventors had no reasonable grounds for believing the Stand-Alone Amplifiers met the "express specifications in Annex 1." Counterclaim ¶ 91. But there is no strict specification "requirement" in the License Agreement.

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD

For **Counterclaim 2** (Breach of the Covenant of Good Faith), Counterclaimants repeat the same insufficient allegations described above, and then assert that such communications prevented them from receiving the benefits of the agreement, causing decades worth of damage. Counterclaim ¶¶ 68–71. This claim alleges the same fraudulent conduct and is thus subject to the heightened pleading requirements of Rule 9(b). *Vess*, 317 F.3d at 1103. Yet they have not alleged any misrepresentation, any positive factual assertion, or pled facts explaining *how* it was false or how they amount to the "unfair interference" required by this Counterclaim. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010); *Cooper*, 137 F.3d at 627.

**Counterclaim 7** asserts that "[by] making representations that they were entitled to Royalty payments, Counter-Defendants created an implied promise that the products identified as royalty-bearing met the specifications listed in Annex 1." Counterclaim ¶ 118. However, there is no textual support for an interpretation of these communications as "implied promises," much less the "clear and unambiguous promises" that the law requires. *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 890 (1976). Furthermore, Counterclaim 7 does not even go into detail on the communications relied upon, but instead alleges omissions generally, without respect to time or place. Counterclaim ¶ 118. The heightened requirements of Rule 9(b) demand an explanation of "how," "when," and "where" the facts show that a promise was made. *Cooper*, 137 F.3d at 627. The burden was on Counterclaimants to confirm technical capabilities, as discussed below.

**Counterclaims 11** (Open Book Account) and **12** (Money Had and Received) are "common count" pleadings for indebtedness. *See Sidebotham v. Robison*, 216 F.2d 816, 827 n.4. (9th Cir.

---

Rather, the License Agreement entitles the Inventors to royalties if the licensed Patents "██

████████████████████████████████████████████████████████████████████████

██████████████████" License Agreement § 3.1 (emphasis added). Payment is conditioned upon

the technology "████████████████████████████████████████████████████████████████

████████████" *Id.* § 3.2. The contractual standard is "if the Amplifier Design Patents enable

products that show improvements of **"similar" magnitude** as compared to the attached product

and specifications listing, then this will establish … conceptual and economic value…" *Id.* § 2.7

(emphasis added).

1954). Yet, Counterclaimants incorporated *all* allegations, including their insufficient fraud

allegations, thus suggesting that these causes of action "sound in fraud" and have not met the

heightened pleading requirements of Rule 9(b) because they make no explanation of "how,"

"when," and "where." Moreover, they fail to state a claim for these common counts because there

is no allegations of any "account."

**Counterclaim 13** (Unjust Enrichment) must be dismissed with prejudice. Unjust

enrichment is not a cause of action under California law, and thus, Counterclaim 13 fails as a

matter of law. *Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010)

(There is "no cause of action for unjust enrichment."). [12]

    *ii. The License Agreement's erms show the alleged reliance was unjustified.*

Counterclaims 4–7 all include a requirement of reliance. Counterclaims 4, 5, and 7 require

that the recipient actually and justifiably relied upon the alleged misrepresentation(s). See

*Chapman*, 220 Cal.App.4th at 231 (both intentional and negligent misrepresentation require actual

and justifiable reliance); *Laks*, 60 Cal. App.3d at 890 (under claims of promissory estoppel,

reliance must be reasonable and foreseeable). Reliance must also be justifiable to establish

fraudulent concealment, as alleged in Counterclaim 6. *625 3rd St. Assocs., L.P. v. Alliant Credit

Union*, 633 F.Supp.2d 1040, 1050 (N.D. Cal. 2009). Reliance on concealed information can be

established by showing that "had the omitted information been disclosed one would have been

aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993).

Given the *actual* reliance element requirement, "[t]he plaintiff must plead that he believed

the representations to be true … and that in reliance thereon (or induced thereby) he entered into

the transaction." *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1063 (2012). The reliance must also be

shown to be *justifiable*:

---

[12] "Courts in the Northern District require affirmative defenses to meet the *Twombly/Iqbal* standard

in that they must provide fair notice; bare statements may not satisfy the affirmative defense

pleading requirements of Fed. R. Civ. Proc. 8. *Neo4j, Inc. v. Purethink*, LLC, 480 F.Supp. 3d 1071,

105 (N.D. Cal. 2020) (Davila, J.)."

In addition to pleading actual reliance, the plaintiff must set "forth facts to show that his or her actual reliance on the representations was justifiable, so that the cause of the damage was the defendant's wrong and not the plaintiff's fault." There must be more pled than a simple statement plaintiff justifiably relied on the statements. The complaint must contain "allegations of facts showing that the actual inducement of plaintiffs … was justifiable or reasonable.

*Id.* at 1066–67 (citations omitted).

Counterclaimants have not attempted to meet this requirement. And it plainly would not have been justifiable for Maxim or ADI to rely on the Inventor's short communications as implied (or express) promises. The contract expressly directs Maxim to ████████████████ its products for itself using the standards agreed to by the parties: "████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████" License Agreement § 3.2; *see also id.* § 2.7 (addressing how to assess relative performance sufficient to trigger payment). Under the plain language of the contract, it would have been unreasonable for Maxim/ADI to reflexively rely on a bare assertion by the Inventors. Maxim/ADI bore the responsibility under the contract to determine whether the products had adequate technical functionality to warrant royalty payments. Furthermore, Maxim and ADI are sophisticated players in the industry. Their alleged reliance on royalty inquiries as affirmations that products performed to expectations would not be justified. See *Hoffman*, 228 Cal. App. 4th at 1194, 1196 (noting "experience and sophistication are relevant factors in determining … justifiable reliance"); *cf.* Counterclaim ¶¶ 8–9 (alleging Counterclaimants are "global" and "worldwide" leaders in their industry). There is "only one conclusion" from these facts: any supposed reliance by Maxim and ADI on the Inventors' communications, even if one views them as naked assertions of entitlement to royalties, was unjustified as a matter of law. *Woods*, 889 F.Supp.2d at 1196 (holding a sophisticated party could not have reasonably relied on statements that "contradict the clear language of the Agreement").

Also, the pleadings themselves fail to show actual reliance—in fact they suggest that Maxim/ADI *did not* accept the Inventors' word, much less accept these inquiries as some form of promise. Counterclaimants allege that the Inventors implied entitlement to royalties when they "inquired" about payment or about adding new products to the royalty-bearing list. Counterclaim

¶¶ 76, 90. However, in response, Maxim/ADI "inquired how [they] arrived at the conclusion to add" new parts to the royalty base. *Id.* ¶¶ 77, 91. This response shows that Maxim/ADI did *not* believe the inquiries reflected a promise that technical specifications had been met, and that they were aware of and were exercising their own responsibility.

As for Counterclaim 2, the fact that the responsibility for evaluating the Amplifiers was on Maxim, not Number 14, also undercuts the claim for breach of the implied duty of good faith. "The implied covenant of good faith and fair dealing 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Rosenfeld*, 732 F.Supp.2d at 968 (citations omitted). The covenant instead "protects against one party *interfering with* another party's contract rights; it does not obligate a party to help another party perform that other's contract obligations." *Openshaw v. FedEx Ground Package Sys., Inc.*, 576 F. App'x 685, 688 (9th Cir. 2014).

> ### iii.   The Inventors have no duty to disclose.

The notion that the Inventors were under a duty to disclose is central to the fraud allegation in **Counterclaim 6**. Counterclaimants suggest that this duty to disclose arose due to (1) the transactional relationship between the parties arising from the Licensing Agreement and/or (2) the employer/former employee relationship between the two parties. Counterclaim ¶¶ 105-106. However, neither of these relationships generates a duty to disclose.

> There are four circumstances [where] nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997) (quotations omitted). The first circumstance noted in *LiMandri* requires a fiduciary relationship. The latter three circumstances presuppose "the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise. … [S]uch a relationship can only come into being as a result of some sort of transaction between the parties." *Id.* at 336–337.

GREENFIELD

Counter-Defendants can find no authority to suggest that a former employee is an "other relationship" that begets a duty to disclose. Counterclaimants are correct that a duty to disclose can arise out of a transactional relationship,[13] but only under the kind of circumstances outlined in *LiMandri*. Here, the Inventors did not have *exclusive* knowledge of material facts not known to Maxim. Maxim was fully capable of testing the Stand-Alone Amplifiers, and indeed were expected to do so per the License Agreement. Along the same lines, Maxim *manufactured* the Amplifiers, and it presumably tested them to ensure they met the performance specifications as advertised. Maxim plainly could also evaluate the Amplifiers to determine royalty eligibility. Thus, there could be no active concealment of any alleged shortcomings. Finally, the duty to disclose could not have arisen from the last *LiMandri* factor, "when the defendant makes partial representations but also suppresses some material facts," because the royalty inquiries from the Inventors were not representations that certain standards had been met, for at least the reasons described *supra*.

## **CONCLUSION**

Pursuant to Rule 12(b)(2) and *forum non conveniens*, Counter-Defendants respectfully request that the Inventors be dismissed from this action.  Pursuant to Rules 12(b)(6) and 12(f), this Court should dismiss counterclaims 1, 2, 4-7, and 11-13 and strike the Fifth and Seventh Affirmative Defenses.


Dated: July 19, 2024          By:*/s/John W. Harbin*
                              Rachel Thomas
                              Ale Burke-Vallejo
                              GREENFIELD LLP

                              John W. Harbin (*pro hac vice*)
                              Warren J. Thomas (*pro hac vice*)
                              MEUNIER CARLIN & CURFMAN LLC

---

[13] A Licensee/Licensor relationship does not beget a duty to disclose by matter of law. *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008) (finding that a "fiduciary relationship is not necessarily created simply when one party, in exchange for royalty payments, entrusts a secret invention to another party to develop, patent, and market the eventual product").

GREENFIELD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Plaintiff/Counter-Defendant NUMBER 14 B.V.
Specially Appearing for Counter-Defendants RUDY
ESCHAUZIER, and NICO VAN RIJN

GREENFIELD

NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DISMISSAL OF DEFENDANTS' COUNTERCLAIMS -- CASE NO.: 5:24-cv-02435-EJD