MICHAEL J. IOANNOU (SBN 95208)
KEVIN W. ISAACSON (SBN 281067)
ANGIE CHANG (SBN 351887)
AMANDA M. OGATA (SBN 354967)
ROPERS MAJESKI PC
333 W. Santa Clara St., Suite 910
San Jose, CA  95113
Telephone:     408.287.6262
Facsimile:     408.918.4501
Email:          michael.ioannou@ropers.com
                kevin.isaacson@ropers.com
                angie.chang@ropers.com
                amanda.ogata@ropers.com

Attorneys for Defendants and Counterclaimants
ANALOG DEVICES, INC. and
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NUMBER 14 B.V., | Case No.: 5:24-cv-02435-EJD |
| Plaintiff, | **OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC. | Date:        October 3, 2024 |
| Defendants. | Time:        9:00 AM |
| ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC., | Courtroom:   4, 5th Floor |
| Counterclaimants, | Judge:       Hon. Edward J. Davila |
| v. | |
| NUMBER 14 B.V., RUDY ESCHAUZIER, and NICO VAN RIJN, | |
| Counter-Defendants. | |

A Professional Corporation
San Jose

ROPERS
MAJESKI

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................ 2

III. ARGUMENT .................................................................................................................... 3

    A. California Has Personal Jurisdiction Over the Inventors ....................................... 3

        1. Legal Standard on Motion to Dismiss for Lack of Personal Jurisdiction .................................................................................................... 3

        2. The Ninth Circuit's Three-Prong Test for Specific Jurisdiction ................. 4

        3. The Inventors Purposefully Availed Themselves of the Privilege of Doing Business in California ...................................................................... 4

        4. The Counterclaims Arise Out of the Inventors' Contacts with California .................................................................................................... 6

        5. The Inventors Failed to Meet Their Burden to Overcome the Presumption that Personal Jurisdiction is Reasonable ............................... 7

    B. Venue is Proper in the Northern District of California ......................................... 10

        1. Counterclaimants Properly Brought their Counterclaims in this Forum Without Contradicting the Forum Selection Clause..................... 11

        2. Counter-Defendants Failed to Show They Are Entitled to Dismissal for Forum Non Conveniens....................................................... 12

        3. The Private and Public Factors Strongly Favor Trial in California .......... 13

            a. Public Factors Strongly Favor Keeping Counterclaims in this Court. .................................................................................. 13

            b. The Private Factors Strongly Favor Maintaining the Counterclaims in this Court. ......................................................... 14

    C. The Counterclaims State Facts Sufficient to State a Claim for which Relief may be Granted. ..................................................................................................... 15

        1. Breach of Contract is Sufficiently Plead.................................................... 15

        2. The Covenant of Good Faith and Fair Dealing was Sufficiently Pled...... 16

        3. The Fraud Allegations Meet the Heightened Pleading Standard .............. 17

            a. The Counterclaim Alleges Misrepresentation with Particularity. ................................................................................. 18

            b. Counterclaimants' Justifiable Reliance on the Alleged Misrepresentations are Pled with Particularity. .......................... 19

            c. Fraud/Constructive Fraud by Omission Meet the Heightened Pleading Standard and the Duty to Disclose has been Alleged. ...................................................................................... 21

        4. Counterclaims 2, 5, 11-13 Do Not Require Heightened Pleading ............ 22

    D. Negligent Misrepresentation is Sufficiently Pled ............................................... 22

    E. Detrimental Reliance is Sufficiently Pled. .......................................................... 22

ROPERS
MAJESKI

A Professional Corporation
San Jose

**TABLE OF CONTENTS**
(continued)

Page

F.    The Unjust Enrichment Claim is Sufficiently Pled................................. 23

G.    The Claim for Open Book Account is Sufficiently Pled........................ 23

H.    Counter-Defendants' Motion to Strike the Fifth and Seventh Affirmative Defenses (Unjust Enrichment and Unclean Hands) Should be Denied. ............... 24

IV.    CONCLUSION................................................................................. 25

A Professional Corporation
San Jose

ROPERS
MAJESKI

Opposition to Motion to Dismiss
Case No. 5:24-CV-02435-EJD

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                          **Page(s)**

3

4

*Adam v. Saenger,*
   303 U.S. 59 (1938) ......................................................................................................13

5

*Am. W. Airlines, Inc. v. GPA Grp., Ltd.,*
   877 F.2d 793 (9th Cir. 1989) .....................................................................................10

6

7

*Apex Directional Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc,*
   119 F. Supp. 3d 1117 (N.D. Cal. 2015) .....................................................................22

8

*Apte v. Japra,*
   96 F.3d 1319 (9th Cir. 1996) .....................................................................................20

9

10

*Artec Grp., Inc. v. Klimov,*
   186 F. Supp. 3d 1002 (N.D. Cal. 2016) .......................................................................4

11

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.,*
   480 U.S. 102 (1987) ....................................................................................................9

12

13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................15

14

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017) .....................................................................................4

15

16

*Ayco Farms, Inc. v. Ochoa,*
   862 F.3d 945 (9th Cir. 2017) .....................................................................................13

17

*Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.,*
   11 F.4th 972 (9th Cir. 2021) ........................................................................................9

18

19

*B&O Mfg. v. Home Depot U.S.A., Inc.,*
   No. C 07-02864 JSW, 2007 U.S. Dist. LEXIS 83998 (N.D. Cal. Nov. 1, 2007) ....12

20

21

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995)...................................................................................3, 6

22

*Barnes v. AT&T Pension Benefit Plan,*
   718 F. Supp. 2d 1167 (N.D. Cal. 2010) ....................................................................24

23

24

*Boschetto v. Hansing,*
   539 F.3d 1011 (9th Cir. 2008)..................................................................................4, 5

25

26

*Bristol-Myers Squibb Co. v. Superior Court,*
   582 U.S. 255 (2017) ....................................................................................................3

27

28

A Professional Corporation
San Jose

ROPERS
MAJESKI

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Cases**                                                                    **Page(s)**

4

*Bruton v. Gerber Prods. Co.*,
No. 15-15174, 2017 U.S. App. LEXIS 12833 (9th Cir. July 17, 2017)(finding
unjust enrichment an independent cause of action based on the California
Supreme Court's decisions allowing unjust enrichment)............................................................23

5

6

7

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)............................................................6, 8

8

9

*Buschman v. Anesthesia Bus. Consultants LLC*,
42 F. Supp. 3d 1244 (N.D. Cal. 2014) ............................................................15

10

*Bushell v. JPMorgan Chase Bank, N.A.*,
220 Cal. App. 4th 915 (2013)............................................................22

11

12

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990)............................................................17

13

*Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*,
500 F. Supp. 3d 952 (N.D. Cal. 2020) ............................................................18

14

15

*Chapman v. Skype Inc.*,
220 Cal. App. 4th 217 (2013) ............................................................22

16

17

*City Sols. v. Clear Channel Communs., Inc.*,
365 F.3d 835 (9th Cir. 2004)............................................................17, 19

18

19

*Colaprico v. Sun Microsystems, Inc.*,
758 F. Supp. 1335 (N.D. Cal. 1991) ............................................................24

20

*Cork v. CC-Palo Alto, Inc.*,
534 F. Supp. 3d 1156 (N.D. Cal. 2021) ............................................................21

21

22

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008)............................................................16

23

24

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989)............................................................10

25

*Doe v. WebGroup Czech, A.S.*,
93 F.4th 442 (9th Cir. 2024) ............................................................7

26

27

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002)............................................................9, 12, 13

28

ROPERS
MAJESKI

A Professional Corporation
San Jose

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                                                    **Page(s)**

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
   890 F.2d 165 (9th Cir. 1989)..................................................................................25

*Eloquence Corp. v. Home Consignment Ctr.*,
   49 Cal. App. 5th 655 (2020) ..................................................................................23

*ESG Capital Partners, Ltd. P'ship v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016)................................................................18, 23, 24

*FDIC v. British-American Ins. Co.*,
   828 F.2d 1439 (9th Cir. 1987)...................................................................6, 7, 8

*Frigate Ltd. v. Damia*,
   No. C 06-04734 CRB, 2007 U.S. Dist. LEXIS 5902 (N.D. Cal. Jan. 12, 2007) .....................12

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*,
   784 F.2d 1392 (9th Cir. 1986)....................................................................................6

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)...................................................................................21

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003)....................................................................................3

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994 )...................................................................................17

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).....................................................................................................3

*James v. Childtime Childcare, Inc.*,
   2007 U.S. Dist. LEXIS 43753 (E.D. Cal. May 31, 2007)..............................................20

*Lazar v. Trans Union LLC*,
   195 F.R.D. 665 (C.D. Cal. 2000) ............................................................................24

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000)..................................................................................25

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001)..................................................................................13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025. (9th Cir. 2008)................................................................................15

A Professional Corporation
San Jose

ROPERS
MAJESKI

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                                          **Page(s)**

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................................................18

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007)......................................................................................8

*Molander v. Google LLC*,
   473 F. Supp. 3d 1013 (N.D. Cal. 2020) ....................................................................12

*Nayab v. Capital One Bank USA*,
   942 F.3d 480 (9th Cir. 2019).....................................................................................21

*Neo4j, Inc. v. Purethink, LLC*,
   480 F. Supp. 3d 1071 (N.D. Cal. 2020) ....................................................................24

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
   157 Cal. App. 4th 835 (2007) ...................................................................................20

*Petersen v. Allstate Indem. Co.*,
   281 F.R.D. 413 (C.D. Cal. 2012) ..............................................................................22

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).................................................................................................11

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018) ......................................................................19

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) .............................................................................................15

*Sangster v. Paetkau* (1998)
   68 Cal.App.4th 151 ..................................................................................................19

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)..................................................................................4, 7

*Shuker v. Smith & Nephew, PLC*,
   885 F.3d 760 (3d Cir. 2018)......................................................................................10

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988).....................................................................................5

*Third Story Music, Inc. v. Waits*,
   41 Cal. App. 4th 798 (1995) .....................................................................................16

ROPERS
MAJESKI

A Professional Corporation
San Jose

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                                      **Page(s)**

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).................................................................18, 22

*Vogt-Nem, Inc. v. M/V Tramper, et al.*,
    263 F. Supp. 2d 1226 (2002)........................................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014).......................................................................................4

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) .....................................................10

*Wolf v. Walt Disney Pictures & Television* (2008)
    162 Cal.App.4th 1107 ..................................................................................16

*Wood, Curtis & Co. v. Seurich*,
    5 Cal. App. 252 (Dist. Ct. App. 1907) .......................................................16

*Woods v. Google, Inc.*,
    889 F. Supp. 2d 1182 (N.D. Cal. 2012) .....................................................19

*Wyshak v. City Nat'l Bank*,
    607 F2d 824 (9th Cir 1979)..........................................................................24

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006).......................................................................4

*Ziegler v. Indian River Cnty.*,
    64 F.3d 470 (9th Cir. 1995)............................................................................9

**STATUTES**

Cal. Civ. Code § 1710 ......................................................................................22

Cal. Civ. Code § 3392 ......................................................................................16

Cal. Labor Code § 2863 ...................................................................................20

Fed. R. Civ. P. 8 ...............................................................................................24

Fed. R. Civ. P. 8(a)(2) ......................................................................................15

Fed. R. Civ. P. 8(b) ..........................................................................................24

Fed. R. Civ. P. 9(b) .....................................................................................18, 22

Opposition to Motion to Dismiss
Case No. 5:24-CV-02435-EJD

## TABLE OF AUTHORITIES
(continued)

**Cases**                                                              **Page(s)**

Fed. R. Civ. P. 10 ................................................................................15

Fed. R. Civ. P. 12 ................................................................................24

Fed. R. Civ. P. 12(b)(2) .........................................................................1

Fed. R. Civ. P. 12(b)(6) .........................................................................1

Fed. R. Civ. P. 15 ................................................................................25

Fed. R. Civ. P. 15(a) ............................................................................25

**OTHER AUTHORITIES**

Rest. 2d of Contracts, § 205 ...................................................................16

1    Defendants and Counterclaimants, Analog Devices Inc., ("ADI"), and Maxim Integrated

2   Products Inc., ("Maxim", collectively, "Counterclaimants"), respectfully submit this Opposition

3   to Counter-Defendants, Number 14 B.V., ("Number 14"), Rudy Eschauzier, and Nico Van Rijn's

4   (collectively "Counter-Defendants") Motion to Dismiss and Motion to Strike (the "Motion").

## I.    **INTRODUCTION**

6    The Motion attempts to rewrite and mischaracterize the facts. A motion to dismiss under

7   Rules 12(b)(2), 12(b)(6), or a motion to strike under Rule 12(f) are not appropriate vehicles to

8   debate the merits of the allegations in the Answer/Counterclaim ("Counterclaim").

9    This action stems from a contractual dispute between Maxim and Rudy Eschauzier and

10   Nico van Rijn (the "Inventors") acting through Number 14, an entity Inventors wholly own and

11   control. The Inventors consented to this Court's jurisdiction when they caused Number 14 to

12   commence an action based on the Inventors' contract with Maxim. Any claim of inconvenience

13   by Inventors is disingenuous as they are already litigating in this forum through Number 14.

14    This Court has personal jurisdiction over Number 14 and the Counterclaim asserts facts

15   justifying the exercise of personal jurisdiction over Inventors. The Inventors entered into a

16   complex, long-term relationship with Maxim in California through a written license agreement

17   ("License Agreement" or "Agreement") in connection with written employment agreements.

18    Counter-Defendants' position that the Agreement requires directly-related counterclaims

19   to be filed in a separate action in the Netherlands is nonsensical. Logical sense, the Agreement,

20   and existing law dictate that Inventors agreed to defend counterclaims in either forum after an

21   action was initiated, and thus are subject to this Court's personal jurisdiction.

22    Moreover, Counterclaimants have alleged with particularity that Counter-Defendants

23   engaged in a multi-layered breach of contract, misrepresentation, and concealment concerning

24   Number 14's amplifier design patents (the "Patents"). Against the express condition of the

25   Agreement, Counter-Defendants concealed that the Patents did not enable Maxim products to

26   meet the Agreement's specification requirements and misrepresented their entitlement to

27   royalties. In so doing, Counter-Defendants also did not act in good faith.

28    Therefore, the Court should deny the Motion. Should the Court believe the Counterclaim

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    is in any way insufficient, Counterclaimants respectfully request leave to amend.

2    **II.    <u>FACTUAL BACKGROUND</u>**

3         Around July 20, 2007, Maxim entered into the License Agreement with Inventors. ECF 1

4    ¶ 3; ECF 22 15:27-2, ¶ 10.  Under the Agreement, Inventors were to "use their experience and

5    personal skills to develop certain Know-How relating to Amplifier Design Technology." ECF 1 ¶

6    2, Exh. 1, § B; Declaration of Mihai Murgulescu ("Murgulescu Decl."), Exh. E. ████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ███████████    ECF 1 Exh. 1, § 3.3; ECF 22 ¶ 11. █████████████████

10   ████████████████████████████████████████████████████████████

11   ███████████████████████████████    ECF 1, Exh. 1 § 3.3.

12        As stated in the License Agreement, Maxim and Inventors entered into a written

13   employment agreement with Inventors "responsible for the definition, design and development of

14   integrated circuit products for Maxim's Multi Media Business Unit." ECF 22 ¶ 12. Subject to

15   Maxim's evaluation of each "Stand-Alone Amplifier", the Inventors controlled the development

16   of the amplifier design technology. ECF 22 ¶¶ 11, 17; *see also* ECF 1 Exh. 1, § 3. Inventors had

17   detailed knowledge of each amplifier product developed as Maxim employees. ECF 22 ¶ 17.

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   █████████████████    ECF 1 ¶ 3; ECF 22 ¶¶ 10, 18-23; 25. In exchange, Maxim paid royalties. *Id.*

21        Royalty payments are expressly conditioned on amplifier products utilizing the amplifier

22   design patents to meet express specification requirements. ECF 22 ¶¶ 18-23. Around 2009,

23   Counter-Defendants represented to Maxim that they had completed the amplifier design patents

24   to enable development of products meeting the Agreement's explicit specification requirements

25   and thus entitled to receive royalties. Relying on Counter-Defendants' representations, Maxim

26   paid royalties starting in 2010 and continued to do so for many years. ECF 22 ¶¶ 18-23; 27-46.

27        Section 10.1 of the Agreement created a limited right for Inventors to transfer rights under

28   the Agreement to a wholly-owned entity through a separate agreement, but no separate agreement

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  between Maxim and a wholly-owned entity was ever created. ECF 1, Exh. ¶ 10.1; ECF 22 ¶ 26;

2  Murgulescu Decl., Exh. E. Inventors claim they transferred their rights under the License

3  Agreement to Number 14 around February 2009. ECF 22 ¶ 26. Inventors are the only two owners

4  of the entity and have absolute ownership and control over Number 14. ECF 1 ¶ 4; ECF 22 ¶ 16.

5  On or around May 2015, Inventors terminated their employment with Maxim. ECF 22 ¶ 34.

6        All amplifier products developed for Maxim fail to meet the Agreement's specification

7  requirements. *Id*. Counter-Defendants were never entitled to royalties. *Id.* Counter-Defendants

8  had actual knowledge of this shortcoming, yet continued to demand royalties. ECF 22 ¶¶ 31-33;

9  79; 83. ███████████████████████████████████. ECF 22 ¶ 40.

10        In August 2021, ADI completed an acquisition of Maxim, which became ADI's wholly-

11  owned subsidiary. ECF 1 ¶ 6; ECF 22 ¶¶ 53. As part of the acquisition, Maxim conformed its

12  former accounting practices to ADI's accounting procedure. ECF 22 ¶¶ 53-55. Before and

13  thereafter, Counter-Defendants calculated royalties as described in the License Agreement using

14  its then-existing accounting system. ECF 22 ¶¶ 48-55. Counter-Defendants claim that Maxim's

15  application of the express royalty calculation to its then-existing accounting system is improper

16  and a breach of contract, which Maxim disputes. *Id.*

17  **III.   ARGUMENT**

18        **A.   California Has Personal Jurisdiction Over the Inventors**

19              ***1.   Legal Standard on Motion to Dismiss for Lack of Personal Jurisdiction***

20        When a defendant's motion to dismiss for lack of jurisdiction is made in its initial

21  response, the plaintiff need only present evidence to make a *prima facie* showing that personal

22  jurisdiction exists. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122,

23  1129 (9th Cir. 2003). The plaintiff must "demonstrate facts that if true would support jurisdiction

24  over the defendant." *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).

25        Constitutional due process requires a nonresident defendant to have "certain minimum

26  contacts with [the forum state] such that the case does not offend 'traditional notions of fair play

27  and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal

28  jurisdiction exists if there exists either general or specific jurisdiction. *Bristol-Myers Squibb Co.*

ROPERS
MAJESKI

A Professional Corporation
San Jose

*v. Superior Court*, 582 U.S. 255, 271 (2017).

### 2. The Ninth Circuit's Three-Prong Test for Specific Jurisdiction

The question of whether a forum state can exercise specific jurisdiction over a nonresident centers on the connection between the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Specifically, the defendant's conduct related to the suit must create a substantial connection with the forum state. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

In the Ninth Circuit, courts use a three-prong test to determine whether to exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The claimant bears the burden to satisfy the first two prongs of the test. *Id.* Once the claimant satisfies the first two prongs of the test, then the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.*

### 3. The Inventors Purposefully Availed Themselves of the Privilege of Doing Business in California

The first prong may be satisfied by purposeful availment of the privilege of doing business in the forum, by purposeful direction of activities at the forum, or by some combination thereof. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In *Artec Grp., Inc. v. Klimov*, the Court found the purposeful availment analysis is appropriate because the claims related to the contractual relationship between the parties. *Artec Grp., Inc. v. Klimov*, 186 F. Supp. 3d 1002, 1007 (N.D. Cal. 2016); *see Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)("we have typically analyzed cases that sound primarily in

A Professional Corporation
San Jose

ROPERS
MAJESKI

1  contract …under a "purposeful availment" standard"). Since the counterclaims arise in

2  connection with the Agreement, the purposeful availment analysis is appropriate here.

3      To establish purposeful availment, the court will look at the defendant's entire course of

4  dealing with the forum state. Purposeful availment can be established by a contract's negotiations,

5  its terms, its contemplated future consequences, and the parties' actual course of dealing. *Id*. In

6  addition, the defendant will have purposefully availed themselves to the forum by performing

7  "some type of affirmative conduct which allows or promotes the transaction of business within

8  the forum state . . . For example, the solicitation of business in the forum state that results in

9  business being transacted or contract negotiations will probably be considered purposeful

10  availment." *Sinatra v. Nat'l Enquirer, Inc*., 854 F.2d 1191, 1195 (9th Cir. 1988).   Here, the

11  License Agreement in connection with the Inventors' employment agreements with Maxim

12  evidence the privilege of doing business as well as directing their activities at the forum.

13  Specifically, the Inventors maintained an eight-year long-term relationship with Counterclaimants

14  to work closely with Maxim to continue development on technology using the Inventors patents.

15  Murgulescu Decl., Exh. A-D; ECF 22 ¶¶ 12-15, 34.

16      The Inventors were responsible for the definition, design, and development of integrated

17  circuit products for Maxim's MultiMedia Business Unit. Murgurlescu Decl., Exh. A-B. They

18  were also responsible for the overall management of the Delft Design Centre and its issues related

19  to the facility, the recruiting of design engineers and other technical staff, maintaining projects on

20  schedule, communicating project status back to Maxim's corporate headquarters, and

21  communicating information received from Maxim's corporate headquarters to the staff in the

22  Delft Design Centre. *Id.* Further, the parties entered into a license agreement for the Patents

23  which granted the Inventors royalties for technology they developed at Maxim if they met

24  specifications. Murgulescu Decl. Exh. E. In light of the parties' long-term relationship, and that

25  the Inventors helped develop Maxim products with their patents, it is reasonable to conclude the

26  Inventors purposely availed themselves to jurisdiction in California.

27      While Maxim did establish the Delft Design Centre, the Inventors were required to report

28  to and work with the Maxim corporate headquarters in California. Murgulescu Decl. Exhs. A-B.

ROPERS MAJESKI

A Professional Corporation
San Jose

Opposition to Motion to Dismiss
Case No. 5:24-CV-02435-EJD

1    The Inventors also interfaced with Maxim employees from California to establish which Products

2    were subject to royalties. Murgulescu Decl. Exh. E. The Inventors also made use of Maxim's

3    resources in California, such as their research and development program, engineers, and

4    technology in addition to the resources for the Delft Design Centre. *Id.*; *See Burger King Corp. v.*

5    *Rudzewicz,* 471 U.S. 462, 480 (1985)(citation omitted)(holding Defendant's "acceptance of long-

6    term and exacting regulation of his business" from Burger King's headquarters, the "quality and

7    nature" of his relationship cannot be seen as "random, "fortuitous, or attenuated"). The Inventors

8    voluntarily entered into a continuous License Agreement that has wide-reaching contacts with

9    Maxim employees, resources, and contacts in California. *See FDIC v. British-American Ins. Co.,*

10   828 F.2d 1439, 1443 (9th Cir. 1987).

11       Further, the employment agreements state that both Inventors signed their respective

12   employment agreements in Sunnyvale, California in July 2007. Murgulescu Decl., Exh. A-B.

13   This shows that it would be foreseeable for the Inventors to be subjected to litigation in

14   California. *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398

15   (9th Cir. 1986)("A defendant who enters into an obligation which she knows will have effect in

16   the forum state purposely avails herself of the privilege of acting in the forum state").

17       Based on their long-term employment and business relationship, the Inventors have

18   purposely availed themselves of the benefits and protections of California.

19       ***4.    The Counterclaims Arise Out of the Inventors' Contacts with California***

20       The second prong for specific jurisdiction requires a claim which arises out of or relates to

21   the defendant's forum-related activities. To determine whether a particular claim arises out of the

22   forum-related activities, the court uses a "but for" test. *Ballard v. Savage*, 65 F.3d 1495, 1500

23   (9th Cir. 1995). The "but for" test for personal jurisdiction is proper only where "but-for" the

24   defendant's activities in the forum, the plaintiff's injuries would not have occurred. *Ballard v.*

25   *Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)(applying the "but-for" test and finding "but-for" the

26   defendant's conduct, plaintiff would not have been injured in the forum). A corporation incurs

27   economic loss, for jurisdictional purposes, in the forum of its principal place of business;

28   *CollegeSource, Inc. v. AcademyOne*, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011)("[A] corporation

A Professional Corporation

San Jose

ROPERS

MAJESKI

Opposition to Motion to Dismiss
Case No. 5:24-CV-02435-EJD

incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business" and any harm to business and profits was felt in the "forum of the relevant market.")

Here, Counterclaimant's counterclaims would not have arisen, but for Counter-Defendants' contacts with Maxim in California. The claims arise out of the License Agreement and Counter-Defendants' employment and business relationship which constitute substantial contacts with California. "But for" Counter-Defendants' purposeful contacts, including, but not limited to, entering into a license agreement and using Maxim's resources to develop product as Maxim employees in California, Counterclaimants' harm in California would not have occurred. Accordingly, the second prong requirement for specific personal jurisdiction has been met.

### 5. *The Inventors Failed to Meet Their Burden to Overcome the Presumption that Personal Jurisdiction is Reasonable*

Once the plaintiff establishes the first two prongs of the test for specific personal jurisdiction, the burden then shifts to the defendant to present a compelling case that personal jurisdiction would be unreasonable. *See Schwarzenegger*, 374 F.3d at 802. Here, Counter-Defendants cannot establish that exercising personal jurisdiction would be unreasonable.

The Ninth Circuit considers seven specific factors to determine reasonableness:
(1) the extent of the defendants' purposeful injection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum;
(3) the extent of the conflict with the sovereignty of the defendant's state;
(4) the forum state's interest in adjudicating the dispute;
(5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7) the existence of an alternative forum.

*CollegeSource, Inc.*, 653 F.3d at 1079.

The above factors weigh heavily in favor of Counterclaimants. First, the purposeful interjection factor is analogous to the purposeful direction prong. *Doe v. WebGroup Czech, A.S.*, 93 F.4th 442, 458 (9th Cir. 2024). The Inventors erred by categorizing this case as a "contract-alone" case. ECF 43 p. 6:20-22; *see Fed. Deposit Ins. Corp.* , 828 F.2d at 1443. Instead, purposeful interjection, including, but not limited to, the business relationship between the Inventors and Counterclaimants, is not limited to the License Agreement. Murgulescu Decl. Exhs.

ROPERS MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  A-B, E. While employed as high-level engineers, the Inventors assisted in developing Maxim

2  products using the Patents. *Id.* The Inventors took advantage of Maxim's resources in California

3  when developing the product. *Id.* Therefore, the Inventors' relationship with Maxim purposefully

4  injected into this forum state's affairs.

5        Next, Counter-Defendants misleadingly claim that the License Agreement was "executed"

6  in the Netherlands. ECF 43, 6:25. While the signatory page shows the *Inventors* signed the

7  License Agreement in Delft, the place a contract was signed is not dispositive of where it was

8  executed. *See Burger King*, 471 U.S. at 476 (emphasizing that the United States Supreme Court

9  has "consistently rejected the notion that an absence of physical contacts can defeat personal

10  jurisdiction there."). At the time, Maxim's corporate headquarters was in Sunnyvale, California,

11  and it signed the Agreement in California. Murgulescu Decl., Exh. E. The License and

12  employment agreements were directed at contacts in California. The lack of a written location

13  under Maxim's signature does not mean the License Agreement was executed in the Netherlands.

14        Further, Counter-Defendants mislead this Court by inferring the forum-selection clause

15  contemplated that claims be made only in the Netherlands and that the laws of the Netherlands be

16  applied. ECF 43, 6:25-27. The forum selection clause expressly states that should *Counter-*

17  *Defendants* "file[], initiate[], or assert[] a claim **in the capacity of [plaintiffs]**, then such claim

18  shall be submitted to…[the] Federal Courts in Santa Clara County California…" (emphasis

19  added). " Section 11.1(ii) of the License Agreement. *See* ECF No. 42; pg 6:23-28, 7:1-2. It is not

20  true that any interjection is "slight" because the work was performed in the Netherlands. ECF 43,

21  7:4-7. Any work performed was as employees of Maxim, which was headquartered in California.

22  Murgulescu Decl. Exhs. A-B. Therefore, the Inventors purposefully and substantially interjected

23  contacts with California.

24        Next, with advances in transportation and telecommunications, any alleged burden of

25  litigation in a forum other than the Inventors' residence is substantially less. *Menken v. Emm*, 503

26  F.3d 1050, 1060 (9th Cir. 2007) This is especially true as the Inventors are already litigating

27  Number 14's claims in California. The Supreme Court recognized, "[w]hen minimum contacts

28  have been established, often the interest of the plaintiff and the forum in the exercise of

1   jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal*

2   *Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987)).

3       The Inventors wholly own and operate Number 14. As indicated in Counter-Defendants'

4   Certificate of Interested Parties (ECF No. 4), the Inventors have a financial and non-financial

5   interest in this case. Consequently, the Inventors' presence in California is already necessary to

6   litigate Number 14's Complaint. Further, the Inventors were signatories to the License

7   Agreement. Therefore, it is unreasonable for Counter-Defendants to claim burden litigating in

8   California. The second factor weighs in favor of Counterclaimants.

9       As for the third, fourth, and fifth factors, any interference with the sovereignty of the

10   Netherlands is slight and not unreasonable. Counter-Defendants, through Number 14, have

11   alleged California contract and tort claims against Counterclaimants. California has a very strong

12   interest in adjudicating contract disputes involving California residents, weighing in favor of

13   Counterclaimants. *See Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd*., 11 F.4th 972, 984 (9th Cir.

14   2021)(finding the United States is interested in protecting and providing redress to its citizens).

15       Number 14 initiated this action in California. If the directly-related counterclaims were

16   litigated in the Netherlands, the difference in the laws between the two forums would be highly

17   inefficient for the parties and the Court. This would create a cycle of procedural disputes, risk of

18   conflicting rulings and judgments, confusion about enforcement of judgments, and litigation

19   about prevailing parties and remedies. Efficiency dictates litigating all claims in California.

20       Moreover, Counter-Defendants concede that California would provide an efficient judicial

21   resolution "given witnesses and evidence" are in California. *See* ECF 43, 8:1-4, citing *X Corp. v.*

22   *Ctr. For Countering Digital Hate Ltd., No. 23-CV-03836-CRB*, 2024 WL 1245993, at *14 (N.D.

23   Cal. Mar. 25, 2024). However, Counter-Defendants' request that the Complaint be brought in this

24   forum ***and*** the Counterclaim be brought in the Netherlands is misguided and contradicts their own

25   statement. Therefore, the third, fourth, and fifth factors greatly favor Counterclaimants.

26       The sixth factor, importance of the forum to plaintiff's interest in convenient and effective

27   relief, is given "little weight," (*Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995)) as

28   "plaintiff's convenience is not of paramount importance." *Dole Food Co. v. Watts*, 303 F.3d

ROPERS MAJESKI
A Professional Corporation
San Jose

1104, 1116 (9th Cir. 2002). However, the Inventors voluntarily entered the License Agreement, knowing they may litigate in California, where Maxim was headquartered. Through Number 14, owned and controlled by the Inventors, Counter-Defendants voluntarily filed this action in California. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522-23 (9th Cir. 1989)(finding personal jurisdiction over individual defendants who each owned 50% of the subject company and were its only officers and directors).  Therefore, the sixth factor weighs in favor of Counterclaimants.

Finally, the court only assesses the seventh factor "when the forum state is shown to be unreasonable." *CollegeSource, Inc.*, 653 F.3d at 1080. Given that the factors strongly favor Counterclaimants, the exercising of personal jurisdiction in California is entirely reasonable.

In sum, the Counter-Defendants' motion to dismiss for lack of personal jurisdiction should be denied with all claims litigated in California. Counterclaimants have established that the Inventors have minimum contacts with California, such that personal jurisdiction is reasonable.

If the Court disagrees, Counterclaimants request the opportunity to conduct limited jurisdictional discovery concerning personal jurisdiction. *See Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989)(permitting jurisdictional discovery on pertinent facts bearing concerning jurisdiction). Here discovery will produce evidence of the Inventors' contacts with California in connection with the License Agreement.  Furthermore, jurisdictional discovery concerning the relationship between Inventors and Number 14 will support exercise of personal jurisdiction over Inventors with Number 14 as their alter ego.( *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780-81 (3d Cir. 2018) (permitting jurisdictional discovery to explore alter ego theory if discovery is not clearly frivolous); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522-23 (9th Cir. 1989)(finding personal jurisdiction over individual defendants who each owned 50% of the subject company and were its only officers and directors).

### B.      Venue is Proper in the Northern District of California

Generally, "a plaintiff's choice of forum is afforded substantial weight." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). Dismissal under 12(b)(3) for *forum non conveniens* is proper only when trial in the chosen forum would "establish … oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen

ROPERS MAJESKI

A Professional Corporation
San Jose

1   forum [is] inappropriate because of considerations affecting the court's own administrative and

2   legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

3       **1.   *Counterclaimants Properly Brought their Counterclaims in this Forum Without Contradicting the Forum Selection Clause.***

4

5       Counter-Defendants' interpretation of the forum selection clause ("FSC") misses the mark

6   and is a recipe for chaos and inefficiency. Venue is properly determined by the location chosen by

7   the party who initiated, filed, or asserted the claims, *as the Plaintiff* of the action.

8       Counter-Defendants' reliance on *Vogt-Nem, Inc. v. M/V Tramper, et al.*, 263 F. Supp. 2d

9   1226 (2002), is misplaced. *Docksider*, *Forte Tech*, and the other cases cited by Counter-

10  Defendants, also do not support their erroneous interpretation of the FSC. *Vogt-Nem* concerned a

11  dual recognition clause, as here; however, *Vogt-Nem* differs from this case because it concerned a

12  dual recognition clause between three separate parties: Vogt-Nem (Plaintiff), West African

13  Shipping Company (Defendant), and VWG (Impleader). *Id.* at 1229.  In *Vogt-Nem*, the Court

14  dismissed the case on forum non conveniens because when the defendant impleaded VWG, the

15  action proceeded as if *plaintiff* had initiated the suit *against the third-party defendant as well as*

16  *the original defendant*; thus, because the *plaintiff* could not have filed its claim against the

17  impleader in that forum, the third-party complaint was dismissed. *Id.* at 1230, 1234. This is not

18  the case here, as the counterclaims against the Inventors do not affect the plaintiffs, whether

19  separately the Inventors and Number 14, or jointly, ability to file this action in this forum.

20      Counterclaimants do not disagree that the FSC is valid, nor do they "sidestep [their]

21  contractual commitment", to enforce the forum selection clause. ECF 43, 11:23. Section 11.1(ii)

22  of the License Agreement states: "[i]f any or both of the Inventors is the party that files, initiates,

23  or asserts a claim ***in the capacity of a plaintiff***, then such claim shall be submitted to…[the]

24  Federal Courts in Santa Clara County California…" (emphasis added).

25      The express terms of the FSC apply *only* to "the party that files, initiates, or asserts a

26  claim ***in the capacity of a plaintiff***", none of which apply to Counterclaimants. Counterclaimants

27  did not file, initiate, or assert a claim in the capacity of a plaintiff. Counter-Defendants, through

28  Plaintiff Number 14, filed their Complaint in this Court. In response, Counterclaimants filed their

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  Answer and compulsory and permissive counterclaims.

2        More pragmatically, the Inventors' efforts to change the venue of the counterclaims to the

3  Netherlands are fundamentally flawed, impractical, and nonsensical. Courts within this district

4  have consistently avoided simultaneous litigation of identical lawsuits across two different

5  jurisdictions. *See e.g., Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1017 (N.D. Cal.

6  2020)(declining "jurisdiction over an action when a complaint involving the same parties and

7  issues has already been filed in another district."). Specifically, courts have chosen to reject forum

8  selection clauses that would fragment litigation into multiple jurisdictions, and have instead

9  prioritized judicial efficiency and preventing duplicative decisions. *See Frigate Ltd. v. Damia*,

10  No. C 06-04734 CRB, 2007 U.S. Dist. LEXIS 5902, at * 7-8 (N.D. Cal. Jan. 12,

11  2007)(disregarding FSC that would require a counterclaim to be filed in a foreign country

12  because enforcing FSC was contrary to judicial policy and would deprive defendant of her day in

13  court); *B&O Mfg. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007 U.S. Dist. LEXIS

14  83998, at *8 (N.D. Cal. Nov. 1, 2007)(refusing to enforce conflicting FSCs that would result in

15  parallel litigation on both coasts because it would be inefficient for both judicial and the parties'

16  resources and unreasonable). Here, Counter-Defendants' interpretation would require them to

17  bring their own counterclaims in a third, separate litigation in California. This is impractical and

18  nonsensical. Therefore, severing the counterclaims would run contrary to judicial policy and this

19  Court should exercise its discretion to allow the Counterclaim to proceed in this action.

20        **2.    *Counter-Defendants Failed to Show They Are Entitled to Dismissal for***
21              ***Forum Non Conveniens.***

22        Ironically, Counter-Defendants invoke *forum non conveniens* to create a less convenient

23  outcome. Counter-Defendants argue against the very nature of the *forum non conveniens* doctrine

24  with their proposed scheme of international, double-tracked litigation, which should be denied.

25        The party seeking to dismiss for *forum non conveniens* must make a clear showing of facts

26  establishing such oppression and vexation of a defendant as to be out of proportion to plaintiff's

27  convenience. *Dole Food Co.*, 303 F.3d at 1118 . *Forum non conveniens* is an exceptional tool to

28  be used sparingly and does not allow plaintiffs to choose the optimal forum for their claim. *Id*.

ROPERS
MAJESKI

A Professional Corporation
San Jose

When deciding a motion for *forum non conveniens*, the court must first examine whether an adequate alternative forum exists, and then whether the balance of private and public interest factors favor dismissal. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). Here, Counter-Defendants do not contend that California is an inadequate forum; indeed, Counter-Defendants concede California *is* adequate. *See* ECF 43, 8:1-4.

### 3.   The Private and Public Factors Strongly Favor Trial in California

Next, this Court must determine whether the balance of private and public interest factors favor dismissal. *Id.* Accordingly, the balance of private and public interest factors lies heavily in favor of keeping the counterclaims in California. The private interest factors are:

(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof;

(4)  whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

The public interest factors are:

(1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) the amount of congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum.

*Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017).

"The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence." *Adam v. Saenger*, 303 U.S. 59, 68 (1938).

The public and private interests strongly favor maintaining all claims in California.

a.    Public Factors Strongly Favor Keeping Counterclaims in this Court.

California has a strong interest in providing its residents with redress when they are deprived of contractual benefits, including on the counterclaims. *See Dole Food Co.*, 303 F.3d at 1115-19("California has an interest in protecting corporations based in California. The

ROPERS
MAJESKI

A Professional Corporation
San Jose

Netherlands' interest in the litigation . . . seems secondary to California's interest in adjudicating claims of fraud and breach of fiduciary duty perpetrated against a company based in California.").

As Counter-Defendants state, the counterclaims, like the Complaint, relate to the same License Agreement. ECF 43, 21:5-6. Once the Complaint was filed in this Court, the FSC confirmed that the Agreement in this dispute is governed under California law. License Agreement §11.1(ii)). California District Courts are familiar with California law. Resolving all related claims in this action does not add burden or congestion to the local courts and juries, nor would it add unrelated issues at trial. Instead, dismissing the Counterclaim under *forum non conveniens* would cause additional burden for this Court and a Dutch court with the foreseeable issues with multiple related cases simultaneously pending in each forum. As stated, any discrepancy of law between the two nations should be given less weight than the risk of conflicting judgments which could deny any of the parties' relief to which they might be entitled if all related claims were litigated together. As maintaining this action has little impact to the Court, the public factors weigh heavily in favor of keeping the Counterclaims in this Court.

b.      The Private Factors Strongly Favor Maintaining the Counterclaims in this Court.

Private factors strongly favor maintaining all claims in this Court. Number 14 (and the Inventors) commenced this Action, requiring them to litigate their claims and Counterclaimants' defenses in this Action. As stated above, Counterclaimants are not the party that "file[d], initiate[d], or assert[ed] a claim in the capacity of a plaintiff." License Agreement § 11.1.

Any alleged burden to "travel halfway around the world" to sit for depositions and trial as persons most knowledgeable, representatives, owners, and managers of Plaintiff Number 14 is the same as their capacity as individual Counter-Defendants. ECF 43, 15:14. The counterclaims arise from the same initial dispute regarding the License Agreement. Access to physical evidence and witnesses are the same. It is nonsensical that Inventors would be *more* inconvenienced litigating all claims in this Action rather than litigating the same dispute in this Action **and** in the Netherlands. Therefore, the private factors lie in favor of keeping the counterclaims in this Court.

The Court should deny Counter-Defendants' motion to dismiss for *forum non conveniens.*

ROPERS
MAJESKI

A Professional Corporation
San Jose

C.      **The Counterclaims State Facts Sufficient to State a Claim for which Relief may be Granted.**

A pleading survives a Motion to Dismiss under 12(b)(6) so long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Fed. R. Civ. Proc. R 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff has satisfied facial plausibility when they provide enough facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts will "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice" in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32. (9th Cir. 2008). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Id.*; *see Iqbal*, 556 U.S. at 664.

### 1.      *Breach of Contract is Sufficiently Plead*

The elements for a breach of contract are: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014). Parties to a contract "in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 992-93 (2004). In this "mini-universe" between the parties, "it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law." *Id.* "Simply put, a contract is not a license allowing one party to cheat or defraud the other." *Id.* at 992. A "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. Proc. R 10.

As alleged, Counter-Defendants breached the License Agreement by not producing patents that could enable Maxim products to meet the agreed-upon specifications and then proceeded to request royalty payments. *See* ECF 22 ¶ 18 - 21. The Agreement does not contradict

ROPERS
MAJESKI

A Professional Corporation
San Jose

Opposition to Motion to Dismiss
Case No. 5:24-CV-02435-EJD

the Counterclaims. The Agreement expressly conditions royalty payments on the "Amplifier Design Patents enabl[ing] products that show improvements of "similar" magnitude as compared to the attached product and specifications listing" in Annex 1." ECF 1, Exh. 1 §§ 2.7, 3.1-3.2. **To date, Inventors have not created amplifier design technology sufficient to create products that meet the License Agreement's specifications**. ECF 22 ¶¶ 18-23; 27-46. Next, Counter-Defendants' request for royalty payments while concealing their Patents did not meet specifications is another breach of the Agreement. ECF 22 ¶¶ 35-46. Counter-Defendants' accepting royalties is another breach.

In an attempt to circumvent this issue, Counter-Defendants try to assert that "receipt of Royalties is a right, not an obligation." ECF 43, 15:10-18. However, this reasoning is unacceptable because Counter-Defendants' breach was multi-layered and royalty payments were premised on satisfying condition precedents. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008)("A bedrock principle of California contract law is that he who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.") Specifically, a party who "who refuses or fails to perform the conditions imposed on him by the terms of a contract, and shows no excuse for such refusal or failure, cannot recover for a breach of the contract by the other party." *Wood, Curtis & Co. v. Seurich*, 5 Cal. App. 252, 254 (Dist. Ct. App. 1907). In California, contracts "cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party". *See* Cal. Civ. Code § 3392. Counter-Defendants' royalty payments are conditioned on the patents satisfying specifications outlined. As Counter-Defendants have not performed their obligations, the Counterclaim fully states a breach of contract claim against Counter-Defendants.

### 2.   The Covenant of Good Faith and Fair Dealing was Sufficiently Pled

All contracts contain a "duty of good faith and fair dealing in each performance and in its enforcement." Rest. 2d of Contracts, § 205.  California courts have routinely implied that licensing parties will use their "best efforts" and "good faith" to further the contract's purpose. *See Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120; *Third Story*

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   *Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 805 (1995).

2           A breach of the implied covenant of good faith and fair dealing "involves something

3   beyond breach of the contractual duty itself and it has been held that bad faith implied unfair

4   dealing, rather than mistaken judgment." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.

5   App. 3d 1371, 1394 (1990)(citations omitted). This breach is alleged when defendant's conduct

6   "demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an

7   honest mistake, bad judgment or negligence but rather by a conscious and deliberate act" that

8   frustrates the contract's purpose and deprives the other party of the contract benefits. *Id.* at 1395.

9           Here, the spirit and purpose of the Agreement was the delivery of technology by the

10  Inventors sufficient for Maxim to produce amplifier products that met the License Agreement's

11  explicit specifications. *See* ECF 22 ¶¶ 18 - 21. This is not about "how receiving payments

12  calculated by Counterclaimants frustrated Counterclaimants' right to receive the benefits of the

13  License." ECF 43, 15:23-24. As alleged, Counter-Defendants did not use their "best efforts" to

14  ensure that their patents would enable products that were royalty-bearing by meeting the

15  Agreement's specifications. ECF 22 ¶¶ 66 - 69. Rather, Counter-Defendants frustrated the

16  purpose of the Agreement by failing to deliver the technology sufficient for Maxim to produce

17  *any* amplifier products that met the Agreement's explicit specifications and failing to disclose that

18  products designed using their technology did not actually satisfy the Agreement's specifications,

19  all while demanding and accepting royalties in bad faith against the Agreement's purpose. *Id.* As

20  a result, Counterclaimants never received the benefit of the License Agreement.

21              ***3.        The Fraud Allegations Meet the Heightened Pleading Standard***

22          The allegations pertaining to fraud (Claims 4, 6, and 7) meet the heightened pleading

23  standard. In California, a pleading alleging fraud needs to prove: "(a) misrepresentation (false

24  representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent

25  to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *City Sols. v.*

26  *Clear Channel Communs., Inc.*, 365 F.3d 835, 839 (9th Cir. 2004)(citations omitted). The party

27  must also provide "an explanation as to why the statement or omission complained of was false or

28  misleading" *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

ROPERS MAJESKI
A Professional Corporation
San Jose

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). *ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1031-32 (9th Cir. 2016). All fraud allegations are pled with particularity. Here, the counterclaims do not allege a unified course of fraudulent conduct, but some fraudulent and some non-fraudulent conduct, which is not an entire claim being "grounded in fraud" or "sounded in fraud." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

a.      <u>The Counterclaim Alleges Misrepresentation with Particularity.</u>

An intentional misrepresentation claim "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009)(citations omitted). The Counterclaim does so.

As alleged, the "***Counterclaim Defendants*** falsely represented ***to ADI and Maxim*** on multiple occasions from 2010 to present" (emphasis added), satisfying the "who" element.  ECF 22 ¶ 75. The Counterclaim alleges "what" the misrepresentations were, i.e., that Counter-Defendants were entitled to annual royalty payments and that additional parts qualified for royalties. ECF 22 ¶¶ 75-77. When Counter-Defendants requested royalty payments, they intentionally omitted that they did not meet the technical specifications for Stand-Alone Amplifiers in the License Agreement. ECF 43, 19:2-3.

Around July 11, 2023, Counter-Defendants demanded royalties on additional parts, ECF 22 ¶ 77; and in 2024, when they demanded annual royalty payments be made, *Id. at* ¶ 75, satisfying the "when" element. Counterclaimants allege "where" the misconduct occurred: the Inventors' emails. The "where" element is satisfied through "specific allegations regarding emails, phone calls, and the Executive Brief are satisfactory to comply with Rule 9(b)." *Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*, 500 F. Supp. 3d 952, 966 (N.D. Cal. 2020).

Finally, the Counterclaim satisfies the "how" misrepresentation occurred. Counter-Defendants' opinion that the Counterclaim does not allege the technical parameters explaining how the Amplifiers did not meet specifications should be reserved for expert opinion, not serve as

ROPERS MAJESKI

A Professional Corporation
San Jose

1   a basis to prematurely dismiss the Counterclaim. ECF 43, 19:14-20. Counter-Defendants' claim

2   that the Counterclaim lacked a "single data point" fails to consider Counterclaimants' allegations

3   as a whole and view the allegations in totality. Counterclaimants have provided Counter-

4   Defendants with "fair notice" and the "grounds" of their false statement in the Counterclaim by

5   alleging that their amplifier design patents have not resulted in any products that meet the

6   Agreement's specifications. *See Twombly,* 550 U.S. at 555. Counter-Defendants knew their

7   representations to Counterclaimants were false and have information regarding their own

8   amplifier design patents and alleged royalty-bearing products. ECF 22 ¶¶ 79, 81, 83. Therefore,

9   the misrepresentation allegations are pled with particularity.

10          b.      <u>Counterclaimants' Justifiable Reliance on the Alleged
11                  Misrepresentations are Pled with Particularity.</u>

12          Counter-Defendants are misplaced in their belief that reasonable minds can only come to

13   one conclusion based on the allegations whether Counterclaimants reasonably and justifiably

14   relied on Counter-Defendants' misrepresentations and omissions. *See* ECF 43, 16:18-27;

15   *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1196 (N.D. Cal. 2012)(under California law,

16   "whether a party's reliance was justified may be decided as a matter of law if reasonable minds

17   can come to only one conclusion based on the facts.")

18          First, reasonable reliance is established when "(1) the matter was material in the sense that

19   a reasonable person would find it important in determining how he or she would act . . . and (2) it

20   was reasonable for the plaintiff to have relied on the misrepresentation." *Prostar Wireless Grp.,*

21   *LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1018 (N.D. Cal. 2018)(citation omitted).  It is

22   not necessary for the plaintiff's reliance on "the truth of the fraudulent misrepresentation be the

23   sole or even the predominant or decisive factor in influencing his conduct . . . It is enough that the

24   representation has played a substantial part, and so has been a substantial factor, in influencing his

25   decision." *City Sols. v. Clear Channel Communs., Inc*., 365 F.3d 835, 840 (9th Cir. 2004)*.* Even

26   amidst other influencing factors, "reliance may be established on the basis of circumstantial

27   evidence"*. Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 170. Moreover, "a plaintiff will be

28   denied recovery for misrepresentation or fraud, only if his conduct is *manifestly unreasonable* in

Opposition to Motion to Dismiss
Case No. 5:24-CV-02435-EJD

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   the light of his own intelligence or information." This only occurs with "representations that were

2   '*preposterous*' or 'shown by facts within his observation to be so patently and obviously false that

3   [a plaintiff] must have closed his eyes to avoid discovery of the truth.'" *OCM Principal*

4   *Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 865

5   (2007)(emphasis added); *see Apte v. Japra*, 96 F.3d 1319, 1322 (9th Cir. 1996)("negligence in

6   failing to discover an intentional misrepresentation is no defense to fraud.")

7        Counter-Defendants' claim that Counterclaimants' reliance was unreasonable based on the

8   "bare assertion" that Counterclaimants are "sophisticated players in the industry," is a question of

9   fact, not of law. *See* ECF 43, 23:12-17. A question of fact exists whether Counterclaimants'

10  experience in the semi-conductor industry and reliance on Counter-Defendants' communications

11  and omissions were so "preposterous" or unjustified that it bars recovery. *See OCM Principal*

12  *Opportunities*, 157 Cal. App. 4th at 865. Thus, Counter-Defendants are mistaken in their

13  understanding of "justifiable reliance" because even "sophisticated players in the industry" do not

14  have a burden to investigate each representation to verify their authenticity.

15       Here, reasonable minds can differ on whether Counterclaimants' reliance was justifiable

16  given the Counter-Defendants' history, control over their Patents, and design of the products. As

17  Maxim employees, Inventors were responsible for developing amplifier design technology and

18  products within Maxim's Delft development center. ECF 1 Exh. 1, § 3.3; ECF 22 ¶¶ 11, 17.

19  Mr. Eschauzier served as Maxim's Design Director and Director of Engineering for the amplifier

20  products and Mr. van Rijn served as Maxim's Senior Principal MRS of IC Design for the

21  amplifier products. ECF 22 ¶¶ 4, 5. Given the Inventors' previous employment and as the owners

22  of the licensed patents, Maxim's reliance on their representations was not "manifestly

23  unreasonable". Murgulescu Decl., Exh. A-D. Although Counterclaimants and Counter-

24  Defendants parted ways in 2015, their relationship solidified a trusting relationship. *See* ECF 22

25  ¶ 34. It would be unreasonable to assume an employer would instantly refuse to rely on

26  statements from former employees who held managerial roles where there was an extended

27  period of duty of loyalty and trust. *See* Cal. Labor Code § 2863 (employee's duty of loyalty to

28  employers); *see also James v. Childtime Childcare, Inc*., 2007 U.S. Dist. LEXIS 43753, at *9

ROPERS
MAJESKI

A Professional Corporation
San Jose

Opposition to Motion to Dismiss
Case No. 5:24-CV-02435-EJD

(E.D. Cal. May 31, 2007)(duty of loyalty exists when plaintiff was "the director of the center, not a mere employee.") From the circumstantial evidence, reasonable minds can find Counter-Defendants' reliance justifiable and reasonable because of the Inventors' prior employment relationship, the express terms of the License Agreement, and Patent ownership. ECF 22 ¶¶ 81-82. Accordingly, justifiable reliance was sufficiently pled and Counterclaimants' reliance is a question of fact that should be tried to a jury.

c.    Fraud/Constructive Fraud by Omission Meet the Heightened Pleading Standard and the Duty to Disclose has been Alleged.

Similarly, Counterclaim 6 (fraud/constructive fraud by omission) is also pled with particularity. Fraud by omission can arise when there is a duty to disclose a material fact. *See Nissan Motor Acceptance Cases*, 63 Cal. App. 5th 793, 826. A duty to disclose material facts arises when there is some relationship between the parties, such as a fiduciary or confidential relationship, which creates a duty to disclose known, material facts. *Id.* This relationship may be created "as a result of some sort of transaction between the parties" such as "employer and prospective employee", or "parties entering into any kind of contractual agreement." *Id.*

"To plead fraud by omission with specificity, a plaintiff 'must describe the content of the omission and where the omitted information should or could have been revealed." *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1176 (N.D. Cal. 2021). The pleader is not required to allege facts that are "peculiarly within the opposing party's knowledge," and allegations "based on information and belief may suffice" along with facts supporting the belief. *Nayab v. Capital One Bank USA*, 942 F.3d 480, 493-94 (9th Cir. 2019). Fraud by omission requires "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). The Counterclaim alleges Counter-Defendants intentionally omitted that their patents did not enable products to meet the Agreement's specifications, yet still repeatedly requested royalties, including while employed by Maxim and owing it a duty of loyalty. *See* ECF 22 ¶ 77. Such omission is highly unreasonable because it relates to the fundamental purpose of

the Agreement: products achieving specific technical requirements.

### 4. Counterclaims 2, 5, 11-13 Do Not Require Heightened Pleading

Counterclaims 2 (Breach of the Covenant of Good Faith and Fair Dealing), 5 (Negligent Misrepresentation), 7 (Detrimental Reliance), and 11-13 (Open Book Account; Money Had and Received; and Unjust Enrichment; respectively) are not require to meet the heightened pleading standard of Rule 9(b) as they are not "grounded in fraud" or "sound in fraud". *Vess*, 317 F.3d at 1104. These are distinct from the fraud allegations.  They stem from Counter-Defendants' continuous breach of the License Agreement, and seeking and accepting royalty payments despite knowing they were not entitled to royalties.  ECF 22 ¶¶ 75 – 77.

### D.   Negligent Misrepresentation is Sufficiently Pled

Counter-Defendants conflate negligent misrepresentation elements with misrepresentation. Negligent misrepresentation differs from misrepresentation to the extent it "does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 231 (2013); Civ. Code, § 1710. Whether negligent misrepresentation claims must satisfy Rule 9(b) is not settled law in the Ninth Circuit. *See Apex Directional Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc*, 119 F. Supp. 3d 1117, 1128 (N.D. Cal. 2015); *see Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 418 (C.D. Cal. 2012)(holding "the California tort of negligent misrepresentation need not satisfy the heightened pleading standard of Rule 9(b)".) However, as discussed above, even if the heightened pleading standard of Rule 9(b) is applied to this cause of action, the Counterclaim alleges facts sufficient to meet the heightened standard.

### E.   Detrimental Reliance is Sufficiently Pled.

The elements of promissory estoppel or detrimental reliance are "(1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee." *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 929 (2013).

Taking the Counterclaim as a whole, the royalty provisions in the License Agreement encapsulate a promise that Inventors would deliver the necessary amplifier design technology to allow Counterclaimants' products to meet specification before earning royalties. ECF 22 ¶ 116.

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   However, Counter-Defendants misrepresented through their statements and omissions that their

2   amplifier design patents satisfied the expectations and specifications in the License Agreement.

3   *Id.* at ¶ 117. As stated above, it was reasonable and foreseeable that Counterclaimants would rely

4   on Counter-Defendants' misrepresentations and omissions to their detriment. *Id.* at ¶¶ 119-121.

5   Therefore, the seventh Counterclaim is sufficiently pled.

6   **F.      The Unjust Enrichment Claim is Sufficiently Pled.**

7       Counter-Defendants err in claiming unjust enrichment is "not a cause of action under

8   California law". ECF 43, 22:6-9. There is a continuous pattern of courts finding an independent

9   claim for unjust enrichment. *ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038

10  (9th Cir. 2016); *Bruton v. Gerber Prods. Co.*, No. 15-15174, 2017 U.S. App. LEXIS 12833, at *2

11  (9th Cir. July 17, 2017)(finding unjust enrichment an independent cause of action based on the

12  California Supreme Court's decisions allowing unjust enrichment). To allege unjust enrichment,

13  "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's

14  expenses." *ESG Capital Partners, Ltd. P'ship*, 828 F.3d at 1038-39(citations omitted).

15      Counterclaimants sufficiently allege that Counter-Defendants were unjustly enriched

16  because (1) Counter-Defendants accepted and retained royalties from Counterclaimants, and

17  (2) they were not entitled to royalties because their technology and products did not satisfy the

18  Agreement's specifications. Counter-Defendants do not take issue with any other allegation

19  supporting this claim as pled. Therefore, the motion to dismiss should be denied as to this claim.

20  **G.      The Claim for Open Book Account is Sufficiently Pled.**

21      In California, "an open book account cause of action may lie where the parties had agreed

22  to treat money due under an express contract as items under an open book account" and monies

23  due under an express contract cannot be recovered in an action on an "open book account" absent

24  a contrary agreement between the parties. *Eloquence Corp. v. Home Consignment Ctr.*, 49 Cal.

25  App. 5th 655, 665, (2020)(citation omitted). As a "Hail Mary" pass, Counter-Defendants argue an

26  open book account claim is not sufficiently pled because it "incorporates all allegations," and for

27  that reason alone, it "sound[s] in fraud" and has not met the heightened pleading standard. *See*

28  ECF 43, 22:1-3. There is no legal authority supporting this baseless argument. The License

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   Agreement and money due under it are enough to establish an open book account. *See id.* at 666.

2   Counterclaimants respectfully request the Court deny the motion to dismiss as to this claim.

3   **H.      Counter-Defendants' Motion to Strike the Fifth and Seventh Affirmative**
        **Defenses (Unjust Enrichment and Unclean Hands) Should be Denied.**

4

5           Counter-Defendants' Motion to Strike should be denied as the affirmative defenses of

6   Unjust Enrichment and Unclean Hands meet Fed. R. Civ. P. Rule 12(f)'s *Twombly/Iqbal*

7   standard. Rule 8 requires a defendant to "state in short and plain terms its defenses asserted

8   against it . . . [and] a party must affirmatively state any avoidance or affirmative defense" Fed. R.

9   Civ. P. 8(b); 8(c). Under Rule 12(f), a court may remove material from a pleading that is

10  "redundant, immaterial, impertinent, or scandalous" or defenses that it finds legally insufficient.

11  Fed. R. Civ. P. 12. The key to determining the sufficiency of an affirmative defense is whether it

12  gives plaintiff fair notice. *Wyshak v. City Nat'l Bank*, 607 F2d 824, 827 (9th Cir 1979).

13          Motions to strike are disfavored because they are used for delay and because of the strong

14  public policy favoring resolution on the merits. *Barnes v. AT&T Pension Benefit Plan*, 718 F.

15  Supp. 2d 1167, 1170 (N.D. Cal. 2010). In reviewing a motion to strike, the court must view the

16  pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC*, 195

17  F.R.D. 665, 669 (C.D. Cal. 2000). Furthermore, a court cannot view complaint paragraphs in

18  isolation, instead "the many statements must be viewed as part of a mosaic to see if these

19  statements in the aggregate" provide fair notice of the claim. *Colaprico v. Sun Microsystems, Inc.*,

20  758 F. Supp. 1335, 1339-40 (N.D. Cal. 1991)(citation omitted).

21          Here, Counterclaimants have exceeded their obligations under the Federal Rules of Civil

22  Procedure, and have pled more than the "bare statements reciting mere legal conclusion." *Neo4j,*

23  *Inc. v. Purethink, LLC*, 480 F. Supp. 3d 1071, 1075 (N.D. Cal. 2020). The Answer and

24  Counterclaim show legally sufficient claims that are based on Counter-Defendants' misconduct

25  and omissions. Counter-Defendants cannot view the affirmative defenses in isolation by choosing

26  to solely focus on "technical specifications." ECF 43, 20:12-15. Read as a whole, the Answer and

27  Counterclaim state how Counter-Defendants received and unjustly retained the royalties at

28  Counterclaimants' expense. *See ESG Capital Partners, Ltd. P'ship*, 828 F.3d at 1038-39.

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    Unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other

2    equitable principles in his prior conduct." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d

3    165, 173 (9th Cir. 1989). A finding of unclean hands also requires "that the alleged misconduct

4    by the plaintiff relate directly to the transaction concerning which the complaint is made." *Id.*

5    Here, the facts in the Answer and Counterclaim sufficiently plead Counter-Defendants'

6    bad faith regarding the Agreement and their continuous suppression and concealment that their

7    Patents did not meet required specifications. *See* ECF 22, 13: 9-17, ¶¶ 35-40; 66-72; 90-100; 102-

8    114; 116-121. Viewing Counterclaimants' affirmative defenses as a whole provides sufficient

9    details and context for the defense. Therefore, Counterclaimants' affirmative defense for unclean

10   hands should be admitted to ensure adjudication on the merits.

11   If the Counterclaim is found deficient in any respect, Counterclaimants request leave to

12   amend. The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

13   Rule 15 is applied liberally to "facilitate decision on the merits, rather than on the pleadings or

14   technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Counterclaimants have not

15   had the opportunity to amend their pleading and should be granted the opportunity to do so.

## IV.  **CONCLUSION**

17   For the foregoing reasons, Counterclaimants respectfully request the Court DENY the

18   Motion in its entirety. Should the Court determine any portion of the Counterclaim is deficient,

19   Counterclaimants respectfully request leave to amend and/or to conduct jurisdiction discovery.

Dated: August 16, 2024                                ROPERS MAJESKI PC


By: /s/ *Kevin. W. Isaacson*
_____
MICHAEL J. IOANNOU
KEVIN W. ISAACSON
ANGIE CHANG
AMANDA M. OGATA
Attorneys for Defendants and
Counterclaimants ANALOG DEVICES,
INC. and MAXIM INTEGRATED
PRODUCTS, INC.

A Professional Corporation
San Jose

ROPERS
MAJESKI