1  **RACHEL THOMAS** (SBN 244527)
   **ALE BURKE-VALLEJO** (SBN 353890)
2  GREENFIELD LLP
   55 S. Market Street, Suite 1500
3  San Jose, California 95113
   Telephone: (408) 995-5600
4  Email: rthomas@greenfieldlaw.com
          aburke-vallejo@greenfieldlaw.com
5

6  **JOHN W. HARBIN (*Pro Hac Vice*)**
   **WARREN J. THOMAS (*Pro Hac Vice*)**
7  MEUNIER CARLIN & CURFMAN LLC
   999 Peachtree Street NE, Suite 1300
8  Atlanta, GA 30309
   Telephone: (404) 645-7700
9  Email: jharbin@mcciplaw.com
          wthomas@mcciplaw.com
10

11 Attorneys for Plaintiff/Counter-Defendant NUMBER 14 B.V.

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                          SAN JOSE DIVISION

16

| | |
|---|---|
| 17  NUMBER 14 B.V., | Case No.: 5:24-cv-02435-EKL-NMC |
| 18              Plaintiff, | **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION** |
| 19  v. | |
| 20  ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC., | |
| 21              Defendants. | |
| 22  ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC., | |
| 23              Counterclaimants, | |
| 24  v. | |
| 25  NUMBER 14 B.V., RUDY ESCHAUZIER, and NICO VAN RIJN, | |
| 26              Counter-Defendants. | |

27

28

## I. PURPOSE

This Stipulation and Order Regarding production of electronically stored information ("ESI") will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules (the "ESI Protocol").

## II. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## III. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

*Plaintiff's liaison*: Warren Thomas (counsel of record)

*Defendants' liaison*: Kevin Isaacson (counsel of record)

## IV. PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) The parties have exchanged a list of the types of ESI they believe should be preserved and some of the custodians, or general descriptions of custodians, for whom they believe ESI should be preserved. The parties shall add or remove custodians as reasonably necessary, and have agreed that if any party specifically identifies a potential custodian then that custodian's ESI shall be preserved, subject to the limit stated in Section IV(b) below;

1
STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO.: 5:24-cv-02435

1  b) The parties will agree on the number of custodians per party for whom ESI will be preserved, which shall not exceed twenty (20) custodians absent a showing of good cause; the custodian limit in this subsection shall apply to Analog Devices, Inc. and Maxim Integrated Products, Inc. jointly;

c) The following sources of data have been contended by one or more Parties to not be reasonably accessible as to which all Parties reserve their rights:

- Plaintiff has asserted that its custodian Rudy Eschauzier previously used an email account under with domain "@eschauzier.org" that may have contained relevant information. Plaintiff has asserted that those emails were hosted on a private email server that is no longer accessible such that Plaintiff will not preserve them.

## V. SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

(a) Search Terms.

A Producing Party may, but is not required to, use search terms to locate or identify potentially relevant ESI. If a Producing Party elects to use search terms in connection with its collection, review, or production of ESI from a data source, the Producing Party must disclose the data source and the search terms it intends to use to the Receiving Party. At the time it makes this disclosure, the Producing Party must provide a hit report (to include unique hits, hits with families, and total number of documents hit) for the search terms applied to each data source. In preparing its proposed search terms, a Producing Party may review a "null set sample" for each data source. The "null set sample" is a statistically valid (95% ±5), randomly generated sample set of documents from a given data source that do not hit on any search terms, which the Producing Party reviews for relevant, responsive, and nonprivileged documents. At the time the Producing Party discloses its proposed search terms to the Receiving Party, it may provide the results of its review of the "null set sample"—i.e., a disclosure of how many relevant, responsive, and non-privileged

1  documents from null set sample were not captured by the proposed search terms—to demonstrate
2  the effectiveness of its proposed search terms.

3  No later than 5 business days after receiving the Producing Party's disclosure of proposed
4  search terms and accompanying information, the Receiving Party may propose to the Producing
5  Party additional or alternative search terms for one or more data sources, and may request that the
6  Producing Party provide hit reports for the additional or alternative search terms for one or more
7  data sources.

8  The Producing Party shall promptly assess the Receiving Party's proposed additional or
9  alternative search terms, including by running the requested hit reports, reviewing additional "null
10 set samples," or performing any other analyses the Producing Party believes would assist the
11 Parties in evaluating the effectiveness of the proposed search terms. The Producing Party must
12 provide the hit reports requested by the Receiving Party, but may also provide other information.

13 The Parties must confer within 10 business days of the Receiving Party's proposal to
14 resolve any disputes about the search terms to be applied to the Producing Party's data sources,
15 unless the Parties agree to extend the deadline.

16 A Producing Party's choice to use search terms to locate or identify potentially relevant ESI
17 does not relieve that party of any of its discovery obligations.

18   (b) <u>Use of Technology Assisted Review</u>.

19 A Producing Party need not disclose whether it is using Technology Assisted Review,
20 Continuous Active Learning ("CAL"), or any other predictive coding tool merely to prioritize the
21 review of ESI.

22 **VI.   De-NISTing**

23 Each Producing Party will use its best efforts to filter out common system files and
24 application executable files by using a commercially reasonable hash identification process.
25 System and application files without user created content (as identified by matching to the NIST
26 National Software Reference Library database) need not be processed, reviewed or produced.

27
28

## VII. PRODUCTION

### A. Definitions and Scope

The following protocol and definitions shall control the production of discoverable documents and ESI when production commences. The following terms shall be defined:

a. "Document(s)" means electronically stored information (ESI) existing in any medium from which information can be obtained or translated into reasonably usable form and shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing the same.

b. "Native File(s)" or "Native Format" means ESI that has an associated file structure defined by the creating or viewing application in the file type for (or of) the application in which such ESI is normally created, viewed, and/or modified.

c. "Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

d. "Load File" means an electronic data file containing information identifying documents containing (i) an indication of which individual pages or files constitute each Document and relevant data relevant to each individual Document, including extracted metadata.

e. "OCR" means optical character recognition, generating a text from an image of text using software.

f. "Extracted Text" means all text content extracted from a Native File.

g. "Non-Party" means any natural person, partnership, corporation, association, or other legal entity who is not a Party (as defined below) in this action.

h. "Party" means any party to this action, including all of its officers, directors, and employees.

i. "Receiving Party" shall mean the Party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or 45 or pursuant to initial production of documents identified in the Party's Rule 26(a) disclosures.

j. "Producing Party" shall mean the Party or Non-Party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or 45 or pursuant to initial production of documents identified in the Party's Rule 26(a) disclosures.

k. "Bates Number" means an identifier consists of a short two to eight letter prefix, associated with the Producing Party's name, followed by 6 numbers (e.g. ABCD000001). The prefix should include only letters, dashes, or underscores. The prefix and number should not be separated by a space.

### B. General Format of Production

Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form and/or in native format in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Document is not susceptible to production in the format methods of production addressed herein. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

### C. Production Protocols

1. <u>Electronic Production of Paper Documents</u>

Documents that are maintained in paper format shall be scanned images at 300 DPI resolution, in text searchable PDF format that represents the full and complete information contained in the original Document. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately. When scanning paper documents into Document Images, they shall be unitized in a manner so as to maintain the document(s) and any attachments, as they existed in their original state.

Paper Documents stored in a binder, folder, or similar container should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container.

Documents shall also be produced *with* the associated OCR text, and with a load file. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the image.

2. Electronically Stored Information.

Document images shall be generated from electronic Documents in a set of color 300 DPI text searchable PDFs, one PDF file per document, that reflects the full and complete information contained on the original document, together with a load file containing required metadata (specified in Section VI.C.10 below). In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

3. Databases

To the extent discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties shall meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party. The Producing Party shall produce exemplar reports from the database in a reasonably usable and exportable electronic file (spreadsheet if possible). Upon review of the reports, the Receiving Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

4. Production Files Structure

The Producing Party shall produce the following sets of files for all produced documents:

    *i.  Load File:*

- Each production includes a .dat metadata load file, which is a delimited text file format. The first row of the file contains a list of metadata columns. Each subsequent row

contains the metadata for a single document. Each column of each row contains one metadata value, with values encapsulated by a special "quote" character and columns separated by a special "separator" character throughout.

- o  The load file should use a thorn (þ, ASCII character 231) as a quote character and the special, non- printing character DC4 (ASCII character 20 (0x14)) as a separator.

- First line must contain the column/field names.
- The fields Begin Bates, End Bates, and NativePath *must* be present
- Each subsequent row must contain the metadata for one document
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in either ASCII, UTF-8, or UTF-16
- Load File should be placed in the Data folder of the production in the root directory

  ii.  *Extracted Text and OCR Files (.txt files):*

- A single text file for each document containing all the document's pages, in text.
- Pages separated by form feed character (decimal 12, hex 0x0C)
- Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the document
- Text and filenames must be encoded in UTF-8
- Files should be placed in the text/ subdirectory

  iii.  *Image Files:*

- A single 300 DPI, text searchable PDF file per document
- Filenames should be of the form: <Bates num>.pdf, where <Bates num> is the BATES number of the first page of the document.
- Files should be placed in the images/ subdirectory
- PDFs shall include searchable text embedded in the document.
- No other information should be provided in image filenames, including confidentiality status.
- Filenames must be encoded in UTF-8

7
STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO.: 5:24-cv-02435

          *iv.*    Native Files:

- Filenames must be unique in the production, unless the content is identical. We recommend naming files by the Bates number of the first page of the associated document
- The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls
- Each filename, including extension, must correspond to the NativePath metadata field in its corresponding document's row in the load file
- Filenames must be encoded in UTF-8
- Files should be placed in the natives/ subdirectory

5. <u>Resolution of Production Issues.</u>

Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

6. <u>Native Format Documents.</u>

Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain Documents to be produced in Native Format.

Therefore, the Producing Party shall produce all spreadsheets, native presentation files (e.g., PowerPoint), and audio, video, and image/photograph files in native format unless there is an agreement to the contrary.

The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation.

7. <u>Attachment Families</u>

The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced, except any attachments that must be withheld or redacted and logged based on privilege or work-product protection. For further clarification, this

shall not require a party to produce documents merely referenced in responsive documents, except as provided below in the case of documents sent via a link within an email.

For such electronic documents, the relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained using the Begin Family and End Family fields of the load file, provided however that the Parties shall only be required to present one level of parent-child relationship. Document Images generated from attachments to emails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent email in their Bates numbering.

To the extent that a Receiving Party identifies any document that it believes was produced without an attachment (including "linked" or "cloud" attachments), then it may request such attachment to be provided by Producing Party, and Producing Party shall exercise reasonable efforts to provide the same, but the Producing Party shall not be required to produce such attachments if doing so would impose an undue burden. Evaluation of whether such efforts are reasonable or impose an undue burden shall be evaluated consistent with Fed. R. Civ. P. 26(b)(1) and (2).

8. Duplicates

(a) De-Duplication. A Producing Party who has more than one identical copy of an electronic document (i.e., the documents are actual duplicates) need only produce a single copy of that document. A Producing Party need not produce the same electronically stored information in more than one form. Deduplication will be based on the MD5 or SHA1 hash values at the document level, by Message ID, EDRM MIH8 or other standard methodology for email deduplication within the collection of a custodian or a data source of native versions of documents, respecting differences in families (i.e. two duplicates attached to different emails will both be provided). The hash value will take into account the document's text and intrinsic metadata (e.g., author, date created, etc.), but not extrinsic metadata values (e.g., custodian, file path). Emails should be systematically and consistently deduplicated. A Producing Party shall deliver in its Load File a populated All Custodians and All File Paths fields that includes the identity of each

Custodian whose file(s) was removed as a duplicate of a produced document and the file path location of that duplicate.

(b) <u>Email Threading</u>. Where multiple email messages are part of a single chain or "thread," a Producing Party is only required to produce the most inclusive message ("Most Inclusive Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Most Inclusive Email. Only email messages for which the parent document and all attachments are contained in the Most Inclusive Email will be considered less inclusive email messages that need not be produced.

9. <u>Bates Numbering</u>

Each Producing Party shall Bates number its production(s) as follows:

*i.   Document images*

Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document.

Each page in the production is assigned a unique, incremental Bates number. The Producing Party will use a consistent prefix for all pages produced by that party. Thus, once a party chooses a two-to-five letter prefix, e.g. ABCD, it shall not later produce a Document using a different prefix, e.g. EFGH. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above. The confidentiality legend shall be "burned" onto each document's image at a location that does not unreasonably obliterate or obscure any information from the source document.

*ii.   Native Format Documents*

In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document. A coversheet (aka "slip sheet" image should be produced identifying that the Native Format Document is being produced in a

native format. That coversheet image will include the Bates Number and any confidentiality designation in the same location as other Document images, as specified above.

      *iii.    Sort Order*

For Bates numbering, documents will be sorted by their original file path in ascending order, preserving family ordering.

    10. <u>Metadata Fields</u>

The Producing Party shall produce the metadata information described below with each production and in the format described above. For each Document, the Producing Party shall produce a line in the index file with the following fields, where available. The field naming conventions shall be the following in the table below. "Datetime" metadata will be provided in UTC in a consistent, reasonable, and clearly delimited format. For example, M/d/y H:m. To the extent timezone information is provided for context, it will be provided in a separate loadfile field.

| Field Name | Description | Data Type | Example |
|---|---|---|---|
| Begin Bates | Beginning Bates number of first page of a document | Text | ABCD000004 |
| End Bates | Ending Bates number of last page of a document | Text | ABCD000003 |
| Begin Family | Begin Bates of parent document of family of attachments | Text | ABCD000001 |
| End Family | End Bates of last attachment of family | Text | ABCD000004 |
| pages | Number of Bates stamped pages for the PDF image each document | Number | 3 |
| Native Path | Relative file path of native record within production, including filename and extension of native file within the production. Only for documents produced in native format | | .\vol001\natives001\ABCD00002.xlsx |

| Field Name | Description | Data | Example |
|---|---|---|---|
| TextPath | Relative file path of text record within production, including filename and extension of the text file within the production. | text | .\VOL001\text\001\ABCD000001.txt |
| Placeholder | If Bates stamped document is produced with a placeholder image (values: Y or N) | Text | Y |
| Redacted | If this document has redactions (values: Y or N) | Text | Y |
| All Custodians | For deduplicated documents, list of all custodians the duplicate copy was collected from. | Text | |
| All Paths | For deduplicated documents, list of all file paths for duplicate copies. | Text | |
| Author | Creator of document | Text | Jones |
| Bcc | Additional blind recipients of an email (Blind Carbon Copy) | Text | bob@acme.com |
| Cc | Additional recipients of email (Carbon Copy) | Text | sue@acme.com |
| Custodian | Name of person from whom documents were collected | Text | Jones |
| Date Created | Datetime document was created | Datetime | 07/21/1969 02:56:00 |
| Date Modified | Datetime document was last modified | Datetime | 07/21/1969 02:56:00 |
| Date Received | Datetime document was received | Datetime | 07/21/1969 02:56:00 |

| Field Name | Description | Data | Example |
|---|---|---|---|
| Date Sent | Datetime an email was sent | Datetime | 07/21/1969 02:56:00 |
| File Extension | The suffix at the end of the end of a native filename indicating file type | Text | .docx<br>.pdf<br>.xlsx |
| Filename | Original filename of native document, including extension | Text | My_spreadsheet.xlsx |
| File Path | Original source file path, including location, folder name, filename, and extension | Text | media.zip//jones.pst//sent mail/444.eml//My_spreadsheet.xlsx |
| From | Sender | Text | jones@acme.com |
| In Reply To | Message id of email this email is in reply to | Text | |
| Message Id | "Unique Message ID" field from internet headers of email documents | Text | |
| MD5 Hash | MD5 Hash value of Document | MD5 Hash | |
| SHA1 Hash | SHA1 Hash value of document | SHA1 Hash | |
| Subject | Subject line | Text | Check this out! |
| To | Recipient | Text | mary@acme.com |
| Confidentiality | Denotes the producing party has designated the document as confidential | Text | CONFIDENTIAL |

## VIII. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and the initial production will be from the following sources and custodians: Non-custodial data sources, Daihong Fu, Reymar Aromin, and Rachelle Cabrerra. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

## IX. DOCUMENTS PROTECTED FROM DISCOVERY

### A. Privilege Logs

The Producing Parties will produce privilege logs in spreadsheet or .csv format. A Producing Party will produce a separate privilege log for each production within 21 days after the production of documents for which a privilege is asserted with sufficient information to allow the Receiving Party to understand the basis for the claim. The production of a privilege log for a custodian or his/her department shall be not less than 10 days prior to that custodian's deposition. The Producing Party and the Receiving Party may modify the deadlines for production of privilege logs by agreement.

Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

## X. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____   /s/Warren J. Thomas
                 Counsel for Plaintiff

Dated: _____   /s/Kevin W. Isaacson
                 Counsel for Defendant

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: December 26, 2024



_____
DISTRICT JUDGE

**ATTESTATION PURSUANT TO LOCAL RULE 5-1 (i)(3)**

The undersigned attests pursuant to Local Rule 5-1(i)(3) that concurrence in the filing of this document has been obtained from each of the other signatories hereto.

Dated: December 10, 2024                     */s/ Warren J. Thomas*

                                                                      Counsel for Plaintiff