1   MICHAEL J. IOANNOU (SBN 95208)
    KEVIN W. ISAACSON (SBN 281067)
2   PAULA B. NYSTROM (SBN 329651)
    AMANDA M. OGATA (SBN 354967)
3   ROPERS MAJESKI PC
    333 W. Santa Clara St., Suite 930
4   San Jose, CA  95113
    Telephone:    408.287.6262
5   Facsimile:    408.918.4501
    Email:        michael.ioannou@ropers.com
6                 kevin.isaacson@ropers.com
                  paula.nystrom@ropers.com
7                 amanda.ogata@ropers.com

8   Attorneys for Defendants and Counterclaimants
    ANALOG DEVICES, INC. and
9   MAXIM INTEGRATED PRODUCTS, INC.

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  NUMBER 14 B.V., | Case No.: 5:24-cv-02435-EKL |
| 14          Plaintiff, | **DEFENDANTS AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION TO RETAIN CONFIDENTIALITY** |
| 15      v. | |
| 16  ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC. | |
| 17          Defendants. | |
| 18  ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC., | Date:    May 14, 2025 |
| 19 | Time:    11:00 a.m. Dept:    Courtroom 5, 4th Floor |
| 20          Counterclaimants, | Judge:   Hon. Nathanael Cousins |
| 21      v. | |
| 22  NUMBER 14 B.V., RUDY ESCHAUZIER, and NICO VAN RIJN, | |
| 23 | |
| 24          Counter-Defendants. | |

25

26

27

28

4896-2662-5324.6

ROPERS MAJESKI
A Professional Corporation
San Jose

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on May 14, 2025 at 11:00 a.m., or as soon thereafter as counsel may be heard, Defendants Analog Devices, Inc. and Maxim Integrated Products, Inc. through their attorneys will and hereby move before the Honorable Nathanael Cousins, United States District Court Magistrate Judge, in San Jose Courthouse, Courtroom 5, 4th Floor, 280 South First Street, San Jose, CA 95113, pursuant to Section 6.3 of the December 26, 2024 Stipulated Protective Order entered in this case (ECF 89) and Civil Local Rule 7, for an order retaining confidentiality of four documents produced by Defendants, which Defendants designated as "HIGHLY CONFIDENTIAL" and labeled them as Bates Nos. ADI_018933-ADI_018934; ADI_018935-ADI_018938; ADI_018939-ADI_018950; and ADI_018951-ADI_018959.

This motion is brought following the conference of counsel required in Section 6.2 of the Stipulated Protective Order, and is based on this Notice, the Memorandum of Points and Authorities below, the Declaration of Nick Dere, the Declaration of Julie Fitton, the Declaration of Jason Clifford, the Declaration of Yogesh Sharma, the Declaration of Kevin W. Isaacson, and all documents previously filed in this action.

Dated: March 24, 2025                                  ROPERS MAJESKI PC

By: /s/ *Kevin W. Isaacson*
    MICHAEL J. IOANNOU
    KEVIN W. ISAACSON
    Attorneys for Defendants and
    Counterclaimants ANALOG DEVICES,
    INC. and MAXIM INTEGRATED
    PRODUCTS, INC.

ROPERS MAJESKI
A Professional Corporation
San Jose

**TABLE OF CONTENTS**

|  |  |  | **Page** |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| | A. | The Designation of The Four Documents at Issue | 2 |
| | B. | Defendants' Attempts to Meet and Confer with Plaintiff | 3 |
| III. | LEGAL STANDARD | | 4 |
| IV. | ARGUMENT | | 4 |
| | A. | Defendants' Confidentiality Designations Should Be Retained | 5 |
| | | 1. Defendants Will Suffer Particularized Harm If the Four Documents Are Re-Designated as "CONFIDENTIAL" | 5 |
| | | a. Defendants' Data Retention Policy (ADI_018935 - ADI_018938) | 5 |
| | | b. Defendants' Purchase Requisition Document (ADI_018933 - ADI_018934) | 6 |
| | | c. Defendants' Organizational Chart Document (ADI_018951- ADI_018959) | 8 |
| | | d. The License Agreement (ADI_018939 - ADI_018950) | 10 |
| | | 2. Defendants' Interest in Protecting the Four Documents Outweighs the Public Interest in Disclosure | 11 |
| V. | CONCLUSION | | 12 |

A Professional Corporation
San Jose

ROPERS
MAJESKI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-CV-02435-EKL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROPERS
MAJESKI

A Professional Corporation
San Jose

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Avaya Inc. v. Pearce*
No. 19-cv-00565-SI, 2020 U.S. Dist. LEXIS 241116 (N.D. Cal. Dec. 22, 2020) .....................9

*Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*
661 F.3d 417 (9th Cir. 2011)...................................................................................4, 5, 11

*Glenmede Trust Co. v. Thompson*
56 F.3d 476 (3d Cir. 1995)....................................................................................................11

*Grace v. Apple, Inc.*
No. 17-cv-00551 LHK (NC), 2018 U.S. Dist. LEXIS 243869 (N.D. Cal.
May 1, 2018) ......................................................................................................6, 7, 9

*Muench Photography, Inc. v. Pearson Educ., Inc.*
No. 12-cv-01927-WHO, 2013 U.S. Dist. LEXIS 115847 (N.D. Cal. Aug. 15,
2013) ......................................................................................................................9

*NetApp, Inc. v. Nimble Storage, Inc.*
No. 5:13-CV-05058-LHK (HRL), 2015 U.S. Dist. LEXIS 11406 (N.D. Cal.
Jan. 29, 2015) ......................................................................................................9

*NML Capital Ltd. v. Republic of Arg.*
No. 2:14-cv-492-RFB-VCF, 2015 U.S. Dist. LEXIS 20722 (D. Nev. Feb. 19,
2015) .....................................................................................................................11

*Nutratech, Inc. v. Syntech Int'l, Inc.*
242 F.R.D. 552 (C.D. Cal. 2007) ...........................................................................7

*RSI Corp. v. IBM*
No. 5:08-cv-3414 RMW, 2012 U.S. Dist. LEXIS 105982 (N.D. Cal. July 30,
2012) ..................................................................................................................8, 9

*Todd v. Tempur-Sealy Int'l, Inc.*
No. 13-cv-04984-JST (MEJ), 2015 U.S. Dist. LEXIS 27803 (N.D. Cal. Mar. 6,
2015) .....................................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(c)(1)..............................................................................................4

Fed. R. Civ. P. 26(c)(1)(G) ...................................................................................2, 4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3    Defendants have produced many confidential documents containing extremely sensitive

4  information, the disclosure of which would cause serious harm to Defendants. These include

5  documents identifying Defendants' internal operational policies, financial regulation and approval

6  structure, personnel organization, and even its intellectual property rights. To protect these

7  sensitive documents, Defendants have relied on the Court's Stipulated Protective Order, which

8  allows the parties to designate such documents as "HIGHLY CONFIDENTIAL." Plaintiff now

9  challenges this designation, claiming the documents should be designated "CONFIDENTIAL."

10    The way in which Defendants compile these documents, the individuals involved, and the

11  extremely sensitive information they contain make these documents indisputably confidential and

12  commercially sensitive. They hold significant competitive value, and Defendants treat them as

13  critical assets that must be safeguarded. Furthermore, the individual Inventors, who are the sole

14  managers and owners of Plaintiff, also own and operate a competing semiconductor company that

15  competes with and does business with Defendants. Given this and the extreme sensitivity of the

16  documents produced, Defendants rightfully designated their commercially sensitive documents as

17  "HIGHLY CONFIDENTIAL."

18    Plaintiff's challenge to this designation is misplaced. The documents clearly meet the

19  criteria outlined in the Stipulated Protective Order entered by the Court on December 26, 2024,

20  which allows materials to be designated as "HIGHLY CONFIDENTIAL" when they contain

21  "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or

22  Non-Party would create a substantial risk of serious harm that could not be avoided by less

23  restrictive means." ECF 89. Plaintiff's attempt to undermine this designation ignores the clear and

24  compelling reasons outlined below for the "HIGHLY CONFIDENTIAL" designation.

25    Furthermore, no harm will come to Plaintiff or the public if Defendants' "HIGHLY

26  CONFIDENTIAL" designations remains in place. Defendants' strong interest in maintaining the

27  confidentiality of these documents significantly outweighs any minimal public interest in their

28  disclosure. This is not a case involving urgent public health or safety concerns. As Plaintiff has

ROPERS MAJESKI
A Professional Corporation
San Jose

1    continuously argued, this is merely a royalty dispute, where Plaintiff's alleged injury is economic

2    in nature, not physical. Given this mere royalty dispute, there is no compelling reason for the

3    Inventors or the public to have access to Defendants' highly sensitive documents, and thus no

4    need for them to be re-designated as CONFIDENTIAL.

5    **II.    BACKGROUND**

6          The Court issued a Stipulated Protective Order ("SPO") on December 26, 2024. ECF 89.

7    The SPO provides that sensitive documents can be designated upon production as

8    "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," with corresponding limitations on access

9    to those documents. ECF 89. "CONFIDENTIAL" materials include "information (regardless of

10   how it is generated, stored or maintained) or tangible things concerning a person's business

11   operations, processes, and technical and development information within the scope of [Federal

12   Rule of Civil Procedure Rule 26(c)(1)(G)]." *Id.* at § 2.2. "HIGHLY CONFIDENTIAL," materials

13   are "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party

14   or Non-Party would create a substantial risk of serious harm that could not be avoided by less

15   restrictive means." *Id.* at § 2.8.

16         Under the SPO, if a party disputes a confidentiality designation, the parties must make a

17   good faith effort to resolve the dispute through a meet and confer process. *Id.* at §§ 6.1-6.2. If the

18   dispute is not resolved, the Designating Party may bring a motion to retain the confidentiality

19   designation. *Id.* at §§ 6.2-6.3. Until the Court issues a ruling on the challenge, all parties must

20   continue to treat the documents in question according to the protection level assigned by the

21   Producing Party's designation. *Id.* at § 6.3.

22         **A.    The Designation of The Four Documents at Issue**

23         On February 28, 2025, Defendants produced documents responsive to Plaintiff's requests

24   for production. Isaacson Decl. ¶ 2. The next day, Plaintiff challenged the "HIGHLY

25   CONFIDENTIAL" designations for four documents. Isaacson Decl. ¶ 3.

26         The first document is one of Defendants' purchase requisition documents. This document

27   is an internal document used by Defendants to seek approval for the FY2023 royalty payment to

28   Plaintiff. Dere Decl. ¶¶ 4-6. It outlines the royalty calculation, the specific royalty value for

A Professional Corporation
San Jose

ROPERS
MAJESKI

4896-2662-5324.6

- 2 -

1  FY2023, as well as the royalty values from previous fiscal years, and includes the approval chain

2  within Defendant for this payment. *Id*.

3    The second document is Defendants' Data Retention Policy document. This document is

4  an internal document that outlines Defendants' internal data retention policies, along with how

5  the data is maintained and used, including confidential financial and employment-related records.

6  Fitton Decl. ¶ 5.

7    The third document contains several of Defendants' organizational charts. This

8  Organizational Charts contain internal documents depicting portions of Defendants'

9  organizational structure. Clifford Decl. ¶¶ 4, 6. These detail the organizational hierarchy of nine

10  key employees, and illustrating the relationships between them, including who works with whom

11  and who reports to whom within the organization. *Id.*

12    Finally, the fourth document is the License Agreement. The License Agreement is the

13  signed agreement dated July 20, 2007, between Maxim and the individual Inventors. Sharma

14  Decl. ¶ 3. It describes the confidential contractual rights between the parties, details about royalty

15  payments and how they are calculated, and detailed product specifications. Sharma Decl. ¶¶ 4-5.

16    **B.  Defendants' Attempts to Meet and Confer with Plaintiff**

17    On March 1, 2025, under Section 6.2 of the SPO, Plaintiff challenged Defendants'

18  "HIGHLY CONFIDENTIAL" designation of the four documents at issue. Isaacson Decl. ¶ 3.

19  Plaintiff argued that it sees "nothing 'extremely sensitive' within these documents that would

20  'create a substantial risk of serious harm' if disclosed." *Id*. Plaintiff believes these documents

21  should instead be designated "CONFIDENTIAL." *Id*.

22    On March 14, 2025, Defendants responded to Plaintiff's challenge, providing an

23  explanation for why they believe the documents should retain the "HIGHLY CONFIDENTIAL"

24  designation. Isaacson Decl. ¶¶ 4, 12, Exh. 5. On March 18, 2025, the parties met and conferred

25  via telephone conference to further attempt to resolve the designation dispute. Isaacson Decl. ¶ 5.

26  Despite Defendants' best efforts, the parties were unable to reach a resolution. *Id.* Since Plaintiff

27  maintains its position that these sensitive documents should not be designated as "HIGHLY

28  CONFIDENTIAL," Defendants are now filing this motion pursuant to Section 6.3 of the SPO.

4896-2662-5324.6

- 3 -

MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-CV-02435-EKL

ROPERS MAJESKI

A Professional Corporation
San Jose

III.    **LEGAL STANDARD**

The SPO broadly permits the parties to designate as "CONFIDENTIAL" any information that falls within the protection of Federal Rule of Civil Procedure 26(c). The protections of Rule 26(c) extend to any "trade secret or other confidential research, development, or commercial information" of a party. Fed. R. Civ. P. 26(c)(1)(G). These protections may be granted upon a showing of "good cause." Fed. R. Civ. P. 26(c)(1). The SPO further permits a Producing Party to designate as "HIGHLY CONFIDENTIAL" "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means," still consistent with the requirement of showing good cause. ECF 89, § 2.8.

The party claiming good cause must then demonstrate, for each document it wishes to protect, that specific prejudice or harm will occur if the protective order is lifted. *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST (MEJ), 2015 U.S. Dist. LEXIS 27803, at *6 (N.D. Cal. Mar. 6, 2015) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

Courts considering whether there is good cause for maintaining protection of discovery material apply a two-part test. First, the court must "determine whether particularized harm will result from disclosure of information to the public." *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011). Then, "if the court concludes that such harm will result from disclosure, then it must proceed to balance the public and private interests to decide whether maintaining a protective order is necessary." *Id.*

IV.    **ARGUMENT**

The four documents in question clearly qualify as "confidential commercial information." Fed. R. Civ. P. 26(c)(1)(G). Defendants have designated these extremely sensitive documents containing critical business information, which they have designated as "HIGHLY CONFIDENTIAL" under the SPO (ECF 89, § 2.8) to safeguard critical business information, including internal financial regulations, data controls, and intellectual property rights. These documents are not shared within Defendants' own organization, and maintaining strict

4896-2662-5324.6

- 4 -

MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-CV-02435-EKL

ROPERS
MAJESKI

A Professional Corporation
San Jose

confidentiality is essential to protecting their competitive position. Plaintiff, whose owners are

affiliated with a competing company, should not be able to disrupt Defendants' efforts to protect

this sensitive information. Therefore, there is good cause to retain the "HIGHLY

CONFIDENTIAL" designation, as it is the least restrictive means to protect Defendants'

interests.

Furthermore, this litigation does not present a compelling reason for the documents to be

re-designated or made publicly available. There are no substantial health or safety concerns that

would justify public access to this information. The issues in this case can be effectively litigated

without publicly disclosing these specific documents and any potential harm can be addressed

financially. As such, Defendants' interest in protecting these documents outweighs any public

interest in their release.

### A.    Defendants' Confidentiality Designations Should Be Retained

#### 1.    Defendants Will Suffer Particularized Harm If the Four Documents Are Re-Designated as "CONFIDENTIAL"

If the confidentiality designations of the four documents at issue are re-designated to

"CONFIDENTIAL" or if Plaintiff were to be free to disclose them to the public—including into

the hands of Defendants' current and prospective competitors—Defendants will suffer from

particularized harm. *See In re Roman Catholic*, 661 F.3d at 424.

##### a.    Defendants' Data Retention Policy (ADI_018935 - ADI_018938)[1]

Certain parts of Defendants' data retention policy outline Defendants' classification and

retention of data. Fitton Decl. ¶ 5; Isaacson Decl. ¶ 8, Exh. 1. The Inventors, who are the sole

owners of Plaintiff, also own and operate a competing semiconductor company that engages in

business with Defendants. If this information is disclosed to the Inventors in this case, Defendants

would suffer particularized harm in potential future litigation. Fitton Decl. ¶ 6. Such disclosure

will be prejudicial to Defendants in forthcoming legal proceedings. *Id.* Should the data retention

policy be re-designated from "HIGHLY CONFIDENTIAL" to "CONFIDENTIAL," as proposed

---

[1] This document is Exhibit 1 to the Declaration of Kevin W. Isaacson In Support of Defendants' Motion to Retain Confidentiality.

4896-2662-5324.6

MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-CV-02435-EKL

1   by Plaintiff, it would provide the Inventors with an unfair advantage by allowing access to a

2   sensitive internal document regarding Defendants' data retention practices. Fitton Decl. ¶ 7. This

3   could enable the Inventors, in their role as owners of the competing semiconductor company, to

4   leverage this information in subsequent competition or litigation against Defendants. *Id.*

5          Additionally, Defendants have dedicated significant time and resources to developing the

6   policies outlined in this document. Fitton Decl. ¶ 8. If these policies were disclosed, particularly

7   to competitors—such as the Inventors' other semiconductor company—they could exploit and

8   replicate them without making the same investment in development. *Id.* This would result in

9   specific prejudice to Defendants.

10          If the Data Retention Policy document were to be re-designated as "CONFIDENTIAL or

11   disclosed to the public, Defendants would face particular harm. The document contains critical

12   information about Defendants' data retention timelines and processing methods, which

13   competitors could use to their advantage. This could allow competitors to reverse-engineer

14   Defendants' strategies and capitalize on potential vulnerabilities, undermining Defendants'

15   competitive and innovative edge. Fitton Decl. ¶ 9; *see Grace v. Apple, Inc.*, No. 17-cv-00551

16   LHK (NC), 2018 U.S. Dist. LEXIS 243869, at *5 (N.D. Cal. May 1, 2018) (arguing disclosure of

17   the exhibits could make it easier to compromise the security of Apple products, potentially

18   placing Apple users at risk and threatening Apple's competitive standing).

19          Therefore, to prevent such severe harm, it is essential to maintain the "HIGHLY

20   CONFIDENTIAL" designation for the Data Retention Policy document. Limiting any disclosure

21   of the Data Retention Policy to competitors is necessary to safeguard Defendants' business

22   interests, security, and competitive position in the marketplace. Fitton Decl. ¶¶ 10-11.

23                          b.      Defendants' Purchase Requisition Document (ADI_018933 -
                                    ADI_018934)[2]
24

25          Certain sections of the Purchase Requisition document contain extremely sensitive

26   information about Defendants' internal approval process, including the identities of relevant

27

28   [2] This document is Exhibit 2 to the Declaration of Kevin W. Isaacson In Support of Defendants'
     Motion to Retain Confidentiality.

4896-2662-5324.6

MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-CV-02435-EKL

1    approvers and their respective job position. Dere Decl. ¶ 5; Isaacson Decl. ¶ 9, Exh. 2.

2    Additionally, the document contains extremely sensitive information regarding the royalty

3    calculation and royalty payment values. Dere Decl. ¶ 6.

4         Disclosure of this information would cause significant prejudice to Defendants, as the

5    royalty calculation and associated values provide competitors and other licensors insight with

6    valuable insight into Defendants' financial arrangements. Dere Decl ¶ 7. As such, the Court has

7    already recognized the sensitive nature of this information and ordered that the royalty

8    calculation, as outlined in the License Agreement, be sealed. *See* ECF 86. The same calculation

9    appears in the Purchase Requisition document, further emphasizing the need for its protection.

10        Furthermore, disclosure could enable competitors, including the Inventors' other

11   semiconductor company, to offer more competitive terms to other licensors, while simultaneously

12   allowing Defendants' current licensors to demand higher royalty payments. Dere Decl. ¶ 8. The

13   revelation of such details would unfairly disrupt the balance in business negotiations, inflicting

14   the particularized harm on Defendants. *Id.*; *see Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D.

15   552, 555 (C.D. Cal. 2007) ("[d]isclosure may be ordered to opposing party's trial attorney only

16   (and not to the opposing party).").

17        Moreover, the disclosure of the Purchase Requisition document would specifically harm

18   Defendants by providing competitors with insight into Defendants' internal approval structure.

19   Dere Decl ¶¶ 9-10. This could make Defendants vulnerable to employee poaching, as

20   competitors, such as the Inventors, could target and recruit key employees with access to

21   confidential financial information, thereby circumventing the resources and efforts that

22   Defendants invest in securing top talent. *Id.*; *see* 242 F.R.D. at 555.

23        Finally, public disclosure of the Purchase Requisition document would increase

24   Defendants' vulnerability to data breaches. Dere Decl. ¶ 11. The document identifies individual

25   employees with knowledge of Defendants' financials and reveals which employees have access to

26   confidential information, consequently heightening the risk of security threats and potential

27   compromises of sensitive data. *Id.*; *Grace v. Apple, Inc.*, No. 17-cv-00551 LHK (NC), 2018 U.S.

28   Dist. LEXIS 243869, at *5 (N.D. Cal. May 1, 2018).

4896-2662-5324.6

MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-CV-02435-EKL

ROPERS MAJESKI

A Professional Corporation
San Jose

1    Therefore, if this document is re-designated from its "HIGHLY CONFIDENTIAL" status,

2    Defendants will suffer from severe harm. It is essential to maintain the confidentiality designation

3    of the Purchase Requisition document to the fullest extent in order to prevent particularized harm

4    and to safeguard Defendants' business interests, security, and competitive standing in the

5    marketplace. Dere Decl. ¶¶ 12-13.

6                    c.        Defendants' Organizational Chart Document (ADI_018951-
                              ADI_018959)[3]
7

8    The Organizational Chart document contains extremely sensitive information regarding

9    Defendants' internal employment hierarchy. Clifford Decl. ¶ 6; Isaacson Decl. ¶ 10, Exh. 3.

10    Similar to the Purchase Retention document, re-designating the Organizational Chart

11    document to "CONFIDENTIAL" would cause particularized harm to Defendants, as it would

12    grant competitors, especially the Inventors' other semiconductor company, access to Defendants'

13    internal structure. Clifford Decl. ¶ 6. This access would make Defendants vulnerable to employee

14    poaching. Clifford Decl. ¶¶ 7-8. Competitors could selectively recruit employees from

15    Defendants without incurring the same level of effort and resources that Defendants invest in

16    hiring and retaining top talent. Defendants have dedicated considerable time and resources to

17    identifying and recruiting these employees for specific roles within the company. Clifford Decl.

18    ¶ 8. Revealing their names and positions within the organizational structure would provide

19    valuable insights into Defendants' confidential research, development efforts, and ongoing

20    projects. *Id.* This information could expose critical aspects of Defendants' operations and

21    strategic initiatives, undermining Defendants' competitive edge and effectively enabling

22    competitors to benefit from Defendants' efforts. Clifford Decl. ¶¶ 8,10; *see RSI Corp. v. IBM*, No.

23    5:08-cv-3414 RMW, 2012 U.S. Dist. LEXIS 105982, at *3 (N.D. Cal. July 30, 2012) (citing

24    *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) ("[d]isclosure may be

25    ordered to opposing party's trial attorney only (and not to the opposing party).").

26    Moreover, the employees listed in the organizational chart hold key positions within

27

28    [3] This document is Exhibit 3 to the Declaration of Kevin W. Isaacson In Support of Defendants'
Motion to Retain Confidentiality.

4896-2662-5324.6

MOTION TO RETAIN CONFIDENTIALITY
                                                                                      CASE NO.: 5:24-CV-02435-EKL

1   Defendants' operations and possess significant confidential knowledge essential to Defendants'

2   success. Clifford Decl. ¶ 9. Making this information publicly available would increase the risk of

3   these individuals being targeted by competitors for their expertise and insights. Clifford Decl.

4   ¶¶ 9-10; *see RSI Corp. v. IBM*, No. 5:08-cv-3414 RMW, 2012 U.S. Dist. LEXIS 105982, at *3

5   (N.D. Cal. July 30, 2012).

6          Importantly, Defendants are not arguing that the individual names and job titles of

7   employees are inherently confidential. This information may be available on public platforms

8   such as LinkedIn. Rather, the extremely sensitive aspect lies in the structure of the organization—

9   specifically, how employees are grouped within teams, who reports to whom, and how these team

10  fit within the overall structure of the organization. The sensitivity stems from the holistic view of

11  this internal structure, in addition to the individual pieces of information. *See NetApp, Inc. v.*

12  *Nimble Storage, Inc.*, No. 5:13-CV-05058-LHK (HRL), 2015 U.S. Dist. LEXIS 11406, at *58

13  (N.D. Cal. Jan. 29, 2015); *Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 12-cv-01927-

14  WHO, 2013 U.S. Dist. LEXIS 115847, at *12-13 (N.D. Cal. Aug. 15, 2013).; *see also Avaya Inc.*

15  *v. Pearce*, No. 19-cv-00565-SI, 2020 U.S. Dist. LEXIS 241116, at *4-5 (N.D. Cal. Dec. 22,

16  2020).

17         Furthermore, if the Organizational Chart document becomes a public document, it would

18  significantly prejudice Defendants by also increasing the risk of data breaches. Clifford Decl.

19  ¶ 11. Exposing individuals with access to sensitive company information would make Defendants

20  more vulnerable to targeted security threats. *Id.* Malicious actors could exploit this information to

21  specifically target employees responsible for handling confidential data, increasing the likelihood

22  of phishing attacks and other forms of manipulation. *Id.*; *see Grace v. Apple, Inc.*, No. 17-cv-

23  00551 LHK (NC), 2018 U.S. Dist. LEXIS 243869, at *5 (N.D. Cal. May 1, 2018).

24         Therefore, if the Organizational Chart document is de-designated from its "HIGHLY

25  CONFIDENTIAL" designation, Defendants will incur significant harm. Limiting the disclosure

26  of the Organizational Chart document to the greatest extent possible is essential to safeguarding

27  Defendants' business interests, security, and competitive position in the marketplace. Clifford

28  Decl. ¶¶ 12-13.

ROPERS MAJESKI
A Professional Corporation
San Jose

4896-2662-5324.6

MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-CV-02435-EKL

1        d.    The License Agreement (ADI_018939 - ADI_018950)[4]

2    Certain portions of the License Agreement contain "confidential and competitively

3 sensitive information," including definitions, licensing fees, conditions for receiving royalty

4 payments, technical specifications, and the royalty calculation. ECF 86; Sharma Decl. ¶¶ 4-5;

5 Isaacson Decl. ¶ 11, Exh. 4. The Court has already ordered these portions to be sealed following

6 five administrative motions to seal or consider whether another party's material should be sealed.

7 *Id.*

8    Here, Defendants contend that the portions the Court previously ruled sealed should retain

9 their "HIGHLY CONFIDENTIAL" designation. Isaacson Decl. ¶¶ 6-7. This request does not

10 seek to have additional sections of the License Agreement sealed; rather, it acknowledges the

11 presence of extremely sensitive information within the document and justifies its classification as

12 "HIGHLY CONFIDENTIAL." *Id.* Since the Court has already ruled on the sealed portions of the

13 License Agreement, Defendants recognize that the unsealed portions of the document are

14 considered public. *Id.*

15    Given that Defendants have provided the Court with compelling reasons to warrant

16 portions of the License Agreement sealed, the "HIGHLY CONFIDENTIAL" designation must

17 remain in place. Therefore, maintaining the confidentiality of the License Agreement to the

18 greatest extent possible is essential to protect Defendants' sensitive and competitively valuable

19 information. Sharma Decl. ¶ 8.

20    In summary, the "HIGHLY CONFIDENTIAL" designation must be maintained for

21 Defendants' Data Retention Policy document, the Purchase Requisition document, the

22 Organizational Chart document, and the License Agreement. The individual owners of Plaintiff

23 operate a competing semiconductor company. If these documents were disclosed to them, other

24 competitors, or the public, Defendants would be exposed to significant competitive risks. Thus,

25 the "HIGHLY CONFIDENTIAL" status for the four documents at issue must remain intact.

26

27

28
___
[4] This document is Exhibit 4 to the Declaration of Kevin W. Isaacson In Support of Defendants' Motion to Retain Confidentiality.

ROPERS MAJESKI

A Professional Corporation
San Jose

2.      Defendants' Interest in Protecting the Four Documents Outweighs the Public Interest in Disclosure

As explained above, competitive harm would befall Defendants from the disclosure of these four documents at issue, the Court must next "balance the public and private interests to decide whether maintaining a protective order is necessary." *In re Roman Catholic*, 661 F.3d at 424. In balancing the public and private interests, courts then consider the following factors:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* at 424 n.5 (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

Most of the *Glenmede* factors are not applicable in this case. Defendants do not contest that Plaintiff requested the documents for a legitimate purpose (Factor 2). These four documents in question do not contain information that would cause embarrassment to any party (Factor 3). The information at issue is also not information related to public health and safety (Factor 4). Since Defendants have already provided the documents to Plaintiff, Plaintiff currently possesses them, eliminating any concerns about the fairness or efficiency of sharing information between the parties (Factor 5). Furthermore, Defendants are not public entities or officials (Factor 6).

The remaining factors at issue are the first and seventh factors. Regarding the first factor, it is likely that disclosure of the extremely sensitive information in the four documents will not violate any private interests. As such, this factor does weighs in favor of de-designation.

However, the seventh factor considers "whether the case involves issues important to the public." In this instance, the case centers around a licensing and royalty dispute, which does not constitute as issues important to the public. Publicly important issues typically involve matters that could impact the public's understanding of the court's final decision, thereby undermining judicial authority, which relies on public access and trust. *See NML Capital Ltd. v. Republic of*

A Professional Corporation
San Jose

ROPERS
MAJESKI

1    *Arg.*, No. 2:14-cv-492-RFB-VCF, 2015 U.S. Dist. LEXIS 20722, at *19 (D. Nev. Feb. 19, 2015).

2         Given that factors 2 through 6 are not applicable, and considering that this case does not

3    address issues of public importance, along with the potential for particularized harm to

4    Defendants as previously discussed, the mere fact that the first factor weighs in favor of de-

5    designation should not compel the conclusion that the documents should be de-designated as

6    "CONFIDENTIAL" or made public. Importantly, the individual owners of Plaintiff also run and

7    manage another semiconductor company, which means the balance strongly favors this being a

8    private matter. If the Inventors, or any other competitors, were to gain the information in these

9    four documents, it would cause significant harm to Defendants. Any potential benefits to the

10   public are far outweighed by the substantial harm Defendants would endure.

11        Thus, the balance of public and private interests weighs in favor of Defendants retaining

12   the "HIGHLY CONFIDENTIAL" designation.

13   **V.    CONCLUSION**

14        For the reasons set forth above, Defendant respectfully requests that the Court order that

15   the documents challenged by Plaintiff retain their confidentiality designations of "HIGHLY

16   CONFIDENTIAL" under the stipulated protective order.[5]

17   Dated: March 24, 2025                    ROPERS MAJESKI PC

18
                                             By: /s/ *Kevin W. Isaacson*
19                                               MICHAEL J. IOANNOU
                                                 KEVIN W. ISAACSON
20                                               Attorneys for Defendants and
                                                 Counterclaimants ANALOG DEVICES,
21                                               INC. and MAXIM INTEGRATED
                                                 PRODUCTS, INC.
22

23

24

25

26

---

27   [5] Given the sensitivity of the documents and their clear alignment with the "HIGHLY
     CONFIDENTIAL" standard under the SPO, they should remain "HIGHLY CONFIDENTIAL"
     rather than "CONFIDENTIAL." Alternatively, if the Court deems it appropriate, Defendants
28   respectfully request the Court order the documents be designated "CONFIDENTIAL" under the
     SPO at a minimum.

4896-2662-5324.6

MOTION TO RETAIN CONFIDENTIALITY
                                                                                   CASE NO.: 5:24-CV-02435-EKL