MICHAEL J. IOANNOU (SBN 95208)
KEVIN W. ISAACSON (SBN 281067)
PAULA B. NYSTROM (SBN 329651)
AMANDA M. OGATA (SBN 354967)
ROPERS MAJESKI PC
333 W. Santa Clara St., Suite 930
San Jose, CA  95113
Telephone:    408.287.6262
Facsimile:    408.918.4501
Email:    michael.ioannou@ropers.com
          kevin.isaacson@ropers.com
          paula.nystrom@ropers.com
          amanda.ogata@ropers.com

Attorneys for Defendants and Counterclaimants
ANALOG DEVICES, INC. and
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUMBER 14 B.V., | Case No.: 5:24-cv-02435-EKL |
| Plaintiff, | **DECLARATION OF KEVIN W. ISAACSON IN SUPPORT OF DEFENDANTS AND COUNTERCLAIMANTS' MOTION TO RETAIN CONFIDENTIALITY** |
| v. | |
| ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC. | |
| Defendants. | |
| ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC., | Date:    May 14, 2025 |
| Counterclaimants, | Time:    11:00 a.m. |
| v. | Dept:    Courtroom 5, 4th Floor |
| NUMBER 14 B.V., RUDY ESCHAUZIER, and NICO VAN RIJN, | Judge:    Hon. Nathanael Cousins |
| Counter-Defendants. | |

I, Kevin W. Isaacson, declare as follows:

1.    I am an attorney admitted to practice before the courts of the State of California.  I

am a partner with the law firm of Ropers Majeski PC ("Ropers"), counsel of record for

Defendants/Counterclaimants ANALOG DEVICES, INC. and MAXIM INTEGRATED

ROPERS
MAJESKI
A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

PRODUCTS INC. (collectively "ADI/Maxim") in the above-captioned matter. I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently hereto.

2.      On February 28, 2025, Defendants produced documents responsive to Plaintiff's requests for production.

3.      On March 1, 2025, under Section 6.2 of the Stipulated Protective Order, Plaintiff challenged Defendants' highly confidential designation of four documents, including those attached as Exhibits 1-4 to this Declaration. Plaintiff stated that it sees "nothing 'extremely sensitive' within these documents that would 'create a substantial risk of serious harm' if disclosed." Plaintiff proposed these documents should be designated "CONFIDENTIAL" rather than "HIGHLY CONFIDENTIAL".  *See* Exhibit 5.

4.      On March 14, 2025, Defendants responded to Plaintiff's challenge, detailing the basis for all identified documents should retain the highly confidential designation. See Exhibit 5.

5.      On March 18, 2025, the parties met and conferred via telephone conference to further attempt to resolve the designation dispute. Despite Defendants' best efforts, the parties were unable to reach a resolution.

6.      For the License Agreement attached as Exhibit 4, the Court has already ordered these portions to be sealed in the Court's December 23, 2024 Order Regarding Motions to Seal.

7.      Defendants contend that the portions the Court previously ruled sealed should retain their highly confidential designation. This request does not seek to have additional sections of the License Agreement sealed. Instead, it acknowledges the presence of extremely sensitive information within the document and justifies its classification as highly confidential. Since the Court has already ruled on the sealed portions of the License Agreement, Defendants recognize that the unsealed portions of the document are considered public.

8.      Attached as Exhibit 1 is a true and correct copy of Defendants' Data Retention Policy document (ADI_018935-ADI_018938).

9.      Attached as Exhibit 2 is a true and correct copy of Defendants' Purchase Requisition document (ADI_018933-ADI_018934).

10.     Attached as Exhibit 3 is a true and correct copy of Defendants' Organizational Chart document (ADI_018951-ADI_018959).

11.     Attached as Exhibit 4 is a true and correct copy of the License Agreement (ADI_018939-ADI_018950).

12.     Attached as Exhibit 5 is a true and correct copy of Plaintiff's initial designation challenge of the four documents dated March 1, 2025 and Defendants' response dated March 14, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of March, 2025 at San Jose, California.

/s/ *Kevin W. Isaacson*
KEVIN W. ISAACSON

# EXHIBIT 1

## (REDACTED - PUBLIC VERSION)



# Data Retention Policy

## Purpose

The corporate information of Analog Devices, Inc. ("ADI") and its affiliated companies is a vital asset that enables ADI to conduct business. All employees are responsible for helping to actively manage this information throughout its lifecycle.

ADI is committed to complying with all applicable data retention laws. This Data Retention Policy ("Policy") is part of a company-wide system for the review, retention, and destruction of Data that ADI creates, transmits, or receives in connection with the business it conducts. The Policy is intended to help ADI Business Functions in their efforts to comply with applicable data retention laws.

By storing and deleting Data properly, Business Functions protect ADI's confidential information, proprietary information, and other Data assets of ADI, while also ensuring that Personal Data is retained no longer than necessary.

## Scope

This Policy is applicable to all ADI Data collected, used, or processed by or on behalf of ADI's global operations, regardless of ADI entity. It includes all ADI Data maintained on company equipment, personal devices, or third-party systems. All ADI employees, consultants, contractors, and agents who handle ADI Data are subject to this Policy.

This Policy replaces any existing data or record retention policies.

## Policy

1.   **Definitions**

     1.1.   **Business Function** refers to ADI business units or functions identified by the Data Privacy Team in its implementation plans and communications related to this Policy.

     1.2.   **ADI Data or Data** refers to any recorded information that ADI creates, transmits, or collects for business or legal purposes, and includes but is not limited to:

     - Calendars
     - Audio and video recordings

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                                                 ADI_018935



- Computer programs
- Electronic records, databases, and data lakes
- Electronic or paper files and documents
- Notes
- Invoices
- Letters and other correspondence, including drafts
- Memory in cell phones
- Log files
- Sales logs or records of transactions
- Spreadsheets
- Emails (and attachments)
- Social media content and web pages
- Voicemails and text messages

1.3.    **Personal Data** is information that identifies, relates to, describes, or can be associated with a particular person. This includes Data that is separate, but when combined with other ADI Data, can identify a person. Some Personal Data may be considered *sensitive* Personal Data. This Policy covers all types of Personal Data, including details such as name, email address, phone number, videos or photos, financial information, and medical information. See ADI's global Privacy Policy for additional details.

2.    **Responsibilities**

2.1.    **Data Privacy Team**. The Legal and Risk Organization ("LRO") Data Privacy Team is responsible for maintaining this Policy in parallel with the LRO schedules of retention periods applicable to specific categories of Data maintained by ADI. The Data Privacy Team will coordinate with the stakeholders to establish periodic data deletion cycles, answer the Business Function's questions about what should be deleted and when, and assist with implementation of this Policy. If unsure, do not destroy or delete any Data until the Data Privacy Team has advised you of the proper retention period. Contact dataprivacy@analog.com.

2.2.    **Business Functions**. Each Business Function is responsible for securing and organizing its Data to allow for the timely retrieval of and deletion of Data and for executing a data deletion process at the direction of the Data Privacy

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    ADI_018936

Team. The Business Function may designate a records management contact who is responsible for identifying records to retain and for consulting the Data Privacy team to determine the appropriate retention period and execute periodic deletion exercises. As needed, the Business Function may consult with the IS or IT teams.

2.3. **Individuals.** All ADI employees, consultants, contractors, or other agents must comply with this Policy. Failure to do so may result in disciplinary action No one is authorized to store ADI Data offsite, whether in a third-party facility or in a SaaS or cloud-based system, unless a member of the LRO has approved the storage provider in writing in advance.

3. **Data Deletion Guidelines**

   3.1. **Selecting Records for Deletion Based on the Retention Schedule.** Data should be retained according to the retention schedule communicated by the Data Privacy Team to individual Business Functions.



   3.2. **Legal or Litigation Holds.**



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                                                                      ADI_018937





3.3.    **Storage and Destruction of Data.**

3.4.    **Audits.**

3.5.    **Policy Updates.** The Data Privacy Team will periodically review this Policy and its procedures, at least annually, to ensure compliance with applicable laws.

## Related ADI Policies

- Technology Resources Policy
- Privacy Policy
- Code of Business Conduct and Ethics

## Revision History

| Description of Changes | Release Date |
|---|---|
| Initial version. | February 22, 2024 |

## Policy Contact Information

Policy Owner: LRO/Data Privacy Team
Data Protection and Privacy
dataprivacy@analog.com

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                                      ADI_018938

# EXHIBIT 2

# (REDACTED - PUBLIC VERSION)



**Purchase Requisition**
**PR Priority:  P3 STANDARD**

| PR # | 10290382 | Status | Closed |
|------|----------|--------|--------|
| PR Type | Framework | Pending By | |
| PO # | 5500047968 | Project Name | FY2023 Number 14BV Royalty Payment |

## Purchase Requisition Details

| Created By (Originator) | | FAB / CORP | Corp | First Time / Repeat | Repeat Order |
|---|---|---|---|---|---|
| Requester | | FAB Location | N/A | Special Category of Purchase | None of the above |
| Requester Emp. ID | 52125 | Area | BM | Expense Type | Budget |

| Company code | 2601 | Confidential | No | Acceptance Criteria | N |
|---|---|---|---|---|---|
| Region | EU | MIPI PR | N | Accept By | |

## Vendor Details

| Primary Vendor | NUMBER 14 B.V. | Contact Name | Rudy Eschauzier | Advanced Payment Req. | N |
|---|---|---|---|---|---|
| Vendor Address | ROLAND HOLSTLAAN 10,BERGSCHENHOEK,Zuid-Holland,NL | Contact Email | reschauzier@yahoo.com | Advanced Payment Amt. | |
| | | Contact Phone # | +31 (06) 13180932 | Date Payment Req. | |

## Alternate Vendor Details

| Alternate Vendor 1 | | Alternate Vendor 2 | |
|---|---|---|---|
| Alternate Vendor 1 Price | | Alternate Vendor 2 Price | |

## Shipping Details(if all items have the same Ship to Location):

| Ship to Address | Other-Enter Address Manually Roland Holstaan 10, Bergschenhoek, 2662 Bergschenhoek - 2662, Zuid-Holland, Netherlands | Deliver To | Reymar (Reymar) Aromin |
|---|---|---|---|
| | | Requested Delivery Date | 12/05/2023 |
| | | Shipping Instructions | Vendor Pays |

## Account Details (if all items have the same Account Details):

| Material Group | D005 - Royalty Expense | GL Account | 654060 - ROYALTY EXPENSE |
|---|---|---|---|
| Cost Center | ROYALTY EXPENSE(10205) | Budget | Not Applicable |

**Definition of Critical Material:** Any material directly contacting or contributing to the end product or essential for the control and / or consistency of a critical process. *The Critical Material Specification number should be referenced on the vendor quote and attached to the purchase requisition.

## Item Details

| Item | Vendor (PN) Quote (Q) | Description | Qty | UOM | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 10 | PN: N/A Q: | FY2023 Number14BV Royalty | 1.00 | Activity unit | 1343753.00000 | 1,343,753.00 |

**TOTAL DOC CURRENCY  1,343,753.00  USD**         **TOTAL  1,343,753.00  USD**

## Justification Summary



## Approval

| # | Approver | Approver Name | Status | Days with Approver | Received Date | Approved Date | Approved By |
|---|---|---|---|---|---|---|---|
| 1 | Level 2 | | A | 0 | 11/30/2023 02:17:31 AM | 11/30/2023 02:20:27 AM | |
| Approver Comments | | | | | | | |
| 2 | Level 3 | | A | 4 | 11/30/2023 02:20:27 AM | 12/04/2023 10:41:28 AM | |
| Approver Comments | | | | | | | |
| 3 | Level 4 | | A | 1 | 12/04/2023 10:41:28 AM | 12/06/2023 07:44:16 AM | |
| Approver Comments | | | | | | | |
| 4 | Level 4 | | A | 32 | 12/06/2023 07:44:16 AM | 01/08/2024 06:21:30 AM | |
| Approver Comments | | | | | | | |
| 5 | | | A | 0 | 01/08/2024 06:21:30 AM | 01/08/2024 06:58:47 AM | |
| Approver Comments | | | | | | | |
| 6 | | | A | 0 | 01/08/2024 06:58:47 AM | 01/08/2024 10:18:55 AM | |
| Approver Comments | | | | | | | |
| 7 | Finance#1 | | AP | 3 | 11/30/2023 02:17:31 AM | 12/03/2023 10:46:28 PM | |
| Approver Comments | | | | | | | |
| 8 | Procurement | | U | 0 | 01/08/2024 10:18:55 AM | 01/08/2024 10:23:10 AM | |
| Approver Comments | | | | | | | |
| 9 | Procurement | | U | 0 | 01/08/2024 10:23:10 AM | 01/08/2024 09:11:56 PM | |
| Approver Comments | | | | | | | |
| 10 | Procurement | | A | 0 | 01/08/2024 09:11:56 PM | 01/09/2024 12:51:31 AM | |
| Approver Comments | | | | | | | |

ADI_018933

**Comments**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018934

# EXHIBIT 3

## (REDACTED - PUBLIC VERSION)

116035 - Maurizio Gavardoni



## 101715 - Daihong Fu



55578 - Todd Sherman



ADI_018953

12622 - Diarmuid McSwiney



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

103690 - Paulina Pan



21461 - Yogesh Sharma



128520 - Madel Masilungan



ADI_018957

128209 - Rachelle Cabrera



7485 - Bryan Caron



# EXHIBIT 4

## (REDACTED - PUBLIC VERSION)

## LICENSE AGREEMENT

This Patent License Agreement (*the Agreement*) is made effective as of the date of signing by and between:

1. **Maxim Integrated Products, Inc.**, a company organized and existing under the laws of Delaware, U.S.A., having its principal office at 120 San Gabriel Drive, Sunnyvale, CA 94086 USA, United States of America, hereinafter referred to as "*Maxim*",

AND

2. **Rudy Eschauzier**, residing at ███████████████████████, the Netherlands, hereinafter referred to as "*Eschauzier*",

3. **Nico van Rijn**, residing at ████████████████████, hereinafter referred to as "*Van Rijn*".

Parties under 2 and 3 may hereinafter collectively be referred to as "*the Inventors*".

### RECITALS

A. Maxim is a worldwide leader in design, development, and manufacture of linear and mixed-signal integrated circuits;

B. After the date of entering into this License Agreement, the Inventors may use their experience and personal skills to develop certain Know-How relating to Amplifier Design Technology.

C. In the event that Know-How leads to Amplifier Design Patents that have conceptual and economic value, Maxim wishes to obtain a license under these patents pursuant to the terms and conditions in this Agreement;

D. The Parties acknowledge that if Maxim shall not or no longer employ the Inventors, Maxim will be confronted with increased expenses in order to further develop the Amplifier Design Technology and to obtain the Amplifier Design Patents. In case the Inventors shall not or no longer be employed by Maxim, a reduced royalty rate shall apply, which takes into account these increased expenses;

E. The Inventors are willing to grant a licence to Maxim under the conditions set out in this Agreement, which reflect Maxim's privileged position;

NOW THEREFORE, in consideration of the mutual promises and covenants herein contained, the Parties agree as follows:

### 1.   DEFINITIONS

1.1   For the purpose of the Agreement the following definitions shall apply:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

"Amplifier Design Patent(s)" shall mean any patent(s) in relation to Amplifier Design Technology;

"Amplifier Design Technology" shall mean the technology on amplifier design, which may be developed after the date of entering into this License Agreement. ;

"Concept Development Stage" shall mean the period during which the Inventors shall deliver to Maxim basic schematics related to amplifier design;

"Effective Date" shall mean the date this agreement has been signed.

"Employment Agreement" shall mean the employment agreement between Maxim and the Inventors;

"Gross Margin" shall mean the Net Revenues less Cost of Goods Sold calculated in accordance with U.S. generally accepted accounting principles (GAAP); Gross margin as a % equals gross margin divided by net revenues calculated in accordance with GAAP. For clarification purposes, a calculation of the Gross Margin for an imaginary product is set forth on Annex 2 attached hereto.

"Inventors" shall mean Rudy Eschauzier and Nico van Rijn;

"Know-How" is defined to be all the know-how the Inventors have developed regarding Amplifier Design Technology after the date of entering into this License Agreement;

Parties shall mean the parties to this Agreement, e.g. Maxim and the Inventors;

"Products" is defined to be any products that fall within the scope of the Amplifier Design Patent(s);

"Stand-Alone Amplifiers" shall mean stand alone amplifiers that are similar in functionality to the following kinds of product families: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮

## 2.    GRANT OF RIGHTS

2.1    Maxim shall have a right of first refusal to obtain a perpetual, exclusive and worldwide license – with the right to sub-license - under the Amplifier Design Technology including any and all Amplifier Design Patents resulting from said Amplifier Design Technology as long as the Amplifier Design Patents are in force.

2.2    With regard to the Amplifier Design Patents or patent applications therefor, Maxim would pay (or reimburse) the Inventors for all reasonable legal counselling, filing, prosecution and maintenance costs. Maxim shall be entitled to decide on strategy relating to filing, prosecution and maintenance and Maxim shall be entitled to decide on the appointment of outside counsel, if any. Strategy related to filing means that Maxim may decide that patent applications shall not be filed in case Maxim is advised by outside counsel, and in communication

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018940

with the Inventors, that the subject matter is not patentable Also, strategy related to filing means that Maxim, in its sole and absolute discretion, shall be able to decide on the countries for which designate the respective applications, claim construction, priority applications, and the like. The parties to this agreement hereby agree that patent applications will be filed with respect to Amplifier Design Technology used in the four product families ▨▨▨▨▨
▨▨▨ as outlined in the attached product and specifications listing provided that the subject matter is patentable.

2.3 In case Maxim wishes to exercise its right of first refusal under clause 2.1 above, Maxim shall be obligated to do so within 200 days from the date of issuance of the Amplifier Design Patents by giving the Inventors written notice. The Inventors shall inform Maxim immediately in writing as soon as the date of grant of a particular Amplifier Design Patent becomes known. In case the Inventors do not inform Maxim timely, the 200-day period will start running as of the moment Maxim is informed by the Inventors in writing.

2.4 Each Amplifier Design Patent will be offered individually to Maxim.

2.5 The first time that Maxim exercises its right of first refusal (i.e. the first time that Maxim wishes to obtain a license under the Amplifier Design Patents), subject to clause 2.6 below, Maxim shall pay to the Inventors jointly (i.e. to be divided by them in accordance with written instructions from the Inventors given to Maxim) ▨▨▨▨ ▨▨▨▨ ▨▨▨▨ - to license the Amplifier Design Patents in accordance with the terms contained herein. This fee shall be paid only once and shall not be due in the event Maxim wishes to exercise its right of first refusal in relation to any subsequent Amplifier Design Patent(s).

2.6 The ▨▨▨▨▨ ▨▨▨ ▨▨▨▨ - that is mentioned in clause 2.5 above, shall only be paid by Maxim to the Inventors upon confirmation that the Amplifier Design Patents have conceptual and economic value in the market.

2.7 The conceptual and economic value of the Amplifier Design Patents in the market, as mentioned in clause 2.6 above, will be based on the product and specification listing attached as Annex 1. The Parties agree that if the Amplifier Design Patents enable products that show improvements of "similar" magnitude as compared to the attached product and specifications listing, then this will establish that the Amplifier Design Patents have conceptual and economic value in the market for the purpose of payment of the fee specified above.

2.8 In the event Maxim decides to license one or more Amplifier Design Patents (on an exclusive, worldwide and perpetual basis), Maxim will use its commercially reasonable efforts to commercialize and sell stand-alone amplifiers utilizing such Amplifier Design Patents at a profit.

2.9 In the event Maxim elects not to exercise its right of first refusal to license a particular Amplifier Design Patent, the Inventors shall be free to grant licences to third parties under said particular Amplifier Design Patent. Maxim will be deemed to have made such election, if it will not have exercised its right of first refusal within the 200-day period meant in clause 2.3 above.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018941

**3.** 

**3.1**

**3.2**   Maxim shall evaluate each Stand-Alone Amplifier product launch. Payment of
the amount under clause 3.1 above, if any, shall be conditioned upon the
technology covered by the Amplifier Design Patents giving the product
significant economic value and adds demonstrable benefits to the product.
Assessment of the value and benefits will be governed by the product and
specifications listing as outlined in clause 2.7 above.

**3.3**   A certain portion of a design center that Maxim is planning to establish in Delft,
The Netherlands, would be dedicated to designing stand-alone amplifiers and
defined by local product definers in Delft. Maxim shall decide on any product
launch and a Business Unit executive at Maxim's headquarters in Sunnyvale,
California, USA, shall need to approve any such launch. The parties to this
Agreement shall agree beforehand on the launch of four product families (AA1,
AA2, AA3 and AA5) as outlined in the attached product and specifications
listing.

**4.** 

**4.1**

Page 4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018942



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## 5.   OTHER INTELLECTUAL PROPERTY

5.1  Intellectual Property not including the Amplifier Design Technology as defined in this Agreement that is conceived and developed by the Inventors in the course of their employment with Maxim is made subject to clause 13 of the Employment Agreement (Intellectual Property Rights).

## 6.   TERM AND TERMINATION

6.1  This Agreement shall come into force as of the Effective Date and shall continue in full force and effect until terminated.

6.2  This Agreement can only be terminated with the explicit written consent of the Parties.

6.3  Termination of the Employment Agreement, by whatever cause, will not result in termination of this agreement or any existing license agreement between the Parties, including the payment obligation of Maxim pursuant to such agreement. Termination of the Employment Agreement will not affect Maxim's right of first refusal with respect to any projects that are in the Concept Development Stage or that already passed that stage at the time of such termination. However, upon request by the Inventors, Maxim will be obligated to indicate to the Inventors within 200 days after such request, whether it intends to execute its right of first refusal.

## 7.   CONFIDENTIALITY

7.1  Each party agrees not to disclose to any third party and not to use, except for the purpose of the Agreement, any information of a confidential nature including but not limited to composition, technical information and know-how, commercial information and know-how, price structures, sales and costs, hereinafter referred to as "information". The above does not apply to technical information and know-how if the Inventors, on the basis of the other provisions of this agreement, are entitled to grant licenses to third parties, only to the extent that such information and know-how is essential for use of the licenses granted or to be granted.

7.2  It is expressly understood that all information provided by each party to the other party and supplied to third parties is to be used solely for the purpose of this Agreement and is deemed strictly confidential.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

7.3    Each party shall take all steps to effectively ensure the confidential nature of the Information.

7.4    This Agreement is confidential and each party undertakes not to disclose its contents, terms and provisions, except as to the purposes described above.

7.5    The provisions of this clause shall remain in force even after the termination for whatever reason, with the exception of Technical Information and Know-How.

## 8.    VALIDITY AND ENFORCEMENT OF THE AMPLIFIER DESIGN PATENTS

8.1    The Inventors warrant that they

      (i)     have not made publicly available, and/or;

      (ii)    have not otherwise put to use, any information including documents, drawings, technical data, commercial information etc. that might jeopardize the prosecution and grant Amplifier Design Patents.

8.2    It is understood that any particular licence mentioned under Article 2.1 will terminate upon expiration, nullification or revocation of the particular Amplifier Design Patent under which the particular license was granted. If as a result of actions of third parties any particular Amplifier Design Patent or a substantial part thereof shall be declared null and void by way of an irreversible decision, such that no enforceable claim covers the products in the particular territory, the obligation to pay royalties under articles 2, 3 and 4 above ceases to exist for products that were manufactured, distributed or sold after the date of such declaration.

8.3    At all times shall Maxim be entitled to enforce the Amplifier Design Patents. Immediately upon request from Maxim, the Inventors shall execute all documents necessary to enable Maxim to enforce the Amplifier Design Patents. In case this is necessary, the Inventors shall join Maxim in infringement proceedings at the direction of Maxim. The Inventors shall provide all reasonable assistance if so required by Maxim in the context of infringement proceedings. In case Maxim wishes to enforce a particular Amplifier Design Patent, Maxim shall pay for all costs related thereto. In case the Inventors whish to enforce the Amplifier Design Patents they shall have to inform Maxim prior to initiating any action. In the event Maxim shall decide not to enforce said particular Amplifier Design Patent, any costs related to infringement actions shall be born by the Inventors.

## 9.    INDEMNIFICATION OF THE INVENTORS BY MAXIM

9.1    In the event Maxim exercises its right of first refusal to obtain a license under a particular Amplifier Design Patent, then Maxim will defend and indemnify the Inventors for all expenses and damages for claims alleging that the particular Amplifier Design Patent infringes a third party's patent, unless Maxim

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
ADI_018945

establishes that the Inventors had actual knowledge - prior to filing the particular Amplifier Design Patent application - of the third party's patent.

### 10.   MISCELLANEOUS

10.1 The Inventors shall be entitled to transfer any of the rights that they will have pursuant to clauses 2, 3 and 4 above to an entity directly or indirectly owned or controlled by the Inventors (in which no third parties have (partial) control or (partial) ownership of the rights), provided that this entity is not a competitor of Maxim, as determined by Maxim. Such transfer must be made, if at all, only before Maxim exercises its right of first of first refusal with respect to a particular Amplifier Design Patent. In case of such transfer Maxim will enter into license agreements with and make royalty payments, if any, to the transferee, at the direction of the Inventors, provided that there are no adverse tax or other adverse consequences to Maxim. In case of transfer of the Amplifier Design Patents the transferee shall be bound to the relevant provisions in this Agreement relating to ownership of the Amplifier Design Patents, including (but not excluding others) clause 8.3 above.

### 11.   CHOICE OF LAW AND FORUM

11.1 Any dispute, controversy or claim arising out of or in connection with this Agreement which the Parties fail to settle amicably shall be governed by the following provisions:

> (i)   If Maxim is the party that files, initiates or asserts a claim in the capacity of a plaintiff, then such claim shall be submitted to a court of law in the Netherlands, in which case the Agreement shall be governed by and construed in accordance with the laws of the Netherlands.

> (ii)  If any or both of the Inventors is the party that files, initiates or asserts a claim in the capacity of a plaintiff, then such claim shall be submitted to the State or Federal Courts in Santa Clara County California, in which case the Agreement shall be governed by and construed in accordance with the laws of the State of California.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018946

IN WITNESS WHEREOF the Parties hereto have caused the Agreement to be executed in threefold.

**Maxim Integrated Products, Inc.**

Name:

Title:

Place:

Date:

**Rudy Eschauzier**

Place:

Date: 7/20/07

**Nico van Rijn**

Place: Delft

Date: 7/20/07

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018947

Execution Version

## ANNEX 1

**Product and Specification Listing**
**(attached)**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                                    ADI_018948



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018949

Execution Version



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ADI_018950

EXHIBIT 5

**From:**        Isaacson, Kevin W.
**Sent:**        Friday, March 14, 2025 1:40 PM
**To:**          Warren Thomas; Ioannou, Michael J.; Ogata, Amanda M.; Nystrom, Paula B.
**Cc:**          McKinley, Patrick; Meg Cogburn; John Harbin; Amy Khoshaba; Rachel Thomas; Ale Burke-Vallejo; Cherie Karwoski; Lee Hamilton; Cecchini, Michelle
**Subject:**     RE: Number 14 v Maxim/ADI: challenge to designation under Protective Order Paragraph 6.2

Warren,

Defendants provide the following response to Plaintiff's challenge to the confidentiality designations used on the following documents:

1.      **ADI_018933, the "Purchase Requisition" document.** The Purchase Requisition document discloses information relating to Defendants' internal, financial operation. This includes the process and method of royalty calculation, which is presumptively proprietary as it has been sealed by the Court; personal identifying information of employees and officers involved in the process for the approval of the royalties, as well as the organization structure involved in that process; and budgeting financial information; among others. As such, the document is properly identified as information that could cause serious harm if disclosed, and would give a competitive advantage to competitors.

2.      **ADI_018935, the "Data Retention Policy" for Analog Devices.** The Data Retention Policy discloses a process unique to ADI concerning the retention, retrieval, and deletion of company data, other data, and personal data. This puts ADI's policy at a competitive advantage. The Data Retention Policy is a compilation of information, specifications, and internal processes, developed over its years of operation. Therefore, the document is properly identified as information that could cause serious harm if disclosed, and would give a competitive advantage to competitors.

3.      **ADI_018939, a copy of the License Agreement** The License Agreement discloses information relating to Defendants' internal, financial operation, and is properly identified as information that could cause serious harm. The Court has already determined the License Agreement contains sensitive information that must be protected from disclosure by ordering it to be sealed. Moreover, the parties agreed that the License Agreement must be treated as confidential and not shared with any third party making it consistent with the AEO designation.  (See Section 7.4.)  Additionally, any challenge to this designation is not pertinent or productive as the designation does not restrict the Inventors' access to the document as it has already been shared with them.

4.      **ADI_018951, the "Org Chart (People View)"** The Org Chart discloses information relating to Defendants' financial and business operation. It also discloses the identities of many of Defendants' employees, who, individually, may be publicly known, i.e., by their LinkedIn profiles, but are not publicly known by their reporting roles corresponding to the organization's operations. Defendants treat their employee organization information as sensitive, competitive information (*See* Retention Policy, Section 1.3 Personal Data.) For example, in the event that a competitor wants to gain confidential information concerning a specific product, having the knowledge of who is in charge of that product and those who report to that person, can be seriously advantageous. Such disclosure of information would cause serious harm to ADI. Furthermore, the Org Chart is a compilation of confidential, personal identifying information, which taken together, could also lead to other confidential company data (i.e., sales logs and customer lists).  Therefore, the document is properly identified as information that could cause serious harm if disclosed, and would give a competitive advantage to competitors.

Pursuant to the SPO, we propose a call on Monday, March 17th at 10am, 11am, or 1:30 pm PT.  Please let me know which of these times work for you.

Best Regards,

**Kevin W. Isaacson**
*Partner*
**R O P E R S** MAJESKI PC
(408) 947-4816

---

**From:** Warren Thomas <wthomas@mcciplaw.com>
**Sent:** Saturday, March 1, 2025 6:12 PM
**To:** Isaacson, Kevin W. <kevin.isaacson@ropers.com>; Ioannou, Michael J. <michael.ioannou@ropers.com>; Ogata, Amanda M. <amanda.ogata@ropers.com>; Nystrom, Paula B. <paula.nystrom@ropers.com>
**Cc:** McKinley, Patrick <patrick.mckinley@ropers.com>; Meg Cogburn <MCogburn@mcciplaw.com>; John Harbin <jharbin@mcciplaw.com>; Amy Khoshaba <akhoshaba@mcciplaw.com>; Rachel Thomas <rthomas@greenfieldlaw.com>; Ale Burke-Vallejo <aburke-vallejo@greenfieldlaw.com>; Cherie Karwoski <ckarwoski@greenfieldlaw.com>; Lee Hamilton <lhamilton@mcciplaw.com>; Cecchini, Michelle <michelle.cecchini@ropers.com>
**Subject:** Number 14 v Maxim/ADI: challenge to designation under Protective Order Paragraph 6.2

Counsel: Pursuant to Paragraph 6/6.2 of the Protective Order (ECF No. 89), Number 14 givesn written notice to challenge the confidentiality designations of each of the four documents Defendants produced February 28, 2025.

Defendants designated ADI_018951, ADI_018939, ADI_018935, and ADI_018933 as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the PO when they should, at most, be designated "CONFIDENTIAL."

- ADI_018933 is a "Purchase Requisition" document.
- ADI_018935 is a "Data Retention Policy" for Analog Devices.
- **ADI_018939** is (another) copy of the License Agreement attached to the Complaint, your Answer/Counterclaims, and produced (and designated CONFIDENTIAL) by Number 14 (NO14-000001).
  - o  **Note:** Unrelated to the confidentiality issue, it appears as though certain content of the copy of the Agreement you produced may be cut off. See the "Page" labels at the bottom of pages 18943 and -45 and part of the handwriting in bottom right corner of page -46. We ask you to confirm this was present in the *source* (native) document and not created by the production processing/placement of the production endorsements.
- **ADI_018951** appears to be a document showing portions of an "Org Chart (People View)" identifying certain individuals and their roles within the organization. A significant portion of the same or similar information can be obtained from public sources. See, e.g., the LinkedIn profiles for McSwiney, Hamed, Pan, and Sharma.

Even to the whatever extent some information in these documents might qualify for the "Confidential" designation and "within the scope of Rule 26(c)(1)(G), we see nothing "extremely sensitive" within these documents that would "create a substantial risk of serious harm" if disclosed." Whatever risk of harm could be "avoided by less restrictive means," namely by designating as CONFIDENTIAL.

Please let us know if you agree.

# Warren Thomas
Principal
wthomas@mcciplaw.com | mcciplaw.com



999 Peachtree Street NE, Suite 1300 | Atlanta, GA 30309
Office 404-645-7700      Direct 678-771-7781      Fax 404-645-7707

NOTICE: This e-mail message and its attachments may contain legally privileged and confidential information intended solely for the intended recipient's use. If you are not the intended recipient, you may not read, copy, distribute, or otherwise use this message, its attachments, or information therein. If you have received this message in error, please (1) notify the sender immediately by e-mail and (2) delete all copies of this message immediately. Thank you.