**RACHEL THOMAS** (SBN 244527)
**ALE BURKE-VALLEJO** (SBN 353890)
GREENFIELD LLP
55 S. Market Street, Suite 1500
San Jose, California 95113
Telephone: (408) 995-5600
Email: rthomas@greenfieldlaw.com
        aburke-vallejo@greenfieldlaw.com

**JOHN W. HARBIN (*Pro Hac Vice*)**
**WARREN J. THOMAS (*Pro Hac Vice*)**
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
Telephone: (404) 645-7700
Email: jharbin@mcciplaw.com
        wthomas@mcciplaw.com

Attorneys for Plaintiff/Counter-Defendant NUMBER 14 B.V.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NUMBER 14 B.V., | Case No.: 5:24-cv-02435-EKL |
| Plaintiff, | **PLAINTIFF'S (CORRECTED) OPPOSITION TO MOTION TO RETAIN CONFIDENTIALITY** |
| v. | |
| ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC., | Date:        May 14, 2025 |
| Defendants. | Time:        11AM |
| ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC., | Courtroom:   5, 4th Floor |
| Counterclaimants, | Judge:       Hon. Nathanael Cousins |
| v. | |
| NUMBER 14 B.V., | |
| Counter-Defendant. | |

GREENFIELD

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ................................................................................................................... 2

   A.  Legal Standard for Retaining Confidentiality Protection ........................................ 2

   B.  None of the Challenged Information Should be Restricted to AEO ........................ 4

      1.   Defendants' Data Retention Policy (ADI_018935-ADI_018938) .................. 5

      2.   Defendants' Purchase Requisition Document (ADI_018933-ADI_018934) ... 6

      3.   The License Agreement (ADI_018939 – ADI_018950) ................................. 7

      4.   Defendants' Organizational Chart Document (ADI_018951 – ADI_018959) ... 7

   C.  The Public's Interest is Irrelevant .......................................................................... 9

III. CONCLUSION ................................................................................................................ 9

GREENFIELD

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3        Defendants' Motion (ECF No. 15, "Mot.") concerns four documents recently produced by

4    Defendants and asks the Court to maintain the high level of protection by which Defendants initially

5    designated the documents, "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" (or

6    "AEO"). . Plaintiff Number 14 B.V. ("Number 14") does not at this time oppose these documents

7    being designated as CONFIDENTIAL but does oppose the request that the documents be designated

8    AEO because the documents do not warrant that designation and because the AEO designation

9    creates additional procedural burdens that should not be necessary.[1]

10        The Stipulated Protective Order (ECF No. 89, "SPO") allows a producing party to designate

11    information produced in the litigation under two tiers of confidentiality protections:

12    "CONFIDENTIAL" and AEO. The CONFIDENTIAL designation is used for "information

13    concerning a person's business operations, processes, and technical and development information

14    within the scope of Rule 26(c)(1)(G)" and allows access to that discovery information by "officers,

15    directors, and employees … of the Receiving Party to whom disclosure is reasonably necessary for

16    this litigation and who have signed the 'Acknowledgment and Agreement to Be Bound' …." SPO

17    §§ 2.2, 7.2. The AEO designation is reserved for "extremely sensitive" confidential information, the

18    "disclosure of which to another Party or Non-Party would create a substantial risk of serious harm

19    that could not be avoided by less restrictive means." SPO § 2.8. Designating information AEO

20    means—as the name suggests—that the officers/directors/employees of the other party generally

21    cannot access the AEO documents. SPO § 7.3.[2]

22        Defendants have improperly designated four documents at the higher AEO tier of protection.

23    None of the documents contain the type of "extremely sensitive" business, technical, or

---

[1] None of the discovery documents at issue have been the subject of any motion practice or other dispute before the Court. Number 14 reserves the right to otherwise challenge their public availability if the public's right of access is more directly implicated.

[2] The SPO provides some exceptions to this prohibition, such as when the AEO information "has been previously disclosed or shared." SPO § 7.3(c).

PLAINTIFF'S OPPOSITION TO MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-cv-02435-EKL

GREENFIELD

competitively sensitive information that the AEO tier is meant to protect from disclosure to and access by the adverse party itself. Instead, they contain general business information that at most warrants the ordinary CONFIDENTIAL designation that still *restricts public access* to the discovery information but *allows Number 14*—whose relevant representatives have signed the Acknowledgement—to access those documents to adequately assist Number 14's counsel in preparing the case for trial.[3] A review of the documents at issue shows that Defendants' bare, conclusory allegations of competitive harm are unsupportable and insufficient to justify the AEO designation. Defendants also fail to explain why the "CONFIDENTIAL" designation would be insufficient to protect the materials, other than claiming without support that Defendants will suffer competitive harm. Defendant's motion should be denied, and the Court should order the challenged documents be designated (at most) "CONFIDENTIAL."

## II.    ARGUMENT

Defendants have failed to meet their burden of demonstrating that the four documents at issue contain "extremely sensitive" information that warrants the heightened AEO designation. The challenged documents do not contain any sensitive information that needs to be limited to counsel and their experts, and Defendants have not provided any sufficient allegations of particularized harm that will result from disclosure on a CONFIDENTIAL basis.

### A.  Legal Standard for Retaining Confidentiality Protection

Rule 26(c) governs the confidentiality of the documents at issue. The SPO provides that a party can designate information or tangible things as "CONFIDENTIAL" if it concerns a "person's business operations, processes, and technical and development information within the scope of Rule 26(c)(1)(G)." SPO § 2.2.

As the party seeking the extraordinary restrictions provided by the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation under the SPO, Defendants bear the burden of persuasion. SPO § 6.3. Part of that burden is establishing that the documents at issue are

---

[3] That Acknowledgment requires signors to "solemnly promise" not to disclose the subject information to others and to acknowledge that "failure to so comply could expose [them] to sanctions and punishment in the nature of contempt." SPO at Exhibit A.

so sensitive that "disclosure … to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means." SPO § 2.8.

The parties agree that whether there is good cause for maintaining protection of discovery material is generally governed by the two-part test set out in, *inter alia*, *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011); *cf.* Mot. at 4. First, the party seeking the protection must show a "particularized harm will result" from the disclosure. *Bangert v. Cnty. of Placer*, No. 2:17-CV-1667 KJN P, 2019 WL 358518, at *2 (E.D. Cal. Jan. 29, 2019) (quoting *In re Roman Cath.*, 661 F.3d at 424). Where, as here, the designating party is a business, it must show that the disclosure would cause "significant harm *to its competitive and financial position*." *Campo v. Am. Corrective Counseling Servs., Inc.*, No. 5:01-CV-21151-JW-PVT), 2008 WL 2811968, at *2 (N.D. Cal. July 21, 2008) (citing *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005)) (emphasis in original). To make that showing, the party must make "specific demonstrations of fact" supported by "affidavits and concrete examples, rather than broad, conclusory allegations of harm." *Contratto*, 227 F.R.D. at 307 (quoting *Deford v. Schmid Prods. Co., a Div. of Schmid Lab'ys*, 120 F.R.D. 648, 653 (D. Md. 1987)). Then, if such harm will result, the court must balance the public and private interests using the factors identified by the Third Circuit in *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). *In re Roman Cath.*, 661 F.3d at 424.

The AEO designation has been found to be an "extreme measure[]" that should be reserved for a "relatively small and select" set of documents because "discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious." *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (citing *Motorola, Inc. v. Lemko Corp.*, No. 1:08-cv-05427, 2010 WL 2179170, at *5 (N.D. Ill. June 1, 2010). Thus, in justifying an AEO designation rather than lower "confidential" designation, the designating party must "show that the disclosure of the particular AEO-designated materials to even a small number of the other party's personnel would risk the disclosure of sensitive competitive information." *Id.*

PLAINTIFF'S OPPOSITION TO MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-cv-02435-EKL

1

**B.  None of the Challenged Information Should be Restricted to AEO**

Here, as to the four documents at issue, there is nothing "extremely sensitive" that would "create a substantial risk of serious harm" if disclosed. First, Defendants concede that *most* of the contents of the four documents are not subject to *any* protection. They filed public, redacted versions of each document, and each of them is mostly *unredacted*. *See generally* ECF No. 115-5 at 5–38 (Exhibits to Isaacson Declaration). So the *only* information in dispute is the content behind those redactions, shown in the highlighted versions filed under seal (ECF No. 116-6).

The only dispute the Court need resolve at this time is whether that highlighted material is "extremely sensitive" such that there would be a "substantial risk of serious harm" that cannot be avoided by resort to the "less restrictive means" of a CONFIDENTIAL designation. See SPO § 2.8.

Second, before looking at the contents of the documents at issue, it is important to consider the kinds of information courts do protect, including with AEO designations, as reflected by some of Defendants' cited cases. In *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007), the court permitted designation of "customer and supplier lists" and "revenue and sales information, as connected to specific customers and suppliers" as AEO, but it noted that "gross revenue and sales information—without connecting that information to a particular customer or supplier"—could *not* be limited to AEO. In *Grace v. Apple, Inc.*, No. 17-CV-00551 LHK-NC, 2018 WL 11319052, at *2 (N.D. Cal. May 1, 2018), the Court concluded that documents containing Apple's "internal, technical business processes and practices" should be sealed because disclosing them might "compromise the security of Apple's products." In *RSI Corp. v. Int'l Bus. Machines Corp.*, No. 5:08-CV-3414 RMW, 2012 WL 3095439 (N.D. Cal. July 30, 2012), the Court upheld defendant IBM's AEO designation of a "spreadsheet … containing the identities of and revenue generated by various Buffer Pool Analyzer ('BPA') licensees" even though the identities of *some* customers was publicly known because "the subset of … customers who have licensed BPA" and the associated revenue was *not* public. And in *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST-MEJ, 2015 WL 1006534, at *3 (N.D. Cal. Mar. 6, 2015), the Court concluded that "research reports" containing information on "prospective mattress buyers, current mattress owners, and the consumer mattress market" warranted protection because they were "related to Defendant's

confidential business strategy and marketing information" and that "the value of Defendant's market research—including both the protocol and the results—could be significantly diminished if it was freely disclosed to the public." *See also Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 490 (N.D. Cal. 2012) (upholding "attorneys' eyes only" designation for documents related to the plaintiff's internal accounting deliberations, financial status, and investment strategies).

Finally, Defendants' contentions as to the contents of the four documents at issue do not withstand scrutiny when compared to the kinds of information, described above, that courts have protected as AEO. And even if there was some risk of harm if the documents were disclosed *publicly*—more publicly than Defendants have done already—the Defendants have not shown why restricting Number 14's access to them is required. The documents and the highlighted/redacted information at issue are discussed below.

### 1. Defendants' Data Retention Policy (ADI_018935-ADI_018938)

Defendants contend that certain sections in the Data Retention Policy are worthy of heightened protection because the Defendants would suffer particularized harm in "potential future litigation." Motion at 5. ADI's declarant provides rank speculation that the highlighted sections "could potentially be used in future litigation against ADI" by Number 14 (or the public), without any explanation of how or why it could be used that way. ECF No. 115-1 ¶ 7. But these portions of the document (see Exhibit 1 to Declaration of Kevin W. Isaacson ("Isaacson Decl.")) do not concern any sensitive legal or business strategies or other information that could provide an advantage to any non-attorney. Defendants have failed make the "specific demonstrations of fact" supported by "affidavits and concrete examples, rather than broad, conclusory allegations of harm" that are required *Contratto*, 227 F.R.D. at 307.

Making such a showing is impossible because the sections at issue (3.1-3.4) concern only *general* operational details, including generally accepted practices involving data retention and audit procedures. Among the highlighted portions that Defendants contend are AEO-worthy, there are no dates, no specific time periods, no systems identified, and no specific steps directed (beyond the highest level of generality) regarding how Defendants implement their retention policy. Certainly

there is no customer or pricing information or privileged information. While Defendants' declarant states that the policy "provides an understanding regarding how long certain data is retained or how it is processed, so competitors could reverse-engineer or exploit weaknesses in data retention strategies for their own advantage," ECF No. 115-2 ¶ 9, nothing in the highlighted portions of the document reveals anything specific about "how long" to retain data or how it is "processed." *See* ADI_018935 (ECF 116-6 at 6) at §§ 3.1–.4. Nor is it clear why these redacted portions of general policies are so "extremely sensitive" to warrant AEO protection while Defendants agree that the *rest* of the document is not worthy of any confidentiality protection at all.

This information hidden by the redactions does not need to be limited to Number 14's counsel and experts. Re-designating this policy as "CONFIDENTIAL" will not cause Defendants any present or future harm and the information will not be publicly disclosed.

### 2.   Defendants' Purchase Requisition Document (ADI_018933-ADI_018934)

Similarly, the highlighted information in Exhibits 2 and 4 to the Isaacson Declaration does not contain the type of information that warrants the extraordinary AEO protection. The *only* highlighted, not-already-public information in the Purchase Requisition Document relates to the identities of people involved in the purchase requisition process, their positions, and information about royalty calculation and amounts of prior royalty payments. The only basis Defendants provide for protecting the identify information is because disclosing it could "mak[e] the company vulnerable to employee poaching" and "increase the risk of data breaches" by exposing who has knowledge of company financial information. ECF No. 115-3 ¶¶ 9-11. These purported concerns, supported only by conclusory statements, might militate in favor of restricting *public* disclosure, but they do not justify designating them AEO and preventing disclosure to the *party* in this case, Number 14. In fact, Number 14 has already corresponded with multiple of the identified individuals as it relates to requesting and receiving approval for the royalties it was owed. *See, e.g.*, ECF 92, Complaint ¶¶ 32–34; ECF 90, Answer ¶¶ 32–34 (admitting communications).[4] Likewise, the "royalty calculation and

---

[4] It is not clear whether these "relevant approvers" (ECF No. 115-3 ¶ 5) are approvers in *every* purchase requisition or simply the ones "relevant" to the royalty agreement at issue.

associated values" might provide some insight to *third parties*, but they would not provide such insight to Number 14 when that is the very subject matter of this litigation.

Here, the information that Defendants seek to protect is not customer lists, nor is it payment or pricing information related to another customer. The royalty information is exclusively connected to Number 14, and the mere identities of the approvers for this transaction is not "extremely sensitive" business information.

### 3. The License Agreement (ADI_018939 – ADI_018950)

Defendants' argument that the License Agreement itself should be restricted as AEO is specious. Defendants first point to the Court's prior order (granting-in-part and denying-in-part Defendants' motion to seal) sealing certain limited portions of the License. In that order, the Court concluded that "confidential and competitively sensitive terms of a license agreement, including contractual rights and details about royalty payments and how they are calculated" warranted sealing. ECF No. 86 at 2. But that was to seal limited aspects related to the calculation of the royalty and schedule of payments from *public* access. Protecting those portions of the document as *AEO* is totally unwarranted: Number 14, an assignee of certain rights under the License, already has a copy of the document; its principals are signatories to the agreement; and Number 14 has already *produced* copies of the same document under the lower CONFIDENTIAL designation as long ago as August 2024 with Number 14's initial disclosures. Defendants have never contested Number 14's earlier designation, and it makes no sense to restrict any portion of the document as AEO. *See Glob. Material Techs.*, 133 F. Supp. 3d at 1084.

Defendants have not demonstrated that these portions of the Purchase Requisition Document and the License Agreement would place them at a competitive disadvantage or that they meet the heightened standard outlined in the SPO.

### 4. Defendants' Organizational Chart Document (ADI_018951 – ADI_018959)

Defendants seek to limit the disclosure of certain identities of business personnel and their relevant positions, arguing the sensitive nature lies in the internal structure of the organization. However, a significant portion of the information highlighted in Exhibit 3 to the Isaacson Declaration is already "available on public platforms," as Defendants concede. Mot. at 9; *see also* ECF No. 115-

5 at 37 (Ex. 5 to Isaacson Decl., email linking to LinkedIn profiles of several individuals). Defendants nevertheless contend that the "extremely sensitive aspect" arises from the "holistic view of [the] internal structure" of the organization "in addition to the *individual* pieces" of public information. Mot. at 9:7–11. Defendants again also contend revealing this information would subject them to "employee poaching." Mot. at 8:10–22. But this *nine-page* view of a few snippets of the Defendants global organization does not provide the kinds of insights or risk *substantial* risk of harm that Defendants suggest to justify the AEO designation.

First, this challenged information is distinguishable from the protected information in *RSI Corp. v. IBM.* cited generally by Defendants (Mot. at 8:20–9:5), where the court upheld the defendants' AEO designation of the identities and revenues generated by various licensees. That court concluded the defendant had identified a specific harm, noting the plaintiff could have targeted the customers and undercut prices. *RSI Corp.*, 2012 WL 3095439, at *1. The alleged harm in this case, for instance, the "employee poaching" and exposure of "Defendants' operations and strategic initiatives" (Mot. at 8), are broad allegations of harm that do not satisfy the good cause burden. *See Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066 PHJ EMC, 2007 WL 4169628, at *2 (N.D. Cal. Nov. 20, 2007) (finding the plaintiff's "general assertion that disclosure of business communications would chill business relations is not a sufficient allegation of specific harm").

Defendants also cite *Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 12-CV-01927-WHO, 2013 WL 4475900, at *4 (N.D. Cal. Aug. 15, 2013), but in that case the other party was seeking *public* disclosure of a compilation of *actual business strategy*—not snippets of an organization chart. *Muench*, 2013 WL 4475900, at *4 (finding the challenged information was information the defendant was tracking—its print production, sales figures, profit margins, and locations for distributions—which, if disclosed, could have revealed how the defendant targeted the market); *see also Avaya Inc. v. Pearce*, No. 19-CV-00565-SI, 2020 WL 8513514, at *1 (N.D. Cal. Dec. 22, 2020) (agreeing with the plaintiff that disclosing the Counterfeit Analysis could lead to specific harm, as it could provide a "roadmap to potential counterfeiters regarding how to evade [the plaintiff's] detection measures").

Further, since the Organizational Chart will not become a public document with the CONFIDENTIAL designation, there is no genuine concern regarding a potential data breach. The information within the document is not related to the Defendants' products or technical business practices, unlike the challenged information in *Grace v. Apple*, where the court recognized the disclosure could "compromise the security of Apple's products." 2018 WL 11319052, at *2. Instead, the titles of many of the individuals disclosed in the Organizational Chart are already public information, and it is generally accepted that directors, managers, and engineers may have access to confidential information, so disclosing this information to Number 14 does not "increas[e] the likelihood of phishing attacks." Motion at 9. Defendants have failed to demonstrate the disclosure of this document on a confidential basis would cause specific harm financially or competitively. *See Campo*, 2008 WL 2811968, at *2–3 (noting that a party cannot rely on "broad conclusory statements of predicted future harm" to satisfy the "good cause" burden (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992))).

The Organizational Chart does not contain "extremely sensitive" business information that warrants restricted treatment. Defendants have not met their burden to show the heightened designation is appropriate. This document, along with the three others at issue, should be re-designated as "CONFIDENTIAL."

### C.  The Public's Interest is Irrelevant

Defendants have not established good cause exists, so this Court should not proceed to balancing the *Glenmede* factors. *Bangert*, 2019 WL 358518, at *2 (noting the seventh factor is "whether the case involves issues important to the public"). At any rate, the seventh factor is the only factor that Defendants argue weighs in favor of retaining the current designation. But as stated numerous times to Defendants and above, Number 14 has not requested any public disclosure of the challenged documents. Thus, this factor is not relevant.

## III.    <u>CONCLUSION</u>

The AEO level of designation under the SPO must be limited to *extremely sensitive* information. If the general business information and limited names and roles contained in the four documents at issue are "extremely sensitive," such that not even representatives of the party who

have signed the SPO's Acknowledgement and Agreement to Be Bound by the Protective Order may access them, then there is no real limit on that term. That is, if the information in dispute here is AEO, then everything Defendants may produce in this case can be designated AEO—hamstringing Plaintiff's counsel's ability to discuss information with Number 14 and prepare for trial. For purposes of the present motion, Number 14 takes no position on the ultimate protectability of the underlying information but agrees that the CONFIDENTIAL designation and protections under the SPO are sufficient to protect the Defendants from the general harms they have alleged.

Based on the foregoing, Number 14 respectfully requests that this Court deny Defendants' Motion to Retain Confidentiality and re-designate the information at issue as "CONFIDENTIAL."


Dated: April 7, 2025    By:    /s/ *Warren J. Thomas*
                               Rachel Thomas
                               Ale Burke-Vallejo
                               GREENFIELD LLP

                               John W. Harbin (*pro hac vice*)
                               Warren J. Thomas (*pro hac vice*)
                               MEUNIER CARLIN & CURFMAN LLC

                               Attorneys for Plaintiff/Counter-Defendant NUMBER 14 B.V.

GREENFIELD

PLAINTIFF'S OPPOSITION TO MOTION TO RETAIN CONFIDENTIALITY
CASE NO.: 5:24-cv-02435-EKL