MICHAEL J. IOANNOU (SBN 95208)
KEVIN W. ISAACSON (SBN 281067)
PAULA B. NYSTROM (SBN 329651)
AMANDA M. OGATA (SBN 354967)
ROPERS MAJESKI PC
333 W. Santa Clara St., Suite 930
San Jose, CA 95113
Telephone: 408.287.6262
Facsimile: 408.918.4501
Email: michael.ioannou@ropers.com
kevin.isaacson@ropers.com
paula.nystrom@ropers.com
amanda.ogata@ropers.com

Attorneys for Defendants and Counterclaimants
ANALOG DEVICES, INC. and
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUMBER 14 B.V.,<br><br>Plaintiff,<br><br>v.<br><br>ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC.<br><br>Defendants.<br><br>ANALOG DEVICES, INC.; and MAXIM INTEGRATED PRODUCTS, INC.,<br><br>Counterclaimants,<br><br>v.<br><br>NUMBER 14 B.V., RUDY ESCHAUZIER, and NICO VAN RIJN,<br><br>Counter-Defendants. | Case No.: 5:24-cv-02435-EKL<br><br>**DEFENDANTS AND COUNTERCLAIMANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO RETAIN CONFIDENTIALITY**<br><br>Date: May 14, 2025<br>Time: 11:00 a.m.<br>Dept: Courtroom 5, 4th Floor<br>Judge: Hon. Nathanael Cousins |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. THE DOCUMENTS SHOULD BE "HIGHLY CONFIDENTIAL" BECAUSE THE INVENTORS ARE DIRECT COMPETITORS WITH DEFENDANTS IN THE SEMICONDUCTOR INDUSTRY ................................ 1

    B. THIRD PARTIES SHOULD NOT BE PERMITTED TO ACCESS THE SEALED PORTIONS OF THE LICENSE AGREEMENT .................................. 5

    C. THE INVENTORS, AS COMPETITORS OF DEFENDANTS, SHOULD NOT BE GRANTED ACCESS TO THE ORGANIZATIONAL CHART AND PURCHASE REQUISITION DOCUMENT ................................................. 6

    D. DEFENDANTS' DATA RETENTION POLICY SHOULD REMAIN "HIGHLY CONFIDENTIAL" TO PREVENT POTENTIAL MISUSE BY THE INVENTORS ........................................................................................ 7

III. CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cabell v. Zorro Prods.*,
  2017 U.S.Dist.LEXIS 103749 (N.D.Cal. July 5, 2017, No. 15-cv-00771-EJD
  (HRL)) ......................................................................................................................... 4

*DeFreitas v. Tillinghast*,
  No. 2:12-CV-00235-JLR, 2013 U.S. Dist. LEXIS 7429, 2013 WL 209277
  (W.D. Wash. Jan. 17, 2013) .......................................................................................... 3

*Hubbard v. Google LLC*,
  2025 U.S. Dist. LEXIS 6588 – 21 (N.D. Cal. Jan. 13, 2025, No. 19-cv-07016-
  SVK) ............................................................................................................................ 2

*In re Worlds of Wonder Sec. Lit.*,
  147 F.R.D. 214 (N.D. Cal. 1992) ............................................................................. 5, 6

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
  285 F.R.D. 481 (N.D. Cal. 2012) ............................................................................ 4, 7

*M.H. v. Done Glob. Inc.*,
  2025 U.S. Dist. LEXIS 38456 (N.D. Cal. Feb. 26, 2025, No. 24-cv-03040-
  RFL) ............................................................................................................................ 2

*Mercexchange, LLC v. eBay, Inc.*,
  467 F. Supp. 2d 608 (E.D. Va. 2006) .......................................................................... 4

*Nalco Co. v. Chem-Aqua, Inc.*,
  2014 U.S.Dist.LEXIS 94789 (N.D.Cal. July 10, 2014, No. 14-mc-80183 RS
  (NC)) ........................................................................................................................... 3

*Nutratech, Inc. v. Syntech Int'l, Inc.*,
  242 F.R.D. 552 (C.D. Cal. 2007) ................................................................................ 4

*Pac. Dawn LLC v. Pritzker*,
  831 F.3d 1166 (9th Cir. 2016) ..................................................................................... 2

*People of City of Los Angeles Who Are Un-Housed v. Garcetti*,
  2025 U.S. Dist. LEXIS 49682 (C.D. Cal. Feb. 26, 2025, No. LA CV 21-06003-
  DOC (KES)) ................................................................................................................ 2

*Tatum v. Schwartz*,
  2007 U.S. Dist. LEXIS 10225, 2007 WL 419463 (E.D. Cal. Feb. 5, 2007) ................ 2

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Yellowcake, Inc. v. Dashgo, Inc.*,
  2022 U.S.Dist.LEXIS 129658 (E.D.Cal. July 20, 2022, No. 1:21-cv-00803-
  AWI-BAM) ................................................................................................................2

**I.    INTRODUCTION**

Plaintiff's challenge to ADI's confidentiality designations is a blatant tactic to disclose ADI's confidential information to its competitors, including Plaintiff's owners. Defendants have produced many confidential documents containing extremely sensitive information, the disclosure of which would cause serious harm to Defendants. The four specific documents at issue are clear examples of highly-sensitive documents that Defendants have consistently protected from disclosure. These documents contain commercially-valuable information based on how they are compiled, who is involved, and the nature of the information they contain. Defendants treat these documents and the information within them as critical business assets. Meanwhile, the individual Inventors, who are also Plaintiff's principals, are Defendants' competitors who own and operate a competing semiconductor company.  Thus, giving these competitors access to any of Defendants' confidential information carries an actual heightened risk of competitive harm. In light of these facts, Defendants have appropriately designated the four documents at issue as "HIGHLY CONFIDENTIAL." Maintaining this designation will not disrupt litigation of this case, as the documents remain fully accessible to Plaintiff's counsel for use in the proceedings.

Moreover, the documents plainly meet the standard set by the Court's December 26, 2024 Stipulated Protective Order ("SPO") (ECF 89), which allows this designation for materials whose disclosure would pose a substantial risk of serious harm. Plaintiff disregards the strong and well-supported reasons for maintaining this level of protection, especially because the Inventors own and operate a competing semiconductor company.

**II.    ARGUMENT**

The four documents at issue contain sensitive, non-public business information, the disclosure of which to the Inventors, who are direct competitors of Defendant, would result in substantial and irreparable competitive harm.

**A.    The Documents Should Be "Highly Confidential" Because The Inventors Are Direct Competitors With Defendants In The Semiconductor Industry**

Plaintiff concedes that disclosure of the four documents to Defendants' competitors would cause significant competitive harm. *See* ECF 115 at 1:14, 5:22, 6:3, 6:7, 7:10-11, 8:12, 10:23,

1  12:6-7. Such concession is fatal to Plaintiff's Opposition because Plaintiff's principals, to whom
2  Plaintiff seeks to be able to disclose documents, are Defendants' competitors who own and
3  operate a competing semiconductor company. *Id.* Contrary to Plaintiff's contentions, Defendants
4  have repeatedly explained why the "CONFIDENTIAL" designation is inadequate to protect these
5  materials, since it would permit disclosure of Defendants' information directly to competitors.
6  *See* ECF 122 at 2:8-10.

Defendants emphasized this point in their Motion to Retain Confidentiality, stressing the need for the heightened "HIGHLY CONFIDENTIAL" designation as changing the designation to "CONFIDENTIAL" would cause Defendants' information to be disclosed to its competitors. *Id.* Plaintiff's failure to address this argument in its Opposition effectively concedes this issue. *See People of City of Los Angeles Who Are Un-Housed v. Garcetti*, 2025 U.S. Dist. LEXIS 49682, at *31-32 (C.D. Cal. Feb. 26, 2025, No. LA CV 21-06003-DOC (KES)) ("Courts in this District, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument. [citing cases]"); *see also M.H. v. Done Glob. Inc.*, 2025 U.S. Dist. LEXIS 38456, at *9, fn. 2 (N.D. Cal. Feb. 26, 2025, No. 24-cv-03040-RFL); See *Tatum v. Schwartz*, 2007 U.S. Dist. LEXIS 10225, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) (holding plaintiff "tacitly concede[d] this claim by failing to address defendants' argument in her opposition"); *Hubbard v. Google LLC*, 2025 U.S. Dist. LEXIS 6588, *20 – 21 (N.D. Cal. Jan. 13, 2025, No. 19-cv-07016-SVK); *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178, fn. 7 (9th Cir. 2016).

Moreover, courts consistently grant greater protection, including limiting disclosure to attorneys only, where commercially-sensitive information would otherwise be shared with a party's competitor.  See, e.g., *Yellowcake, Inc. v. Dashgo, Inc.*, 2022 U.S.Dist.LEXIS 129658, at *22-23 (E.D.Cal. July 20, 2022, No. 1:21-cv-00803-AWI-BAM) ("With regard to an attorney's-eyes-only provision, confidential information that may be used against the company by a direct competitor is generally afforded more protection.") quoting *W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, 2012 U.S.Dist.LEXIS 195292, at *8 (C.D.Cal. Aug. 27, 2012, No. CV 10-6017 DDP (SS) quoting *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981);

1  *DeFreitas v. Tillinghast*, No. 2:12-CV-00235-JLR, 2013 U.S. Dist. LEXIS 7429, 2013 WL
2  209277, at *4 (W.D. Wash. Jan. 17, 2013) (holding that sensitive business information about
3  finances, strategy, confidential agreements, and competitive market research must be disclosed as
4  "attorneys' eyes only" when given to a direct competitor); *Nalco Co. v. Chem-Aqua, Inc.*, 2014
5  U.S.Dist.LEXIS 94789, at *4-5 (N.D.Cal. July 10, 2014, No. 14-mc-80183 RS (NC)) (ruling that
6  highly sensitive information to be provided to a direct competitor be designated attorneys' eyes
7  only).

8    The individual owners/managers of Plaintiff, Rudy Eschauzier and Nico van Rijn
9  (collectively, "Inventors"), co-own and co-founded Delft Semiconductor. Delft Semiconductor is
10 a semiconductor company that "help[s] world-leading semiconductor companies to successfully
11 introduce innovative products on time." *Services*, Delft Semiconductor, (last visited Apr. 10,
12 2025), https://delftsemiconductor.com/services/. Plaintiff's principals have direct ownership and
13 managerial roles in a separate company that competes with Defendants in the same
14 semiconductor industry. Additionally, as Delft Semiconductor operates within the same industry,
15 it directly competes with Defendants and may also work with Defendants' competitors. This
16 creates an unacceptable risk that the highly confidential contents of these four documents at issue
17 could be used, whether intentionally or not, to shape competing business strategies or to inform
18 negotiations with Defendants' competitors.

19   Even seemingly administrative materials such as the data retention policy and the
20 purchase requisition document can expose internal workflows, procurement practices, and
21 operational decision-making processes. *See* ECF 115-2, ¶¶ 5-11. Similarly, Defendants'
22 organizational chart is not merely a list of names; it reflects strategic structure, internal reporting
23 lines, and extremely sensitive information about key personnel – information that would be
24 highly valuable to a competitor seeking to mirror or undermine Defendants' business operations
25 or poach their key financial employees. *See* ECF 115-1, ¶¶ 4-13.

26   Furthermore, Plaintiff makes the flawed argument that if these four documents are
27 designated as "HIGHLY CONFIDENTIAL," then everything Defendants may produce in this
28 case can be designated "HIGHLY CONFIDENTIAL," which would "[hamstring] Plaintiff's

counsel's ability to discuss information with [Plaintiff] and prepare for trial." *See* ECF 122 at 10:2-4. However, this argument is unpersuasive. It fails to acknowledge that, under the SPO, individuals are permitted access to documents that they have already seen or were directly involved in creating or handling. *See* ECF 89. This argument prematurely addresses issues related to documents that have not yet been produced in this case. An assessment of whether documents warrant confidential treatment cannot be made in the abstract; rather, such determinations must be based on the specific facts and circumstances presented at the time any future challenges arise. Focusing solely on the documents currently at issue in this motion, there is no clear basis for Plaintiff's counsel's claim that its litigation strategy would be "hamstrung" by the inability to share the three documents[1] with Plaintiff during trial preparation. *See Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 556 (C.D. Cal. 2007). Additionally, such restrictions are to be expected when the parties in a particular action are in competition with each other. See, e.g., *Cabell v. Zorro Prods.*, 2017 U.S.Dist.LEXIS 103749, at *3 (N.D.Cal. July 5, 2017, No. 15-cv-00771-EJD (HRL)) (finding that "[t]he court is not persuaded by [the plaintiff]'s argument that entering a two-tiered protective order of the sort requested by Defendants—which is based on the court's model order—would prejudice him by ceding his ability to participate in making decisions in the litigation entirely to his counsel. If this argument were persuasive, the court would never enter protective orders barring parties from viewing the highly confidential information of their competitors.").

Plaintiff also argues that parties will be required to sign the "Acknowledgement and Agreement to be Bound" document found in the SPO so they cannot disclose the confidential information disclosed in the documents. *See* ECF 122 at 2:4-5. Even so, the human mind cannot compartmentalize and selectively suppress information once learned, no matter how well intentioned the effort may be to do so. *See La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 491 (N.D. Cal. 2012) (citing *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010)); *see also Mercexchange, LLC v. eBay, Inc.*, 467 F. Supp.

---

[1] Defendants have omitted the License Agreement from this discussion as the Inventors are permitted to access the License Agreement under the SPO, as more fully discussed in section IIB. below

2d 608, 622-23 (E.D. Va. 2006) ("[I]t is often-times impossible for an individual, even with the noblest intentions, to delineate between ideas that they may advance as a result of their own creation, and those influenced by past exposure to confidential information."); *see also In re Worlds of Wonder Sec. Lit.*, 147 F.R.D. 214, 216-17 (N.D. Cal. 1992) (noting that it would be "naïve" to think that expert witnesses who would "most likely" be competitors of the party opposing disclosure would be able to "erase" from their minds the at-issue documents that revealed confidential, internal details of how that party conducts its business). If Plaintiff's argument was given credence, it would effectively undermine the purpose of having protective orders with multiple tiers of confidentiality, allowing competitors to use lawsuits such as the present to access sensitive information they would otherwise not be entitled to obtain. Moreover, the improper use of confidential information is often not readily discoverable, but remains highly damaging to the disclosing party.

Since the Inventors co-own and operate a competing semiconductor company that also contracts with Defendants' direct competitors, the Inventors cannot realistically compartmentalize and selectively suppress the information learned from these four documents. Even with the best intentions to comply with the SPO, the risk of inadvertent misuse remains high, and once the information is known, there is no practical way for Defendants to monitor or prove how it is used. The potential for competitive harm is real, and the safeguards proposed are simply inadequate.

**B.   Third Parties Should Not Be Permitted To Access The Sealed Portions Of The License Agreement**

Plaintiff fundamentally misinterprets Defendants' argument regarding the License Agreement. Defendants are not claiming that the Inventors cannot access the License Agreement under the "HIGHLY CONFIDENTIAL" designation. Rather, Defendants seek to protect the sealed portions from disclosure to third parties. and continue to assert that these portions should remain designated as "HIGHLY CONFIDENTIAL." Again, such protection does not limit the Inventors ability to view the License Agreement. Since the Inventors were signatories to the License Agreement and have already had access to it, Defendants have no objection to their continued access.

Under the terms of the SPO, the definition of "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" permits information that was previously disclosed by the Producing Party to the Receiving Party to still be designated as "HIGHLY CONFIDENTIAL." Defendants' concern lies in preventing the sealed portions of the License Agreement from being disclosed to any officer, director, or employee of a third party, including Delft Semiconductor and others which could happen if designated only as "CONFIDENTIAL." These sealed terms contain confidential and competitively sensitive information, including contractual rights, royalty payments, and the methodologies used to calculate those payments. *See* ECF 86.

Therefore, it is entirely reasonable to maintain the "HIGHLY CONFIDENTIAL" designation, especially given that the Inventors are still able to see the License Agreement.

### C. The Inventors, As Competitors Of Defendants, Should Not Be Granted Access To The Organizational Chart And Purchase Requisition Document

Plaintiff's claim that Defendants have not met their burden to justify the "HIGHLY CONFIDENTIAL" designation for the organizational chart and purchase requisition document is incorrect. Defendants have fully met this burden. *See* ECF 122 at 7:3-6, 9:15-16. As explained, the "HIGHLY CONFIDENTIAL" designation is essential because Plaintiff's principals own and operate Delft Semiconductor, a competitor that may also engage with Defendants' competitors. Additionally, it is likely that third-party witnesses will be deposed in this case and the SPO would allow such documents to be shown to third parties during their depositions. Both documents at issue reveal strategic and operational insights that can provide a competitor with a significant edge. They identify key personnel, decision-makers, and the structure of departments, which the individual Inventors, even unintentionally, could disclose to Defendants' competitors. *See* ECF 115-1, ¶¶ 4-9; ECF 115-3, ¶¶ 5-10. Defendants' competitors could then identify Defendants' key personnel, their decision-makers, and the structure of the different departments, which could be used to poach certain individuals or better understand how resources are allocated within Defendants. *See id.*

Sharing such extremely sensitive information with the Inventors poses a significant risk of competitive harm to Defendants. Even if the Inventors do not intend to disclose the information,

1   there is a real possibility that they could inadvertently disclose key details with Defendants'
2   competitors while working for them. Such disclosures, whether deliberate or not, could
3   significantly undermine Defendants' competitive position in the semiconductor industry and
4   place them at a severe disadvantage in the marketplace. It would be unrealistic and overly
5   simplistic to think that the Inventors could fully compartmentalize the highly confidential
6   information they learned from Defendants' documents, even if they sign the "Acknowledgment
7   and Agreement to be Bound" found in the SPO. *See* 285 F.R.D. 481, 491. The potential for
8   inadvertent information sharing highlights the necessity of restricting the Inventors' access to this
9   highly sensitive data, ensuring that it remains within the hands of Plaintiff's counsel, and
10  preventing any undue risk to Defendants' business interests.

11  Accordingly, it is reasonable to maintain the "HIGHLY CONFIDENTIAL" designation,
12  and the Inventors should not be granted access to the two documents given the sensitive nature of
13  their contents and the competitive risks involved.

14  **D.  Defendants' Data Retention Policy Should Remain "Highly Confidential" To Prevent Potential Misuse By The Inventors**

16  Plaintiff is mistaken in suggesting that Defendants will not face present or future harm if
17  the data retention policy is designated as "CONFIDENTIAL." ECF 122 at 6:10-11. This
18  misjudgment overlooks the significant risks to Defendants' competitive position and proprietary
19  interests that would arise from such a designation.

20  If the data retention policy is disclosed to the Inventors, it could be strategically exploited
21  in potential future litigation. Delft Semiconductor and Defendants are currently in a contractual
22  relationship. Since the Inventors co-own and operate Delft Semiconductor, giving them access to
23  this knowledge would give them an advantage to potential future litigation between the parties.
24  For example, the Inventors could tailor discovery requests, use litigation tactics or even internal
25  investigations to target retention gaps, timing windows, or vulnerabilities in Defendants'
26  document management practices. This would create an uneven playing field and give the
27  Inventors and Delft Semiconductor an unfair advantage in this potential future litigation.
28  Moreover, since Delft Semiconductor also potentially works with Defendants'

competitors, such insight into internal governance could enable them to anticipate how Defendants manage and preserve confidential and proprietary data. This would potentially undermine Defendants' ability to defend against claims or effectively assert rights. To prevent this type of misuse and protect Defendants' legal integrity, Defendants' data retention policy should maintain the "HIGHLY CONFIDENTIAL" designation, with access limited to Plaintiff's counsel.

In light of these concerns, the data retention policy should retain its "HIGHLY CONFIDENTIAL" designation to prevent any potential misuse by the Inventors.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Retain Confidentiality and uphold the "HIGHLY CONFIDENTIAL" designation for the four documents challenged by Plaintiff, in accordance with the terms of the Stipulated Protective Order.

Dated: April 14, 2025

ROPERS MAJESKI PC

By: /s/ *Kevin W. Isaacson*
MICHAEL J. IOANNOU
KEVIN W. ISAACSON
Attorneys for Defendants and Counterclaimants ANALOG DEVICES, INC. and MAXIM INTEGRATED PRODUCTS, INC.