# EXHIBIT 7

# [PUBLIC VERSION]

1  MICHAEL J. IOANNOU (SBN 95208)
   KEVIN W. ISAACSON (SBN 281067)
2  PAULA B. NYSTROM (SBN 329651)
   AMANDA M. OGATA (SBN 354967)
3  ROPERS MAJESKI PC
   333 W. Santa Clara St., Suite 910930
4  San Jose, CA 95113
   Telephone:    408.287.6262
5  Facsimile:    408.918.4501
   Email:        michael.ioannou@ropers.com
6                kevin.isaacson@ropers.com
                 paula.nystrom@ropers.com
7                amanda.ogata@ropers.com

8  Attorneys for Defendants and Counterclaimants
   ANALOG DEVICES, INC. and
9  MAXIM INTEGRATED PRODUCTS, INC.

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13

14  NUMBER 14 B.V.,                    Case No. 5:24-cv-02435-NCEKL

15          Plaintiff,                 **DEFENDANTS AND
                                       COUNTERCLAIMANTS ANALOG**
16      v.                             **DEVICES, INC. AND MAXIM
                                       INTEGRATED PRODUCTS, INC.'S**
17  ANALOG DEVICES, INC.; and MAXIM    **FIRST AMENDED ANSWER TO
    INTEGRATED PRODUCTS, INC.          PLAINTIFF'S COMPLAINT WITH**
18                                     **AFFIRMATIVE DEFENSES AND
            Defendants.                COUNTERCLAIMS DEMAND FOR**
19                                     **JURY TRIAL**

20

21  ANALOG DEVICES, INC.; and MAXIM
    INTEGRATED PRODUCTS, INC.,
22

23          Counterclaimants,

24      v.

25  NUMBER 14 B.V., RUDY ESCHAUZIER,
    and NICO VAN RIJN,
26

27          Counter-
            DefendantsDefendant.
28

4889-3713-2231.6
4909-6066-5399.8

                                       First Amended Answer to Complaint With
                                       Counterclaims; Demand for Jury Trial
                    -1-                Case No. 5:24-CV-02435

Defendants ANALOG DEVICES, INC. and MAXIM INTEGRATED PRODUCTS, INC. ("Defendants") respond and assert their defenses to the Complaint filed by Plaintiff NUMBER 14 B.V. ("Plaintiff") as follows[1]:

## GENERAL ALLEGATIONS

1.      In response to paragraph 1 of the Complaint, Defendants admit that Rudy Eschauzier and Nico van Rijn ("the Inventors") were two electrical engineers and inventors residing in the Netherlands.  Defendants further admit that the Inventors previously worked with Defendant Maxim, a Delaware corporation, and worked in the design, development, and/or manufacturing of linear and mixed-signal integrated circuits.

2.      In response to paragraph 2 of the Complaint, Defendants admit that Maxim and the Inventors entered into an employment agreement and license agreement.  However, the terms of the License Agreement speak for themselves, and any attempts in this paragraph 2 to paraphrase or characterize them are expressly denied, along with all other allegations of paragraph 2.

3.      In response to paragraph 3 of the Complaint, Defendants admit that Maxim and the Inventors executed a License Agreement in July 2007.  The terms of the License Agreement speak for themselves in this paragraph 3, and any attempts to paraphrase or characterize them are expressly denied, along with all other allegations of paragraph 3.

4.      In response to paragraph 4 of the Complaint, Defendants admit that Inventors were issued multiple Patents and Maxim exercised its right of first refusal to license a number of these patents.  Defendants lack sufficient information to form a belief as to the truth of the remaining allegations, and on that basis, Defendants deny all remaining allegations in paragraph 4.

5.      In response to paragraph 5 of the Complaint, Defendants admit that Maxim made Royalty payments to Number 14 in 2011 (for the calendar year 2010).  Except as specifically admitted, Defendants deny the remaining allegations in paragraph 5.

6.      In response to paragraph 6 of the Complaint, Defendants admit that in July 2020 Analog Devices, Inc. ("ADI") announced its plan to acquire Maxim and the acquisition was

---

[1] Pursuant to Section VII(A) of the Court's Standing Order, Defendants attach **Exhibit 7**, which is a redlined document showing the changes made to the previously-filed pleading.

ROPERS
MAJESKI
A Professional Corporation
San Jose

1   completed in August 2021.  Defendants further admit that the September 7, 2021 Form 10-K/A

2   filing with the Securities and Exchange Commission confirmed that Maxim became a wholly

3   owned subsidiary of ADI.  Except as specifically admitted, Defendants deny the remaining

4   allegations in paragraph 6.

5        7.     In response to paragraph 7 of the Complaint, Defendants admit that Maxim

6   continued to make Royalty payments to Number 14.  Except as specifically admitted, Defendants

7   deny all remaining allegations in paragraph 7.

8        8.     In response to paragraph 8 of the Complaint, Defendants deny each and every

9   allegation contained therein.

10        9.     In response to paragraph 9 of the Complaint, Defendants admit that its employee

11   wrote the quoted phrases in a January 12, 2024 email response.  However, any attempts in this

12   paragraph 9 to paraphrase or characterize the email are expressly denied, along with all other

13   allegations of paragraph 9.

14        10.     In response to paragraph 10 of the Complaint, Defendants deny each and every

15   allegation contained therein.

16   **PARTIES, JURISDICTION, AND VENUE**

17        11.     In response to paragraph 11 of the Complaint, Defendants lack sufficient

18   information to form a belief as to the truth of the allegations therein and on that basis denies the

19   allegations.

20        12.     In response to paragraph 12 of the Complaint, Defendants admit that ADI is a

21   Massachusetts corporation with its principal place of business at One Analog Way, Wilmington,

22   MA 01887.  Defendants further admit that ADI also has an established place of business located

23   at 160 Rio Robles, San Jose, CA 95134.

24        13.     In response to paragraph 13 of the Complaint, Defendants admit that Maxim is a

25   Delaware Corporation with its principal place of business located at 160 Rio Robles, San Jose,

26   CA 95134.

27        14.     Paragraph 14 constitutes statements or conclusions of law to which no admission

28   or denial is required.  To the extent a response is required, Defendants admit that this court has

ROPERS
MAJESKI

A Professional Corporation
San Jose

jurisdiction over this action.

15.    Paragraph 15 constitutes statements or conclusions of law to which no admission or denial is required.  To the extent a response is required, Defendants admit that venue is proper in this judicial district.

16.    Paragraph 16 constitutes statements or conclusions of law to which no admission or denial is required.  To the extent a response is required, Defendants admit that this court has personal jurisdiction over the action.

## **INTRADISTRICT ASSIGNMENT**

17.    Paragraph 17 constitutes statements or conclusions of law to which no admission or denial is required.  To the extent a response is required, Defendants admit that the assignment of this action to the San Jose Division is proper under the Civil Local Rules.

## **COMMON FACTUAL ALLEGATIONS**

18.    In response to Paragraph 18 of the Complaint, Defendants repeat and incorporate the responses contained in paragraphs 1 through 18 above.

19.    Paragraph 19 contains statements or conclusions of law to which no admission or denial is required.  To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and on that basis denies the allegations in Paragraph 19.

20.    In response to Paragraph 20, Defendants lack sufficient information to form a belief as to the truth of the allegations and on that basis denies the allegations.

21.    The terms of the License Agreement speak for themselves, and any attempts in this Paragraph 21 to paraphrase or characterize them are expressly denied, along with all other allegations of Paragraph 21.

22.    The terms of the License Agreement speak for themselves, and any attempts in this Paragraph 22 to paraphrase or characterize them are expressly denied, along with all other allegations of Paragraph 22.

23.    The terms of the License Agreement speak for themselves, and any attempts in this Paragraph 23 to paraphrase or characterize them are expressly denied, along with all other

ROPERS
MAJESKI
A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  allegations of Paragraph 23.

2  24.    In response to paragraph 24 of the Complaint, Defendants deny each and every

3  allegation contained therein.

4  25.    In response to paragraph 25 of the Complaint, Defendants deny each and every

5  allegation contained therein.

6  26.    In response to paragraph 26 of the Complaint, Defendants deny each and every

7  allegation contained therein.

8  27.    In response to paragraph 27 of the Complaint, Defendants deny each and every

9  allegation contained therein.

10  28.    In response to paragraph 28 of the Complaint, Defendants admit that "in at least

11  the years 2010 to 2020" Maxim calculated Royalty payments and Gross Margin in accordance

12  with GAAP compliant methods based on the terms in the License Agreement.  Except as

13  expressly admitted, Defendants deny all remaining allegations in paragraph 28.

14  29.    In response to paragraph 29 of the Complaint, Defendants admit that "for the years

15  2021 and 2022" after ADI acquired Maxim, Maxim calculated Royalty payments and Gross

16  Margin in accordance with GAAP compliant methods based on the terms in the License

17  Agreement.  Except as expressly admitted, Defendants deny all remaining allegations in

18  paragraph 29.

19  30.    In response to paragraph 30 of the Complaint, Defendants deny each and every

20  allegation contained therein.

21  31.    In response to paragraph 31 of the Complaint, Defendants deny each and every

22  allegation contained therein.

23  32.    In response to paragraph 32 of the Complaint, Defendant ADI admits that it

24  communicated the quoted language to Plaintiff.  However, the January 12, 2024 email speaks for

25  itself, and any attempts in this Paragraph 32 to paraphrase or characterize it are expressly denied.

26  33.    In response to paragraph 33 of the Complaint, Defendant ADI admits that it

27  communicated the quoted language to Plaintiff.  However, the January 19, 2024 email speaks for

28  itself, and any attempts in this Paragraph 33 to paraphrase or characterize it are expressly denied.

34.     In response to paragraph 34 of the Complaint, Defendant ADI admits that it communicated the quoted language to Plaintiff.  However, the January 22, 2024 email speaks for itself, and any attempts in this Paragraph 34 to paraphrase or characterize it are expressly denied.

35.     In response to Paragraph 35 of the Complaint, Defendants deny each and every allegation contained therein.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

#### [Breach of Contract against Maxim]

36.     In response to paragraph 36 of the Complaint, Defendants repeat and incorporate the responses contained in paragraphs 1 through 35 above.

37.     In response to paragraph 37 of the Complaint, Defendants admit the Inventors and Maxim entered into a written agreement, the License Agreement, which is attached as Exhibit 1. Except as expressly admitted, Defendants lack sufficient information to form a belief as to the truth of the remaining allegations and on that basis denies those allegations.

38.     In response to paragraph 38 of the Complaint, Defendants deny each and every allegation contained therein.

39.     In response to paragraph 39 of the complaint, Defendants deny each and every allegation contained therein.

40.     In response to paragraph 40 of the Complaint, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis deny those allegations.

### SECOND CAUSE OF ACTION

#### [Breach of the Covenant of Good Faith and Fair Dealing against Maxim]

41.     In response to paragraph 41 of the Complaint, Defendants repeat and incorporate the responses contained in paragraphs 1 through 40 above.

42.     In response to paragraph 42 of the Complaint, Defendants admit the Inventors and Maxim entered into a written agreement, the License Agreement, which is attached as Exhibit 1. Except as expressly admitted, Defendants lack sufficient information to form a belief as to the

1    truth of the remaining allegations and on that basis denies those allegations.

2        43.    In response to paragraph 43 of the Complaint, Defendants deny each and every

3    allegation contained therein.

4        44.    In response to paragraph 44 of the Complaint, deny each and every allegation

5    contained therein.

6        45.    In response to paragraph 45 of the Complaint, paragraph 45 contains statements or

7    conclusions of law to which no admission or denial is required.  To the extent a response is

8    required, Defendants deny each and every allegation contained therein.

9        46.    In response to paragraph 46 of the Complaint, Defendants deny each and every

10   allegation contained therein.

11       47.    In response to paragraph 47 of the Complaint, Defendants admit its calculation of

12   Gross Margin has always been consistent with GAAP.  Except as specifically admitted,

13   Defendants deny the remaining allegations in paragraph 47.

14       48.    In response to paragraph 48 of the Complaint, Defendants lack sufficient

15   information to form a belief as to the truth of the allegations, and on that basis denies the

16   allegations.

17                            **THIRD CAUSE OF ACTION**

18            **[Intentional Interference with Contractual Relations against ADI]**

19       49.    In response to paragraph 49 of the Complaint, Defendants repeat and incorporate

20   the responses contained in paragraphs 1 through 48 above.

21       50.    In response to paragraph 50 of the Complaint, Defendants admit the Inventors and

22   Maxim entered into a written agreement, the License Agreement, which is attached as Exhibit 1.

23   Except as expressly admitted, Defendants lack sufficient information to form a belief as to the

24   truth of the remaining allegations and on that basis denies those allegations.

25       51.    In response to paragraph 51 of the Complaint, Defendants lack sufficient

26   information to form a belief as to the truth of the allegations and on that basis denies

27   those allegations.

28       52.    In response to paragraph 52 of the Complaint, the quoted communications and

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    documents speak for themselves, and any attempts in this paragraph 52 to paraphrase or

2    characterize them are expressly denied.  Defendants also deny all remaining allegations.

3        53.     In response to paragraph 53 of the Complaint, Defendants deny each and every

4    allegation contained therein.

5        54.     In response to paragraph 54 of the Complaint, Defendants deny each and every

6    allegation contained therein.

7        55.     In response to paragraph 55 of the Complaint, Defendants deny each and every

8    allegation contained therein.

9        56.     In response to paragraph 56 of the Complaint, Defendants deny each and every

10   allegation contained therein.

11                              **FOURTH CAUSE OF ACTION**

12          **[Intentional Interference with Prospective Economic Relations against ADI]**

13       57.     In response to paragraph 57 of the Complaint, Defendants repeat the responses

14   contained in paragraphs 1 through 56 above.

15       58.     In response to paragraph 58 of the Complaint, Defendants admit that since 2010,

16   Maxim has paid Royalties to Number 14 as required in the License Agreement and as requested

17   by the Inventors.  Defendants lack sufficient information to form a belief as to the truth of the

18   remaining allegations, and on that basis denies those allegations.

19       59.     In response to paragraph 59 of the Complaint, contains statements or conclusions

20   of law to which no admission or denial is required.  To the extent a response is required,

21   Defendants lack sufficient information to form a belief as to the truth of the allegations, and on

22   that basis denies the allegations.

23       60.     In response to paragraph 60 of the Complaint, Defendants deny each and every

24   allegation contained therein.

25       61.     In response to paragraph 61 of the Complaint, Defendants deny each and every

26   allegation contained therein.

27                               **FIFTH CAUSE OF ACTION**

28

ROPERS
MAJESKI

A Professional Corporation
San Jose

**[Open Book Account – Cal. Code Civ. Proc., § 425.30 – against Maxim]**

62.      In response to paragraph 62 of the Complaint, Defendants repeat the responses contained in paragraphs 1 through 61 above.

63.      In response to paragraph 63 of the Complaint, Defendants admit that since 2021, Maxim has paid Royalties to Number 14 as required in the License Agreement and as requested by the Inventors.  Except as specifically admitted, Defendants deny all remaining allegations in paragraph 63.

64.      In response to paragraph 64 of the Complaint, Defendants lack sufficient information to form a belief as to the truth of the allegations, and on that basis denies the allegations.

65.      In response to paragraph 65 of the Complaint, Defendants deny each and every allegation contained therein.

66.      In response to paragraph 66 of the Complaint, Defendants deny each and every allegation contained therein.

## SIXTH CAUSE OF ACTION

**[Money Due and Owing/Indebtedness – Cal. Code Civ. Proc., § 425.30 – against Maxim]**

67.      In response to paragraph 67 of the Complaint, Defendants repeat the responses contained in paragraphs 1 through 66 above.

68.      In response to paragraph 68 of the Complaint, Defendants deny each and every allegation contained therein.

69.      In response to paragraph 69 of the Complaint, Defendants deny each and every allegation contained therein.

## SEVENTH CAUSE OF ACTION

**[Accounting – against Maxim]**

70.      In response to paragraph 70 of the Complaint, Defendants repeat the responses contained in paragraphs 1 through 69 above.

71.      In response to paragraph 71 of the Complaint, Defendants admit that Maxim has paid Royalties to Number 14 as required in the License Agreement and requested by the

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    Inventors.  Except as specifically admitted, Defendants deny all remaining allegations in

2    paragraph 71.

3         72.    In response to paragraph 72 of the Complaint, Defendants deny each and every

4    allegation contained therein.

## DEMAND FOR JURY TRIAL

6         Defendants admit that Plaintiff purports to demand a jury trial, while reserving all rights in

7    connection therewith.

## RESPONSE TO PRAYER FOR RELIEF

9         Defendants deny that Plaintiff is entitled to any relief whatsoever, including any of the

10   relief requested in its Prayer for Relief.

## AFFIRMATIVE DEFENSES

12        Without assuming the burden of proof on any matters that would otherwise rest with the

13   Plaintiff, expressly denying all wrongdoing, and subject to a reasonable opportunity for further

14   investigation and discovery, Defendants allege the following defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

17        AS A FIRST, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

18   ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

19   THEREIN, Defendants allege that Plaintiff's Complaint regarding its purported causes of action

20   for Breach of Contract against Maxim, Breach of the Covenant of Good Faith and Fair Dealing

21   against Maxim, Intentional Interference with Contractual Relations against ADI, and Intentional

22   Interference with Economic Relations against ADI, fail to state facts sufficient to state a plausible

23   claim for relief against Defendants.

## SECOND AFFIRMATIVE DEFENSE

### (Unilateral Mistake)

26        AS A SECOND, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

27   ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

28   THEREIN, Defendants are informed and believe, and thereon allege, that at all relevant times, the

ROPERS
MAJESKI

A Professional Corporation
San Jose

4889-3713-2231.6
4909-6066-5399.8

1   parties to the purported agreement were acting under a unilateral mistake of fact as to one or more

2   facts that were a material part of the contract, and would not have entered into that contract had

3   the true facts been known.

4         At the time Defendant Maxim and the Inventors executed the License Agreement, Maxim

5   believed that the "Gross Margin" and Royalty calculation method set out in Section 1.1 and

6   Section 2.7 in the License Agreement are based on "U.S. generally accepted accounting

7   principles (GAAP)" and not restricted to the alleged "Formula" or "Sample Royalty Calculation"

8   Plaintiff's reference to in Annex 2.  Maxim and thus ADI continue to believe and interpret the

9   Agreement's Royalty payment calculation, including "Gross Margin" to be based on any GAAP-

10  compliant calculation method.  After ADI's acquisition of Maxim, ADI harmonized Maxim's

11  financials and operations with methods ADI used.  As part of this financial harmonization,

12  Maxim's fiscal year was harmonized with ADI's fiscal year.  Additionally, Maxim's accounting

13  for royalties was harmonized to the process ADI used to account for royalties.  ADI's process to

14  account for royalties is a GAAP-compliant method approved by ADI's auditors.  In order to

15  remain GAAP-complaint, ADI must use the same GAAP-compliant method to account for all

16  royalties, or its accounting would not be GAAP-compliant. ADI's process for accounting is

17  utilized uniformly for all company purposes, including calculation of royalties, where applicable.

18        At the time Defendant Maxim and the Inventors executed the License Agreement, the

19  Inventors were aware that Maxim defined the Royalty calculation method based on the plain

20  language of the License Agreement which specified any GAAP-complaint calculation of Gross

21  Margin.  To the extent Plaintiff claims the License Agreement required a singular, specific Gross

22  Margin calculation, Plaintiff knew or should have known of Maxim's mistaken interpretation of

23  the provision and the mistake was not caused by Defendants' alleged "unilateral" altering of the

24  term.  A GAAP-complaint calculation method is a flexible standard that can be satisfied by a

25  variety of acceptable calculation methods.  Defendants' mistake was not caused by recklessness

26  and instead, adhered to a plain reading of the License Agreement provisions.  Had Maxim known

27  about the mistake, it would not have entered into the License Agreement.  The Inventors

28  knowledge of Maxim's mistake requires the License Agreement to be interpreted in accordance

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  with Maxim's understanding that the License Agreement permitted any GAAP-complaint

2  calculation of Gross Margin.

3  **THIRD AFFIRMATIVE DEFENSE**

4  **(Assumption of Risk )**

5  AS A THIRD, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

6  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

7  THEREIN, Defendants allege that Plaintiff's causes of action against Maxim/ADI, are barred by

8  an assumption of risk.  The Inventors and Plaintiff expressly, voluntarily, and knowingly assumed

9  all risks about which are complained in the Complaint and Defendants are not responsible in law

10  or fact for Plaintiff's injury, if any.  The Inventors and Plaintiff assumed the risk of a potential

11  change to the Royalty calculation caused by a GAAP-compliant change in Maxim's accounting

12  system, including as happened after ADI acquired Maxim. ADI's use of a GAAP compliant

13  calculation method ensured uniform GAAP compliance across all of ADI's royalty payments.  In

14  addition, subsection "D" in the Recitals provided "[t]he Parties acknowledge that if Maxim shall

15  not or no longer employ the Inventors, Maxim will be confronted with increased expenses in

16  order to further develop the Amplifier Design Technology and to obtain the Amplifier Design

17  Patents.  In case the Inventors shall not or no longer be employed by Maxim*, a reduced royalty*

18  *rate shall apply, which takes into account these increased expenses*" (emphasis added).

19  Defendants are not liable for any alleged harm as the Inventors and Plaintiff assumed all risk of

20  the alleged harm.

21  **FOURTH AFFIRMATIVE DEFENSE**

22  **(Statute of Limitations)**

23  AS A FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

24  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

25  THEREIN, Defendants allege that Plaintiff's claim accrued more than 14 years prior to the

26  commencement of this action.  The statute of limitations for Intentional Interference with

27  Contractual Relations and Intentional Interference with Prospective Economic Relations is two

28  years.  (Code Civ. Proc., § 339.).  Plaintiff's Third and Fourth causes of action for "Intentional

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   Interference with Contractual Relations" and "Intentional Interference with Prospective Economic

2   Relations" against ADI, are limited to events before 2022.  Next, under California Code of Civil

3   Procedure, § 337, the statute of limitations for a breach of a written contract is four years.  (Cal.

4   Civ. Proc. Code § 337.).  Based on Plaintiff's Fifth cause of action for "Open Book Account",

5   Plaintiff attempts to claim Royalty payments from ~~2011~~2009 to 2023 that have a "sum of at least

6   $1 million."  Thus, this action is, barred by the applicable two and four-year statute of limitations,

7   under Cal. Civ. Proc. Code §§ 339 and 337.

8                              **FIFTH AFFIRMATIVE DEFENSE**

9                                  **(Unjust Enrichment)**

10          AS A FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

11   ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

12   THEREIN, Defendants are informed and believe that any recovery by Plaintiff would be ~~unjust~~

13   ~~and~~ inequitable under the circumstances of the case, as ~~Defendants have performed contract~~

14   ~~terms.~~Plaintiff has received and unjustly retained a benefit at Defendants' expense.

15          Defendants ~~are informed and believe, and thereon~~ allege that Plaintiff's principals were

16   involved in the development of the Stand-Alone Amplifier products as employees of Maxim and

17   had full knowledge of both the product specifications and the required specifications the products

18   had to meet under the License Agreement.  Once Plaintiff's principals were no longer employees

19   of Maxim, they still had full knowledge of both the product specifications and the required

20   specifications under the License Agreement because the product datasheets are publicly available.

21   Plaintiff knew that ~~its Amplifier Design and~~ the amplifier design patents developed under the

22   License Agreement (U.S. Patent No. 7,812,665; U.S. Patent No. 7,898,330; U.S. Patent No.

23   7,973,596; U.S. Patent No. 8,102,204, collectively "Licensed Patents[2]") and the subsequent

24   Stand-Alone Amplifier products did not meet the required ~~product~~ specifications in ~~Annex 1.~~the

25   License Agreement to be eligible for ~~Royalty payments~~Royalties.  Plaintiff ~~appreciated and~~ also

26   knew ~~of the~~ that the Stand-Alone Amplifier products did not utilize the Licensed Patents.

27   Nonetheless, Plaintiff accepted and retained the benefit conferred upon it ~~through~~despite knowing

28

---

[2] Used interchangeably with Amplifier Design Patents

ROPERS
MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  or disregarding that it was ineligible to receive the Royalty payments. Defendants' Royalty

2  payments were contingent on the Licensed Patents being valid patents; the Licensed Patents

3  resulting in Stand-Alone Amplifier products that meet the required specifications in Annex 1; and

4  could provide Defendants continued Royalty payments and accepted and retained such with

5  significant economic benefits.  TheHowever, Plaintiff has been and is still being unjustly enriched

6  by retaining said benefitthe benefits (economic and otherwise), without delivering products that

7  satisfied the attached product and specifications listed in Annex 1.providing Licensed Patents that

8  meet such specifications.  Throughout the parties' relationship under the License Agreement,

9  Plaintiff has been unjustly enriched by Royalties because the Licensed Patents that would entitle

10  Plaintiff to Royalties were invalid to start with.  Plaintiff's acceptance and retention of such

11  benefits under the circumstances make it inequitable for it to retain the benefits without

12  compensation of its value.

13      Should Plaintiff prevail on any of its claims against Defendants, Plaintiff's requested relief

14  would result in unjust enrichment.  Defendants are entitled to offset any alleged damages any

15  amount of the unjust enrichment.

16                    **SIXTH AFFIRMATIVE DEFENSE**

17                         **(Unclean Hands)**

18                      ~~(Speculative Damages)~~

19      AS A SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

20  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

21  THEREIN, Defendants are informed and believe that Plaintiff seeks to recover damages that are

22  completely speculative in nature.

23      Defendants allege that the causes of action in Plaintiff's Complaint are barred because

24  Plaintiff knew, as set forth above, that the subsequent Stand-Alone Amplifier products did not

25  meet the required specifications in the License Agreement to be eligible for Royalties.

26  Furthermore, Plaintiff also knew that the Stand-Alone Amplifier products did not utilize the

27  Licensed Patents.  Nonetheless, Plaintiff accepted and retained the benefit conferred upon it

28  despite knowing or disregarding that it was ineligible to receive the Royalty payments.

1    Defendants' Royalty payments were contingent on the Licensed Patents being valid patents; the

2    Licensed Patents resulting in Stand-Alone Amplifier products that meet the required

3    specifications in Annex 1; and could provide Defendants with significant economic benefits.

4                       **SEVENTH AFFIRMATIVE DEFENSE**

5                         **(Speculative Damages)**

6                         ~~(Unclean Hands)~~

7           AS A SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE

8    COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION

9    CONTAINED THEREIN, Defendants ~~allege that the causes of action in the Complaint are barred~~

10   ~~because Plaintiff, breached its obligations under the License Agreement and engaged in~~

11   ~~misrepresentations of relevant facts; omitted and failed to disclose that its Patents and the~~

12   ~~applicable products based on Plaintiff's Patents did not meet required specifications; and~~

13   ~~concealed and suppressed the true facts from Defendants, thus causing damage.~~are informed and

14   believe that Plaintiff seeks to recover damages that are completely speculative in nature.

15                       **EIGHTH AFFIRMATIVE DEFENSE**

16                         **(Uncertain Terms)**

17          AS AN EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE

18   COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION

19   CONTAINED THEREIN, Defendants allege that Plaintiff's causes of action for breach of

20   contract fail because there was no meeting of the minds regarding the terms of the contract that

21   were too vague, indefinite, ~~and/or uncertain to be enforced.~~ambiguous and/or uncertain to be

22   enforced.  The ambiguous terms include: the definition of GAAP when calculating Royalties;

23   when "[a]ssessment of the value and benefits [of Products covered by the Amplifier Design

24   Patents] will be governed by the product and specifications listing as outlined in clause 2.7";

25   whether this assessment could be modified over time, were ambiguous or undefined; and how the

26   parties "agree that if Amplifier Design Patents enable products that show *improvements* of

27   'similar' magnitude" and how the "Amplifier Design Patents have *conceptual and economic*

28   *value* in the market for the purpose of payment of the fee specified . . ." (emphasis added).  To the

ROPERS MAJESKI

A Professional Corporation
San Jose

1  extent Plaintiff is attempting to indicate that the Sample Royalty Calculation in Annex 2 of the

2  License Agreement is the definitive formula to calculate ~~Royalty~~royalty would incorrectly and

3  purposefully interpret the terms and conditions of the License Agreement against Defendants.

## NINTH AFFIRMATIVE DEFENSE

### (Failure of Condition Precedent)

6      AS A NINTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

7  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

8  THEREIN, Defendants allege that Plaintiff's purported causes of action for Breach of Contract

9  against Maxim, Breach of the Covenant of Good Faith and Fair Dealing against Maxim,

10  Intentional Interference with Contractual Relations against ADI, and Intentional Interference with

11  Economic Relations against ADI, are barred because of a failure of a condition precedent.

12      The License Agreement provides, "[i]n the event the Amplifier Design Patents are utilized

13  in one or more Stand-Alone Amplifiers, ████████████████████████████

14  ████████████████████████████████████████████████████

15  ██████████  Defendants allege that at least one Amplifier Design Patent, which includes U.S.

16  Patent No. 7,973,596; U.S. Patent No. 7,812,665; U.S. Patent No. 8,102,204; and U.S. Patent No.

17  7,898,330, was not used in any Stand-Alone Amplifier product Plaintiff claims is royalty eligible.

18      Under License Agreement Section 3.2, "Maxim shall evaluate each Stand-Alone

19  Amplifier product launch" and "payment of the amount for the use of a particular Amplifier

20  Design Patent utilized by one or more Stand-Along Amplifier" is premised on the product giving

21  "significant economic value and adds demonstrable benefits to the product." ~~However, within~~

22  ~~these conditions, Plaintiff forgets Section 3.3 adds~~Defendants allege that the technology covered

23  by the Amplifier Design Patents did not/does not give the product(s) Plaintiff claim(s) is royalty

24  eligible significant economic value and did not/does not add demonstrable benefit to such

25  product.  Further, Defendants allege that at least one of the Amplifier Design Patents fails to

26  enable at least one product Plaintiff claims is royalty eligible that show improvements of similar

27  magnitude as compared to the product and specifications listing attached to the License

28  Agreement; and thus, the Amplifier Design Patent(s) do not have conceptual and economic value

ROPERS MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   in the market for the purpose of payment of royalties as outlined in the License Agreement.

2          Section 2.6 also provides that any "confirmation that the Amplifier Design Patents have

3   conceptual and economic value in the market" relied on the implicit condition precedent that the

4   patents were valid.  Any determination that the patents, including the claims therein, were invalid

5   would have diminished the "conceptual and economic value" of the resulting amplifier products,

6   leading Maxim to reach a different conclusion on Royalty payments.  Further, Maxim relied on

7   the exclusivity of the Plaintiff's patents based on the License Agreement and presumption that the

8   patents held additional value because their exclusive use by Maxim.

9          Additionally, Section 3.3 provides that each Stand-Alone Amplifier evaluation requires

10  Maxim to "decide on any product launch and a Business Unit executive at Maxim's headquarters

11  in Sunnyvale, CA, USA, shall need to approve of any such launch."  The section further notes

12  how "[a] certain portion of a design center that Maxim is planning to establish in Delft, The

13  Netherlands, would be dedicated to designing stand-alone amplifiers and defined by local product

14  definers in Delft" including, the Inventors.  The Inventors, by managing and controlling Maxim's

15  Delft design center for stand-alone amplifier products, establishing an employment and licensing

16  relationship with Maxim, and serving as "local product definers," exerted significant influence

17  over Maxim's stand-alone amplifier product designs and launches.  The Inventors' influence

18  allowed them to retain control over the conditions precedent for royalty eligibility by maintaining

19  ongoing influence over the development of Amplifier Design Technology.  Through this

20  influence, the Inventors elected to unnecessarily incorporate portions of the claims of the

21  Amplifier Design Patents into Maxim's stand-alone amplifiers when such products could have

22  been developed without using any portion of the Amplifier Design Patent claims.  The Inventors

23  also controlled or influenced the determination of whether the Amplifier Design Patents gave "the

24  product significant economic value" and added "demonstrable benefits."  The Inventors' self-

25  interested and biased determination of entitlement to royalty deprived Maxim of the opportunity

26  to have an independent and unbiased product launch decision.

27          Therefore, not all products that utilize ~~Plaintiff's~~the Amplifier Design Patents are eligible

28  for Royalty payments ~~because each Amplifier product requires evaluation before it is launched~~as

1  they fail to satisfy at least one condition precedent.

2  **TENTH AFFIRMATIVE DEFENSE**

3  **(Financial Interest Privilege)**

4  AS A TENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT

5  ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED

6  THEREIN, Defendants allege that Plaintiff's Third and Fourth causes of action in the Complaint

7  regarding "Intentional Interference with Contractual Relations against ADI" and "Intentional

8  Interference with Prospective Economic Relations against ADI", are barred because ADI's

9  conduct is protected by the Financial Interest Privilege.

10  California courts have followed the Restatement of Torts § 769 in allowing "[o]ne who

11  has a financial interest in the business of another is privileged purposely to cause him not to

12  perform a contract with a third person . . . if the actor (a) does not employ improper means, and

13  (b) acts to protect his interest from being prejudiced by the contract". (." Restat. 2d of Torts, §§

14  769, 770; *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 319 ;

15  *Culcal Stylco, Inc. v. Vornado, Inc.* (1972) 26 Cal.App.3d 879, 882.).

16  If Defendant, ADI, interfered with the existing contractual and economic relationship

17  between Maxim and Plaintiff it was solely because ADI was acting in the best interests of Maxim,

18  as its parent company following the acquisition.  The interference, if any, was justified because

19  ADI did not employ wrongful means and was acting to protect its own financial interests from

20  being prejudiced by the relationship.

21  **ELEVENTH AFFIRMATIVE DEFENSE**

22  **(Reservation of Rights to Assert Additional Affirmative Defenses)**

23  AS AN ELEVENTH , SEPARATE AND AFFIRMATIVE DEFENSE TO THE

24  COMPLAINT ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION

25  CONTAINED THEREIN, Defendants presently have insufficient knowledge or information on

26  which to form a belief as to whether it may have additional unstated affirmative defenses.

27  Therefore, Defendant reserves Defendants reserve the right to assert additional defenses in the

28  event that the discovery indicates it would be appropriate.

ROPERS MAJESKI

A Professional Corporation
San Jose

**COUNTERCLAIMS**

**INTRODUCTION**

1  ~~Defendants and~~ Counterclaimants ANALOG DEVICES, INC. and MAXIM

2  INTEGRATED PRODUCTS, INC. (collectively, "Counterclaimants") bring these Counterclaims

3  against ~~Number~~NUMBER 14~~, Rudy Eschauzier, and Nico Van Rijn (collectively "Counterclaim~~

4  ~~Defendants~~ B.V. ("Counter-Defendant") to recover Royalties to which ~~Counterclaim Defendants~~

5  ~~were~~Counter-Defendant was never entitled~~.~~ and to recover damages from ~~Counterclaim~~

6  ~~Defendants'~~Counter-Defendant's breach of ~~contract including their duty~~the covenant of good

7  faith and fair dealing~~, and~~ under the License Agreement.  Counterclaimants also bring these

8  Counterclaims against Counter-Defendant to receive a declaration from this Court that

9  ~~Counterclaim Defendants~~under the written License Agreement, in addition to the products

10  meeting the required specifications, payment of Royalties are ~~not entitled~~also dependent on

11  Maxim's evaluation of whether a patent covered by the License Agreement gives a product

12  "significant economic value and adds demonstrable benefits."  Counterclaimants additionally

13  bring these Counterclaims to receive ~~any further Royalties until they deliver~~declarations from this

14  Court that the patents ~~and~~covered under the written License Agreement ~~invalid~~[3] and that none of

15  the products utilize the patented technology ~~required by the parties' written License Agreement~~.

16  These claims arise from a relationship between Maxim on the one hand and Mr.

17  Rudy Eschauzier and Mr. ~~Van~~Nico van Rijn (the "Inventors") on the other.  In 2007, Maxim

18  entered into a License Agreement and separate employment agreements with the Inventors to

19  develop amplifier technology and products.  The License Agreement required the Inventors to

20  develop technology sufficient to create amplifier products that met explicitly-stated

21  specifications, as a condition to receiving Royalty payments.  While employed by Maxim, the

22  Inventors obtained patents related to the amplifier technology developed.  The Inventors ~~informed~~

23  ~~Maxim of the patents and demanded~~, in bad faith, started to demand Royalties from Maxim.

---

[3] ADI filed two petitions for *Inter Partes* Review for U.S. Patent No. 7,975,596 and U.S. Patent No. 7,812,665 before the Patent and Trademark Appeal Board. *See* IPR2025-00550, IPR2025-00551. Shortly after, Counterclaimants moved to stay this case pending institution and resolution of the IPRs, which is still pending before this Court. *See* ECF 96.

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   ~~Relying on the Inventors' representations that they had fully performed in delivering the required~~

2   ~~technology,~~ Maxim commenced Royalty payments on all products identified by Inventors,

3   including some developed personally by the Inventors.  However, ~~Maxim has discovered that the~~

4   ~~Inventors misrepresented or concealed in their communications compliance with the License~~

5   ~~Agreement's specification requirements.  None~~none of the amplifier products identified by

6   Inventors ~~had~~met the required specifications.  Even after Inventors' employment with Maxim

7   terminated, Inventors continued to demand Royalty payments on additional products developed

8   by Maxim.  These too did not meet the required specifications to be royalty-bearing products.

9   ~~Inventors' misrepresentations~~The Inventors' bad faith requests, while knowing the products did

10  not meet the required specifications, allowed Inventors to receive millions of dollars of Royalty

11  payments under the License Agreement to which Inventors were never entitled to receive.  In

12  addition, the Inventors now hide behind Number 14 as an alter ego to shield themselves from

13  personal liability for their improper conduct.

14          Essentially, Maxim entered into a License Agreement with Inventors so that Maxim could

15  receive technology rights sufficient to create amplifier products with desired specifications.

16  Maxim has not received the technology for which it struck a bargain for, but has paid millions of

17  dollars for the Inventor's incomplete technology which it now seeks to recover.

18          Thus, Counterclaimants hereby allege claims against ~~Counterclaim Defendants~~Counter-

19  Defendant as follows:

**COUNTERCLAIM PARTIES**

21      1.      Counterclaimant Analog Devices Inc. ("ADI") is a Massachusetts corporation with

22  a principal place of business at One Analog Way, Wilmington, MA 01887.

23      2.      Counterclaimant Maxim Integrated Products ("Maxim") is a Delaware corporation

24  with a principal place of business at 160 Rio Robles, San Jose, CA 95134.

25      ~~3.~~      On information and belief, ~~Counterclaim~~ Counter-Defendant, Number 14 B.V.

26  ("Number 14") is a company organized and existing under the laws of the Netherlands, with its

27  principal place of business at Roland Hostlaan 10, 2662 Bergschenhoek, The Netherlands that is

28  wholly owned and managed by Rudy Eschauzier and Nico ~~Van~~van Rijn.

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    ~~4.      On information and belief, Counterclaim Defendant Rudy Eschauzier~~

2    ~~("Mr. Eschauzier") is citizen of The Netherlands and a former Maxim employee who served as~~

3    ~~the Design Director and Director of Engineering of Maxim's Design Center in Delft, The~~

4    ~~Netherlands.  Mr. Eschauzier's role at Maxim concluded as "Director, IC Design."~~

5    ~~5.~~3.      On information and belief, Counterclaim Defendant Nico Van Rijn is citizen of

6    ~~The Netherlands and a former Maxim employee who served as the "Principal Member of~~

7    ~~Technical Staff" of Maxim's design center in Delft, The Netherlands.  Mr. Van Rijn's~~

8    ~~employment at Maxim concluded as "Senior Principal MTS, IC Design."~~

9                          **JURISDICTION AND VENUE**

10    ~~6.~~4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §

11    1332 in that there is complete diversity among the parties and the amount in controversy exceeds

12    $75,000, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

13           5.      Additionally, this Court has jurisdiction over the subject matter of these

14    counterclaims action under 28 U.S.C. § 1331 to the extent the Counterclaims arise under the patent

15    laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§

16    2201-2202.

17    ~~7.~~6.      Venue in the United States District Court, for the Northern District of California is

18    proper under 28 U.S.C. § 1391(a) because the counterclaims arise within this District and the

19    Counterclaimants have a place of business within the District.

20                          **FACTUAL ALLEGATIONS**

21    A.     **The Relationship Between Maxim Integrated and the Inventors Led to**
            **Improper Royalty Payments to Inventors**

22

23    ~~8.~~7.      ADI is a global semiconductor company, specializing in innovative analog, digital,

      and software solutions.

24

25    ~~9.~~8.      Maxim is also in the semiconductor industry.  Maxim is a worldwide leader in the

26    design, development, and manufacture of linear and mixed-signal integration circuits.  On August

      26, 2021, Maxim was acquired by ADI and became a wholly-owned subsidiary of ADI.

27

28    ~~10.~~9.      On or around July 20, 2007, Maxim entered into a License Agreement with the

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
                                              Counterclaims; Demand for Jury Trial
                                              Case No. 5:24-CV-02435

1    Inventors (the "("License Agreement" or "Agreement").  A true and correct copy of the License

2    Agreement is attached hereto as **Exhibit 1** and is incorporated in full herein.  Under the License

3    Agreement, the Inventors were to "use their experience and personal skills to develop certain

4    Know-How relating to Amplifier Design Technology."

5        11.10.  As part of the License Agreement, Maxim confirmed that a "certain portion of a

6    design center that Maxim is planning to establish in Delft, The Netherlands, would be dedicated

7    to designing stand-alone amplifiers and defined by local product definers in Delft.."

8        12.11.  On or around September 3, 2007, the Inventors entered into employment with

9    Maxim.

10       13.12.  Mr. Eschauzier was employed as the "Design Director and Director of

11   Engineering" of Maxim's design center in Delft, The Netherlands.  Mr. Vanvan Rijn was

12   employed as the "Principal Member of Technical Staff" also at Maxim's design center in Delft.

13       14.13.  Mr. Eschauzier's LinkedIn profile described that he "co-founded Maxim's

14   development center in The Netherlands."  Specifically, Mr. Eschauzier described that in "2007 he

15   started Maxim Integrated's Delft site for Sensor Interfacing and Signal Conditioning products."

16       15.14.  Mr. Vanvan Rijn also described that in "2007 he started the Maxim Integrated

17   design center in Delft for high precision signal chain products where worked through 2015."

18       16.15.  Mr. Eschauzier and Mr. Vanvan Rijn's job descriptions stated that they were

19   "responsible for the definition, design and development of integrated circuit products for

20   Maxim's MulitMedia Business Unit.  These products include high performance operational

21   amplifiers, instrumentation amplifiers, comparators, video products and audio products."

22       17.16.  Thus, the Inventors work included developing Amplifier Design Technology[4]

23   within the Netherlands-based development center Maxim established in connection with the

24   License Agreement and the employment of Inventors.  The Inventors controlled development of

25   the Amplifier Design Technology and also the development of amplifier products referred to as

26   "Stand-Alone Amplifiers".."  The Inventors had actual and detailed knowledge of the abilities and

27

28   ---
     [4] Amplifier Design Technology as defined in the License Agreement means "the technology on
     amplifier design, which may be developed after the date of entering into this License
     Agreement."

     4889-3713-2231.6
     4909-6066-5399.8

ROPERS
MAJESKI

A Professional Corporation
San Jose

specifications of each of the Stand-Alone Amplifiers developed within Maxim's Netherlands-based development center.

17.     While employed by Maxim, the Inventors obtained patents related to the amplifier technology developed.  The technology developed was patented under U.S. Patent No. 7,973,596; U.S. Patent No. 7,812,665; U.S. Patent No. 8,102,204; and U.S. Patent No. 7,898,330 (collectively, "Licensed Patents").

18.     On information and belief, the Inventors assigned the Licensed Patents to Counter-Defendant, Number 14.

19.     As stated below, Maxim's fiscal year was harmonized with ADI's fiscal year after ADI acquired Maxim.  This caused Maxim's business units and accounting to be harmonized with ADI's GAAP-compliant process, which included the accounting process for royalties.

**B.     The License Agreement Between Maxim and the Inventors Required Inventors to Develop and Deliver ~~Amplifiers~~Amplifier Design Patents that Met Specifications to Qualify for Royalties**

~~18.~~20.  The License Agreement granted Maxim the right of first refusal to license patents that might result from the Inventors' work.  The License Agreement terms allowed Maxim to (1) "make a one-time payment" to exercise its right of first refusal, and (2) to subsequently pay an annual royalty ("~~Royalty payments" or "~~Royalties") on amplifier products that were covered by one or more of the patents related to the Amplifier Design Technology ~~(the "Amplifier Design Patents")~~.

~~19.~~21.  Under Section 2.7 of the License Agreement, ~~Counterclaim Defendants~~Counter-Defendant would be entitled to Royalty payments only if "the Amplifier Design Patents enable products that show improvements of 'similar' magnitude as compared to the attached product and specifications listing ('Annex 1')."  This was essential to "establish that the Amplifier Design Patents have conceptual and economic value in the market for the purpose of payment of the fee."

~~20.~~22.  Section 3.1 specified that if the Amplifier Design Patents were used in:



ROPERS MAJESKI
A Professional Corporation
San Jose

██████████████████████████

21 23.  Section 3.2 explained that "[p]ayment under clause 3.1 above, *if any, shall be conditioned upon* the technology covered by the Amplifier Design Patents giving the product significant economic value and adds demonstrable benefits to the product.  Assessment of the value and benefits will be governed by the product and specifications listing as outlined in clause 2.7."

22 24.  Additionally, Section 3.3 specified that the Stand-Alone Amplifiers designed by the Inventors in Delft, The Netherlands, would be subject to Maxim's decision "on any product launch and a Business Unit executive at Maxim's headquarters in Sunnyvale, CA, USA, shall need to approve any such launch.  The parties to this Agreement, shall agree beforehand on the launch of four product families ███████████ as outlined in the attached product and specifications listing provided that the subject matter is patentable."

23 25.  In short, all Royalty payments under the License Agreement are expressly conditioned on the ~~Counterclaim Defendants'~~Amplifier Design Patents creating "significant economic value and [] demonstrable benefits" by enabling products within product families that meet the explicit specification requirements described in the License Agreement, specifically Annex 1.

24 26.  To date, Maxim has never received a license to Amplifier Design Patents or other Amplifier Design Technology from ~~Crosslaim Defendants~~Counter-Defendant that would allow it to create products and technology that meet the requirements under Annex 1.  In order to create such products that meet the requirements under Annex 1, further development of technology would be required.  Despite the fact that ~~Counterclaim Defendants'~~the Licensed Patents ~~does~~do not deliver the full technology required to meet the specifications in the License Agreement, ~~Counterclaim Defendants~~Counter-Defendant have and continue to request Royalty payments.

C.    **The Inventors Develop Amplifier Design Patents But Fail To Enable Products that Meet the License Agreements' Required Specifications**

1    25.27.  As a result of the work the Inventors performed as employees of Maxim, the

2  Inventors obtained multiple patents related to the Amplifier Design Technology, the Amplifier

3  DesignLicensed Patents.

4    26.28.  On information and belief, in or around February 2009, the Inventors transferred

5  their rights and obligations under the License Agreement to Number 14, an entity that the

6  Inventors wholly ownedown and controlledcontrol.  While Section 10.1 of the License

7  Agreement permitted the Inventors a limited ability to transfer rights under the License

8  Agreement to a wholly-owned entity, no separate license agreement between Maxim and Number

9  14 was ever created.

10    27.29.  In or around 2009, Counterclaim Defendants represented to Maxim that they had

11  completed the Amplifier Design Patents which would enable products within product families

12  that meet the explicit specification requirements describedCounter-Defendant requested, in the

13  License Agreement, specifically Annex 1 and were thus entitledbad faith, to receive the ████

14  ████████████ and Royalties as described in the License Agreement, while knowing the

15  products do not meet the required specifications in Annex 1.

16    28.30.  Relying on Counterclaim Defendants' representations, Maxim paid Counterclaim

17  DefendantsCounter-Defendant ████████████████.

18    31.    The Inventors developed or assisted with the development of numerous Stand-

19  Alone Amplifiers.

20    29.    Beginning in or around 2010, the Inventors made representations to Maxim that

21  they had developed began to request, in bad faith, Royalty payments, while knowing the Stand-

22  Alone Amplifiers utilizing Amplifier Design Patents sufficient to receive Royalties under the

23  License Agreement.

24    30.32.  In 2010, relying on Counterclaim Defendants' representationsdid not meet the

25  required specifications in Annex 1, nor did the products utilize the Licensed Patents.  In 2010,

26  Maxim commenced paying the Royalty payments described in the License Agreement and has

27  continued paying Royalty payments to the Counterclaim DefendantsCounter-Defendant until the

28  present.

ROPERS MAJESKI
A Professional Corporation
San Jose

1    33.    ~~Despite the representations made by Inventors that they developed royalty-bearing~~

2    ~~Stand-Alone Amplifiers, the~~On or around May 31, 2015, the Inventors and Maxim terminated

3    their relationship via Settlement Agreement documents.

4    ~~31.~~34.    The Inventors did not and have not created the Amplifier Design Technology and

5    Amplifier Design Patents sufficient to create products that meet the specification standards set for

6    in the License Agreement upon which Royalties are conditioned.  As detailed above, payment of

7    Royalties is conditioned upon the ~~Counterclaim Defendants'~~Amplifier Design Patents creating

8    "significant economic value and [] demonstrable benefits" by enabling Stand-Alone Amplifiers

9    that meet the explicit specification requirements described in the License Agreement, specifically

10   Annex 1.  Annex 1 describes over 10 parameters[5] required for Stand-Alone Amplifiers in each of

11   ~~5~~five separate product families.  These specifications set the bar that Maxim and the Inventors

12   agreed would need to be met for Royalty payments to be made.

13   ~~32.~~35.    In sum, while still employees of Maxim, the Inventors ~~misrepresented~~began to

14   ~~Maxim that they were entitled to receive~~request, and still do, request Royalty payments ~~under the~~

15   ~~License Agreement for Stand-Alone Amplifiers,~~ in bad faith, while they were aware that the

16   Stand-Alone Amplifiers did not meet the specification standards set for in the License Agreement

17   upon which Royalties are conditioned.

18          1.    How the Amplifier Design Products Do Not Meet the Required
                  Specifications

19

20   36.    Section 2.7 of the License Agreement is explicit that Royalties are owed only

21   when Stand-Alone Amplifiers "show improvements of 'similar magnitude as compared to the

22   [Annex 1] specifications listing."  The term "improvements" refers to advancements made to the

23   known technology at the time the License Agreement was executed.  Specifically, this technology

24   includes the ███████████████ identified in the definition of "Stand-Alone Amplifiers" within

25   the License Agreement: ████████████████████████████████████

26   ████████████████    These ██████████████ are referred to herein as the "Baseline

27   Products."

28   ──────────────────────
     [5] **Exhibit 2** provides a technical explanation of the 10 parameters found Annex 1 of the License
     Agreement.
     ~~4889-3713-2231-6~~
     ~~4909-6066-5399.8~~

37.    **Exhibit 3** details how the ███████████ identified in the definition of "Stand-Alone Amplifiers" within the License Agreement were capable of meeting nearly all requirements of the specifications listed in Annex 1 of the License Agreement.

38.    It is apparent in **Exhibit 3** that:

a.    For ██████ products, all the performances were already met by a Baseline Product ████████, except for ████████████ ██████████.

b.    For ████████ products, all the performances were already met by a Baseline Product ████████ except for ████████████ ████████████████████ an ████████████ and a change in ████.

c.    For ████████████ products, all the performances were already met by a Baseline Product ████████, except for ████████████ ██████████████████, a ████████████ ████████████, and a ████████████.

d.    For ████████████ products, all the performances were already met by a Baseline Product ████████, except for a ████████████ ██████████████, an ██████, and a ████████████.

e.    For ████████ products, all the performances were already met by a Baseline Product ████████████, except for a ████████████ ████████████.

39.    As such, the goal of the License Agreement was to develop amplifiers which either enhanced performance using the same ████████████ or maintained the existing the levels of performance while requiring ████████████ to operate.  Put simply, the goal was to create more ████████████ amplifiers that did not sacrifice performance while ██████████ ██████ requirement.

40.    Again, under the License Agreement, Royalties are owed only if Stand-Alone

ROPERS
MAJESKI
A Professional Corporation
San Jose

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

Amplifier products show improvements of similar magnitude to the specifications in Annex 1. However, as shown in **Exhibit 4**, none of the Stand-Alone Amplifier products identified as Royalty bearing meet any of the five specification sets outlined Annex 1. In fact, each Stand-Alone Amplifier product misses at least two parameters from the specifications.

41.    The specifications for the Stand-Alone Amplifier products are the Typical Values provided in their respective datasheets, which are publicly available online.

42.    As described in **Exhibit 4**, the Stand-Alone Amplifier products do not come close to meeting the specifications in Annex 1 of the License Agreement. For example, MAX44259/60/61/63 features a ███████████████████████, still more ██████████ ██████████████████████████. MAX44259/60/61/63 shows less than half of the "improvement" between the Baseline Product █████████ at ██████████ and the ████████ ██████████. The same is true for nearly all of the Stand-Alone Amplifier products aligning with the ████████████████, requiring more than double the target ██████████████ ██████████████.

43.    This lack of "improvements of 'similar' magnitude'" is also true for the ████████ ████████████████ specification categories. For instance, in the ████ category, the Stand-Alone Amplifier products MAX40100 and MAX9617/18/19/20 each exhibit a ████████ parameter nearly ████████████ than the Annex 1 specification requirement and only ██ of the required Slew Rate. In the ████ category, the Stand-Alone Amplifier product MAX22242 has a current consumption of ██████ which is █████████ the ████ specification of ███████.

44.    Furthermore, the License Agreement only requires Royalties on Stand-Alone Amplifiers which meet the specification requirements in Annex 1. As noted above, Stand-Alone Amplifiers are defined as ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████.

45.    Each of these Baseline Products is considered an operational amplifier or a comparator. Amplifiers in this category are voltage input amplifiers.

46.    Two of the allegedly Royalty bearing products belong to a very different class of

ROPERS
MAJESKI
A Professional Corporation
San Jose

amplifiers.  Specifically, MAX49921 and MAX44286, are within a specific class of amplifiers known as current-sense amplifiers.  Rather than operating as an amplifier of a voltage input, these current-sense amplifiers function as amplifiers of current input.

47.    The functionality of both MAX49921 and MAX44286 are completely different from the Baseline Products.  Given the express definition of Stand-Alone Amplifiers, MAX49921 and MAX44286 cannot be considered Stand-Alone Amplifiers under the License Agreement. The result of this is that these products cannot be Royalty bearing under the License Agreement which only provides for Royalties on Stand-Alone Amplifiers.

48.    In summary, as demonstrated in **Exhibit 4**, the Stand-Alone Amplifier products do not meet the required specifications outlined in Annex 1 of the License Agreement and therefore do not qualify as Royalty bearing.  As a result, these products failed to achieve the fundamental objective of the License Agreement: to produce amplifiers that maintained the performance levels of the Baseline Products while offering improved ███████████ in accordance with the Annex 1 specification requirements.

2.    Amplifier Design Patents Are Not Utilized In Several Stand-Alone Amplifier Products

49.    Section 3.1 of the License Agreement explicitly states that the Inventors will be eligible to receive Royalties "[i]n the event the Amplifier Design Patents are *utilized* in one or more Stand-Alone Amplifiers…sold to third parties…for the life of the particular patent" (emphasis added).  However, none of the Licensed Patents are utilized in Counterclaimants' Stand-Alone Amplifier products that have been identified as Royalty bearing.

50.    For example, MAX40111 does not utilize ███████ of Patent '330 and as a result, no Royalties are owed. Claim ████████████ is not practiced, at least because ████████████████████████████ Claims ████, and ████ are not practiced, at least because ██████████████████. Claims ████████ are not practiced because ███████████████████.

51.    Another example is MAX9617/18/19/20, which does not utilize ██████████.

ROPERS
MAJESKI
A Professional Corporation
San Jose

1   ████ of Patent '596 and therefore is not Royalty bearing under the License Agreement. Claim

2   ████████████ is not practiced, █████████████

3   ████████████████████ Claims ████████ are

4   not practiced, at least because ████████

5   ████████████████████████████████

6   ████████. Claim ██ is not practiced, at least because ████

7   ████████████. Claim ██ is not practiced, ████

8   ████████████████████████████████

9   ████████████████████.

10  52.    MAX44259/60/61/63 serves as a third example, as it does not utilize Claims █

11  ██ of another Licensed Patent, Patent '665, and is thus not subject to Royalties. Claim ██ is not

12  practiced because █████████████████. Claim ████████

13  are not practiced because █████████████████

14  ████. Claim █ is not practiced because ████████. Claim ████ is

15  not practiced because █████████████████.

16  Maxim did not use █████████████████. Finally, Claim

17  ██ is not practiced because █████████████.

18  53.    The same reasoning found above applies to Patent '204 because the claims are not

19  patentably distinct from those of its parent, Patent '665. Accordingly, at a minimum, the claims

20  of Patent '204 that are not patentably distinct from Claims ████████ of Patent '665 are not

21  utilized.

22  54.    Essentially, at least some of the Stand-Alone Amplifier products at issue fail to

23  utilize the Licensed Patents as a condition under Section 3.1 of the License Agreement. As a

24  result, these products do not fulfill the necessary criteria to qualify for Royalties.

25  55.    Section 2.7 of the License Agreement is explicit that Royalties are owed only

26  when Stand-Alone Amplifiers "show improvements of 'similar magnitude as compared to the

27  [Annex 1] specifications listing."

28  33.56.  In reliance on the representations by the Inventors as Maxim employees, Maxim



4889-3713-2331-6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI
A Professional Corporation
San Jose

1  commenced paying Royalties on all Stand-Alone Amplifier products identified as royalty-bearing

2  by Inventors, which Royalty payments have continued through the present.

3  ~~34.    On or around May 31, 2015, the Inventors terminated their relationship with~~

4  ~~Maxim via Settlement Agreement documents.~~

5  **B.    The Inventors Request Royalty Payments In Bad Faith, Despite Knowing The**

6  **Stand-Alone Amplifiers Do Not Meet The Required Specifications In Annex 1 of the License Agreement**

7  ~~35.~~57.  Even after the termination of their employment with Maxim, the Inventors, ~~and~~

8  specifically Mr. Eschauzier, ~~has~~ remained in contact with Maxim and ADI employees.  ~~Even~~

9  ~~as~~The Inventors ~~have~~, in bad faith, continued ~~working with Maxim and ADI, Inventors never~~

10  ~~identified the ways in which the~~to request Royalty payments on certain Stand-Alone Amplifier,

11  while knowing those Stand-Alone Amplifier products ~~did~~do not meet the ~~specification~~

12  ~~requirements in the License Agreement to qualify for Royalty payments.  Rather, Inventors~~

13  ~~continued to allow Counterclaimants to believe the Stand-Alone Amplifier products met the~~

14  ~~specification requirements~~required specifications in Annex 1.  They did this in order to continue

15  receiving Royalty payments to which they were not entitled.

16  ~~36.    Moreover, on multiple occasions, Inventors have identified additional Stand-Alone~~

17  ~~Amplifiers as royalty-bearing products, thereby representing that such products meet the~~

18  ~~specifications required in the License Agreement.~~

19  ~~37.~~58.  ~~One such demand to expand the scope of royalty-bearing products occurred in~~

20  ~~2018.  On~~For example, on March 16, 2018, Mr. Eschauzier, on behalf of ~~Counterclaim~~

21  ~~Defendants~~Counter-Defendant, contacted Maxim and stated "I have two new parts for the royalty

22  list: MAX40010 MAX40201".  Mr. Eschauzier, in bad faith, failed to disclose that neither

23  MAX40010 nor MAX40201 met the ~~express~~required specifications in Annex 1.  As stated in the

24  License Agreement, failure to meet the express specifications in Annex 1 confirmed that

25  ~~Counterclaim Defendants~~Counter-Defendant had not developed or delivered Amplifier Design

26  Patents sufficient to give MAX40010 or MAX40201 significant economic value and add

27  demonstrable benefits as required to receive Royalty payments under Section 3.2 of the License

28  Agreement.

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    ~~38.~~59.   ~~Counterclaim Defendants repeated the demand to expand the scope of royalty-~~

2    ~~bearing products~~ Another example occurred ~~in 2023.  On~~on or around July 11, 2023. Mr.

3    Eschauzier, on behalf of ~~Counterclaim Defendants~~Counter-Defendant, contacted Maxim and

4    stated "We have added two more parts to the royalty list: MAX40108 MAX40263~~".~~."  Maxim

5    inquired how ~~Counterclaim Defendants'~~Counter-Defendant's team arrived at the conclusion to

6    add the parts.  Mr. Eschauzier, in bad faith, again, failed to disclose that neither MAX40108 nor

7    MAX40263 met the ~~express~~required specifications in Annex 1.  As stated in the License

8    Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

9    Defendants had not developed or delivered Amplifier Design Patents sufficient to give

10   MAX40108 or MAX40263 significant economic value and add demonstrable benefits as required

11   to receive Royalty payments under Section 3.2 of the License Agreement.

12   ~~39.~~60.   The Inventors have repeatedly ~~misrepresented to~~requested Royalty payments from

13   Maxim ~~that~~, in bad faith, even though they were not entitled to receive Royalty payments under

14   the License Agreement for Stand-Alone ~~Amplifiers while they were aware that the Stand-Alone~~

15   ~~Amplifiers~~Amplifier products that they did not meet the ~~specification standards set for in the~~

16   ~~License Agreement upon which Royalties are conditioned~~required specifications in Annex 1.

17   ~~40.~~61.   Because all identified Stand-Alone Amplifiers fail to meet the specification

18   requirements of the License Agreement, ~~Counterclaim Defendants have~~Counter-Defendant has

19   never been entitled to any Royalty payments under the License Agreement.  ~~Counterclaim~~

20   ~~Defendants~~Counter-Defendant had actual knowledge of this shortcoming at all times.  Still,

21   ~~Counterclaim Defendants~~Counter-Defendant demanded Royalty payments and Maxim has paid

22   ~~Counterclaim Defendants~~Counter-Defendant over ███████ pursuant to the License Agreement.

23   41.     ~~Counterclaim Defendants~~Counter-Defendant breached ~~the License Agreement by~~

24   ~~identifying products that supposedly met the specifications~~its duty of good faith and fair dealing

25   under the License Agreement ~~to entitle them to Royalty payments.  Through these~~

26   ~~representations, Counterclaim Defendants elicited improper Royalty payments from Maxim and~~

27   ~~ADI.  Further, Counterclaim Defendants~~ when it asked for and accepted ~~the~~ Royalty payments

28   from Counterclaimants, despite knowing ~~their Design Patents did not improve or provide Maxim~~

4889-3713-2231.6
4909-6066-5399.8

ROPERS MAJESKI

A Professional Corporation
San Jose

1  and ADI's products with the significant economic value and benefit listed the Stand-Alone

2  Amplifier products did not meet the required specifications in Annex 1.

3      42.    Counterclaim DefendantsCounter-Defendant also breached Section 2.7's provision

4  regarding Royalty payment eligibility, which contained the spirit of the Agreement.

5      43.    Counterclaim Defendants' Patents licensed to ADIits duty of good faith and fair

6  dealing when it asked for and Maxim didaccepted Royalty payments from Counterclaimants,

7  despite knowing the Stand-Alone Amplifier products do not achieve these specifications or

8  provide utilize the Licensed Patents in the products with a significant economic value or add

9  demonstrable benefit.

10     44.62.  Counterclaim Defendants explicitly agreed to the specifications and metrics in

11  Annex 1 that explained how technology covered by the Amplifier Design Patents would be

12  eligible for Royalty payments.

13     45.63.  As former Maxim employees, the Inventors were hired and later entrusted in the

14  License Agreement to develop Maxim and ADI with technology and Patents that would improve

15  its products.  Instead of delivering on their promise, the Inventors now seek continued payment

16  for licensedunder the Licensed Patents thateven when they did not meet Royalty payment

17  conditions.

18     46.64.  By willfully taking and refusing to alert ADI and Maxim of the fact that its

19  Licensed Patents did not satisfy the agreed upon specifications, Counterclaim Defendants

20  areCounter-Defendant is liable for breach of its good faith and fair dealing under the License

21  Agreement and a responsible for the damages Counterclaimants' incurred.  Moreover,

22  Counterclaimants deny that Counterclaim Defendants wereCounter-Defendant was damaged in

23  any sum, or at all, through any act or omission by Counterclaimants.

24     **D.    Counterclaim DefendantsE. Counter-Defendant Incorrectly DisputeDisputes**
       **Maxim's Calculation of Royalty Payments Under the Plain Language of the**

25     **License Agreement.**

26     47.65.  While Royalties were never earned by Counterclaim DefendantsCounter-

27  Defendant as alleged above, at all times, Maxim has provided Counterclaim DefendantsCounter-

28

ROPERS
MAJESKI
A Professional Corporation
San Jose

1    Defendant with Royalty payments as described in the License Agreement since 2011.[6]

2        66.    As stated in Section 3.1of1 of the License Agreement, if the conditions for Royalty

3    payments were met, ~~Counterclaim Defendants~~Counter-Defendant "will be eligible to receive . . .

4    the dollar amount equal to the excess, if any, of the Gross Margin that is greater than 70% for

5    each particular Stand-Alone Amplifier sold to third parties utilizing such Amplifier Design

6    Patents for the life of the particular patent."  The License Agreement clarifies that "'Gross

7    Margin' shall mean the Net Revenues less Cost of Goods Sold calculated in accordance with U.S.

8    generally accepted accounting principles (GAAP)."  The License Agreement does not define "Net

9    Revenues" or "Cost of Goods Sold", leaving those terms to be determined in accordance with

10   GAAP.  The Royalty obligation described in Section 3.1 of the License Agreement does not

11   identify a singular definitive calculation method or formula in the terms or Annexes to calculate

12   the Royalty payments.  Rather, the only limitation on the calculation method or formula used is

13   that it be in accordance with GAAP.

14       48.67.  GAAP consists of a common set of accounting rules, requirements, and

15   practices issued by the Financial Accounting Standards Board and the Governmental

16   Accounting Standards Board.  GAAP sets out to standardize the classifications,

17   assumptions and procedures used in accounting in industries across the US.  The purpose

18   is to provide clear, consistent and comparable information on organizations financials.

19   However, as GAAP is an assorted set of accounting rules, requirements, and practices,

20   methods of applying GAAP can vary and change over time.

21       49.68.  GAAP permits a change from one generally accepted accounting principle

22   to another generally accepted accounting principle when there are two or more generally

23   accepted accounting principles that apply.  GAAP also permits a change in the method of

24   applying an accounting principle.

25       50.69.  If a corporation's stock is publicly traded, its financial statements must

26

27   [6] While discussing the payments that have been made to ~~Counterclaim Defendants~~Counter-
     Defendant as though Royalties under the License Agreement, Counterclaimants maintain their
28   dispute that any Royalties have ever been earned by ~~Counterclaim Defendants~~Counter-Defendant
     under the License Agreement.

ROPERS
MAJESKI
A Professional Corporation
San Jose

1    follow rules established by the U.S. Securities and Exchange Commission (SEC).  The SEC

2    requires that publicly traded companies in the U.S. regularly file GAAP-compliant financial

3    statements in order to remain publicly listed on the stock exchanges.  GAAP has guidelines for

4    companies that choose to report consolidated financial statements with their subsidiaries.

5    Generally, a parent company and its subsidiaries will use the same financial accounting

6    framework for preparing both separate and consolidated financial statements.

7    51.70.  At all times, Maxim has paid the Royalty described in in the License Agreement as

8    determined under its then-existing accounting system in accordance with GAAP.  As part of its

9    payment of Royalties, Maxim has calculated Gross Margin in accordance with GAAP as used in

10   its accounting system, applying the same definition of Gross Margin, Net Revenues, and Cost of

11   Goods Sold to Royalty payment calculations as Maxim used for all purposes.

12   52.71.  In August 2021, ADI completed an acquisition of Maxim, with Maxim becoming

13   ADI's wholly-owned subsidiary.  As part of this corporate transition, Maxim conformed its

14   former accounting practices to ADI's accounting procedure.  Both before and after the

15   harmonizing of Maxim's accounting system to ADI's accounting system, Maxim has

16   continuously employed a GAAP-compliant accounting system.  At all times, Maxim has

17   calculated Royalties under the License Agreement using a GAAP-compliant calculation method.

18   As part of this financial harmonization, Maxim's fiscal year was harmonized with ADI's fiscal

19   year. Additionally, Maxim's accounting for royalties was harmonized to the process ADI used to

20   account for royalties.  ADI's process to account for royalties is a GAAP-compliant method

21   approved by ADI's auditors.  In order to remain GAAP-complaint, ADI must use the same

22   GAAP-compliant method to account for all royalties, or its accounting would not be GAAP-

23   compliant.  ADI's process for accounting is utilized uniformly for all company purposes,

24   including calculation of royalties, where applicable.

25   72.    As a result of the adjustment of Maxim's accounting system, the GAAP-compliant

26   royalty calculation under the License Agreement adjusted accordingly.  ADI's deployment of a

27   GAAP-compliant royalty calculation is consistently applied across all of Maxim's financials and

28   business units to ensure compliance, as confirmed by ADI's auditors.  Further, it is also essential

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  for ADI to apply its financials uniformly across all of its operations, including license

2  obligations, in order to maintain compliance with GAAP requirements.

3      53. 73.  As alleged in Number 14's Complaint, Counterclaim Defendants

4  haveCounter-Defendant has asserted in writing that Maxim's post-transition, GAAP-

5  compliant royalty calculation under the License Agreement was a breach of the License

6  Agreement.

7      54. 74.  Counterclaimants dispute both that Counterclaim Defendants areCounter-

8  Defendant is entitled to any Royalty under the License Agreement and furthermore that if

9  any Royalty is owed to Counterclaim DefendantsCounter-Defendant, Maxim's post-

10  transition, GAAP-compliant Royalty calculation under the License Agreement is

11  consistent with the plain language of the License Agreement and has not breached the

12  License Agreement in the past and will not breach the License Agreement with future

13  Royalty payments.

14      55. 75.  Counterclaimants are entitled to a declaration from this Court resolving the

15  dispute confirming that (1) Counterclaim Defendants areCounter-Defendant is not entitled

16  to any Royalty under the License Agreement or (2) if Counterclaim Defendants

17  areCounter-Defendant is entitled to a Royalty, that Maxim's post-transition, GAAP-

18  compliant Royalty calculation under the License Agreement is consistent with the plain

19  language of the License Agreement and has not breached the License Agreement in the

20  past and will not breach the License Agreement with future Royalty payments.

21                      **FIRST COUNTERCLAIM**

22              **(Breach of Contract against Counterclaim Defendants)**

23      56.      Counterclaimants incorporate by this reference the allegations of paragraph 1 to

24  56, inclusive, as though fully set forth herein.

25      57.      On July 20, 2007, Maxim entered into the License Agreement with Inventors. On

26  information and belief, the Inventors transferred all rights in the License Agreement to Number

27  14 in February 2009.  On information and belief, the inventors assigned certain Amplifier Design

28  Patents to Number 14 and have caused Number 14 to seek Royalty payments pursuant to the

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   License Agreement from Maxim related to said Amplifier Design Patents.

2        58.    Maxim has performed all of their obligations under the License Agreement.

3        59.    Counterclaim Defendants breached the License Agreement by demanding and

4   accepting Royalty payments under the License Agreement since 2010 to the time of the dispute

5   despite knowing the Amplifier Design Patents did not enable the production of Stand-Alone

6   Amplifiers that meet the specification requirements provided in Annex 1 of the License

7   Agreement upon which all Royalty payments are conditioned. (Exhibit 1).

8        60.    As a consequence of the breach, Counterclaim Defendants retained Royalty

9   payments that they were not eligible for and have caused Maxim to suffer and continue to suffer

10  damages and losses.  Maxim has sustained damages that include and are not limited to the loss of

11  its payments from 2010 to present day for products utilizing the Amplifier Design Patents that did

12  not meet agreed upon specifications.  Maxim seeks damages from Counterclaim Defendants'

13  breaches occurring within the applicable statute of limitations period for a written contract, 4

14  years.

15                           **SECOND COUNTERCLAIM**

16              **(Breach of the Covenant of Good Faith and Fair Dealing)**

17       61.76.  Counterclaimants incorporate by this reference the allegations of paragraph 1 to

18  61to 75, inclusive, as though fully set forth herein.

19       62.77.  As stated above, Maxim entered into a valid contract through the License

20  Agreement with the Inventors.  On information and belief, the Inventors transferred all rights in

21  the License Agreement to Number 14 in February 2009.  While Section 10.1 of the License

22  Agreement permitted the Inventors a limited ability to transfer rights under the License

23  Agreement to a wholly-owned entity, no separate license agreement between Maxim and Number

24  14 was ever created.

25       63.78.  In every contract or agreement, there is an implied promise of good faith and fair

26  dealing and that neither party will do anything which will injure the right of the other to receive

27  the benefits of the agreement.  (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654,

28  658).

ROPERS
MAJESKI

A Professional Corporation
San Jose

1      64.    Counterclaimants have performed their obligations under the License Agreement,

2  and have even attempted performance by making Royalty payments to Counterclaim Defendants

3  even when Counterclaim Defendants had not yet performed sufficient to justify receiving Royalty

4  payments.

5      65.79.  Counterclaim Defendants haveCounter-Defendant has breached theits duty of

6  good faith and fair dealing in the License Agreement by representing to Maxim and ADI that

7  various Stand Alone Amplifiersrequesting Royalties on products it knew were royalty not

8  Royalty bearing under the License Agreement while knowing that saidbecause the Stand-Alone

9  Amplifiers did not satisfy the specifications in Annex 1.

10     66.    Counterclaim Defendants, through Rudy Eschauzier, also made misrepresentations

11  to Maxim.  On information and belief, Number 14 and Mr. Van Rijn were aware of

12  Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these

13  misrepresentations.

14     67.    For example, Counterclaim Defendants inquired about their 2023 Royalty

15  payments in emails asking "Do you know what the status is for this year's royalty payment" thus

16  implying Counterclaim Defendants had met the requirements in the License Agreement to be

17  entitled to Royalties.

18     68.    Additionally, Counterclaim Defendants Misrepresented to Maxim the scope of

19  royalty bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf

20  of Counterclaim Defendants, contacted Maxim and stated "We have added two more parts to the

21  royalty list: MAX40108 MAX40263".  Maxim inquired how Counterclaim Defendants' team

22  arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that neither

23  MAX40108 nor MAX40263 met the express specifications in Annex 1.  As stated in the License

24  Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

25  Defendants had not developed or delivered Amplifier Design Patents sufficient to give

26  MAX40108 or MAX40263 significant economic value and add demonstrable benefits as required

27  to receive Royalty payments under Section 3.2 of the License Agreement.

28     80.    As shown above and in **Exhibits 2-4**, the Stand-Alone Amplifier products do not

meet the required specifications.  There are no products in any of the five categories in Annex 1 which exhibit "improvements of 'similar' magnitude as compared to the [Annex 1] specifications listing."

81.     The Inventors were extensively involved in the development of the technology of the Licensed Patents during their employment at Maxim.  They also played a significant role in the design and development of the Stand-Alone Amplifier products, at least some of which are now alleged to be royalty-bearing and were initially expected to incorporate the Licensed Patents.  However, as detailed above, the Stand-Alone Amplifier products do not utilize the licensed patented technology.

82.     Therefore, Counter-Defendant has breached its duty of good faith and fair dealing in the License Agreement by requesting Royalties on Stand-Alone Amplifiers, developed at least in part by the Inventors, which the Inventors knew did not utilize the Licensed Patents.  Additionally, on information and belief, the Inventors were involved with developing the initial Stand-Alone Amplifier products, and as such, knew or should have known about the subsequent related Stand-Alone Amplifier products, since each iteration was built upon the last.  Accordingly, they knew or should have known that the subsequent Stand-Alone Amplifier products did not utilize the Licensed Patents.

69.83.  Upon information and belief, ~~Counterclaim Defendants~~Counter-Defendant willfully demanded and kept ~~Maxim's~~Counterclaimants' Royalty payments for over a decade when they were not entitled or eligible to receive the Royalty.  This allowed ~~Counterclaim Defendants~~Counter-Defendant to receive the ~~benefits~~benefit of the ~~agreement~~License Agreement while harming ~~Maxim~~Counterclaimants by not conferring the promised benefit of their Amplifier Design Patents to ~~Maxim~~Counterclaimants.

~~70.     As a consequence, Maxim suffered decades of damage by placing their good faith reliance in Counterclaim Defendants and were provided with silence regarding its non-eligible Patented products.~~

~~71.~~84.  ~~Maxim~~Counterclaimants seeks damages from ~~Counterclaim Defendants'~~ ~~breaches~~Counter-Defendant's breach of good faith and fair dealing occurring within the

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

1 | applicable statute of limitations period ~~for a written contract, 4 years~~.

2 | <u>**SECOND COUNTERCLAIM**</u>

3 | ~~**FOURTH COUNTERCLAIM**~~

4 | ~~**(Intentional Misrepresentation)**~~

5 | <u>**(Unjust Enrichment)**</u>

6 | ~~72.~~85.  Counterclaimants incorporate by ~~this~~ reference the allegations of paragraph 1 to

7 | ~~72~~84, inclusive, as ~~though~~through fully set forth ~~herein.~~therein.

8 | ~~73.     On information and belief, Number 14 and Mr. Van Rijn were aware of~~

9 | ~~Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these~~

10 | ~~misrepresentations.  As co-owners of Number 14, Mr. Eschauzier and Mr. Van Rijn's actions are~~

11 | ~~imputed to Number 14.~~

12 | ~~74.     Counterclaim Defendants falsely represented to ADI and Maxim on multiple~~

13 | ~~occasions from 2010 to present.  Counterclaimants bring this cause of action specifically on those~~

14 | ~~representations within the applicable statute of limitations period including statements in 2023~~

15 | ~~and 2024.  Counterclaim Defendants falsely represented that they were entitled to Royalty~~

16 | ~~payments because their Patents and subsequent Amplifier products created from the Patents~~

17 | ~~satisfied the License Agreement terms and specifications in Annex 1.~~

18 | ~~75.     For example, Counterclaim Defendants inquired about their 2023 Royalty~~

19 | ~~payments in emails asking "Do you know what the status is for this year's royalty payment" thus~~

20 | ~~implying Counterclaim Defendants had met the requirements in the License Agreement to be~~

21 | ~~entitled to Royalties.~~

22 | ~~76.     Additionally, Counterclaim Defendants misrepresented to Maxim the scope of~~

23 | ~~royalty-bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf~~

24 | ~~of Counterclaim Defendants, contacted Maxim and stated "We have added two more parts to the~~

25 | ~~royalty list: MAX40108 MAX40263".  Maxim inquired how Counterclaim Defendants' team~~

26 | ~~arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that neither~~

27 | ~~MAX40108 nor MAX40263 met the express specifications in Annex 1.  As stated in the License~~

28 | ~~Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim~~

ROPERS
MAJESKI

A Professional Corporation
San Jose

1 ~~Defendants had not developed or delivered Amplifier Design Patents sufficient to give~~

2 ~~MAX40108 or MAX40263 significant economic value and add demonstrable benefits as required~~

3 ~~to receive Royalty payments under Section 3.2 of the License Agreement.~~

4 ~~77.    Counterclaim Defendants' misrepresentations are material facts and omissions that~~

5 ~~the products that utilized their Patents satisfied the requirements in the License Agreement and~~

6 ~~Annex 1's specifications.~~

7 ~~78.    Counterclaim Defendants knew their representations to Maxim and ADI were false~~

8 ~~or made recklessly and without regard for their truth.~~

9 ~~79.    Counterclaim Defendants intended ADI and Maxim to rely on their~~

10 ~~misrepresentations and omissions to continue providing them with Royalty payments.~~

11 ~~80.    In fact, the Inventors' prior employment relationship and License Agreement with~~

12 ~~ADI and Maxim specified that they would be working and engineering developments in~~

13 ~~Amplifier Design technology.  Therefore, the Inventors' ability to receive Royalty payments was~~

14 ~~premised on their Patents enabling products to meet requirements in the License Agreement.~~

15 ~~81.    ADI and Maxim's reliance on Counterclaim Defendants was reasonable and~~

16 ~~justified because the Inventors were former Maxim employees and there was a good faith belief~~

17 ~~that after the transfer, the Inventors and Counterclaim Defendant would honor the terms of the~~

18 ~~License Agreement.~~

19 ~~82.    Counterclaim Defendants' representations to ADI and Maxim were false and they~~

20 ~~were not entitled to Royalty Payments.  Counterclaim Defendants' knew that the products that~~

21 ~~utilized their Patents did not meet the specifications in Annex 1 and continued to request and~~

22 ~~accept Royalty payments.~~

23 ~~83.    Counterclaim Defendants intended for ADI and Maxim to rely on the~~

24 ~~misrepresentations.~~

25 <u>86.</u>    ~~ADI and Maxim were harmed in an amount to be proven at trial, which is~~

26 ~~reasonably expected to exceed~~<u>A claim for unjust enrichment as an independent cause of action</u>

27 <u>requires the plaintiff to show that the defendant received and unjustly retained a benefit at the</u>

28 <u>plaintiff's expense. *ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038 (9th Cir.</u>

ROPERS
MAJESKI
A Professional Corporation
San Jose

1   2016).

2          87.     Counter-Defendant has unjustly received benefits at the expense of

3   Counterclaimants.

4          84.     Specifically, Counter-Defendant received millions of dollars.

5          85.     ADI and Maxim's reliance on Counterclaim Defendants' representations was a

6   substantial factor in their damages.

7                            **FIFTH COUNTERCLAIM**

8                          **(Negligent Misrepresentation)**

9          86.     Counterclaimants incorporate by this reference the allegations of paragraph 1 to

10  86, inclusive, as though fully set forth herein.

11         87.     As set forth above, Maxim has a valid License Agreement with Counterclaim

12  Defendant.

13         88.     Counterclaim Defendants falsely represented to ADI and Maxim on multiple

14  occasions from 2010 to present.  Counterclaimants bring this cause of action specifically on those

15  representations within the applicable statute of limitations period including statements in 2023

16  and 2024.  Counterclaim Defendants falsely represented that they were entitled to Royalty

17  payments because their Patents and subsequent Amplifier products created from the Patents

18  satisfied the License Agreement terms and specifications in Annex 1.

19         89.     For example, Counterclaim Defendants inquired about their 2023 Royalty

20  payments in emails asking "Do you know what the status is for this year's royalty payment" thus

21  implying Counterclaim Defendants had met the requirements in the License Agreement to be

22  entitled to Royalties.

23         90.     Additionally, Counterclaim Defendants misrepresented to Maxim the scope of

24  royalty-bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf

25  of Counterclaim Defendants, contacted Maxim and stated "We have added two more parts to the

26  royalty list: MAX40108 MAX40263".  Maxim inquired how Counterclaim Defendants' team

27  arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that neither

28  MAX40108 nor MAX40263 met the express specifications in Annex 1.  As stated in the License

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

2  Defendants had not developed or delivered Amplifier Design Patents sufficient to give

3  MAX40108 or MAX40263 significant economic value and add demonstrable benefits as required

4  to receive Royalty payments under Section 3.2 of the License Agreement.

5          91.     On information and belief, Number 14 and Mr. Van Rijn were aware of

6  Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these

7  misrepresentations.  As co-owners of Number 14, Mr. Eschauzier and Mr. Van Rijn's actions are

8  imputed to Number 14.

9          92.     Counterclaim Defendants' representations were untrue because their silence and

10  continued acceptance of Royalties implied the products identified by Counterclaim Defendants

11  met the specifications and requirements in the License Agreement to justify Royalty payments.

12          93.     The representations that Counterclaim Defendants made were material to ADI and

13  Maxim because they continued to issue Royalty payments.

14          94.     Regardless of what Counterclaim Defendants actually believed, they had no

15  reasonable grounds to believe the representations they made were true.

16          95.     Maxim and ADI did not know that the representations were untrue.

17          96.     On information and belief, Counterclaim Defendants intended ADI and Maxim to

18  act on their misrepresentations and omissions by requesting and accepting Royalties.

19          97.     Maxim and ADI's reliance on Counterclaim Defendants' representations were

20  justifiable because they trusted Counterclaim Defendants' Patents and advice throughout the

21  years, as former Maxim employees and parties to the License Agreement.

22          98.     Maxim and ADI relied on the misrepresentations by continuing to send Royalty

23  payments to Counterclaim Defendants until December 2023.

24          99.     As a result, Counterclaim Defendants misrepresentations and omissions were a

25  substantial factor in causing Maxim and ADI to suffer suffered damages.

26                          **SIXTH COUNTERCLAIM**

27                    **(Fraud/Constructive Fraud by Omission)**

28          100.     Counterclaimants incorporate by this reference the allegations of paragraph

1    1 to 100, inclusive, as though fully set forth herein.

2          101.    On information and belief, Number 14 and Mr. Van Rijn were aware of

3    Mr. Eschauzier's representations to Maxim and ADI, and thus approved of these

4    misrepresentations.  As co-owners of Number 14, Mr. Eschauzier and Mr. Van Rijn's actions are

5    imputed to Number 14.

6          102.    Counterclaim Defendants intentionally concealed or suppressed the fact

7    that the products they identified as royalty-bearing under the License Agreement did not meet it

8    required specifications with the intent to defraud ADI and Maxim.

9          103.    A duty to disclose material facts known to one party arises when there is

10   *some relationship* between the parties, such as a fiduciary or confidential relationship creates a

11   duty to disclose known, material facts.  (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th

12   793, 826 [emphasis added].)  This relationship may be created "as a result of some sort of

13   transaction between the parties" such as employer and prospective employee, or "parties entering

14   into any kind of contractual agreement." (*Id.*)

15         104.    As parties to the License Agreement, the Inventors had a duty to disclose

16   the fact that their Patents and products did not meet the specifications in the License Agreement,

17   specifically, Annex 1.  The License Agreement between the Inventors and Maxim/ADI formed a

18   transactional relationship between the parties and subjects the parties to the duties of a

19   confidential relationship.

20         105.    The Inventors also had a duty to disclose material facts through their

21   employment period with Maxim.  The Inventors' positions with Maxim as a "Design Director and

22   Director of Engineering" and a "Principal Member of Technical Staff" begets a duty to disclose.

23   Additionally, on information and belief, their roles in co-founding and starting  Maxim's

24   development center in Delft created a confidential relationship that give the Inventors a duty to

25   disclose material facts to Maxim.

26         106.    For example, Counterclaim Defendants inquired about their 2023 Royalty

27   payments in emails asking "Do you know what the status is for this year's royalty payment" thus

28   implying Counterclaim Defendants had met the requirements in the License Agreement to be

ROPERS
MAJESKI
A Professional Corporation
San Jose

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   entitled to Royalties.

2          107.       Counterclaim Defendants misrepresented to Maxim the scope of royalty

3   bearing products occurred in 2023.  On or around July 11, 2023 Mr. Eschauzier, on behalf of

4   Counterclaim Defendants, contacted Maxim and stated "We have added two more parts to the

5   royalty list: MAX40108 MAX40263".  Maxim inquired how Counterclaim Defendants' team

6   arrived at the conclusion to add the parts.  Mr. Eschauzier again failed to disclose that neither

7   MAX40108 nor MAX40263 met the express specifications in Annex 1.  As stated in the License

8   Agreement, failure to meet the express specifications in Annex 1 confirmed that Counterclaim

9   Defendants had not developed or delivered Amplifier Design Patents sufficient to give

10  MAX40108 or MAX40263 significant economic value and add demonstrable benefits as required

11  to receive Royalty payments under Section 3.2 of the License Agreement.

12         108.       It has now come to light that the Inventors were not entitled to Royalty

13  payments since 2010.

14         109.       ADI and Maxim were unaware of the concealed and suppressed fact

15  because of Counterclaim Defendant's failure to disclose.

16         110.       However, even if ADI and Maxim voluntarily made Royalty payments

17  from 2007 to 2023, the Counterclaim Defendants' continued communications with Maxim and

18  ADI showed that they made representations that they were entitled to Royalties recklessly and

19  without regard for the truth.  The Counterclaim Defendants should have truthfully represented to

20  Maxim and ADI that the Amplifier Design Patents were not creating or enabling products to meet

21  Annex 1's specifications.

22         111.       Rather, the Counterclaim Defendants' continued involvement with ADI

23  and Maxim intentionally concealed and suppressed the fact that their Patents and subsequent

24  products failed to meet the requirements in the License Agreement and specifications in Annex 1.

25         112.       Maxim and ADI relied on the Counterclaim Defendants'

26  misrepresentations.

27         113.       As a direct and proximate result, Maxim and ADI sustained damages

28  including but not limited to compensatory damages for making Royalty payments for inadequate

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

1    and unsatisfactory products, attorneys' fees and costs, diminished product value, punitive

2    damages, and additional permissible and compensable damages as sought herein, and in an

3    amount to be determined at trial.

4                              **SEVENTH COUNTERCLAIM**

5                                **(Detrimental Reliance)**

6            114.    Counterclaimants incorporate by this reference the allegations of paragraph

7    1 to 114, inclusive, as though fully set forth herein.

8            115.88.    The Royalty provisions in the License Agreement encapsulate a promise by

9    Maxim to pay Mr. Eschauzier and Mr. Van Rijn for the in Royalties from Maxim's use of the

10   Amplifier DesignLicensed Patents that allowed Maxim's products to meet certainsupposedly met

11   agreed upon requirements and specifications or increased value. .

12           116.    Counter-Defendant was unjustly enriched through financial benefits,

13   specifically, Royalty payments issued by ADI and Maxim for Maxim's use of Patents. Upon

14   information and belief, Counterclaim Defendants misrepresented their Amplifier Design Patents

15   as being able to satisfy the expectations and specifications in Annex 1.

16           117.    Upon information and belief, Counterclaim Defendants intended to induce

17   ADI and Maxim's reliance on their identification of royalty-bearing products so that ADI and

18   Maxim would continue to issue Royalties to Counterclaim Defendants. By making

19   representations that they were entitled to Royalty payments, Counterclaim Defendants created an

20   implied promise that the products identified as royalty-bearing met the specifications listed in

21   Annex 1. Counterclaim Defendants intentionally failed to disclose the fact that the products

22   identified as royalty-bearing did not meet the specifications listed in Annex 1.

23           118.    ADI and Maxim reasonably relied on Counterclaim Defendants'

24   misrepresentation, omissions, and silence on whether their Patents were able to enable Maxim

25   products to meet the License Agreement's specifications.

26           119.    Nevertheless, Counterclaim Defendants accepted ADI and Maxim's

27   Royalty payments without informingCounter-Defendant knew or notifying ADI and Maxim that

28   the Patents did not meet the Royalty eligibility requirements.

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

1      ~~120.      ADI and Maxim would not~~ should have ~~issued Royalties to Counterclaim~~

2  ~~Defendants without~~ known that ~~their~~ ~~misrepresentations.  Thus, Counterclaim Defendants must~~

3  ~~disgorge their accepted Royalty payments issued based on Counterclaimants' detrimental~~

4  ~~reliance.~~

5                              ~~EIGHTH COUNTERCLAIM~~

6                              ~~(Declaratory Relief)~~

7      ~~121.      Counterclaimants incorporate by this reference the allegations of paragraph~~

8  ~~1 to 121, inclusive, as though fully set forth herein.~~

9      ~~122.~~89.      ~~Counterclaimants seek a court declaration that they will~~Licensed Patents

10  did not ~~need to make current and future Royalty payments to Counterclaim Defendants until~~

11  ~~Counterclaim Defendants enable products to~~ meet the specifications ~~listed~~ in the License

12  Agreement and ~~Annex 1.~~in bad faith, did not disclose this information to ADI and Maxim.

13      90.     ~~Under Sections 2.7, 3.1,~~Specifically, prior to even receiving Royalties, Counter-

14  Defendant failed to disclose to the United States Patent and ~~3.2~~Trademark Office ("USPTO") that

15  their Licensed Patents were not patentable because of pertinent prior art.  Counter-Defendant

16  failed to disclose to Counterclaimants its Patents should not have been patentable and eligible for

17  Royalties.

18      91.     In exchange for Counter-Defendant's unjust benefits, Counterclaims received

19  nothing.  Counter-Defendant's silence and failure to disclose material facts about its Patents and

20  Royalty eligibility hid its misconduct.  Instead, Counterclaimants were and have been deprived of

21  the benefits the Patents were supposed to provide under the License Agreement~~,~~ ~~Royalty~~

22  ~~payments "~~***shall be conditioned upon*** ~~the technology covered by the Amplifier Design Patents~~

23  ~~giving the product significant economic value and adds demonstrable benefits to~~.

24      ~~123.~~92.      Counter-Defendant knew or should have known that it would and did

25  receive a financial benefit from not disclosing that the ~~product."  The assessment of these value~~

26  ~~and benefits will be based on~~ Patents did not confer the promised requirements and specifications

27  ~~in Annex 1.~~ ADI and Maxim expected.  Counter-Defendant knew or should have known that it

28  would and did receive a financial benefit from not disclosing that the Stand-Alone Amplifiers on

ROPERS
MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI
A Professional Corporation
San Jose

1    which it claimed Royalties did not meet the specifications ADI and Maxim expected.

2    93.    The ~~terms~~benefits that Counter-Defendant derived from Counterclaimants rightly

3    belong to Counterclaimants.  The principles of unjust enrichment make it inequitable for Counter-

4    Defendant to retain the profit and/or other benefits it derived from its wrongful conduct alleged in

5    the First Amended Answer and Counterclaim.

6    94.    Counterclaimants plead this claim separately as well as in the alternative to claims

7    for damages under Fed. R. Civ. P. 8, because if the Court dismisses Counterclaimants causes of

8    actions for damages or enters judgment on them in favor of Counter-Defendant, Counterclaimants

9    will have no adequate legal remedy.  *See* Fed. R. Civ. P.  8(a), (d); *Boobuli's LLC v. State Farm*

10   *Fire*, 562 F. Supp. 3d 469, 486-87 (N.D. Cal. 2021).

11   95.    Although the License Agreement ~~make~~establishes the relationship between

12   Counterclaimants and Counter-Defendant, it however, does not account for issues regarding

13   disgorgement of ill-gained sums outside the scope of the License Agreement.  The License

14   Agreement does not provide a clear ~~that Royalty payment~~definition or allocation of rights as to

15   which party is ~~conditioned upon Counterclaim Defendants' enabling of~~responsible for

16   determining which products ~~meeting the specifications in the License Agreement, specifically~~

17   ~~Annex 1.  Without satisfying the requirements in Annex 1~~were eligible for Royalties.  In addition,

18   the License Agreement operates on the assumption that the Counter-Defendant's patents are

19   valid.  Instead, quasi-contract claims now arise because Counterclaimants have made many

20   payments to Counter-Defendant which fall outside the scope of the License Agreement and are

21   thus not governed by it.  *See ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038

22   (9th Cir. 2016); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  As these

23   payments fall outside the scope of the License Agreement, a quasi-contract claim arises

24   permitting Counterclaimants to recover the amounts by which Counter-Defendant has been

25   unjustly enriched.  *Id.*

26   ~~124.~~96.    Under the principles of equity and good conscience, Counterclaim

27   Defendants ~~are not entitled to Royalties.~~should not be permitted to retain the money and should

28   be compelled to return and disgorge all unlawful or inequitable payments they received as a result

1  of their conduct and omissions alleged herein.

2  125.    Counterclaimants have an actual controversy with Counterclaim

3  Defendants regarding the payment of Royalties based on the terms of the License Agreement and

4  Counterclaim Defendants' misrepresentations regarding their entitlement to Royalties.

5  **NINTHTHIRD COUNTERCLAIM**

6  **(Declaratory Relief – Annex 1 SpecificationsRoyalty Eligibility)**

7  126.97.    Counterclaimants incorporate by this reference the allegations of paragraph

8  1 to 12696, inclusive, as though fully set forth herein.

9  127.98.    Counterclaimants seek a court declaration that satisfying and meeting the

10  specifications in Annex 1 is only one of the requirements an essential requirement to obtain

11  Royalty payments., and Royalty payments are also dependent on Maxim's evaluation of whether

12  an Amplifier Design Patent gives a product "significant economic value and adds demonstrable

13  benefits to the product."

14  99.    This evaluation is based on Section 2.7's requirements that the Amplifier Design

15  Patents will "enable products that show improvements of "similar" magnitude" when *compared*

16  *to* Annex 1's specifications.  Maxim disputes that any of the Stand-Alone Amplifier products that

17  supposedly utilize Counter-Defendant's Amplifier Design Patents meet the requirements

18  articulated in the License Agreement.  Put simply, as shown above, none of the Stand-Alone

19  Amplifier products for which Counter-Defendant seek Royalty payments meet Annex 1's

20  specifications or Maxim's examination of economic and demonstrable benefits to entitle Counter-

21  Defendant to Royalties.

22  128.100.    Section 2.6 and 2.7 of the License Agreement specifically focus on the

23  "conceptual and economic value in the market" that the Amplifier Design Patents will have.

24  Moreover, Section 2.7 conditions Royalty payments by stating: "if the Amplifier Design Patents

25  enable products that show improvements of "similar" magnitude as compared to *the attached*

26  *product and specifications listing* [Annex 1 specifications], then this will establish that the

27  Amplifier Design Patents have conceptual and economic value in the market for the purpose of

28  payment of the fee specified above [Royalty payment]."  As explained in Paragraphs 35-47

ROPERS
MAJESKI

A Professional Corporation
San Jose

1    above, none of the Stand-Alone Amplifier products for which Counter-Defendant seeks Royalty

2    payments meet the specifications set forth in Annex 1.

3    129.101.        Counterclaimants have an actual controversy with Counterclaim

4    DefendantsCounter-Defendant about the payment of Royalties based on License Agreement

5    interpretation andincluding whether a Royalty payment is only owed when an alleged royalty-

6    bearing product meets the License Agreement specifications, and whether a Royalty payment is

7    owed on any Stand-Alone Amplifiers on which any Royalties have been previously claimed or

8    paid.

9                          **FOURTH COUNTERCLAIM**

10                         **TENTH COUNTERCLAIM**

11      **(Declaratory Relief – Royalty CalculationJudgment – Patent Invalidity)**

12    130.102.        Counterclaimants incorporate by this reference the allegations of paragraph

13    1 to 130101, inclusive, as though fully set forth herein.

14    103.    Counter-Defendant has sought Royalties for U.S. Patent No. 7,973,596; U.S.

15    Patent No. 7,812,665; U.S. Patent No. 8,102,204; and U.S. Patent No. 7,898,330 (collectively,

16    "Licensed Patents").  However, as detailed below, these Licensed Patents are invalid based on

17    prior art, obviousness, indefiniteness, and/or double patenting under 35 U.S.C. §§ 102, 103, 112,

18    and 204, and therefore do not entitle Counter-Defendant to Royalty payments.

19                      Invalidity of U.S. Patent 7,812,665

20    104.    Counterclaimants allege that each claim of '665 is invalid and indefinite for failure

21    to comply with one or more of the requirements and conditions for patentability set forth in the

22    patent laws, 35 U.S.C. §§ 100 *et. seq.*, including, but not limited to 35 U.S.C. §§ 102, 103, and/or

23    112.

24    105.    The claims of the '665 Patent are invalid, in whole or in part under § 112 as

25    indefinite and/or lacking adequate and enabling written description, or fails to enable one of

26    ordinary skill in the art ("POSITA") to make and use the alleged inventions described and

27    claimed in the '665 Patent.  For example, the following claim terms are not adequately described

28    in the specification, are not supported by an enabling disclosure, and fail to inform, with

ROPERS MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  reasonable certainty, those skilled in the art about the scope of the invention and thus render the

2  claims in which they are found invalid under 35 U.S.C. § 112:

3    a.    "using a radix of less than 2 for at least the most significant bits" ('665 Claim

4        1) – A POSITA would not know if the recited radix corresponds to the ratio

5        between the most significant bits, or whether each bit is associated with a radix

6        corresponding to the ratio between that bit and its next less significant bit.

7        Therefore, a POSITA would not know with reasonable certainty the scope of

8        Claim 1;

9    b.    "the output of the D/A converter being coupled to inputs of the second

10        transconductance differential input stage" ('665 Claim 5) – Throughout the

11        Specification of the '665 Patent, each of the two outputs of the D/A converter

12        is coupled to exactly one input of the second transconductance differential

13        input stage, as opposed to the "inputs" (plural). Therefore, Claim 5 lacks

14        adequate written description, and would not enable a POSITA to practice the

15        invention.

16    106.    One or more of the claims of the '665 Patent are invalid under 35 U.S.C. §§ 102

17  and/or 103 because claims were anticipated and/or rendered obvious by prior art.  By way of

18  example, claims in the '665 Patent were rendered obvious in view of at least A High-Performance

19  Autozeroed CMOS Opamp with 50pV Offset, by Krummenacher et al., from the 1997 IEEE

20  International Solid-state Circuits Conference, 1997 ("*Krum*") and/or in view of U.S. Patent No.

21  6,486,806 ("*Munoz*").

22    107.    Claims in the '665 Patent are also rendered obvious by *Krum* and *Munoz* in view

23  of U.S. Patent No. 7,642,846 ("*Yan*").  Each of the *Krum*, *Munoz*, and *Yan* patents, alone or in

24  combination, render the corresponding limitations obvious to a person of ordinary skill in the art.

25    108.    By way of example, all elements of Claim 1 of the '665 Patent are rendered

26  obvious by *Krum* and *Munoz*, alone or in combination:

27    a.    [1pre]: the claimed "amplifier system" in the preamble is disclosed by

28        *Krum*'s amplifier in Fig. 1;

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

b.      [1a]: the claimed "first amplifier" is disclosed by *Krum*, as a portion of the amplifier in Fig. 1, including the input stages, the mid stage, and a portion of the output stage;

c.      [1b]: the claimed "comparator" is disclosed by *Krum*, as a portion of the amplifier in Fig. 1, including the driver to the Low-Pass Filter, the Low-Pass Filter, and the Schmitt trigger;

d.      [1c]: the claimed "successive approximation register" is disclosed by *Krum*, as a portion of the amplifier in Fig. 1, including the block SAR;

e.      [1d]: the claimed "first switch" is disclosed by *Krum*, as a portion of the amplifier in Fig. 1, including the passgates at the differential inputs;

f.      [1e]: the claimed "second switch" is disclosed by *Krum*, as a portion of the amplifier in Fig. 1, including the output stage source switches and the passgate at the output;

109.    [1g]: the claimed "radix of less than 2" is disclosed by Munoz, since Munoz' DAC from Fig. 3A has a radix of less than two; and

110.    [1h]: the claimed "control" of the input offset of the amplifier is disclosed by Krum, as its CAL DAC operates to cancel the input offset of Krum's amplifier.

111.    A combination of the teachings of Krum and Munoz is schematically represented below:



**Ground 1: Krum-Munoz Combination**

112.    Counterclaimant has also challenged the validity of the '665 Patent through the filing of a Petition for *Inter Partes* Review with the U.S. Patent and Trademark Office, Petition No. IPR2025-00551.  In addition to its request for an order invalidating the Counterclaimant requests that the present Action be stayed pending the resolution of IPR2025-00551.

Invalidity of U.S. Patent 8,102,204

113.    Counterclaimants allege that each claim of '204 is invalid and indefinite for failure to comply with one or more of the requirements and conditions for patentability set forth in the patent laws, 35 U.S.C. §§ 100 et seq., including, but not limited to, 35 U.S.C. §§ 103 and 112.

114.    The claims of the '204 Patent are invalid, in whole or in part, under 35 U.S.C. § 103 because during patent prosecution, all of '204 Patent's claims were rejected as being obvious over the claims of its parent, the '665 Patent. '204 Patent's issuance was based on a terminal disclaimer.  However, its claims are still rendered obvious in view of '665 Patent.

ROPERS
MAJESKI
A Professional Corporation
San Jose

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

115.    Apart from '204 Claim 1d, where "a first switch for switching an input of the first amplifier from the amplifier system input to shorting the first transconductance differential input stage;" differs to where the shorted inputs are the inputs of the first amplifier inputs, all '204 Patent claims have a similar element from the '665 Patent.  Simply put, '204 Claims 1-8 reference back to claims already present in the '665 Patent.

116.    Therefore, the '204 Patent is invalid for obviousness-type double patenting because its claims were not patentably distinct from its parent patent.

Invalidity of U.S. Patent 7,898,330

117.    Counterclaimants allege that each claim of '330 is invalid and indefinite for failure to comply with one or more of the requirements and conditions for patentability set forth in the patent laws, 35 U.S.C. §§ 100 et seq., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

118.    The claims of the '330 Patent are invalid, in whole or in part under § 112 as indefinite and/or lacking adequate and enabling written description, or fails to enable one of skill in the art to make and use the alleged inventions described and claimed in the '330 Patent.  For example:

a.    "current input INA of each circuit being coupled to the current output OUTA1 of the other circuit" ('330 Claim 13) – This element is duplicative of element [1f] of claim 1, which does not allow a POSITA to give any weight to the term. Therefore, Claim 13 is indefinite; and

b.    "The circuits of claim 1 further comprising a differential input stage ('330 Claim 2) – The first circuit is of transistors of a first conductivity type, and the second circuit of transistors of a second conductivity type. The second circuit is a duplicate of the first circuit. Thus, the differential input stage must include transistors of both types. The Specification of the '330 Patent does not teach a differential input stage with transistors of both types. Therefore, Claim 1 lacks adequate and enabling written description of the recited invention.

119.    One or more of the claims of the '330 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 because claims were anticipated and/or rendered obvious by prior art.  By way of example, claims in the '330 Patent were rendered obvious over of at least U.S. Patent No. 5,646,518 ("*Lakshmi*") in view of U.S. Patent No. 7,920,015 ("*Chelappa*").

120.    Claims in the '665 Patent are also rendered obvious over at least U.S. Patent No. 6,118,341 ("*Huijsing 341*") in view of *Chelappa*. Each of the *Lakshmi*, *Chelappa*, and *Huijsing 341* patents, alone or in combination, render the corresponding limitations obvious to a person of ordinary skill in the art.

121.    By way of example, all elements of Claim 1 of the '330 Patent are rendered obvious by a combination of the teachings of *Lakshmi's* amplifier in Fig. 3 and *Chelappa's* PTAT reference in Fig. 3:

    a.  [1pre]: the claimed "first and second circuits" in the preamble are disclosed by the combination of *Lakshmi* and *Chelappa*;

    b.  [1a]: the claimed "first circuit" description, including conductivity type, inputs are outputs, is also disclosed in, and apparent from the schematics of, the combination of *Lakhsmi* and *Chelappa*;

    c.  [1b]: the claimed proportionality between currents OUT2 and IN2, is disclosed in, and apparent from the schematics of, the combination of *Lakhsmi* and *Chelappa*;

    d.  [1c]: the claimed relationship between currents OUTA2 and other currents, is disclosed in, and apparent from the schematics of, the combination of *Lakhsmi* and *Chelappa*;

    e.  [1d]: the claimed "duplicating the first circuit", is disclosed in, and apparent from the schematics of, the combination of *Lakhsmi* and *Chelappa*;

    f.  [1e]: the claimed "current OUTA1 being a quiescent current" is disclosed by *Chelappa's* constant current generator 110;

    g.  [1f]: the claimed coupling between the first and the second circuit is

disclosed in, and apparent from the schematics of, the combination of

*Lakhsmi* and *Chelappa*.

122.   The combination of the teachings of *Lakshmi* and *Chelappa* is schematically

represented below, showing the claimed "first circuit" and the "second circuit":



Invalidity of U.S. Patent 7,973,596

123.   Counterclaimants allege that each claim '596 is invalid and indefinite for failure to

comply with one or more of the requirements and conditions for patentability set forth in the

patent laws, 35 U.S.C. §§ 100 et seq., including, but not limited to, 35 U.S.C. §§ 102, 103 and/or

112.

124.   The claims of the '596 Patent are invalid, in whole or in part under § 112 as

indefinite and/or lacking adequate and enabling written description, or fails to enable one of skill

in the art to make and use the alleged inventions described and claimed in the '596 Patent.  For

example, the following claim terms are not adequately described in the specification, are not

supported by an enabling disclosure, and fail to inform, with reasonable certainty, those skilled in

the art about the scope of the invention and thus render the claims in which they are found invalid

under 35 U.S.C. § 112:

a.   "the second frequency being twice the first frequency" ('596 Claim 21) – A

POSITA would not give any weight to the element, given that the element

above ("the ratio of the frequencies being two to one"). If the second

frequency is twice the first frequency, then necessarily the ratio of the

ROPERS
MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

frequencies is two to one. Therefore, Claim 21 is indefinite;

    b.   "operating the first and second switches at a first frequency" ('596 Claim 24) – A previous element requires the first switches to be "closed at a second frequency equal to one half the first frequency". The Specification of the '596 Patent does not teach how the first switches are both "operating at a first frequency" and closed at half the first frequency. Claim 24 lacks written specification and is not enabling.

125.    One or more of the claims of the '596 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 because claims were anticipated and/or rendered obvious by prior art.  By way of example, claims in the '596 Patent were rendered obvious in view of at least U.S. Patent No. 7,834,685 ("*Pertijs*").

126.    Claims in the '665 Patent are also rendered obvious in view of at least U.S. Patent No. 6,476,671 ("*Tang*").  Each of the *Pertijs* and *Tang* patents, alone or in combination, render the corresponding limitations obvious to a person of ordinary skill in the art.

127.    By way of example, all elements of Claim 21 of the '596 Patent are rendered obvious by *Pertijs*:

    a.    [21pre]: the claimed "chopper stabilized first amplifier" in the preamble is disclosed by *Pertijs's* amplifier 102 in Fig. 1;

    b.    [21a]: the claimed "operating the chopper stabilization at a first frequency" is disclosed by *Pertijs* as the operation of switches 110 and 126, as shown in *Pertijs* Fig. 2;

    c.    [21b]: the claimed "operating the autozeroing at a second frequency" is disclosed by *Pertijs* as the operation of switches 112 and 130, as shown in *Pertijs* Fig. 2;

    d.    [21c]: the claimed "ratio of the frequency being two to one" is disclosed by *Pertijs* Fig. 2;

    e.    [21d]: the claimed "second frequency being twice the first frequency" is disclosed by *Pertijs* Fig. 2;

f.    [21e]: the claimed "duty cycle of less than one half" is disclosed by *Pertijs* Fig. 2.

128.    Pertijs' teachings rendering Claim 21 of Patent '596 obvious are schematically illustrated below (showing the first amplifier, chopper switches, and autozeroing switches):



129.    Counterclaimant has also challenged the validity of the '596 Patent through the filing of a Petition for *Inter Partes* Review with the U.S. Patent and Trademark Office, Petition No. IPR2025-00550.  In addition to its request for an order invalidating the Counterclaimant requests that the present Action be stayed pending the resolution of IPR2025-00550.

130.    A substantial, immediate, and real controversy therefore exists between Counterclaimants and Counter-Defendant regarding whether the Licensed Patents are invalid, and if Royalties are due under the License Agreement.

131.    Because the '665, '204, 330, and '596 Patents are invalid under 35 U.S.C. §§ et seq., including, but not limited to 35 U.S.C. §§ 102, 103, and/or 112, a judicial declaration is both appropriate and necessary to resolve the parties' respective rights and determine whether Counterclaimants' products are subject to Royalties.

132.    Counterclaimants seek a judicial declaration that they are not obligated to pay Royalties under the License Agreement because the Licensed Patents are invalid under 35 U.S.C.

4889-3713-2231.6
4909-6066-5399.8

ROPERS
M A J E S K I

A Professional Corporation
San Jose

1    §§ et seq., including, but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

2        133.    An actual controversy exists because Counterclaimants dispute Counter-

3    Defendant's allegations that Counterclaimants are obligated to pay Royalties on the Products

4    under the License Agreement, and that their failure to do so constitutes a breach.  At the same

5    time, Counterclaimants allege that the Licensed Patents are invalid for the reasons above and, as

6    such, should not entitle Counter-Defendant to any Royalties.

7    **FIFTH COUNTERCLAIM**

8    **(Declaratory Judgment – Inequitable Conduct)**

9        134.    Counterclaimants incorporate by this reference the allegations of paragraph 1 to

10    133, inclusive, as though fully set forth herein.

11        135.    Patent '596, which Counter-Defendant claims Royalties on, is unenforceable

12    because of inequitable conduct that occurred during the prosecution of the respective application

13    resulting in the issuance of the patent.

14    Counter-Defendant's Material Misrepresentation to the USPTO

15        136.    In connection with the prosecution of Patent '596, Mr. Eschauzier and Mr. van

16    Rijn signed a declaration acknowledging that they had a duty to disclose to the USPTO,

17    information known to be material to patentability of the claims in the Patent '596 in accordance

18    with 37 C.F.R. § 1.56.  A copy of Mr. Eschauzier and Mr. van Rijn's Declaration and Power of

19    Attorney for Patent Application from the U.S. Patent Application Serial No. 12/464,572 is

20    attached hereto as **Exhibit 5**.

21        137.    Upon information and belief, Counter-Defendant, through its co-owners, Mr.

22    Eschauzier and Mr. van Rijn, understood their duty to disclose to the USPTO, material

23    information they knew that may impact the patentability of the claims in Patent '596.

24        138.    During the prosecution of Patent '596, the Patent Examiner independently

25    discovered that the patent referenced U.S. Patent No. 6,734,723 ("*Huijsing*").  Counter-Defendant

26    failed to disclose that Patent '596 contained references to *Huijsing* and the Examiner rejected the

27    patent as obvious over *Huijsing*.

28        139.    In fact, Counter-Defendant was well-acquainted with Mr. Hujising, since Mr.

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI

A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   Eschauzier co-authored a book with him. Given the substantial overlap between the subject

2   matter of *Huijsing* and Patent '596, Counter-Defendant knew Patent '596 references *Huijsing*

3   during the prosecution process.

4          140.    Upon information and belief, Counter-Defendant knowingly and deliberately

5   failed to disclose that the subject matter of Patent '596 existed in prior art references in *Huijsing*.

6   Upon information and belief, Counter-Defendant knowingly and deliberately made affirmative

7   misrepresentations to the USPTO that Patent '596 met the requirements to be patentable, such as

8   being a novel, useful, and non-obvious invention while Patent '596 obviously referenced

9   *Huijsing*.  A copy of Mr. Eschauzier's Information Disclosure Statement from the U.S. Patent

10  Application Serial No. 12/464,572 with the United States Patent and Trademark Office is attached

11  hereto as **Exhibit 6**.

12         141.    The materiality required to establish inequitable conduct is "but-for," which

13  requires that "but-for" the misrepresentation, the patent would not have been issued.  *Therasense,*

14  *Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011).  Specifically, a Patent

15  Examiner would have understood that a reference to *Huijsing* would have been prior art and

16  anticipated.  Therefore, the alleged novelty in Patent '596 and its claims would have been invalid

17  under 35 U.S.C. §§ 102 and/or 103.

18         Counter-Defendant Intended to Misrepresent Patent '596 and Deceive the USPTO

19         142.    Accordingly, "but-for" Counter-Defendant's misrepresentations, Patent '596

20  should not have been patented because of references and pertinent prior art.  Initially, the Patent

21  Examiner rejected certain claims in Patent '596 as anticipated and obvious because of the

22  references to *Huijsing*.  Therefore, the Examiner's initial rejection establishes that the undisclosed

23  information was "but for" material information that would was important in deciding whether to

24  allow the application to issue as a patent.

25         143.    Upon information and belief, Counter-Defendant's misrepresentations, omissions,

26  and actions discussed above were carried out with an intent to deceive the USPTO.  Counter-

27  Defendant knew the contents of Patent '596 through its involvement with the development and

28  application process.  Additionally, the fact that Mr. Eschauzier, a co-owner of Counter-

ROPERS
MAJESKI

A Professional Corporation
San Jose

1   Defendant, had a close relationship with Mr. Hujising, worked in the same field/industry as Mr.

2   Hujising, and the Inventors were active in the same industry, and still failed to submit *Hujising*

3   references in the prosecution of Patent'596, strongly suggests he was knowledgeable about the

4   materiality of his failure to disclose.

5          144.    Upon information and belief, despite having knowledge that *Huijsing* would be

6   relevant to Patent '596's patentability, Counter-Defendant chose to not disclose to the USPTO

7   *Huijsing* as a reference or prior art, and continued to misrepresent to the PTO that Patent '596

8   was a novel invention.

9          145.    To the extent that Counter-Defendant claims to have disclosed references and prior

10  art during prosecution, the facts still reflect that Counter-Defendant intended to avoid disclosing

11  that Patent '596 referenced *Huijsing*.

12         146.    Further, given the "but-for" material nature of the information Patent '596

13  references, which were not submitted in the prosecution, as discussed above, support an inference

14  that Counter-Defendant made a deliberate decision to withhold the information from the USPTO

15  during the prosecution.  In particular, the decision to omit disclosing the references to *Huijsing*

16  was done with the intention that the Patent Examiner would not discover the reference.

17         147.    Upon information and belief, the License Agreement motivated Counter-

18  Defendant to omit *Huijsing*.  By failing to disclose the reference and prior art, Counter-Defendant

19  could obtain another patent to license to Counterclaimants in exchange for Royalty payments.

20  Specifically, the prosecution and application process occurred after the formation of the License

21  Agreement.  Counter-Defendant's specific intent to deceive the Patent Office is the single most

22  reasonable inference to be drawn from their actions and omissions.

23         148.    For all the reasons set forth above, the Counter-Defendant's acts and omissions

24  constituted inequitable conduct before the USPTO.  Counterclaimants request a declaration from

25  the Court that Counter-Defendant's that Patent '596 be declared unenforceable due to inequitable

26  conduct.

27         149.    An actual controversy exists because Counterclaimants dispute Counter-

28  Defendant's allegations that Counterclaimants are obligated to pay Royalties on the Products

under the License Agreement, and that their failure to do so constitutes a breach. At the same time, Counterclaimants allege that Patent '596 is unenforceable based on inequitable conduct so no Royalties are owed and earned to Counter-Defendant.

## SIXTH COUNTERCLAIM

### (Declaratory Judgment – Stand-Alone Amplifier Products Do Not Utilize the Licensed Patented Technology)

150. Counterclaimants repeat and incorporate by reference, as though set forth in full, all allegations set forth in paragraphs 1 through 149 of this Counterclaim.

151. Counterclaimants seek a judgment declaring that some or all claims in U.S. Patent No. 7,973,596; U.S. Patent No. 7,812,665; U.S. Patent No. 8,102,204; and U.S. Patent No. 7,898,330 are not practiced in Counterclaimants' amplifier products.

152. Because the '665; '204; '330; and/or '596 Patents are not practiced, Counterclaimants' amplifier products would not directly or indirectly infringe on the '665; '204; '330; and/or '596 Patents and thus are not subject to Royalties.

153. As a result, some or all of Counterclaimant's amplifier products are not subject to Royalties.

### U.S. Patent 7,812,665 is Not Utilized in Stand Alone Amplifiers

154. Even in the absence of the rights granted under License Agreement, Counterclaimants allege that some or all of their amplifier products would not directly or indirectly infringe the '665 Patent, either literally or under the doctrine of equivalents, at least because the amplifier products do not comprise amplifier design technology that creates embodiments for an amplifier, comparator, and D/A converter, used in the field of operational and instrumentation amplifiers.

155. Counterclaimants allege that at least some of the amplifier products for which Counterclaim Defendants claim a royalty is owed do not practice any claim of the '665 Patent and therefor are not subject to the License Agreement, including any royalty obligation, and are likewise non-infringing on the '665 Patent.

156. Counter-Defendant claims to own all rights, title, and interest in and under the

ROPERS
MAJESKI
A Professional Corporation
San Jose

'665 Patent.

157.    Even in the absence of the rights granted under the License Agreement, Counterclaimants allege that some or all of their amplifier products would not directly or indirectly infringe the '665 Patent, either literally or under the doctrine of equivalents, at least because the amplifier products do not comprise amplifier design technology that creates embodiments for an amplifier, comparator, and D/A converter, used in the field of operational and instrumentation amplifiers.

158.    At least '665 Patent Claims ▮▮▮▮ are not practiced in a product.  For example, MAX44259/60/61/63:



a.    Claim ▮ is not practiced, because ▮▮▮▮▮▮▮▮▮▮;

b.    Claim ▮▮▮▮▮▮▮▮▮ are not practiced because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

c.    Claim ▮ is not practiced because ▮▮▮▮;

d.    Claim ▮ is not practiced because ▮▮▮▮▮▮▮▮▮▮▮▮; and

e.    Claim ▮ is not practiced because ▮▮▮▮▮▮▮.

U.S. Patent 8,102,204 is Not Utilized in Stand Alone Amplifiers

159.    Counter-Defendant claims to own all rights, title, and interest in and under the '204 Patent.

160.    Counterclaimants allege that at least some of the amplifier products for which Counter-Defendant claim a royalty is owed do not practice any claim of the '204 Patent and therefor are not subject to the License Agreement, including any royalty obligation, and are likewise non-infringing on the '665 Patent.

161.    Even in the absence of the rights granted under License Agreement, Counterclaimants allege that some or all of their amplifier products Counterclaimants do not directly or indirectly infringe the '204 Patent, either literally or under the doctrine of equivalents,

ROPERS
MAJESKI
A Professional Corporation
San Jose

1  at least because the amplifier products do not comprise amplifier design technology related to

2  amplifiers with power-on trim and methods using an amplifier system having an amplifier system

3  input and output, amplifier, comparator, and D/A converter that are used in field of operational

4  and instrumentation amplifiers.

5  162.    As explained above, the '204 Patent claims are not patentably distinct from the

6  claims of its parent, the '665 Patent.  Thus, at least the '204 Patent claims that are not patentably

7  distinct from the Claims ▮▮▮▮ of Patent '665, are not practiced.

8  U.S. Patent 7,898,330 is Not Utilized in Stand Alone Amplifiers

9  163.    Counterclaimants allege that at least some of the amplifier products for which

10  Counter-Defendant claims a royalty is owed do not practice any claim of the '330 Patent ("'330

11  Patent") and therefore are not subject to the License Agreement, including any royalty obligation,

12  and are likewise non-infringing on the '330 Patent.

13  164.    Counter-Defendant claims to own all rights, title, and interest in and under the

14  7,898,330 Patent ("330 Patent").

15  165.    Even in the absence of the rights granted under License Agreement,

16  Counterclaimants allege that some or all of their amplifier products would not directly or

17  indirectly infringe the '330 Patent, either literally or under the doctrine of equivalents, at least

18  because the amplifier products do not comprise amplifier design technology comprising of AB

19  amplifier systems that exhibit low power, low-voltage operation, high gain, high bandwidth, low

20  noise and low offset, reduces power consumption, and utilize a differential first and second stage

21  of two pair of nested current mirrors.

22  166.    None of the '330 Patent Claims are practiced in a product. For example, for

23  MAX40111:

24      a.    Claim ▮▮▮▮▮▮ is not practiced, at least because

25  ▮▮▮▮▮▮▮▮▮▮;

26      b.    Claims ▮▮▮▮ are not practiced, at least because

27  ▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮; and



First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI
A Professional Corporation
San Jose

1        c.    Claims ███████████████████ are not practiced

2        because ██████████████████████████.

3              U.S. Patent 7,973,596 is Not Utilized in Stand Alone Amplifiers

4       167.    Counter-Defendant claims to own all rights, title, and interest in and under the

5  '596 Patent.

6       168.    Even in the absence of the rights granted under License Agreement,

7  Counterclaimants allege that some or all of their amplifier products would not directly or

8  indirectly infringe the '596 Patent, either literally or under the doctrine of equivalents, at least

9  because the amplifier products do not comprise of amplifiers that use different combinations of

10 chopping and auto-zeroing techniques.

11      169.    At least '596 Patent Claims ██████████ are not practiced in a product. For

12 example, for MAX9617/18/19/20:

13       a.    Claim 1 █████████████ is not practiced, at least because █

14 ████████████████████████████████████

15 ████████████.

16       b.    Claim ████████████████████ is not practiced, at least because █

17 ████████████████████████████████████

18 ████████████████████████████████████

19 ████████████████.

20       c.    Claim █████ is not practiced, at least because ██████████████

21 ████████████████; and

22       d.    Claim █████ is not practiced, at least because ████████████████

23 ████████████████████████████████████

24 ████████████████████████.

25      170.    A substantial, immediate, and real controversy therefore exists between

26 Counterclaimants and Counter-Defendant regarding whether Counterclaimants products utilize

27 any claim of the '665, '204, '330, and '596 Patents and would therefore infringe them in the

28 absence of the License Agreement, and if Royalties are therefore due under the License

ROPERS
MAJESKI
A Professional Corporation
San Jose

4889-3713-2231-6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

1   Agreement.

2          171.    Because the '665; '204; '330; and/or '596 Patents are not practiced by

3   Counterclaimants in some or all amplifier products, there is "nothing to be infringed", therefore, a

4   judicial declaration is appropriate and necessary to determine the parties' respective rights

5   regarding whether Counterclaimants' products are subject to Royalties.

6          172.    Counterclaimants seek a court declaration that they are not required to pay

7   Royalties under the License Agreement since no Amplifier Products fall within the scope of the

8   Counter-Defendant's Licensed Patents.

9          173.    In the alternative, Counterclaimants seek a court declaration permitting them to

10  deposit any current or future Royalties under the License Agreement into an escrow account

11  while litigation is ongoing.

12         174.    An actual controversy exists as Counterclaimants dispute Counter-Defendant's

13  allegations that Counterclaimants are obligated to pay Counter-Defendant Royalties on the

14  Products under the License Agreement and failure to pay Counter-Defendant Royalties is a

15  breach of the License Agreement.

16                          **SEVENTH COUNTERCLAIM**

17                    **(Declaratory Judgment – Royalty Calculation)**

18         175.    Counterclaimants repeat and incorporate by reference, as though set forth in full,

19  all allegations set forth in paragraphs 1 through 174 of this Counterclaim.

20         131.176.    Counterclaimants seek a court declaration that Maxim's current method of

21  calculating Royalty under the License Agreement is GAAP-compliant and is not a breach of the

22  License Agreement.

23         177.    As a result ofFollowing the adjustmentharmonization of Maxim's cost accounting

24  system after itsthe acquisition by ADI, the GAAP Maxim's cost accounting method for

25  calculating the cost of goods sold was aligned with ADI's approach, while still compliant

26  Royaltywith GAAP.  However, the calculation underitself, as set forth in Section 3.1 of the

27  License Agreement also changed. , remained unchanged after the acquisition.

28         132.178.    As alleged in Number 14's Complaint, Counterclaim Defendants

ROPERS
MAJESKI

A Professional Corporation
San Jose

1  ~~have~~Counter-Defendant has asserted in writing that Maxim's post-transition, GAAP-compliant

2  Royalty calculation under the License Agreement was a breach of the License Agreement.

3  ~~133.~~179.       An actual controversy exists as Counterclaimants dispute ~~Counterclaim~~

4  ~~Defendants'~~Counter-Defendant's allegations because Maxim's post-transition, GAAP-compliant

5  Royalty calculation under the License Agreement is consistent with the plain language of the

6  License Agreement, is not a breach of the License Agreement and will not breach the License

7  Agreement with future Royalty payments.

8  ~~134.~~180.       Counterclaimants are entitled to a declaration from this Court resolving the

9  parties' dispute confirming that if any Royalty is owed under the License Agreement, Maxim's

10  post-transition, GAAP-compliant Royalty calculation under the License Agreement is consistent

11  with the plain language of the License Agreement and has not breached the License Agreement in

12  the past and will not breach the License Agreement with future Royalty payments.

13  ~~**ELEVENTH COUNTERCLAIM**~~

14  ~~**(Open Book Account - Cal. Code Civ. Proc., § 425.30)**~~

15  ~~135.       Counterclaimants incorporate by this reference the allegations of paragraph~~

16  ~~1 to 135, inclusive, as though fully set forth herein.~~

17  ~~136.       Since the License Agreement began to run starting on July 20, 2007, the~~

18  ~~Inventors and later Number 14 became indebted on an open book account to Maxim and ADI for~~

19  ~~Royalty payments that were demanded, accepted, and retained despite their Amplifier Design~~

20  ~~Patents not enabling amplifier products that meet the specifications provided in Annex 1 or~~

21  ~~conferring a conceptual and economic value to the final product.~~

22  ~~137.       Counterclaim Defendants have not disgorged these Royalties and they are~~

23  ~~due and owing to ADI and Maxim since the first payments in 2010.~~

24  ~~138.       Within the past two years, Counterclaim Defendants' failure to satisfy the~~

25  ~~specifications provided in Section 1.1, 2.7, 3.1, 3.2, and Annex 1, has created an open book~~

26  ~~account, that is currently due, owing, and unpaid to Maxim in the sum of at least $1 million for~~

27  ~~money had and received.  No part of such sum has been delivered to Maxim.  It is now due and~~

28  ~~owing and Maxim is entitled to damages according to proof.~~

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

ROPERS
MAJESKI
A Professional Corporation
San Jose

ROPERS
MAJESKI

A Professional Corporation
San Jose

1

## TWELFTH COUNTERCLAIM

2

### (Money Had and Received)

3      139.    Counterclaimants incorporate by this reference the allegations of paragraph

4    1 to 139, inclusive, as though fully set forth herein.

5      140.    Maxim is required to issue Royalties to Mr. Eschauzier and Mr. Van Rijn

6    only in compliance with the License Agreement for the use of Mr. Eschauzier and Mr. Van Rijn's

7    Amplifier Design Patents that enable products satisfying the specifications in Annex 1 and add

8    conceptual and economic value in the market.

9      141.    The Royalties sent to Counterclaim Defendants were part of the License

10   Agreement provisions that allowed ADI and Maxim to benefit from licensing Counterclaim

11   Defendants' Patents.

12     142.    However, as stated above, the Patents licensed and products identified did

13   not meet the specification requirements in Annex 1.  In short, the Patents did not add conceptual

14   and economic value in the market to Maxim's products and no Royalty has been earned.

15     143.    Nonetheless, Counterclaim Defendants continued to accept ADI and

16   Maxim's Royalty payments without informing or notifying ADI and Maxim that the Patents did

17   not meet the required Royalty payment eligibility.

18     144.    Within the past two years, Counterclaim Defendants became, ever since

19   have been, and now are indebted to Maxim in the sum of at least $1 million for money had and

20   received.  No part of such sum has been delivered to Maxim.  It is now due and owing and

21   Maxim is entitled to damages according to proof.

22

## THIRTEENTH COUNTERCLAIM

23

### (Unjust Enrichment against Defendants)

24     145.    Counterclaimants incorporate by this reference the allegations of paragraph

25   1 to 145, inclusive, as though fully set forth herein.

26     146.    Counterclaim Defendants received Royalty payments that ADI and Maxim

27   sent based on the provisions in the License Agreement.

28     147.    Upon information and belief, Counterclaim Defendants benefited from the

4889-3713-2231.6
4909-6066-5399.8

First Amended Answer to Complaint With
Counterclaims; Demand for Jury Trial
Case No. 5:24-CV-02435

1   ~~Royalties and have failed to notify or inform ADI and Maxim that they received Royalties for~~

2   ~~Maxim's use of Patents that did not enable products that met the specifications and requirements~~

3   ~~in Annex 1.~~

4          ~~148.        As a result, under the principles of equity and good conscience,~~

5   ~~Counterclaim Defendants should not be permitted to retain the money and should be required to~~

6   ~~return and disgorge the benefits and money it received.~~

7                                **PRAYER FOR RELIEF**

8          WHEREFORE, Counterclaimants pray for judgment against ~~Counterclaim~~

9   ~~Defendants~~Counter-Defendant as follows:

10         1.        For a declaration of the parties' rights and obligations under the License

11  Agreement, including that:

12         a)        ~~Counterclaim Defendants have never been entitled to any~~Counter-

13  Defendant is not eligible for a Royalty under the License Agreement~~,~~; or in the alternative that,

14         b)        ~~Counterclaim Defendants are not entitled to any further Royalties under the~~

15  ~~License Agreement until they deliver Amplifier Design Patents sufficient to create products that~~

16  ~~meet the specifications of Annex 1 of the License Agreement, or in the alternative that~~

17         ~~e) if Counterclaim Defendants are~~if Counter-Defendant is entitled to a Royalty,

18  that Maxim's post-transition, GAAP-compliant Royalty calculation under the License Agreement

19  is consistent with the plain language of the License Agreement and has not breached the License

20  Agreement in the past and will not breach the License Agreement with future Royalty payments~~;~~.

21         2.        For a declaration that the United States Patent No. 7,973,596 is unenforceable due

22  to inequitable conduct;

23         3.        For a declaration that Counter-Defendant's licensed patents, U.S. Patent No.

24  7,973,596; U.S. Patent No. 7,812,665; U.S. Patent No. 8,102,204; and U.S. Patent No. 7,898,330,

25  are invalid for failure to comply with the requirements under 35 U.S.C. §§ 102, 103 and/or 112;

26         4.        For a declaration that Counterclaimants' amplifier products do not infringe,

27  directly or indirectly, either literally or under the doctrine of equivalents, any valid patents owned

28  or assigned to Counter-Defendant, including U.S. Patent No. 7,973,596; U.S. Patent No.

A Professional Corporation
San Jose

ROPERS
MAJESKI

7,812,665; U.S. Patent No. 8,102,204; and U.S. Patent No. 7,898,330;

    5.    A preliminary injunction permitting the payment of any further Royalties under the License Agreement into an escrow pending litigation underway;

    6.    An injunction permanently enjoining the payment of any further Royalties under the License Agreement;

    7.    For compensatory damages in an amount according to proof at trial;

    ~~3~~8.    For consequential damages in an amount according to proof at trial;

    ~~4~~9.    For restitution and disgorgement of ~~profits in an amount according to proof at trial~~the revenues wrongfully retained as a result of Counter-Defendant's wrongful conduct;

    ~~5~~10.    For prejudgment interest at the legal rate on amounts owed by ~~Counterclaim~~ Counter-Defendant to Counterclaimants;

    ~~6~~11.    For cost of suit incurred herein, including reasonable attorney's fees pursuant to contract; and

    ~~7~~12.    For such other and further relief as the Court may deem just and proper.

Dated: ~~June 14, 2024~~April 21, 2025    ROPERS MAJESKI PC

By: /s/ Kevin W. Isaacson
MICHAEL J. IOANNOU
KEVIN W. ISAACSON
PAULA B. NYSTROM
AMANDA M. OGATA
Attorneys for Defendants and Counterclaimants ANALOG DEVICES, INC. and MAXIM INTEGRATED PRODUCTS, INC.

1

**DEMAND FOR JURY TRIAL**

2

Jury trial is hereby demanded by Defendants and Counterclaimants ANALOG DEVICES,

3
INC. and MAXIM INTEGRATED PRODUCTS, INC.

4
Dated: June 14, 2024                               ROPERS MAJESKI PC

5

6
                                                   By: /s/ Kevin W. Isaacson

7
                                                       MICHAEL J. IOANNOU
                                                       KEVIN W. ISAACSON

8
                                                       Attorneys for Defendants and
                                                       Counterclaimants ANALOG DEVICES,

9
                                                       INC. and MAXIM INTEGRATED
                                                       PRODUCTS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROPERS
M A J E S K I

A Professional Corporation

San Jose