RACHEL THOMAS (SBN 244527)
ALE BURKE-VALLEJO (SBN 353890)
GREENFIELD LLP
55 S. Market Street, Suite 1500
San Jose, California 95113
Telephone: (408) 995-5600
Email: rthomas@greenfieldlaw.com
       aburke-vallejo@greenfieldlaw.com

JOHN W. HARBIN (*Pro Hac Vice*)
WARREN J. THOMAS (*Pro Hac Vice*)
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
Telephone: (404) 645-7700
Email: jharbin@mcciplaw.com
       wthomas@mcciplaw.com

Attorneys for Plaintiff/Counter-Defendant NUMBER 14 B.V.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NUMBER 14 B.V.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC.,<br><br>　　　　　　　Defendants.<br>ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC.,<br><br>　　　　　　　Counterclaimants,<br><br>v.<br><br>NUMBER 14 B.V.,<br>　　　　　　　Counter-Defendant. | Case No.: 5:24-cv-02435-EKL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS AND COUNTERCLAIMANTS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL [ECF NO. 128]** |

1       Plaintiff and Counter-Defendant Number 14 B.V. ("Plaintiff" or "Number 14") submits this response to "Defendants and Counterclaimants' Administrative Motion to File Under Seal," ECF No. 128, filed by Defendants Analog Devices, Inc. ("ADI") and Maxim Integrated Products, Inc. ("Maxim") (collectively, "Defendants") on April 21, 2025.

While Number 14 acknowledges the Court's previous order sealing certain materials related to Defendants' initial counterclaims and exhibits thereto (though not everything Defendants requested, see ECF No. 86), the latest motion to seal raises contradictions and shows that Defendants' conclusory fears of harm are overblown and wrong. Further, Defendants' attempt to seal the allegations in the noninfringement counterclaim conflicts with the public's right of access.

In the Court's order granting in part the earlier motion to seal, the Court permitted sealing of the "detailed product specifications" identified in Annex 1 of the License Agreement (and referenced in the Answer/Counterclaims). There is no dispute that the specifications of the products themselves are publicly available. But to justify sealing the chart of specifications in Annex 1 of the License Agreement, Defendants' declarant Murgulescu stated that publicly disclosing them would "grant ADI and Maxim's competitors access to technical requirements *that give ADI and Maxim their current advantage over competitors*," such that those competitors could "create a competitive device without developing the product specifications themselves" if Annex 1 were not sealed. ECF No. 23-1 ¶ 17 (emphasis added). For the present motion to seal, Mr. Sharma repeats this assertion and adds that revealing those Annex 1 specifications would "accelerate the development of competing products, resulting in unfair competition and threaten Defendants business interests. As such, public disclosure would cause irreversible, competitive harm to Defendants." ECF No. 128-3 ¶¶ 9–10.

These conclusory statements are belied by Defendants' allegations that *none* of their products actually meet those Annex 1 specifications. Defendants allege now that there are "*no products* in any of the five categories in Annex 1 which exhibit 'improvements of 'similar' magnitude as compared to the Annex 1 specifications listing.'" Amended Counterclaims ¶ 80 (emphasis added); *id.* ¶ 48 ("In Summary, as demonstrated in Exhibit 4, the Stand-Alone Amplifier products *do not meet* the required specifications outlined in Annex 1 of the License Agreement and

1

PLAINTIFF'S RESPONSE TO DEFENDANTS AND COUNTERCLAIMANTS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL -- CASE NO.: 5:24-cv-02435-EKL

1  therefore *do not qualify* as Royalty bearing." (emphasis added)). This alleged failure of the
2  products—which Defendants manufacture and sell—to meet the Annex 1 specifications is the basis
3  for multiple of Defendants' counterclaims that no royalties are owed. *E.g.*, *id.* ¶ 57 (alleging that
4  Inventors acted in "bad faith" because they allegedly knew they products did not meet the
5  specification).

6        The allegations of the Counterclaims contradict the statements of Defendants' declarations.
7  The specifications in Annex 1 **cannot** give Defendants any "current advantage over competitors" if
8  the products they make and sell *do not actually meet* those specifications, as Defendants claim.

9        Equally important, it is undisputed that "the specifications of the products are publicly
10 available." ECF No. 128-1 ¶ 9. And, as explained by Mr. Eschauzier, the actual product
11 specifications that are public are much more detailed than the parameters in Annex 1. ECF No. 33-
12 1 ¶¶ 5–8 (noting all products have publicly available data sheets with "detailed technical
13 specifications" allowing competitors to "view the *actual* technical specifications"). As one
14 example, Exhibit A to this response is a copy of the "MAX40108" data sheet (as produced by
15 Defendants) Mr. Eschauzier discussed and provided a URL link to in his declaration. The *thirteen-*
16 *page* data sheet not only contains all the parameters cites in Annex 1, *see also* ECF No. 33-1 ¶¶ 5–
17 8, but it plainly discloses—to the public, including competitors—much *more* detailed technical
18 information than anything Defendants seek to seal by this motion. *See generally* Exhibit A.

19       How would Defendants be harmed by a competitor—who can already view the actual,
20 detailed specifications of the products in the market—seeing the more general target specifications
21 in Annex 1 (written almost 20 years ago), whether or not the products meet those parameters?
22 Defendants' declarations do not and cannot explain how revealing specifications the Defendants'
23 products allegedly do not meet would enable competitors to "accelerate the development" of their
24 products (ECF No. 128 at 5: 17–21). The Annex 1 specifications wouldn't "accelerate" competitive
25 development beyond what they already have access to, particularly if, as Defendants allege, their
26 products do not meet those specifications. Defendants' contradictory allegations reveal the hollow
27 basis for the previous sealing of Annex 1, and they cannot simply rest on that prior determination.
28 Annex 1, and materials referencing it, should not be sealed.

2

PLAINTIFF'S RESPONSE TO DEFENDANTS AND COUNTERCLAIMANTS' ADMINISTRATIVE MOTION
TO FILE UNDER SEAL -- CASE NO.: 5:24-cv-02435-EKL

1    The other exhibits also do not warrant sealing. As noted by Mr. Isaacson, **Exhibit 2** simply contains "background information" about the technology that explains what the parameter types are. ECF No. 128-1 at 5:4–13. Defendants do not contend the explanations themselves are confidential—Exhibit 2 consists of entirely non-confidential explanations of general principles about the technology—but they contend disclosing them would "undermine" the Court's prior sealing order by "effectively reveal[ing] the parameters [of Annex 1] to the public." *Id.* As discussed above, there is no basis to keep Annex 1 under seal. But even if the *values* shown in Annex 1 are kept under seal, the prior declaration by Mr. Eschauzier showed these parameter *types* are known, publicly disclosed attributes of the products. ECF No. 33-1 ¶¶ 6–8 (citing Analog website); Exhibit A (the referenced MAX40108 data sheet). All Exhibit 2 adds are non-confidential explanations of what those parameters mean.

Exhibits 3 and 4 then add publicly known values for certain products and compare them to the Annex 1 values. For example, consider the values of each of the parameters disclosed in the public data sheet for the MAX40108 product, as described in Mr. Eschauzier's declaration and shown in Exhibit A. ECF No. 33-1 ¶ 6. Now compare those public values to the ones Defendants seek to seal in the second column (labeled "MAX40108") of the table in Exhibit 4 to the Counterclaims, ECF No. 128-2 at 78. *They're the same parameters* and (with one exception) *the same values*. And the values shown for the other products in both Exhibit 4 and the "baseline" products shown in Exhibit 3 similarly come from *public data sheets*. Defendants are asking this Court to seal public information. That is flat wrong. And the only remaining content of those exhibits is the values of Annex 1 that Defendants are comparing their public specifications to, which also do not qualify for sealing for the reasons explained above. Accordingly, none of Exhibits 2–4, and none of the portions of the Counterclaims referencing them (e.g., the highlighted/temporarily redacted portions of pages 25–27) should be sealed.

Another type of contradiction is that Defendants themselves have revealed information the Court previously permitted to be sealed. In the Court's prior sealing order, it allowed Section 3.1 of the License Agreement and portions of the allegations quoting it to be sealed—including the specific gross margin threshold to calculate the royalty. See ECF No. 86 at 3:1–2. But when

3

PLAINTIFF'S RESPONSE TO DEFENDANTS AND COUNTERCLAIMANTS' ADMINISTRATIVE MOTION
TO FILE UNDER SEAL -- CASE NO.: 5:24-cv-02435-EKL

Defendants filed their redactions in January, they left those portions in public view. See ECF No. 90 at 24:12–16. Similarly, the Amended Counterclaim publicly discloses the same portions of the contract. ECF No. 127 at 31:14–19.[1] The royalty calculation method disclosed by Defendants lies at the core of the dispute.  While the declarants have stated the "details about royalty payments and calculations" are "competitively sensitive" (ECF No. 128 at 5:3–5; *see also* ECF No. 23-1 ¶¶ 10, 12–16; ECF No. 128-1 ¶ 5; ECF No. 128-3 ¶ 4), that horse is already out of the barn, at least as it relates to the royalty calculation. The Court should not require sealing the same matter in one part of the Counterclaim (or the License) that Defendants have disclosed elsewhere.

Finally, Defendants should not be permitted to seal their noninfringement allegations at pages 28–29 and 51–53. First, Defendants have invoked this Court's declaratory judgment jurisdiction and asked it to declare *some*, but not all, of the claims of the four patents at issue not infringed. The public right of access applies to these allegedly confidential allegations because they literally recite what Defendants are asking the Court to do. Second, the highlighted allegations themselves do little more than identify claim numbers and claim language. To illustrate (without using any of Defendants' allegedly confidential allegations), imagine a patent with Claim 1 to "an amplifier comprising a *widget* and a *gizmo*." An allegation that "none of Counterclaimants' products infringe claim *1* because *they do not contain a gizmo*" does not reveal anything about how the products are designed, or even *why* the product lacks that limitation. Rather, the allegations merely recite the claim number and the missing claim element. That is the situation with the actual allegations at issue here.

Third, there is no advantage to be gained by Defendants' competitors because the patents at issue give the patent owner (Number 14) and its exclusive licensee (Maxim and/or Analog) the right to *exclude others* from practicing the claimed inventions. Mr. Sharma declares, in conclusory fashion, that the "explanations of how these specific products *do not practice the respective patents*" is confidential and valuable information to Defendants, and would be to competitors if made public, because they could "replicate the reasoning … to develop design-arounds"—i.e.,

---

[1] The administrative motion does not seek to seal this paragraph, either.

4

PLAINTIFF'S RESPONSE TO DEFENDANTS AND COUNTERCLAIMANTS' ADMINISTRATIVE MOTION
TO FILE UNDER SEAL -- CASE NO.: 5:24-cv-02435-EKL

products that do not infringe. *See* ECF No. 128-3 ¶¶ 11–14. But Defendants' competitors *already* must develop design arounds, otherwise they would be infringers. And the "explanations" are merely an identification of claim elements that Defendants allege are *not present in* the products. *See, e.g.*, ECF No. 128-2 page 51 (identifying claim numbers and claim limitations that are allegedly absent from one example of the "some or all" products that do not infringe).[2] The patent claims are public *because* patent owners want to prevent competitors from practicing their claims. Unsealing these allegations would not "enable … competitors to exploit" that information because the claims block those competitors from practicing the inventions and/or they have already developed "design-arounds" to avoid doing so.

Defendants' administrative motion to seal reveals their continued (and conclusory) hyperbole about the risks of disclosure of information. The contradictions between their allegations and the claimed harm that would result if competitors were to know specifications that Defendants contend their products don't meet and that those competitors can already see for themselves, the lack of harm from disclosing claim limitations that are public and that competitors already cannot practice and allegedly do not cover the products at issue, and Defendants' own public disclosure of information they previously contended was sensitive all show that Defendants have not established the "compelling reasons" needed to seal these materials and overcome the presumption of public access.

Dated: April 25, 2025         By:*/s/Warren J. Thomas*
                              Rachel Thomas
                              Ale Burke-Vallejo
                              GREENFIELD LLP

                              John W. Harbin (*pro hac vice*)
                              Warren J. Thomas (*pro hac vice*)
                              MEUNIER CARLIN & CURFMAN LLC

                              Attorneys for Plaintiff/Counter-Defendant Number 14 B.V.

---

[2] Another example of the generality (and thus lack of confidentiality) of these allegations is their vague allegation that "some or all" products do not infringe; they identify only three "example" products as missing specific claim elements. *See* Counterclaim (ECF 128-2 at 51–53) ¶¶ 157–58, 165–66, 168–69.

5

PLAINTIFF'S RESPONSE TO DEFENDANTS AND COUNTERCLAIMANTS' ADMINISTRATIVE MOTION
TO FILE UNDER SEAL -- CASE NO.: 5:24-cv-02435-EKL