RACHEL THOMAS (SBN 244527)
ALE BURKE-VALLEJO (SBN 353890)
GREENFIELD LLP
55 S. Market Street, Suite 1500
San Jose, California 95113
Telephone: (408) 995-5600
Email: rthomas@greenfieldlaw.com
       aburke-vallejo@greenfieldlaw.com

JOHN W. HARBIN (*Pro Hac Vice*)
WARREN J. THOMAS (*Pro Hac Vice*)
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, GA 30309
Telephone: (404) 645-7700
Email: jharbin@mcciplaw.com
       wthomas@mcciplaw.com

Attorneys for Plaintiff/Counter-Defendant NUMBER 14 B.V.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NUMBER 14 B.V., <br><br> Plaintiff, <br><br> v. <br><br> ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC., <br><br> Defendants. | Case No.: 5:24-cv-02435-EKL-NMC <br><br> **PLAINTIFF'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE ORDER RESOLVING DISCOVERY DISPUTES** |
| ANALOG DEVICES, INC.; MAXIM INTEGRATED PRODUCTS, INC., <br><br> Counterclaimants, <br><br> v. <br><br> NUMBER 14 B.V., <br><br> Counter-Defendant. | |

Plaintiff Number 14 B.V. ("Plaintiff" or "Number 14") submits this motion for leave to file a motion for reconsideration of the "Order Resolving Discovery Disputes" ("Order"), ECF 166. Specifically, Number 14 seeks only the reconsideration of decision on RFPs 44 and 46, having no objection to the decision on RFP 48.

The Court concluded that Number 14 "failed to demonstrate a legitimate need or basis to compel production of information relating to the 1,100 amplifier products it seeks" because the "significant economic value" of the Amplifier Design Patents was to be assessed only "by reference to the License Agreement's attached specifications, not through a comparison to other ADI products." ECF 166 at 2:4–9. Thus, the Court find that Defendants' compromise proposal to provide information on only 15 amplifier products of their own choosing was "sufficient" and proportional to the needs of the case.

Reconsideration is appropriate because there was a second basis for relevance of the RFPs at issue that the Court did not consider: sales and profit data about the full scope of amplifier products is undeniably relevant to Defendants' attempts to invalidate the patents as obvious under 35 U.S.C. § 103. Objective evidence of nonobviousness must be considered when a patent is claimed to be invalid as obvious and a key factor is the commercial success of products using the claimed invention. Achieving a greater price or profit is strong evidence of commercial success.

I.  **BACKGROUND**

Number 14's Discovery Letter Brief ("Discovery Brief"), filed May 12, 2025, provides the background of the dispute over Number 14's August 2024 requests for production of sales data (price, quantity, and cost/margin information) on the "amplifier products" (i.e., RFPs 44 and 46). ECF 140 at 2-3. As explained, the parties believed they had resolved Defendants' objections about the scope of the term "amplifier products" in the relevant RFPs in October–November 2024, then Defendants reversed course in March 2025 by noting that the scope encompassed multiple product categories (both "Operational Amplifiers" and "Current Sense Amplifiers"), resulting in some 1,100 products. ECF 140 at 2; ECF 151 at 2. Defendants thus objected to the request as not relevant and requested further refinement of the definition. ECF 151 at 2.

During meet and confer efforts in March 2025, Number 14 requested Defendants investigate the feasibility and burden of producing financial data on these ~1,100 products under the original definition of amplifier products. ECF 140 at 3-4. On May 3, 2025, Defendants confirmed that the "financial data could be retrieved" and did not claim the production would be unduly burdensome. In fact, Defendants have never objected to these requests on the basis of any burden associated with producing the information. ECF 151 at 3; *see generally* ECF 164. Defendants proposed to produce financial data for 15 of the 1,100 amplifiers in question, without explaining the reasoning behind their selection. ECF 151 at 3.

Meanwhile, on April 21, 2025, Defendants introduced a Counterclaim for Declaratory Judgement, asserting that U.S. Patent Nos. 7,812,665; 8,102,204; 7,898,330; and 7,973,596 are allegedly invalid as obvious under 35 U.S.C. §103. ECF 127 at 38-46 (Counterclaim Four).

After the parties filed their respective, two-page letter briefs on May 12 and 20, the Court ordered the parties "to file proposed orders" on the issued raised in their letters and encouraged the parties to explore reasonable compromises. ECF 153. The proposed orders were due to be filed by noon on May 27, one day before the Court's hearing scheduled to address the disputes.

The parties timely filed their respective proposed orders (ECF 164, 165). In discussing the relevance of the requested discovery, Number 14's proposed order explained a second basis for relevance beyond the contract issues:

> Second, if Defendants obtained higher price for amplifiers utilizing the patented technology with those that do not, that may be significant evidence of the commercial value of the patents at issue, which is one of the objective indicia of nonobviousness, a factor that must be considered in relation to Defendants' counterclaims that one or more the patents is invalid as obvious.

ECF 165 at 6:20–24. This basis for relevance was not discussed in Number 14's original letter brief (and invalidity was not an issue when this dispute first arose), but Number 14 had raised the basis during the subsequent meet-and-confer process with Defendants' counsel, and Number 14 intended to argue that point at the hearing scheduled for the next day.

Defendants' Proposed Order continued to assert that the financial data was not relevant to the contract dispute without raising a concern as to the feasibility and burden of obtaining the financial data.[1] ECF 164 at 2-3.

Later that evening, the Court issued an order on the discovery disputes and vacated the May 28, 2025, discovery hearing. ECF 166 at 3:4–9. In electing Defendants' approach with respect to RFPs 44 and 46, the Order focused on the relevance of RFPs 44 and 46 to the qualification of the patents for royalty payments—specifically to the question of whether the Amplifier Design Patents provide sufficient economic value to qualify for royalty payments. ECF 166 at 2. However, the Order did not mention the request's relevance to the issue of the validity of the patents, despite Number 14 having raised the issue in Number 14's Proposed Order. *See generally* ECF 166.

## II. Legal Standards

The scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Defendants seek to invalidate the patents at issue as obvious. Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). This fourth factual finding is the one that is relevant to this motion. Per the Federal Circuit, the court must "consider all objective evidence before reaching an obviousness conclusion." *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1076 (Fed. Cir. 2012) (citing cases explaining the importance of objective evidence of nonobviousness); *see*

---

[1] By comparison, Defendant vehemently argued the undue burden of obtaining the cost reports associated with RFP 48. ECF 151 at 3; ECF 164 at 3.

*also Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1353-55 (Fed. Cir. 2013) (citing) (reversing district court's summary judgment for failing to review the secondary considerations of nonobviousness). Indeed, "evidence of secondary considerations [of nonobviousness] may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983).[2]

Commercial success is one of several secondary indicia of nonobviousness. *Graham*, 383 U.S. at 17.[3] It is important that the proffered data is sufficient to establish not just commercial success, but the "*level* of commercial success of the patented invention." *Speller v. United States*, 14 Cl. Ct. 170, 174 (1988) (determining that a partial release of sales data in discovery was not sufficient to meet the needs of a patent owner seeking to establish nonobviousness).

One potential indicator of commercial success is when products that include the patented features are priced higher than products that don't. *See, e.g., Magowan v. New York Belting & Packing Co.*, 141 U.S. 332, 343 (1891) (noting as evidence of validity that a patented product "was put upon the market at a price from 15 to 20 per cent higher than the old packings, although it cost 10 per cent less to produce it"); *Winner Int'l Royalty Corp. v. Wang*, 11 F. Supp. 2d 18, 24 (D.D.C. 1998) (finding compelling evidence of commercial success where patented device was "able to command a significantly higher retail price than the original [device] to meet the peculiar needs of certain consumers"); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1350 (Fed. Cir. 2012) (finding that a 10-12% pricing premium commanded on

---

[2] Secondary considerations, such as evidence of commercial success, provide guardrails against the impermissible use of hindsight bias—i.e., the "temptation to read into the prior art the teachings of the invention in issue." *Graham*, 383 U.S. at 36.

[3] For evidence of commercial success to weigh toward a finding of nonobviousness, there must be "a sufficient relationship between the commercial success and the patented invention. The term 'nexus' is often used… to designate a legally and factually sufficient connection between the proven success and the patented invention." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).

1  drilling rigs that incorporated the patented technology was compelling evidence of commercial
2  success supporting nonobviousness); *PPC Broadband, Inc. v. Iancu*, 739 F. App'x 615, 625-26
3  (Fed. Cir. 2018) (reversing PTAB for giving insufficient weight to patent holder's evidence of a
4  16% pricing premium commanded by connectors that incorporated the claimed features).

5        Finally, a motion for leave to file a motion for reconsideration may be filed when the
6  moving party has shown reasonable diligence in bringing the motion and when there has been a
7  "manifest failure by the Court to consider material facts or dispositive legal arguments which were
8  presented to the Court before [the] interlocutory order." Civil Local Rule 7-9(b)(3).

9     **III.**    **Argument**

10        Number 14 respectfully submits that the Court overlooked a dispositive argument regarding
11  the relevance of RFPs 44 and 46 in light of the recent assertions of obviousness in Counterclaim
12  Four. ECF 127 at 38; ECF 165 at 7. This argument was mentioned only briefly in Number 14's
13  proposed Order because the invalid defense had only recently been asserted and because Number
14  14 incorrectly presumed it would be able to explain that basis for relevance in the now-cancelled
15  hearing. But the law requires that Number 14 be able to conduct full discovery on the question of
16  commercial success.

17        Considering Defendants' recent assertions of obviousness under 35 U.S.C. §103, Plaintiff
18  must be allowed to conduct discovery on secondary indicia of nonobviousness. That includes
19  commercial success of the patented product, which can be a powerful indicator of nonobviousness
20  *if* a nexus can be shown between the commercial success and the claimed features. *See Stratoflex*,
21  713 F.2d at 1538; *Plantronics, Inc.*, 724 F.3d at 1355. A significant difference in the pricing and
22  profit margin of products encompassed by the patents (as compared to similar products that fall
23  outside of the patent claims) could illuminate such a nexus and provide strong evidence of
24  commercial success of the patented invention. *See PPC Broadband,* 739 F. App'x at 625–26;
25  *Winner Int'l.*, 11 F. Supp. 2d at 24; *Transocean,* 699 F.3d at 1350.

26        The Court's order required Defendants (according to their proposal) to produce "by June
27  25, 2025, information sufficient to show sales revenue and margin for the 15 products covering
28  Fiscal Years 2008 to the present." Defendants produced that data on June 25, and it illustrates the

challenges in relying on Defendants' hand-picked products. (Number 14 has been reasonably diligent in bringing this motion as it wanted to review and analyze the subset of data Defendants produced per the Court's Order and has brought this motion within eight days of receipt of that data from Defendants.) First, the data produced only goes back to 2018, so it appears that none of the products were introduced before that year.[4] One of the products does not have any revenue-producing sales until FY2025, and another not until FY2024. The recent introduction of those two products makes them poor comparators to the commercial success of the patented products, some of which go back more than a decade. And, as Number 14 would have guessed, all but 3 of Defendants' 15 selected products have gross margins that exceed the threshold in the License Agreement, two of those being the very recent new products. This small sample size is unlikely to reflect the commercial realities of Defendants' overall, non-patented product line.

Thus, the full set of financial data on Stand-Alone Amplifiers is necessary to ensure that the review is objective, thorough, and complete. Number 14 needs to be able to present to the Court "*all* evidence touching the obvious-nonobvious issue" to comply with the Federal Circuit's directive, *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1150 (Fed. Cir. 1983); *In re Cyclobenzaprine*, 676 F.3d at 1076 (noting *Stratoflex*'s "directive that courts consider all objective evidence before reaching an obviousness conclusion").+ To make an adequate showing of commercial success, and to meet its burden of showing the required nexus, Number 14 needs to be able to fully assess the sales of products with and without the patented features—not just the data as to the small subset of products Defendants selected. Moreover, conducting discovery on the subset of information Defendants have provided and how representative that subset is of the broader sales of other amplifier products would likely be much more complicated than just having Defendants produce the sales records, which as noted they have not claimed is burdensome.

The relevance of this data to the claim of obviousness in Defendants' recent Counterclaims is clear, and it is a wholly separate inquiry from its relevance to the contractual issue of whether a

---

[4] It may be the case that Defendants have no data before 2018 from this source, but that has never been mentioned by them.

product qualifies for royalty payments.[5] Rule 26(b)(1) requires a focus, *inter alia*, on the "importance of the issues at stake" as well as proportionality. Number 14 is concerned that the Court has not considered the relevance and *importance* of the requested data to the dispute over the validity of the patents. As discussed above, it is important that Number 14 be able to conduct a full investigation and make a complete presentation as to commercial success. Relatedly, the request is proportional to the needs of the case, given the necessity of obtaining complete data for Number 14 to make an adequate showing on commercial success, rather than having to rely on a small subset of data cherry-picked by Defendants. Furthermore, because Defendants have never raised the *burden* of producing this information, we can only assume that this sales information is easily retrievable. *See generally* ECF 151 and ECF 164; Fed. R. Civ. P. 26(b)(2)(B) ("If a party wishes to withhold information on the basis that it is not reasonably accessible because of undue burden or cost, the evidentiary burden is on that party.").

### IV. Conclusion

For the reasons outlined above, Number 14 respectfully requests leave to file a motion for reconsideration of the Order. In sum, additional financial data on Stand-Alone Amplifiers is relevant, important, and proportional to the need to perform a thorough investigation of Defendants' declaratory judgment claims of nonobviousness. Furthermore, Defendants have identified no burden in retrieving and producing said financial data.

**GREENFIELD LLP and**
**MEUNIER CARLIN & CURFMAN**
*/s/John W. Harbin*
Rachel Thomas
Ale Burke-Vallejo
John W. Harbin *(pro hac vice)*
Warren J. Thomas *(pro hac vice)*

Attorneys for Plaintiff and Counter-Defendant Number 14 B.V.

---

[5] As noted at the outset, while Number 14 does not agree with the Court's statements about the scope of the license in the order on the motion to dismiss (ECF 118 at p. 11:4–8), Number 14 does not seek reconsideration of the discovery order on that issue.